IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEYANA WILEY, as Administrator of the Estate of Omar H. McCullough,<br><br>    Plaintiff,<br><br>  vs.<br><br>JUSTIN YOUNG,<br>COURTNEY WALKER,[1]<br>ANGELICA WACHTOR,<br>JUSTIN DUPREY,<br>WEXFORD HEALTH SOURCES, INC.,<br>NURSE CYNTHIA ROSS,<br>and LORI MOTON,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 21-cv-599-JPG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Now before the Court are three Motions to Dismiss: (1) Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim filed by Wexford Health Sources, Inc. ("Wexford"), Cynthia Ross, and Justin Duprey (Doc. 23); (2) Motion to Dismiss and Motion to Join filed by Courtney Walker, Justin Young, and Angelica Wachtor (Doc. 27); and (3) Motion to Dismiss filed by Lori Moton (Doc. 38). Plaintiff responded to the first two motions at Doc. 28. Wexford, Ross, and Duprey filed a Reply. (Doc. 30). Plaintiff responded to Moton's motion at Doc. 41. As set forth below, the motions will be granted in part and denied in part.

While the above motions were pending, Defendants filed a Motion to Stay Discovery Pending Defendants' Motions to Dismiss (Doc. 40); Plaintiff responded (Doc. 42). Because the

---

[1] Courtney Walker was identified by Plaintiff as "C. Walker" and Cynthia Ross was initially identified only as "Nurse Cynthia." (Docs. 1, 32). Each provided her full name in her Motion to Dismiss (Docs. 23, 27). The Clerk will be directed to correct these names on the docket sheet.

Court rules on the dismissal motions below, no stay is necessary and the motion to stay discovery will be denied.

Plaintiff Keyana Wiley brought this action on June 16, 2021. (Doc. 1).[2] Her claims stem from alleged deficiencies in medical care for her deceased brother, Omar McCullough, while he was an inmate of the Illinois Department of Corrections ("IDOC") between early 2016 and June 22, 2019. (Doc. 32, pp. 2, 11). McCullough died on March 28, 2020, from advanced intestinal cancer that was diagnosed after prison officials sent him to an outside hospital. (Doc. 32, p. 12).

Wiley asserts that McCullough complained to prison medical providers of serious symptoms including severe and recurring abdominal pain, vomiting, episodes of constipation, diarrhea, and bloody stool, blood in his urine and difficult urination, difficulty eating, and weight loss during his incarceration at Pinckeyville Correctional Center ("Pinkneyville") from June 2016 through February 2018, and then at Danville Correctional Center ("Danville") where he was transferred in February 2018 until he was sent to the emergency room on June 22, 2019. (Doc. 32, pp. 4-11). Despite his ongoing complaints, Defendants allegedly failed to perform necessary diagnostic testing to discover the cause of McCullough's symptoms and rendered only ineffective treatment (recommending dietary changes, increased fluids, and prescribing laxatives and heartburn medication). *Id.* As a result, when McCullough's cancer was finally diagnosed, it was too advanced to be treated successfully. Defendant Wexford was the contractor providing medical services at both prisons during the entire time of McCullough's incarceration. Defendants Young, Walker, Wachtor, Ross, Duprey, and Moton were medical providers at Danville, employed by Wexford, who saw McCullough for his complaints on various occasions in 2019. (Doc. 32, pp. 3-4).

---

[2] Plaintiff's First Amended Complaint (Doc. 32) was filed with leave of Court to substitute Lori Moton for the previously unknown party and to correct numbering errors. (Doc. 31).

Several Defendants assert that Plaintiffs' claims are barred by the statute of limitations. The motions further argue that the Complaint fails to state viable claims in various respects. Because the motions to dismiss raise overlapping arguments, the Court will first address the matter of timeliness of the federal claims and will then discuss the challenges to each count of the Complaint.

## I. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Tricontinental Indus., Ltd. v. PriceWaterhouseCooper, LLP*, 475 F.3d 824, 833 (7th Cir. 2007); *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006). Courts must determine whether the factual allegations in a complaint plausibly suggest an entitlement to relief. *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). To survive dismissal for failure to state a claim, a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Dismissal is warranted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012) (quoting *Thomas v. Guardsmark, Inc.,* 381 F.3d 701, 704 (7th Cir. 2004)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556).

