048792/21061/TPD/JAK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEYANA WILEY, Administrator of the Estate of OMAR MCCULLOUGH #K77858,<br><br>    Plaintiff,<br><br>v.<br><br>JUSTIN YOUNG, C. WALKER, ANGELA WACHTOR, JUSTIN DUPREY, JANE DOE, WEXFORD HEALTH SOURCES, INC., and NURSE CYNTHIA,<br><br>    Defendants. | Case Number 3:21-cv-00599-JPG<br><br>Judge J. Phil Gilbert |

**MOTION FOR PROTECTIVE ORDER**

COMES NOW Defendant WEXFORD HEALTH SOURCES, INC., by and through its attorneys, CASSIDAY SCHADE LLP, and for its Motion for Protective Order concerning Plaintiff's Requests for Production directed at Wexford, states as follows:

**INTRODUCTION**

1. Plaintiff initiated this cause of action on June 16, 2021 and on December 3, 2021, Plaintiff filed an Amended Complaint (Docs. 1; 32).

2. After ruling on Defendants' Motions to Dismiss, the Court allowed Plaintiff to proceed on claims against Wexford for an alleged denial of medical care in violation of the Eighth Amendment and medical negligence related to the care of Omar McCullough, beginning on June 16, 2017.  (Doc. 43, pp. 14-15).

3. Plaintiff alleges a delay in diagnosis of Decedent's cancer at Pinckneyville Correctional Center and Danville Correctional Center.  Plaintiff alleges individual treaters failed to properly assess Decedent, follow up, and order appropriate testing or referrals that would have timely

diagnosed his condition. Plaintiff does not allege a delay in treatment as treatment was provided outside the IDOC. Plaintiff does not allege that Wexford directly denied Plaintiff care, including that there are no allegations related to utilization management. (Doc. 32). Plaintiff does not allege Wexford had "an express policy that causes a constitutional deprivation when enforced." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019).

4. On March 6, 2022, Plaintiff propounded 56[1] Requests for Production of Documents on Defendant, attached hereto as Exhibit A.

5. On March 31, 2022, Plaintiff produced Decedent's IDOC medical records.

6. On April 5, 2022, Defendants produced their Initial Disclosures, including Decedent's orientation records, inmate movement records, disciplinary records, cumulative counseling summary, business records, grievance records, and administrative review board records, all received via subpoena.

7. On April 27, 2022, undersigned counsel informed Plaintiff's counsel of concerns that the Requests, including subparts, were voluminous and overbroad indicating that there was little to no effort to tailor the requests in time or scope to the allegations in this case and seeking a meet and confer to collaboratively address these issues.[2] (Exhibit B, Discovery Dispute Communication).

8. Plaintiff indicated that a meet and confer would be held on May 2, 2022, if, by April 29, 2022, Defendant identified in writing the requests it found objectionable, outlining the grounds for the objections. (Ex. B).

9. On April 28, 2022, Defendant complied with Plaintiff's request to outline its objections, including:

---

[1] The final request is number 60; however, there are no requests for numbers 26, 28, 44 or 45.
[2] The Parties agreed to extend the deadline for Defendant's responses to Plaintiff's Requests for Production of Documents to May 5, 2022.

2

    a.     RFP #1-3, 9, 19, 21, 23, 25, 27, 29-31, 36-60 are unduly burdensome, disproportioned to the needs of the case, and/or are vague to the point that there is no reasonable scope of records defined with particularity.

    b.     Many of the 56 requests include express or implied subparts, making the requests compound, including RFP# 1-3, 9, 19, 29-30, 37-60, thus the number of actual requests are significantly more than 56.

    c.     More than a dozen of the requests seek documentation and communication from other cases, including a protracted class action case spanning more than a decade, and seek almost exclusively privileged materials.

    d.     These burdens are compounded by definitions and instructions that:

       i. "Defendant," includes nine or more categories of people, including "counsel, consultants, employees, and/or representatives," for each of the six[3] Defendants.

      ii. "Complaint" is definite as any criticism, grievance, or legal proceeding.

      iii. Wexford is inclusive of all of its employees and counsel, along with other subcategories.

      iv. "Document" expressly includes privileged material and documents "excludable from discovery."

      v. Twice requires the supplemental production of information for each of the 56 Requests, improperly adding 112 interrogatories guised as instructions to Requests for Production.

    e.     By way of example, undersigned counsel explained that Request #42, seeks <u>all documents</u> (including privileged documents and those excluded from discovery) related to <u>all Complaints</u> (criticisms, grievances, or legal proceeding) to which <u>any Defendant</u>

---

[3] Ms. Moton was dismissed by the Court in this matter. (Doc. 61).

