IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KEYANA WILEY,                                )
                                             )
      Plaintiff,                          )
                                             )
    v.                                       )        Case No. 21-cv-599-JPG-RJD
                                             )
JUSTIN YOUNG, M.D., et al.,                  )
                                             )
      Defendants.                         )
                                             )

## ORDER

**DALY, Magistrate Judge:**

This matter comes before the Court on Plaintiff's Motion to Compel (Doc. 86), to which Defendants responded (Doc. 90) and Plaintiff replied (Doc. 102).   As explained further, Plaintiff's Motion to Compel is DENIED IN PART AND GRANTED IN PART.   Plaintiff also filed a Motion (Doc. 103) to Strike her original Reply (Doc. 96) because it included pages in excess of this District's page limit. The Motion to Strike is GRANTED.   Finally, Plaintiff filed a Motion for Leave to provide Notice of Supplemental Authority (Doc. 104), which is also GRANTED.

## INTRODUCTION

Omar McCullough was an inmate within the Illinois Department of Corrections ("IDOC") from 2016-2019 (Doc. 32, ¶16).   During that time, he allegedly reported various gastrointestinal symptoms of increasing intensity to the individual defendants, all of whom are medical personnel employed by Wexford Health Sources, Inc. (also a defendant) at either Pinckneyville Correctional Center or Danville Correctional Center (*Id.*, ¶¶16-47).   Wexford Health Sources, Inc., ("Wexford") provides medical care to inmates pursuant to its contract with the IDOC.

In 2019, Omar McCullough was diagnosed with intestinal cancer (*Id.*, ¶46). Soon afterwards, he was released from IDOC; he died in March 2020 (*Id.*, ¶47). Plaintiff Keyana Wiley brings this lawsuit as Administrator of Omar McCullough's Estate. She alleges that Defendants were deliberately indifferent to Omar McCullough's serious medical needs in violation of the Eighth Amendment to the United States Constitution. She further alleges that Defendants committed medical malpractice and are liable for Omar McCullough's pain and suffering and wrongful death.

Plaintiff filed a Motion to Compel regarding multiple Requests for Production to Wexford, attaching Wexford's objections to her motion (Doc. 86-1). Plaintiff's motion was referred to the undersigned pursuant to the Federal Magistrate Act, as amended, 28 U.S.C. § 636(b)(1)(A). The undersigned held a hearing on February 6, 2023. Plaintiff moves the Court to compel production of four categories of documents from Wexford: 1) documents related to the *Lippert* reports; 2) documents that reference Wexford's unwritten customs and practices; 3) all written discovery and deposition transcripts/recordings in an unrelated case against Wexford; and 4) the individual defendants' employee and personnel files.

## Standards of Review

When ruling on a discovery issue, the Court's role is to keep the parties within the following bounds:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).   On a motion to compel, the movant must establish that the discovery at issue is relevant.   *Bell v. Pension Comm. of ATH Holding Co., LLC* 330 F.R.D. 517, 520 (S.D. Ind. Jun. 14, 2018).   The burden then shifts to the objecting party to establish that the discovery request is improper.   *Id*.   Whether a discovery request is proportional to the needs of the case "requires a common sense and experiential assessment."   *Arsberry v. Wexford Health Sources, Inc*., Case No. 17-cv-50044, 2021 WL 5232733, at *2 (N.D. Ill. Nov. 10, 2021) (internal quotations and citations omitted).

Wexford cannot be vicariously liable for its employees in this case.   Instead, Plaintiff must pursue a "*Monell*" claim and establish that Omar McCullough's Eighth Amendment right to be free from cruel and unusual punishment was violated by 1) Wexford's express policy; 2) Wexford's "widespread and persistent practice that amounted to a custom approaching the force of law"; or 3) a Wexford "official with final policymaking authority."   *Howell v. Wexford Health Sources, Inc*., 987 F.3d 647, 653 (7th Cir. 2021) (*citing Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978); *Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc)).   Considering the allegations in Plaintiff's Complaint and her arguments regarding the Motion to Compel, it appears that the theory of her *Monell* claim (and of course that theory may change as the case progresses) is that Wexford has a widespread and persistent practice of failing to follow-up with inmates who have persistent symptoms, failing to determine the cause of inmates' persistent symptoms, and consequently failing to make timely diagnoses of cancer and other life-threatening conditions.   Often, *Monell* claims that involve an alleged "widespread and persistent" practice" necessarily involve broad discovery.   *See, e.g., Reed v. Wexford Health Sources, Inc*., 2022 WL 4483949, at *6 (S.D. Ill. Sept. 27, 2022).