3

## II. STATUTE OF LIMITATIONS – FEDERAL CLAIMS

In assessing the timeliness of a federal civil rights case, courts look to state personal injury laws; in Illinois, this is a two-year period.[3] *Wallace v. Kato*, 549 U.S. 384, 387 (2007); 735 ILL. COMP. STAT. 5/13-202; s*ee also Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993); *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992). The issue here is when this time began to run.

Where an ongoing period of inadequate medical treatment for a prisoner is alleged, the doctrine of a "continuing violation" of constitutional rights may mean that the statute of limitations does not start to run until the last day of the plaintiff's ongoing injury. *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001); *see also Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013). With such a continuing injury, a plaintiff can "reach back to its beginning even if that beginning lies outside the statutory limitations period" because "it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017) (quoting *Heard*, 253 F.3d at 319). "The continuing nature of the violation in *Heard* meant that the limitations period did not commence when the inmate first discovered his medical problem, but later, when his constitutional rights were last violated—that is, when he left the jail. In other words, the continuing-violation doctrine operates to *delay* the start of the limitations period." *Devbrow*, 705 F.3d at 770 (emphasis in original) (quoting *Heard*, 253 F.3d at 319). *See also Jervis v. Mitcheff*, 258 F. App'x 3, 6 (7th Cir. 2007) ("The statute of limitations commences anew every day that treatment is withheld . . . so in this case it does not matter whether [plaintiff] sued more than two years after he saw [the defendant physician] for the first and only time.") (internal citation omitted).

---

[3] The application of the statute of limitations to Plaintiff's state law claims will be discussed under Section IV below.

### A. Defendants Wachtor, Moton, Ross, and Duprey[4]

According to Plaintiff, McCullough was seen by the following individual Defendants on these dates: Nurse Wachtor on January 1, 2019 and May 13, 2019; Nurse Practitioner Moton on January 3, 2019; Nurse Cynthia Ross on February 20, 2019; and Nurse Practitioner Duprey on May 30, 2019. (Doc. 32, pp. 3-4, 7-11).

Defendants Ross, Duprey, Wachtor, and Moton acknowledge the continuing violation doctrine but argue it does not apply where McCullough saw them for treatment on dates more than two years before Plaintiff filed this action on June 16, 2021. (Doc. 23, pp. 4-6; Doc. 27, pp. 1-2; Doc. 38, pp. 1-3, 5-7). With the exception of Wachtor, who saw McCullough twice, each of these providers had only one encounter with McCullough. Each argues that they were not involved in providing him with continuing care, thus the claims against them accrued on the dates of treatment and are barred by the two-year statute of limitations.

The Court concludes that the continuing violation doctrine applies to Defendants Ross, Duprey, and Wachtor, therefore they are not entitled to dismissal from the action on statute of limitations grounds. Plaintiff claims an ongoing, deliberately indifferent failure to treat a serious medical condition spanning several years; these Defendants were McCullough's medical providers during the last six months of his confinement. As in *Heard*, Defendants' failure to meaningfully treat McCullough continued "for as long as the defendants had the power to do something about his condition, which is to say until he left the [prison]." *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). Plaintiff was not required to sue until the deliberate indifference ended, with McCullough's departure from Danville. These providers were allegedly made aware of McCullough's severe symptoms when he sought care from them and had the opportunity to take

---

[4] Defendants Dr. Young, who saw McCullough between May 20-June 19, 2019, and Nurse Walker, who saw him on June 17, 2019, do not raise a statute of limitations argument. (Doc. 27; Doc. 32, pp. 8-11).

steps that could have diagnosed his cancer and led to earlier treatment, yet they did not. This portion of the motions to dismiss (Docs. 23 & 27) will be denied.

Moton's motion to dismiss presents a different twist. She asks the Court to take judicial notice of the fact that she was no longer employed at Danville as of April 3, 2019, based on an answer she filed in an unrelated case in a neighboring judicial district.[5] (Doc. 38, pp. 6-7). She argues that after leaving her Danville job, she was no longer in a position to "do something" about McCullough's condition, so the continuing violation doctrine does not apply to her and Plaintiff's claim against her accrued on April 4, 2019. *Heard v. Elyea*, 525 F. App'x 510, 511 (7th Cir. 2013). Plaintiff recognizes that the end of a medical provider's prison employment would trigger the statute of limitations but argues that judicial notice is unwarranted in this instance. (Doc. 41, pp. 3-5); (*see also* Doc. 28, p. 7) (citing *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517-18 (7th Cir. 2019)).