3

(Justin Young, Courtney Walker, Angelica Wachtor, Justin Duprey, Cynthia Ross, Wexford, or any of their employees, counsel, present or former divisions, subsidiaries, officers, directors, affiliates, consultants, contractors, experts, investigators, representatives, agents, or other Persons acting on any of their behalf) has ever been a party for <u>10 years</u>.

f.   For further example, RFP #30 seeks all documents from January 1, 2014, through the present regarding the "provision of medical care to prisoners." In other words, everything.

10. On April 28, 2022, after Defendant provided written identification of concerns and explanations as requested by Plaintiff, Plaintiff refused to meet and confer at the agreed upon time to address these concerns. (Ex. B).

11. Plaintiff has indicated that she intends to seek an ESI protocol for communications related to their 56 requests for production, with subparts.

## **LEGAL STANDARD**

A request for production "***must*** describe with reasonable particularity each item or category of items to be inspected." FRCP 34(b)(1)(A)(emphasis added).

> the scope of discovery is as follows: Parties may obtain discovery regarding any ***nonprivileged*** matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and ***whether the burden or expense of the proposed discovery outweighs its likely benefit.***

FRCP 26(b)(1)(emphasis added). "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." FRCP 26(b)(2)(B).

4

A party may move for a protective order and the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding the disclosure or discovery, forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. FRCP 26(c)(1).

"The court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive… or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FRCP 26(b)(2)(C).

## **ARGUMENT**

Defendant seeks entry of a protective order regarding the instructions and definitions of Plaintiff's Request for Production of Documents, as well as Plaintiff's Requests for Production #1-2, 9, 19, 21, 23, 25, 27, 29-31, 36-60.  Defendant asserts that these requests are facially overbroad and irrelevant to constitute unquestionable undue burden and oppression upon Defendant and that such discovery must be limited before Defendant is required to provide a response.  Further, as several of these requests target privileged documents and communications, Plaintiff's requests are outside the scope permitted by Rule 26(b)(1) and a protective order is necessary.

Defendant is not raising all objections to all requests at this time (and does not waive such further objections) but instead identifies overarching issues with Plaintiff's requests that constitute significant undue burden and expense.  This significant undue burden and expense will be compounded with Plaintiff's forthcoming proposed ESI protocol to search for communications related to these improper requests.

Defendant hereby certifies that it attempted to resolve the concerns herein in good faith, but Plaintiff refused Defendant's request to meet and confer.

For the purpose of this Motion for Protective Order and without waiving standard discovery objections, Defendant does not raise arguments regarding 22 of Plaintiff's 56 Requests: 3-8, 10-18, 20, 22, 24, (there is no 26 or 28), and 32-35.  The Court should find that these 22 Requests are sufficient for the purposes of this matter and should strike Plaintiff's remaining Requests for obvious and undue overbreadth, burden, expense, and oppression.  Given the necessary briefing of these issues, Defendant seeks an extension of 45 days to object and respond to any remaining Requests after the Court rules on this Motion.

### 1. Overarching Objections

Defendant's first concern is the overbreadth and ambiguity of Plaintiff's definitions of "Individual Defendant(s)," "Defendant,"[4] and "Wexford."  Plaintiff defines these entities as themselves, "as well as, their counsel and any of their present or former divisions, subsidiaries, officers, directors, affiliates, employees, consultants, contractors, experts, investigators, representatives, agents, or other Persons acting on any of their behalf."  Initially, it is not clear whether "counsel" is modified by, "and any of their," or if "counsel," is meant to be a distinct co-equal sub-category alongside "divisions," "subsidiaries," etc.  Regardless, and while such definitions are improper on their own, as an initial matter, Defendant points out that for each concern raised below, that concern is exacerbated by these broad Definitions.  Each request that mentions, Wexford or any Defendant, includes every employee and attorney over time, thus multiplying exponentially the breadth of the number of searches to an incalculable number.[5]

---

[4] Or "you," or "your."
[5] Attempts to do so are nearly impossible, but an estimate for Request for Production No. 9 creates at least 20,000 avenues of inquiry.