**Documents related to the *Lippert* Reports**

The *Lippert* reports were written and produced for a class action lawsuit in the Northern District of Illinois filed by inmates against Wexford Health Sources, Inc. and officials within the Illinois Department of Corrections and Wexford Health Sources, Inc.   *See Lippert v. Ghosh, et al.*, Case No. 10-cv-4603, Doc. 39 (N.D. Ill. Oct. 7, 2011).   The Court appointed an expert to investigate whether IDOC was "providing health care service to the offenders in its custody that meet the minimum constitutional standard of adequacy."   *Id*. at Doc. 244 (Dec. 19, 2013).   Over the course of the litigation, two reports were prepared and subsequently made available to the public.   The expert and their investigative team concluded in the first report that IDOC "has been unable to meet minimal constitutional standards with regards to the adequacy of its health care program for the population it serves."   *Id*. at Doc. 339, p. 1 (May 19, 2015).   The second report found that "clinical care was extremely poor and resulted in preventable morbidity and mortality that appeared worse than that uncovered [in the first report]." *Id*. at Doc. 767, p. 9 (Nov. 14, 2018).

In the instant case, Plaintiff served Defendant with fourteen Requests for Production[1] that are related to the *Lippert* reports.   Because the *Lippert* reports were prepared during litigation, and have subsequently been the subject of discovery disputes in multiple cases, Wexford undoubtedly has many documents that are written by or to its outside counsel regarding the reports and are clearly attorney client privileged.   As a threshold issue, however, Plaintiff fails to establish that most of her 14 requests are relevant to this case.   For example, Plaintiff asks for all documents "discussing or relating to the 2014 *Lippert* Report's descriptions of medical care provided to persons with cancer" (Doc. 86-1, #49).   Plaintiff's allegations do not implicate Omar

---

[1] Doc. 86-1, ¶¶47-60.

McCullough's treatment for cancer, but rather the delay in diagnosis of his cancer.

Another example: Plaintiff's Request for "all documents or communications discussing or relating to the 2014 Lippert Report's descriptions of medical care provided to IDOC prisoners" (Doc. 86-1, #51). This request essentially asks Wexford to produce every piece of paper any of its employees have ever generated that mentions the 2014 Lippert Report.   The 2014 Lippert report considered many more issues than just delayed cancer diagnoses and therefore this request primarily seeks irrelevant material.

At the hearing on the Motion to Compel, Plaintiff's counsel explained that whether Wexford made changes or contemplated making changes to its policies and procedures because of the *Lippert* reports is highly relevant to the issue of whether Wexford had a widespread practice of delaying offsite diagnostic services.   Because the *Lippert* reports identify examples of delayed cancer diagnoses (and diagnoses for other serious, life-threatening conditions), the undersigned agrees with this rationale.   However, Plaintiff failed to draft most of the requests at issue in any sort of meaningful way that reflects her claims against Defendants.   Nonetheless, because Plaintiff has articulated a relevant purpose to her discovery, the Court opts to compel Defendant to produce certain documents responsive to that purpose, rather than just deny Plaintiff's motion to compel outright.   *Cf. Ye v. Cliff Weissman*, Case No. 14-cv-1531, 2016 WL 950948, at *4 (N.D Ill. Mar. 7, 2016) (declining to rewrite the parties' discovery requests).   Considering that the parties have made very little (if any) discovery progress on Plaintiff's *Monell* claims, the interests of judicial economy and efficiency will not be served in this case by sending the parties back to the starting line.

**Accordingly, Defendant Wexford Health Sources, Inc. shall produce to Plaintiff all documents and/or communications that memorialize or discuss Wexford's efforts (if any)**

prior to July 1, 2019[2]  to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates.   Some examples of these deficiencies include, but are not limited to, the inmates listed in the subparagraphs of Plaintiff's Requests for Production #47 and #54.

As previously noted, the Court expects that Wexford has many, many documents from its outside attorneys that refer to the *Lippert* reports because those reports were made during litigation and have been the subject of multiple discovery disputes in subsequent cases.   Any documents or communications written or produced by Wexford's outside counsel on this specific issue for Wexford employees' eyes only would clearly fall under the attorney client privilege and the Court sees little use in defense counsel adding countless entries to a privilege log for *every* document written or produced by Wexford's counsel for Wexford that mentions this *specific* issue.   **Thus, communications between outside counsel (meaning, attorneys that work at law firms retained by Wexford) and Wexford that "memorialize or discuss Wexford's efforts (if any) prior to July 1, 2019 to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates" need not be produced or included on the privilege log.**   The Court acknowledges that Wexford may have other potentially privileged documents responsive to this Order, and those documents will need to be listed on a privilege log unless the parties agree otherwise.