Judicial notice of a particular fact is appropriate where the fact is not subject to reasonable dispute and where it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). Plaintiff notes that other facts may exist that could show Moton still had a position at Danville even after April 3, 2019, which would have allowed her to intervene in McCullough's care, thus her answer in the other proceeding does not place her assertion beyond reasonable dispute. (Doc. 41, pp. 4-5). Discovery is likely to resolve the ambiguity and may provide grounds for Moton's dismissal from the case on statute of limitations grounds. However, judicial notice of her employment tenure at this stage of the

---

[5] *Smith v. Young*, Case No. 18-cv-2244 (C.D. Ill.), Doc. 37, ¶ 4, Answer to Plaintiff's Second Amended Complaint (in which Lori Moton admits she was no longer employed at Danville after April 3, 2019). *See also Nance v. Wexford*, Case No. 16-cv-875 (S.D. Ill.), Doc. 240, pp. 8-9 (relying on employment dates set forth in Defendants' Answers in other cases to establish accrual date of claims against those Defendants for purpose of statute of limitations).

proceedings is not appropriate. Based on the complaint, the continuing violation doctrine applies and this portion of Moton's motion to dismiss (Doc. 38) will be denied.

## B. Wexford

Plaintiff alleges that Wexford maintained a de facto policy/practice throughout McCullough's incarceration of providing inadequate health care to IDOC inmates throughout the state, which amounted to deliberate indifference. (Doc. 32, pp. 13-14). In this context, McCullough's transfer from Pinckneyville to Danville has no effect on Plaintiff's claim against Wexford. Plaintiff alleges that Wexford's actions and omissions were part of a continuing course of conduct and caused ongoing injury to McCullough. Under the analysis set forth above, Plaintiff's claim did not accrue until McCullough's transfer to the outside hospital on June 22, 2019, which cut off Wexford's ability to "do something" about his medical condition. *See Heard*, 253 F.3d at 318. Plaintiff's claim against Wexford is timely.

### III. EIGHTH AMENDMENT CLAIMS (COUNTS 1 & 2)

Count 1 asserts that Defendants unconstitutionally denied medical care to McCullough while Count 2 focuses on Defendants' failure to intervene to prevent the violation of his constitutional right to medical care. (Doc. 32, pp. 12-15).

## A. Count 1 – Denial of Medical Care – Defendants Walker and Moton

Defendants Walker and Moton argue that Count 1 fails to state a claim against them. (Doc. 27, pp. 3-5; Doc. 38, pp. 7-9). Wexford and the other individual Defendants (Young, Wachtor, Duprey, and Ross) do not challenge the substance of Count 1. (Docs. 23, 27).

To state a viable Eighth Amendment claim for deficient medical care, the complaint must allege that the prisoner suffered from an objectively serious medical condition and the defendant prison official was deliberately indifferent to that condition. *Perez v. Fenoglio*, 792 F.3d 768, 776

(7th Cir. 2015) (citation omitted); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delaying care may constitute deliberate indifference if it exacerbated the condition or unnecessarily prolonged the inmate's pain). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez*, 792 F.3d at 776-77 (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Moton, a nurse practitioner, saw McCullough on one occasion (January 3, 2019) and viewed the results of his x-ray on January 24, 2019. (Doc. 32, p. 7). She argues that McCullough had not sought treatment for his constipation for almost a year after his transfer to Danville, and his visit to her was a follow up to his first complaint at that prison. (Doc. 38, p. 8). Moton ordered an abdominal x-ray which "did not detect any cause for concern" and she was not informed that his problem persisted, thus she was not deliberately indifferent to his plight. (Doc. 38, pp. 8-9).

The complaint, however, claims that Moton was aware that McCullough had been sent to the infirmary as a medical emergency two days before she saw him, because of his severe constipation and pain radiating from his back. (Doc. 32, p. 7). His bowel sounds were recorded as hypoactive, indicating a "dangerous health problem" and possible cancer. *Id*. Plaintiff asserts that McCullough's medical history informed Moton that prior x-rays had not diagnosed the source of his symptoms; when the new x-ray likewise did not identify a cause, she did not order any further testing and prescribed him more laxatives. These allegations support an inference that Moton was deliberately indifferent to McCullough's condition, in that she knew of his dangerous symptoms and the failure of previous x-rays to diagnose their cause, yet she made no other attempt at diagnosis after the x-ray was again inconclusive. *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (lengthy course of ineffective treatment, and refusal to order testing or specialist referral over a two-year period during which plaintiff suffered from ulcer suggested deliberate

indifference). At this early stage, the claim against Moton in Count 1 survives scrutiny under Rule 12(b)(6).