While Defendant will not belabor this for each request below, the overbreadth of these Definitions cannot be understated.

Defendant also objects to the Plaintiff's Instructions that effectively create two additional interrogatories for each Request. Specifically, Instruction Number 6 charges Defendant with identifying Documents not in Defendant's possession and the Person who has possession, custody, or control, of those documents, if known. Similarly, Instruction Number 9 charges Defendant with identifying any documents that have been destroyed or lost, its contents, the approximate date of the destruction or loss, the identity of the Persons who last saw the Document and the reason for its destruction or circumstances of its loss. To start, due to the overbreadth of Plaintiff's requests, as discussed below, these identifications are similarly overbroad. Additionally, FRCP 34 requires document production. It is beyond the scope of Rule 34 to require Defendant provide information about the documents requested.

Finally, Defendant objects to the Definition of "Document," to include items, "whether or not claimed to be privileged or excludable from discovery." Such a request impermissible broadens the scope of discovery beyond the limit of "nonprivileged" matters. Plaintiff cannot unilaterally expand the scope of discovery beyond what FRCP 26 allows.

**2. Specific Objections**

   a. **Request Nos. 1 -2**

Plaintiff's Request No. 1 is overly broad, unduly burdensome, and not proportional to the needs of the case. Here, Plaintiff has made no attempt to identify the documents with reasonable particularity and seeks "all Documents and Communications" that relate to "any of the allegations or claims," in the Complaint or defenses thereto. This request is further overbroad with the definition of "relate to," further expands the scope of this request to "anything directly or indirectly mentioning, describing, pertaining to, being connected with, reflecting upon, or

7

having any logical or factual connection with," any allegation, claim, or defense. It is impossible for Defendant to meaningfully respond to this request because it does not seek anything in particular. *See Beesley v. Int'l Paper Co.,* No. 06-703-DRH, 2008 U.S. Dist. LEXIS 112361, at *7 (S.D. Ill. Aug. 22, 2008). This request is further cumulative and oppressive because it would necessarily duplicate the entirety of any other proper request for production. Thus, Requests Nos. 1-2 should be struck.

    b. **Request No. 9**

Plaintiff's Request No. 9 is even more overbroad, unduly burdensome, disproportionate to the needs of the case, cumulative and oppressive as it seeks documents (including privileged communication) regarding Communications related to "Plaintiffs, the Decedent, **or** any of the allegations or events described in Plaintiff's Complaint." (emphasis added). Plaintiff has made no attempt to limit the request in any way, even by scope, and seeks "all" Documents which cannot be said to be proportional to the needs of the case. This request's overbreadth is amplified with the definition of "relate to" the Plaintiff, Decedent, or the allegations. Such a broad request is highly likely to encompass mostly irrelevant materials, especially considering the request consists of six subparts, one of which is Communications with any employee of the IDOC. Combined with the application of Plaintiff's definitions of the parties, as discussed above, it is impossible for Defendant to meaningfully respond to this request. Thus, Plaintiff's Request No. 9 should be stricken.

    c. **Request Nos. 19**, **21, 23, 31 and 40**

Plaintiff's Request No. 19, is overly broad, unduly burdensome, and not proportional to the needs of the case where Plaintiff has made no attempt to limit the request in any way, including in scope, but seeks all employment documents and Communications for each Individual Defendants (and their counsels). Again, this request's overbreadth is amplified with

8

the definition of "relate to." This request is also compound in nature and constitutes at least four separate request topics in one. Such a broad request will encompass mostly irrelevant materials. Defendant further notes that given the nature of this case and the positions of the individual defendants working at correctional facilities, this request also seeks personal information that can be used to harass and intimidate Defendants.

Request No. 21 is overbroad for the same reasons and is cumulative to the extent it seeks the same employment records. Plaintiff's addition of Documents and Communications of Individual Defendants (and their counsel) that "support a claim" that they "acted inconsistently with *any of the policies or practices of Wexford, the IDOC*," etc., expands the scope beyond comprehension. (emphasis added). It is impossible for Defendant to meaningfully respond to this request.