Regarding Plaintiff's Requests for Production #47 and #54,   Plaintiff identifies passages in the *Lippert* reports that describe certain inmates' conditions, treatment, and belated diagnoses that followed a similar trajectory to Omar McCullough's condition, treatment, and belated

---

[2]  Omar McCullough was diagnosed with cancer in June 2019.

diagnosis (as alleged).   Plaintiff requests all documents and communications in Wexford's possession regarding those inmates.   Similar requests have been made (and objections to those requests overruled) in other recent district court cases.   *Reed*, 2022 WL 4483949 at *3-*6; *Arsberry*, 2021 WL 5232733, at *8; *Lymon v. Chamberlain*, Case No. 17-cv-50093, 2020 WL 6940985 (N.D. Ill. Nov. 24, 2020).   Because one of the more "common paths toward *Monell* liability" requires proof of "a widespread practice of custom affecting other individuals", the undersigned agrees that discovery regarding other inmates' medical treatment is appropriate. *See Howell*, 987 F.3d at 653.   This is particularly true because Plaintiff has identified individuals described within the Lippert report whose cancer diagnoses were (according to the reports) delayed in a series of events similar to the alleged events leading to Plaintiff's cancer diagnosis.

**Accordingly, Defendant shall respond to Plaintiff's Requests for Production #47 (a)-(e)and #60 (a)-(c), (e), (g)-(q), and (s).**   The Court understands that inmates' medical charts are the property of the IDOC, and this Order should not be construed as directing Wexford to produce documents it does not possess, control, or have in its custody.   Fed. R. Civ. P. 34(a)(1).

Defendant argues that Plaintiff's requests for material related to the *Lippert* reports "assume[] that the Lippert monitors' reports were beyond reproach."   Defendant further explains that Wexford and the *Lippert* Defendants had "substantial criticisms" of the findings in the Lippert reports and it urges this Court to refrain from allowing Plaintiff to "relitigate[e] Lippert."   This argument is not applicable to the issues before the Court.   To the extent that Wexford disagreed with the findings in the Lippert report and therefore did not address findings it did not believe were accurate, then Wexford can simply state as such in its discovery Responses.

Defendant contends that Plaintiff's *Lippert* requests (Requests 47-60) "target" documents protected by the Illinois Medical Studies Act.   Under the Illinois Medical Studies Act, "documents

generated specifically for the use of a peer-review committee" are privileged.   *Nielson v. SwedishAmerican Hosp.*, 2017 IL App (2d) 160743, ¶35 (internal citations and quotations omitted).   Plaintiff argues that the Court should not apply the Illinois Medical Studies Act privilege in this federal civil rights case (though she also brings a medical malpractice claim against Defendants).   *See, e.g., Green v. Meeks, et al*., Case No. 20-cv-463-SPM, 2023 WL 1447817, at *3 (S.D. Ill. Feb. 1, 2023).   Currently, the Court has no information regarding whether any of the specific documents that the undersigned is ordering Defendant to produce were "generated specifically for the use of a peer review committee," or if they even exist at all. Therefore, at this time, a finding that the Illinois Medical Studies Act privilege does/does not apply to this case would merely be an advisory opinion that the undersigned declines to give.   *Thomas v. Union Carbide Agr. Products Co*., 473 U.S. 568, 580 (1985).

Defendant contends that searching for documents related to the Lippert report will be unduly burdensome because an initial electronic search for all documents and emails that contain the term "Lippert" resulted in 20 GB of emails and 27 GB of documents.   The Court is certainly not suggesting that Defendant must electronically search and review all documents that contain the term "Lippert" or any other term.   An electronic search is not necessarily the answer to every document production question.   For example, to produce documents "**that memorialize or discuss Wexford's efforts (if any) to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates**", counsel might simply confer with the individuals at Wexford who were involved in those efforts (if any) and find out whether any documents memorialized or discussed such efforts.

In August 2022, Plaintiff proposed an ESI protocol and search terms regarding the *Lippert* requests.   Plaintiff's counsel claims that Defendant's counsel has ignored the proposed *Lippert*

ESI protocol and refused to discuss it in any sort of meet and confer.   Defendant's counsel disagrees and recalls the specific date on which the parties discussed it.   Regardless, the results of a specific ESI are not requested in any of Plaintiff's Requests for Production at issue in the instant Motion to Compel.   Even if they were, the parties have obviously not engaged in a *meaningful* meet and confer on this issue since they cannot agree as to whether they have even discussed it. Accordingly, this Order should not be construed as specifying whether a specific ESI should be conducted, as the parties have not properly raised the issue with the Court.   Fed. R. Civ. P. 37(a)(1).   This Order should serve to the guide the parties in the development of a more focused ESI protocol should they decide it is necessary.