McCullough sought treatment once on June 17, 2019, from Walker. (Doc. 32, p. 10). Walker argues that Plaintiff's factual allegations state only that when McCullough requested medical care, she contacted a doctor for orders and fulfilled the doctor's new orders. (Doc. 27, p. 5). She was not deliberately indifferent to his complaints because she called the doctor and followed orders. Further, as a nurse she cannot diagnose or treat a patient. *Id.*

The complaint alleges more, however, stating that McCullough explained to Walker that he had severe abdominal pain, had been vomiting for weeks, and his Prilosec prescription had failed to relieve his symptoms. Additionally, his records showed a significant weight loss of 23 pounds over the previous four months as well as his abnormal lab results. (Doc. 32, p. 10). Plaintiff claims that McCullough's presentation should have prompted Walker to treat his condition as an emergency, but instead she handled it as a "routine matter that did not require a doctor's appointment[,]" contacted Dr. Young, ordered an anti-nausea medication as he prescribed, and sent McCullough back to his cell. (Doc. 32, p. 10). At the pleading stage, these alleged facts are sufficient to support an inference that Walker's "routine" handling of McCullough's complaints amounted to deliberate indifference. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was 'blatantly inappropriate.'") (quoting *Greeno v. Daley,* 414 F.3d 645, 654 (7th Cir. 2005)). Further factual development may reveal that Walker handled the situation with appropriate urgency so as to defeat this claim, but for now, Plaintiff may proceed on Count 1 against her, and this portion of Walker's motion to dismiss (Doc. 27, pp. 3-5) will be denied.

To summarize, Count 1 survives the motions to dismiss and shall proceed against all

Defendants.

### B. Count 2 – Failure to Intervene

All individual Defendants (Ross, Duprey, Wachtor, Walker, Young, and Moton) argue that Count 2 fails to state a claim against them for failure to intervene. (Doc. 23, pp. 8-10; Doc. 27, pp. 2-3; Doc. 38, pp. 9-10). They also assert that Count 2 is duplicative of the Count 1 deliberate indifference claim.

To state a claim for failure to intervene, a complaint must allege that "a constitutional violation has been committed by a state actor; *and* the defendant had a realistic opportunity to intervene to prevent the harm from occurring." *Piercy v. Whiteside County, Illinois*, 2016 WL 1719802, at *7 (N.D. Ill. 2016) (citing *Abdullahi v. City of Madison*, 423 F.3d 763, 774) (7th Cir. 2005) (internal markings omitted) (emphasis in original); *see also Yang v. Hardin*, 37 F.3d 282, 284-85 (7th Cir. 1994) (collecting cases). Here, Plaintiff alleges in Count 1 that each Defendant was deliberately indifferent to McCullough's serious medical needs, and based on the same factual descriptions, states in Count 2 that each Defendant had a reasonable opportunity to prevent the deliberate indifference "had they been so inclined, but failed to do so." (Doc. 32, p. 15).

Ross, Duprey, Walker, Wachtor, and Moton argue that Plaintiff does not allege what realistic opportunities existed for each of them to intervene. (Doc. 23, p. 9; Doc. 27, pp. 2-3; Doc. 38, p. 9). Ross, Duprey, Walker, and Moton each saw McCullough on one occasion; Wachtor saw him twice. They argue that Plaintiff does not allege any of these individuals was present when McCullough saw another provider and none of the Defendants were aware of another provider's treatment. *Id.* Likewise, Dr. Young argues no claim is stated because he is not alleged to have been present while other providers saw McCullough or had any opportunity to intervene in others' care. (Doc. 27, p. 3).

Plaintiff argues that her factual allegations support inferences that McCullough's serious symptoms along with his history of complaints and treatment/non-treatment were sufficient to put each Defendant on notice that other medical providers had not adequately treated his condition. (Doc. 28, pp. 10-14; Doc. 41, pp. 7-9).