Plaintiff's Request No. 23 is unduly burdensome for the same reasons and expands the scope yet again to include any Complaint[6] of any Person,[7] alleging "any kind of misconduct" i.e. any criticism of the Individual Defendants (and counsel) for more than 7 years regardless of the nature.

Plaintiff's Request No. 31 further expands this request to all Documents and Communications regarding criticism, grievances, or legal action against any Wexford employee (and their counsel) by any IDOC employees for any reason for 7 years. Again, there is blatantly no attempt to craft a request that is reasonably particular to identify discoverable documents relevant to Plaintiff's claims and it is impossible for Defendant to meaningfully respond to this request.

---

[6] Defined to include criticisms, grievances, or legal proceedings.
[7] Defined to include individuals, corporations, partnerships, organizations, or other legal entities.

Plaintiff's Request No. 40 expands the search yet again by requesting documents related to the supervision, discipline, evaluations, etc. for any medical staff at Pinckneyville and Danville for any reason for seven years. For the above reasons, the Court should strike or limit Plaintiff's request to produce Nos. 19, and strike Nos. 21, 23, 31 and 40.

### d. Request Nos. 25 and 27 and 29

Plaintiff's Request No. 25 is overly broad, unduly burdensome, not proportional to the needs of the case, and irrelevant, as Plaintiff seeks Documents related to cancer deaths of IDOC prisoners for over eight years without regard to location or circumstances. Plaintiff's allegations here relate to the medical care at Pinckneyville and Danville Correctional Centers and an alleged delayed diagnosis of colon cancer. Yet, Plaintiff's request would include deaths of inmates where no such allegation was made. It also includes Documents and Communications for prisoners timely diagnosed with skin cancer, breast cancer, lung cancer, prostate cancer, etc., wholly irrelevant and beyond the scope of discovery.

This request also targets privileged communication, including quality assurance documents and communication, as well as attorney client communication and work product and insured/insurer communication. *Buckman v. Columbus-Cabrini Med. Ctr.*, 272 Ill.App.3d 1060, 1066, 651 N.E.2d 767, 771 (1st Dist. 1995); *Consolidation Coal Co. v. Bucyrus-Eric Co.*, 89 Ill. 2d 103, 120 (Ill. 1983); *People v. Ryan*, 30 Ill.2d 456, 461, 197 N.E.2d 15, 17-18 (Ill. 1960); *Claxton v. Thackston*, 201 Ill.App.3d 232, 235, 559 N.E.2d 82, 85 (1st Dist. 1990); 735 ILCS 5/8-2101 *et seq;* 745 ILCS 55/1 *et seq*. Further, it targets medical records of nonparties with disregard for their protected health information, wholly irrelevant to this matter. HIPAA, 42 C.F.R. §164.508; HITECH, 42 C.F.R. §164.508.

Similarly, Plaintiff's Request No. 27 seeks "Complaints" against anyone by anyone regarding diagnosis and treatment of any cancer for 10 years. In addition to the above, a prisoner

grievance about an unnamed oncologist is wholly irrelevant, etc. Further, Plaintiff seeks documents related to delays in treatment, not alleged in this matter. Even looking at a smaller scope (that Plaintiff will not meet and confer on), if the request was limited to allegations of a delayed diagnosis for colon cancer for all IDOC facilities, it remains irrelevant to this matter. *See Dean v. Wexford Health Sources, Inc.,* Nos. 20-3058, 20-3139, 2021 U.S. App. LEXIS 33423, at *49 (7th Cir. Nov. 10, 2021) (finding that inmate deaths at other facilities provide no insight into deaths at facilities at question in the suit). Such a broad request will encompass mostly privileged communication and irrelevant, protected health information of non-parties. In sum, Plaintiff did not attempt to tailor her requests to the needs of the case, but instead requests Defendant search for and produce documents, medical records, emails, transfer information, grievances, etc. for non-parties for 10 years. It is impossible for Defendant to meaningfully respond to this request.