**Documents relating to Wexford's customs and practices**

Wexford produced its Guidelines and Provider Handbook to Plaintiff in response to a request for "all documents, including but not limited to manuals, protocols, procedural guides, rules, policies, practices, guidelines, and training materials, from the period of January 2014-present….regarding the following subjects" (Doc. 86-1, #30).   Plaintiff listed 15 subjects. During the hearing on the Motion to Compel, Plaintiff's counsel clarified that Plaintiff is asking the Court to compel Defendant to produce documents that refer to its unwritten practices and customs regarding various topics.   The Court agrees with Defendant that the language used by Plaintiff in Request for Production #30 is ambiguous, such that until Plaintiff explained what she was looking for (i.e., documents related to Wexford's unwritten practices and customs regarding the certain topics), reasonable minds could have reached multiple interpretations of what should be produced in response to this request.

The Court also agrees with Defendant that most of the 15 topics listed in response to this request are either irrelevant (e.g., utilization review management) or so overly broad that

Defendant could not possibly respond in any sort of meaningful fashion (e.g., "treatment protocols" and "differential diagnosis"). Two topics are relevant and sufficiently specific to this case: including (1) diagnosis, evaluation, treatment for colon cancer; and (2) diagnosis, evaluation, and treatment for sudden or dramatic weight loss. **Accordingly, Defendant shall produce any documents that refer to Wexford's unwritten customs and practices since 1/1/2014, but before July 1, 2019, within the IDOC regarding (1) diagnosis, evaluation, treatment for colon cancer; and (2) diagnosis, evaluation, and treatment for sudden or dramatic weight loss.** This Order does not presume that Wexford necessarily *has* any unwritten customs or practices regarding these topics.

### Discovery from *Dean v. Wexford Health Sources, Inc*., Case No. 17-cv-3112 (C.D. Ill.)

Plaintiff wants the Court to order Defendant to produce every deposition, every exhibit offered during trial, all written discovery requests and responses, and all documents produced or gathered in discovery from a civil rights case filed against Wexford in the Central District of Illinois. This request does not pass the relevancy threshold. In *Dean*, the plaintiff was diagnosed with kidney cancer. Like the allegation of delayed diagnosis in this case, Plaintiff Dean alleged that his cancer diagnosis was not timely. The allegation of the delayed diagnosis appears to be the only similarity between the two cases, which is insufficient for the undersigned to order that every single document that was part of discovery in *Dean* should be produced here.

### Individual Defendants' personnel files

Plaintiff requests the individual Defendants' personnel files and credentialing records (Doc. 86-1, #17-#19). Defendant contends that these records contain highly sensitive information that could be used to harm the individual Defendants. Plaintiff's counsel responds that they are not interested in any information that is a security concern and agrees that the records may be

marked "Attorney's Eyes Only." **Accordingly, Defendant shall provide responses to Plaintiff's Requests for Production #17, #18, and #19. Any personal identification numbers (e.g., Social Security numbers), licensing numbers, contact information (including e-mail, phone numbers, and home addresses), bank or financial account information, and family information may be redacted and the records themselves may be marked "For Attorney's Eyes Only."**

### Conclusion

Defendant **SHALL** produce the following:

- **all documents and/or communications that memorialize or discuss Wexford's efforts (if any) prior to July 1, 2019 to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates. Some examples of these deficiencies include, but are not limited to, the inmates listed in the subparagraphs of Plaintiff's Requests for Production #47 and #54. Communications between outside counsel (meaning, attorneys that work at law firms retained by Wexford) and Wexford that "memorialize or discuss Wexford's efforts (if any) prior to July 1, 2019 to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates" need not be produced or included on the privilege log.**

- **documents responsive to Plaintiff's Requests for Production #47 (a)-(e)and #60 (a)-(c), (e), (g)-(q), and (s).**

- **documents that refer to Wexford's unwritten customs and practices since 1/1/2014, but before July 1, 2019, within the IDOC regarding (1) diagnosis, evaluation, treatment for colon cancer; and (2) diagnosis, evaluation, and treatment for sudden or dramatic weight loss.**

- **documents responsive to Plaintiff's Requests for Production #17, #18, and #19. Any personal identification numbers (e.g., Social Security numbers), licensing numbers, contact information (including e-mail, phone numbers, and home addresses), bank or financial account information, and family information may be redacted and the records themselves may be marked "For Attorney's Eyes Only."**

Plaintiff's Motion to Compel (Doc. 86) is **OTHERWISE DENIED.   P**laintiff's Motion to Strike is **GRANTED** and her original Reply **(Doc. 96) SHALL BE STRICKEN.**   Plaintiff's Motion for Leave to File Notice of Supplemental Authority is **GRANTED.**

**IT IS SO ORDERED.**

**DATED:   2/13/2023**

s/ *Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**