To be sure, the claims of deliberate indifference and failure to intervene are closely related. Plaintiff's allegations that each Defendant was aware of McCullough's history of symptoms that were not resolved with prior treatment goes directly to the question of whether the individual providers were deliberately indifferent to his condition. If such awareness is established, it may also show that the Defendant had an opportunity to take action to intervene in his care. As more facts emerge, it may become evident that some individual Defendants did not have a reasonable opportunity to intervene to prevent the deliberate indifference to McCullough's medical needs. At this early stage, however, the Court finds that Plaintiff has adequately pled her claim in Count 2 for failure to intervene. That portion of the individual Defendants' motions to dismiss will be denied.

Wexford, for its part, argues that it cannot be held liable under § 1983 for failure to intervene or on a *respondeat superior* theory, but may only be held liable for an unconstitutional policy or custom resulting in deliberate indifference (which is the claim in Count 1). (Doc. 23, p. 10). Plaintiff's claim against Wexford in Count 1 is grounded on Wexford's policies and practices that resulted in its IDOC providers rendering inadequate and unconstitutional medical care to McCullough. (Doc. 32, pp. 13-14). Wexford is correct that a policy/practice claim is the only basis for a medical corporation's liability in a § 1983 civil rights claim. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004); *see also Monell v. N.Y. City Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978). The failure to intervene claim against Wexford in Count 2 does

11

not suggest that Wexford had a policy or practice to violate inmates' rights in this manner, and instead may best be characterized as an attempt to hold Wexford liable under a theory of *respondeat superior*, which is not permissible for this federal claim. For this reason, Wexford's motion to dismiss it from Count 2 will be granted. (Doc. 23, p. 10).

### IV. STATE LAW CLAIMS (COUNTS 3 & 4)

Count 3 is Plaintiff's wrongful death claim under 740 ILCS § 180/1 and Count 4 is her survival action under 755 ILCS § 5/27-6. The complaint names all Defendants in connection with these counts. (Doc. 32, pp. 15-17).

Ross, Duprey, Wachtor, and Moton[6] seek dismissal from Counts 3 and 4 on the basis that the complaint was filed more than two years after the dates they treated McCullough, and because he discovered his injury more than two years before filing. (Doc. 23, pp. 7-8; Doc. 27, pp. 1-2, 6-7; Doc. 30, pp. 3-5; Doc. 38, pp. 3-5). Plaintiff's response to the first two motions seemingly concedes that she is not suing these individuals under Counts 3 and 4, stating:

> Plaintiff's state law theories are not suits against any individual medical providers at all, but rather against Wexford as their employer, pursuant to the theory o[f] *respondeat superior*, for providing Mr. McCullough with tortiously indifferent care while acting as Wexford's agents.

(Doc. 28, p. 9). In their Reply, Ross, Duprey, and Wachtor highlight this statement, arguing that Plaintiff acknowledges she is not suing them individually and apparently agrees that her claims against them are time-barred. (Doc. 30, pp. 3-4). This conclusion finds support in the fact that when Plaintiff replied to Moton's motion to dismiss, she confined her arguments to the federal statute of limitations issue and the deliberate indifference/failure to intervene claims – and did not address Moton's argument on the state-law statute of limitations for Counts 3 and 4. (Doc. 38, pp.

---

[6] Defendants Walker and Young do not challenge the timeliness of Counts 3 and 4. (Doc. 27). Young also does not challenge the adequacy of the pleading as to these counts. *Id*.

3-5; Doc. 41, pp. 5-9).

Illinois law recognizes that a continuing violation may extend the two-year statute of limitations for personal injury, if the unlawful acts and conduct continue beyond the initial violation. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85-86 (Ill. 2003); *Bank of Ravenswood v. City of Chicago*, 717 N.E. 2d 478, 483-84 (Ill. App. 1999). Notably, even if injury to the plaintiff continues, "the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury[.]" *Feltmeier*, 798 N.E. 2d at 85. As applied to Ross, Duprey, Wachtor, and Moton, whose only contact with McCullough occurred more than two years before Plaintiff filed suit (see p. 5 above), this means that the state law claims in Counts 3 and 4 are untimely. Their motions to dismiss Counts 3 and 4 against them will be granted.