Regarding Plaintiff's Request No. 29, in addition to the issues above, Plaintiff further seeks all utilization management records for all 40,000+ prisoners (population per year) multiplied by 10 years. This request would include requests for outside care wholly unrelated to the allegations in this complaint, like requests for outside dental care, optometry, or ADA accommodations. *See generally Arsberry v. Wexford Health Sources, Inc.,* No. 3:17-cv-50044, 2021 U.S. Dist. LEXIS 217636 (N.D. Ill. Nov. 10, 2021). In addition to the obvious significant undue burden and expense for any search of records for all prisoners for 10 years, there is no claim that Wexford denied any medical care expressly, i.e. there was no utilization management in this case. These records are unavailable due to undue burden and cost and this wholly irrelevant request can only be seen as an attempt to increase the cost of litigation. Thus, the Court should strike Plaintiff's Requests Nos. 25 and 27 and 29.

e. **Request Nos. 30, 38, 39 and 40**

Plaintiff's Requests No. 30 and 40 are overly broad, unduly burdensome, not proportional to the needs of the case, and irrelevant where Plaintiff requests all documents regarding 22 separate topics (collectively), including "***provision of medical and care***." (emphasis added). Other topics include, "access to medical evaluation or treatment," "medical services provided," "documentation of encounters with medical evaluations…," "utilization review management," "quality improvement programs," "differential diagnosis," "meeting of minutes for meeting regarding healthcare…" and all Communications related thereto.

In addition to the objections addressed above, this request would include documents and communications about the provision of medical care for any reason for all prisoners (40,000+) for over 8 years. Wexford is contracted to provide some, but not all, medical services. Plaintiff is literally asking for all of Wexford's records. Again there is no attempt to identify documents with reasonable particularity and Plaintiff is requesting Defendant produce everything.

Requests 38 and 39 expand on request 30, by seeking information on policymakers who had final authority regarding these policies and are unavailable due to undue expense in the same way. Again, Plaintiff does not allege there was an <u>explicit</u> Wexford policy that caused Decedent's injuries. Thus, inquiry into the policymaker is wholly irrelevant to the Plaintiff's claims. It is impossible for Defendant to meaningfully respond to these requests. Thus, Plaintiff's request to produce Nos. 30 and 40, and by extension requests number 38 and 39 should be struck.

f. **Request Nos. 36 and 37**

Plaintiff's Request No. 36 is overly broad, unduly burdensome, and not proportional to the needs of the case. Here, Plaintiff has made no attempt to limit the request in any way, temporally or otherwise, and seeks all documents related to the financial status of Defendants,

12

which cannot be said to be proportional to the needs of the case. Plaintiff's request is further overbroad due to Plaintiff's expansive definition of "Defendants." Finally, Defendants need only disclose enough information to establish current financial status for the purposes of punitive damages, which is not yet ripe as it is unclear if Plaintiff will be allowed to proceed to trial on such claim for relief.

Plaintiff's Request No. 37 is similarly overly broad, unduly burdensome, and disproportionate to the needs of the case. It is also compound in its nine subcategories, which seek such documents as "deed to your residence," and "pay stubs." Net worth is only relevant for calculating punitive damages, and even then, only as much information as is necessary to establish current financial status. Plaintiff's nine avenues of inquiry are not proportional to what is required to establish financial status but is an attempt to harass and embarrass Defendants and expose their personal finances and many documents would contain personal information of Defendants, including their addresses and social security numbers. Thus, the Court should strike Plaintiff's request to produce Nos. 36 and 37.

    g. **Request No. 42 and 46**

Plaintiff's Request No. 42 is overly broad, unduly burdensome, and not proportional to the needs of the case. As addressed in the Introduction, this request seeks all documents (including privileged documents and those excluded from discovery) related to all Complaints (criticisms, grievances, or legal proceeding) to which any Defendant (Justin Young, Courtney Walker, Angelica Wachtor, Justin Duprey, Cynthia Ross, Wexford, or any of their employees, counsel, present or former divisions, subsidiaries, officers, directors, affiliates, consultants, contractors, experts, investigators, representatives, agents, or other Persons acting on any of their behalf) has ever been a party for 10 years. This request is targeting attorney client communication and work product. It is in no way compliant with FRCP 26 and 34, but instead

13

intentionally seeks documents in the broadest possible sense expressly excluded from discovery. Thus, the Court should strike Plaintiff's request to produce No. 42.