Walker seeks dismissal from Counts 3 and 4, arguing that the complaint does not state a plausible negligence claim regarding her treatment of McCullough on June 17, 2019. (Doc. 27, pp. 6-7). Having already found that the deliberate indifference claim against Walker was adequately pled, the Court rejects this contention and denies this portion of the motion to dismiss. *See Wade v. Castillo*, 658 F. Supp. 2d 906, 918 (W.D. Wis. 2009) ("[T]he standard for deliberate indifference is substantially higher than for negligence in a medical malpractice claim.") (citing *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996)).

Finally, Wexford notes that the complaint contains allegations of inadequate medical care dating back to 2016, more than four years before the action was filed. (Doc. 23, p. 8). Under 735 ILCS 5/13-212, an action for medical injury cannot be brought more than four years after the date of occurrence of the act or omission which allegedly caused the injury. Wexford argues that under this statute, any allegations prior to June 16, 2017, cannot form the basis for a claim and should be barred. *Id.* Plaintiff offers no rebuttal to this argument. (Doc. 28, pp. 9-10). Accordingly, Plaintiff's

state law claims against Wexford in Counts 3 and 4 will be limited to events beginning with June 16, 2017.

To summarize, Counts 3 and 4 will proceed only against Defendants Young, Walker, and Wexford (commencing on June 16, 2017). Defendants Wachtor, Duprey, Ross, and Moton will be dismissed from these state law claims.

### V. *RESPONDEAT SUPERIOR* – WEXFORD (COUNT 5)

Plaintiff seeks to hold Wexford liable under § 1983 for the actions of its employees acting within the scope of their employment. (Doc. 32, p. 17; Doc. 28, pp. 14-16). The Court declines the invitation to depart from longstanding Seventh Circuit precedent, which establishes that a plaintiff in a federal civil rights action cannot maintain a claim against an employer under the theory of *respondeat superior*. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Plaintiff is, of course, pursuing a *Monell* policy/practice claim against Wexford under Count 1 herein.

As to the portion of Plaintiff's *respondeat superior* claim based on state law, Wexford is correct that *respondeat superior* may be argued as a theory of liability but is not a separate claim. (Doc. 23, p. 11). *See Armbruster v. Wexford Health Sources, Inc*., Case No. 16-cv-544-MJR-SCW, 2017 WL 2619032, at *3 (S.D. Ill. June 16, 2017) (citing *Wilson v. Edward Hosp*., 981 N.E.2d 971 (Ill. 2012) (finding that *respondeat superior* was "merely part of the duty analysis in a case where the plaintiff seeks to hold the principal [the hospital] liable for the agent's [(the doctor's)] alleged negligence."). The state law claim in Count 5 is therefore improperly pleaded as a separate count and will be dismissed. Nonetheless, Plaintiff may argue *respondeat superior* as a theory of her claims against Wexford under the Illinois Wrongful Death Act and Survival Act, Counts 3 and 4, for the acts and omissions of its employees.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss Plaintiff's Complaint for

Failure to State a Claim filed by Wexford, Cynthia Ross, and Justin Duprey (Doc. 23) is **GRANTED** in part insofar as Wexford is **DISMISSED** from Count 2 of the action; Ross and Duprey are **DISMISSED** from Counts 3 and 4; the claims against Wexford in Counts 3 and 4 are limited to events beginning with June 16, 2017; and Count 5 is **DISMISSED**. This motion is **DENIED** in part in all other respects.

The Motion to Dismiss and Motion to Join filed by Courtney Walker, Justin Young, and Angelica Wachtor (Doc. 27) is **GRANTED** in part insofar as Wachtor is **DISMISSED** from Counts 3 and 4. This motion is **DENIED** in part as to Counts 1 and 2.

The Motion to Dismiss filed by Lori Moton (Doc. 38) is **GRANTED** in part insofar as Moton is **DISMISSED** from Counts 3 and 4. This motion is **DENIED** in part as to Counts 1 and 2.

In summary, Count 1 shall proceed against all Defendants. Count 2 will proceed against Young, Walker, Wachtor, Duprey, Ross, and Moton. Counts 3 and 4 shall proceed against Young, Walker, and Wexford with the time limitation noted above.

The Motion to Stay Discovery Pending Defendants' Motions to Dismiss (Doc. 40) is **DENIED**. A separate scheduling and discovery order shall be issued.

The Clerk is **DIRECTED** to correct the names of Courtney Walker and Cynthia Ross on the docket sheet in accordance with footnote 1 above.

**IT IS SO ORDERED.**

**DATED: 2/17/2022**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**

15