Plaintiff's Request No. 46 specifically seeks all materials related to discovery, depositions, and trial in an irrelevant matter, *Dean v. Wexford Health Sources, Inc.*, Case No. 3:17-cv-03112-SEM-TSH (C.D. Ill.). Plaintiff is doubling the discovery burden on Defendant by seeking the entirety of discovery in another case. In addition to the patently overbroad nature of the requests and the targeted attempt to obtain attorney client communication and work product, Plaintiff's allegations here relate to the medical care at Pinckneyville and Danville Correctional Centers, where as *Dean* related to medical care at Taylorville Correctional Center. *Dean,* 2021 U.S. App. LEXIS 33423 at *2. The 7th Circuit, in *Dean*, explicitly found opinions as to care at other facilities entirely irrelevant to a *Monell* claim. *Id*. at *49. Further, the allegations in *Dean* concerned, "Wexford's 'collegial review' policy," where no such allegation is made in this matter. *Id.* at *2. Instead of heeding the directives of the 7th Circuit, Plaintiff takes the requests further and not only seeks opinions from another case, but also seeks essentially all documents from another litigation. None of this is relevant or proportionate to the needs of this case. Defendant also notes that Plaintiff has access to anything publicly filed. Thus, the Court should strike Plaintiff's Request Nos. 42 and 46.

    h. **Request Nos. 47-60 - the 2014 and 2018 *Lippert* Reports**

Plaintiff's Requests 47-43 regarding the 2014 *Lippert* reports are nearly identical to Requests 54-60 regarding the 2018 *Lippert* report. Plaintiff's initial requests, numbers 47 and 54, seek Documents and Communications "relating to," specific persons identified in the reports. Initially these requests are overly broad, unduly burdensome, not proportional to the needs of the

case, oppressive, and irrelevant where Plaintiff seeks "all" Documents. These requests are further overbroad with the definition of "relate to," addressed above.

Plaintiff also seeks documents known to be the subject of a protective order. The Stipulated Protective Order entered by the *Lippert* Court on April 11, 2012, provides that the requested materials are to be designated "Confidential," or "Attorneys Eyes Only."[8] In addition to the overbroad and unduly burdensome nature of these requests, Plaintiff is seeking Defendant violate the Court's Order. Plaintiff has access to publicly filed documents not so restricted.

Further, Plaintiff's allegations relate to the diagnosis of colon cancer at Pinckneyville and Danville Correctional Centers, where the individuals Plaintiff identifies from the 2014 report were housed at Illinois River, Dixon, Hill, and Pontiac Correctional Centers. *Lippert Et. Al. V. Ghosh Et. Al.*, 1:10cv4603, (Doc. No. 339, pg. 7). Individuals assessed[9] for the 2018 report were housed at Logan, Stateville, Menard, and Dixon. (Doc. No. 767-2, pp. 5, & 26-27; 33; 34; 44; 46; 50; 56; 57; 63); (Doc. No. 767-6, pg. 10; 37). As previously argued, the 7th Circuit in *Dean*, found evidence from other facilities entirely irrelevant to a *Monell* claim. 2021 U.S. App. LEXIS 33423 at *49.[10] Plaintiff also seeks all documents for these specific patients who clearly

---

[8] The documents to be designated "CONFIDENTIAL," can only be disclosed to:
(a) the Court, its officers, and any jury seated to hear this case;
(b) the attorneys of records in this case, employees of the attorneys of record engaged in this action, and outside litigation support providers retained by the attorneys of records…, all of whom shall use such information solely for purposes of this litigation, provided that each outside litigation support provider signs a confidentiality agreement…
(c) third party experts or independent consultants engaged by the attorneys of record in this case or by the parties to assist in this litigation ("Experts"), who shall use such information solely for purposes of this litigation, provided that each Expert signs a confidentiality agreement…
(d) the Parties…
(e) witnesses or deponents whose testimony is reasonably related to the confident0ial information sought to be disclosed to him or harm provided that each such person signs a confidentiality agreement…"
Stipulated Protective Order, Doc. 44-3, pp. 2-3.
[9] Plaintiff's request sub-parts n-s explicitly state the individuals were housed at Danville, Dixon, Stateville, Logan and Menard.
[10] Defendant also asserts that many of these instances do not involve medical conditions similar to Decedent's colon cancer.

15

have a different condition, including Crohn's' diseases, lung cancer, and a neurological condition. Although relevance is not the sole standard to determine the scope of discovery, when assessing the immense burden implicated by these requests compared to the known inadmissibility of the documents and communication, it is clear that Plaintiff's requests are significantly disproportionate to the needs of this case. So too weighing against Plaintiff's requests is that they seek unfettered access to protected health information of nonparties irrelevant to the needs of this case.

This burden is amplified by the request for Communications as to nearly every aspect of *Lippert*. As discussed above, Plaintiff is targeting attorney client communication and work product, in addition to protected health information of nonparties. Further, practically, these searches for Communications for more than a decade that could "relate to" *Lippert* in any way would yield such results that review for the obvious privileged communication would create an astounding undue burden of expense. Additionally, Requests 48, 53, 55, and 60 explicitly seek other Documentation and Communications directly related to Requests 47 and 54 and so too are irrelevant and significantly unduly burdensome. Thus, the Court should strike Plaintiff's requests to produce Nos. 47-48, 53-55 and 60.

Next, Requests 49-52, and 56-59 broadly seek "all Documents or Communications," discussing or relating to these reports' description of care provided to persons with cancer, delay in care, care to IDOC prisoners, and changes made in light of the reports. These requests are overly broad, unduly burdensome, not proportional to the needs of the case, and irrelevant. Such broad requests, irrespective of condition or location, are will encompass mostly, if not all, irrelevant materials, including medical care wholly unrelated to the allegations in this complaint (i.e. dental care, optometry, or ADA accommodations). Requests such as this have already been

found not reasonably tailored to a *Monell* claim. *See generally Arsberry v. Wexford Health Sources, Inc.,* No. 3:17-cv-50044, 2021 U.S. Dist. LEXIS 217636 (N.D. Ill. Nov. 10, 2021). Further, for the reasons identified above, these communications target nonparty protected health information, privileged communication, and work product and are unavailable due to cost.

In sum, Plaintiff's requests for materials from a class action spanning a decade is *per se* unduly burdensome and unavailable due to undue expense. FRCP 26(c). As these documents are ultimately inadmissible, they cannot be proportional to the needs of this case. However, the Court need not dive fully into the admissibility of *Lippert* documents to find that the requests are improper. Plaintiff's requests for Communications based on a decade long class action inherently seeks overly voluminous attorney client communication and work product, along with other privileged and protected information unrelated to this case. Thus, the Court should strike Plaintiff's requests Nos. 47-60.

## CONCLUSION

Plaintiff's Requests for Production of Documents is facially overbroad in its definitions, instructions, and in the Requests identified herein. Plaintiff has not abided by the spirit of the Federal Rules of Civil Procedure, nor has she abided by the plain language of the Rules. Accordingly, Defendant requests this Court enter a protective order to limit the overbreadth of Plaintiff's discovery requests and strike Requests 1-2, 9, 19, 21, 23, 25, 27, 29-31, 36-60. Defendant further requests that upon entry of any order regarding this Motion, the Court grant Defendant 45 days to specifically object and respond to the remaining Requests for Production of Documents.

WHEREFORE, Defendant respectfully requests this Court to enter Protective Order, strike Requests 1-2, 9, 19, 21, 23, 25, 27, 29-31, 36-60, and for any such other relief this Court deems just and proper.

        Respectfully submitted,

        CASSIDAY SCHADE LLP

        By:  /s/ Jaclyn A. Kinkade
            One of the Attorneys for Defendant,
            WEXFORD HEALTH SOURCES, INC.

Jaclyn A. Kinkade
ARDC No. 6333722
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
jkinkade@cassiday.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

Jon I. Loevy, Esq.
Sarah Copland Grady, Esq.
Stephen H. Weil, Esq.
Alison Bitterly, Esq.
Loevy & Loevy
311 North Aberdeen Street
Third Floor
Chicago IL 60607
(312) 243-5900
(312) 243-5902 (Fax)
jon@loevy.com
sarah@loevy.com
weil@loevy.com

/s/ Jaclyn A. Kinkade

11043278