IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Keyana Wiley, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:21-cv-00599-JPG |
| | ) |
| v. | ) Hon. J. Phil Gilbert |
| | ) |
| Wexford Health Sources, Inc., *et al.*, | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO BIFURCATE *MONELL* CLAIMS

Plaintiff, by her undersigned counsel, responds herein to motion by Wexford Health Sources, Inc. and its employees to bifurcate, ECF 111.

### INTRODUCTION

Wexford's motion to bifurcate makes plain that it is pursuing a strategy to defend the *Monell* claims against it not by prevailing on the merits, but rather by delay. That strategy of delay stretches back to the beginning of this case. Plaintiff's *Monell* allegations are unchanged since the filing of her complaint. Had Wexford believed bifurcation was appropriate, it could have sought it at any time. But it did not. Instead, Wexford has fixed on a two-part approach: on the one hand, it has not offered meaningful resistance to the taking of discovery against the individual defendants in this case, allowing their depositions to go forward and for that portion of discovery to be completed without much incident. On the other, it has lodged an extraordinary series of objections against *Monell* discovery that have required protracted briefing by Plaintiff's counsel and numerous lengthy decisions by the Court, while simultaneously refusing to cooperate in even basic aspects of that discovery, such as the development of an ESI protocol.

That resistance stretches to the beginning of this case.  Though Wexford was served with the complaint in June 2021 and never sought to dismiss all the claims against it, it refused Plaintiffs requests for a Rule 37 conference on August 2, 2021, December 15, 2021, January 25, 2022.  Wexford belatedly agreed to a Rule 26(f) conference in early March 2022, and Plaintiff immediately served it with *Monell* discovery, on March 6, 2022.  But then Wexford filed a motion for protective order against this discovery—before answering it, let alone holding a Rule 37 conference with Plaintiff.  ECF 64.  Wexford then opposed entry of a HIPAA-qualified protective order covering third parties, requiring extensive motion practice by Plaintiff and yet another lengthy ruling by the Court.  ECF 73, ECF 84.  When it finally came time to confer on the merits of Plaintiff's *Monell* discovery, Wexford, save for producing a handful of anodyne written policies, refused to produce a single document in response, requiring yet more motion practice that culminated in the Court's February 13, 2023 Order.  ECF 107.

Each of these rearguard actions has failed—except that each one has run down time on the discovery clock.  The upshot is that Wexford's bifurcation motion asks the Court once again to delay its responses to *Monell* discovery requests that Plaintiff served on Wexford on March 6, 2022, more than a year ago.[1]

---

[1]   And Wexford promises more of the same.  For example, the Court's February 13, 2023 Order instructed Wexford to produce documents and communications relating to 21 anonymized patients discussed in the *Lippert* reports.  *See* ECF 109 at 7.  In order to identify those patients, Plaintiff must petition the *Lippert* court to modify the operative protective order in that case to permit Plaintiff to use "ciphers" that will identify the patients.  *See Lippert v. Ghosh*, No. 1:10-cv-04603, ECF 1625 (N.D. Ill. Mar. 1, 2023). The *Lippert* court has granted such requests in the past, *see Lippert* ECF 1534, but Wexford has opposed Plaintiff's request, and will be filing a 38-page brief opposing Plaintiff's request for the ciphers later this month.  *See Lippert v. Ghosh*, No. 1:10-cv-04603, ECF 1632 (N.D. Ill. Mar. 7, 2023).  The briefing and adjudication of this parallel litigation will generate yet more delay.

Wexford's bifurcation motion should be denied because it has no merit. As Plaintiff explains herein, Wexford argues that discovery (and trial) in this case should be bifurcated because the *Monell* claims against it are "dependent" on the claims against the individual defendants, but that is demonstrably incorrect: the one bifurcation case Wexford relies upon turns on an entirely unrelated factual scenario involving the alleged torture of a man by Chicago police, while multiple courts in this circuit have held that Wexford *in particular* has diffused responsibility among its employees such that bifurcation is almost never appropriate—especially in cases like this one, Omar McCullough's medical records make clear that he saw a parade of different Wexford staff members, none of whom was ever made responsible for his care.

But Wexford's motion should also be denied because it smacks of bad faith. After delaying the taking of *Monell* discovery for well over a year, Wexford cites that very delay as a reason to bifurcate the case and delay *Monell* discovery even further. Even more than that—in its motion, Wexford argues that bifurcation is appropriate in part because it will be impossible to comply with the Court's February 13 Order during the remaining discovery period—yet in a March 6, 2023 email to Plaintiff, Wexford explained that was delaying compliance with the Court's February 13 Order *because it had filed the bifurcation motion*. In the same vein, Wexford argues that bifurcation is appropriate because complying with the February 13 Order will impose untold and vast burdens. Yet it has refused Plaintiff's offer—made in light of the February 13 Order—to conduct a Rule 37 conference and create an ESI protocol to address precisely such burdens and ensure that they are proportional to the needs of the case.

The bifurcation motion, in other words, is yet another means of preventing *Monell* discovery in this case—not on the merits, but simply by delaying it. That contravenes the purpose of the rules. The Court should reject Wexford's motion in its entirety.

# DISCUSSION

Wexford argues that bifurcation is called for because (1) the *Monell* claims against it are "dependent" on the claims against the individual defendants, and (2) because Plaintiff's *Monell* discovery would impose considerable burdens on it with little time left in discovery. As Plaintiff explains below, these arguments are incorrect,.

**I.    Plaintiff's *Monell* claims against Wexford are not dependent on the liability of the individual defendants.**

Wexford's principal argument for bifurcation is that its liability under *Monell* is "dependent" on the liability of the individual defendants for deliberate indifference to Mr. McCullough's medical needs. *See* ECF 111 at 6-7. That argument misunderstands the law. As the Seventh Circuit explained in *Thomas v. Cook County Sherriff's Department*, 604 F.3d 293 (7th Cir. 2010), "[t]he actual rule" is that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." 604 F.3d at 305 (emphasis original). The question for a court assessing a bifurcation motion is whether municipal liability is truly dependent upon the liability of the individual liability of the municipality's employees, or whether, as the Seventh Circuit put it, "an organization might be liable [under *Monell*] even when its individual agents are not." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378 (7th Cir. 2017) (en banc)).

To perform this analysis, a court must look "to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Thomas*, 604 F.3d at 305. Wexford relies upon *Kitchen v. Burge*, No. 10-cv-4093, ECF No. 399 (N.D. Ill. Nov. 2, 2012).[2] In

---

[2] *Kitchen* was not published to Westlaw. Wexford's brief contains a Lexis citation, but Plaintiff's counsel does not have a Lexis subscription. Plaintiff therefore cites to the docketed, "ECF 399" version of the decision.

4

*Kitchen*, the plaintiff alleged that (1) several members of the Chicago Police Department had tortured him into falsely confessing to a murder he did not commit, and that, (2) this torture was part of a widespread pattern within the Chicago Police Department to which the City of Chicago's policymakers were indifferent. *Kitchen* ECF 399 at 2. The *Kitchen* court granted a defense motion to bifurcate, because any *Monell* claim against the City of Chicago required resolution of a predicate factual question: did the police officers torture Mr. Kitchen, or didn't they? As the *Kitchen* court put it, "there is no theory by which the City's alleged [*Monell*] failures caused any injury to the plaintiff in the absence of violations [*i.e.*, the alleged torture] by . . . city employees." *Id.* at 6.

*Kitchen*, indeed, the archetype of a "dependent" *Monell* claim. But it bears little resemblance to the *Monell* claim at issue in this case. In contrast to *Kitchen*, the courts in this Circuit have repeatedly recognized that where multiple different employees play a limited part in multiple omissions that ultimately result in a constitutional violation, *Monell* liability *is not* dependent on predicate "individual" questions like the one *Kitchen* presented. Consider the sequence of events alleged in the Plaintiff's operative complaint, ECF 32, which alleges that between June 2016 and June 2019, Mr. McCullough had nearly two dozen encounters with Wexford medical personnel in which he repeatedly complaint of abdominal pain. *See* ECF 32 ¶¶ 17-44. During these appointments Mr. McCullough was repeatedly passed from one Wexford employee to the next with instructions to follow up if his symptoms persisted, but with nobody taking charge—or having responsibility—to get to the bottom of the reason those symptoms existed. *Id.*[3] What the Seventh Circuit said in *Shields v. Illinois Department of Corrections*, 746

---

[3] By way of comparison, when Mr. McCullough was sent to an outside emergency room because he was having convulsions, it took medical staff there only a few hours to determine that he had cancer. *Id.* ¶¶ 45-46.

5

F.3d 782 (7th Cir. 2014) applies in this case: "[I]t appears that Wexford structured its affairs so that no one person was responsible for [the plaintiff's] care, making it impossible for him to pin responsibility on an individual." 746 F.3d at 795. Indeed, correctional medical cases like this one reflect "a common scenario: an institution 'structured its affairs so that no one person was responsible for [the inmate's] care,' and such diffused responsibility can make it very difficult to show individual responsibility for health care failures." *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) (quoting *Shields*, 746 F.3d at 795). *Cf. Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021) ("Through a bureaucracy that diffuses individual responsibility and accountability, healthcare in a prison or jail may be delivered (or not delivered) so that it is difficult or even impossible to assign the individual responsibility for deliberately indifferent failure that offers the simplest path to § 1983 liability.").

Plaintiff's *Monell* claims against Wexford thus turn on systemic theories, including failure to follow up on complaints by prisoners about their health status, failure to schedule follow-up appointments, and failure to secure appropriate continuity of care within the IDOC for complicated and urgent medical conditions like cancer. *See* ECF 32 ¶ 59. The Court of Appeals has repeatedly held that in cases of diffused responsibility—particularly in the context of medical care in correctional facilities—no individual liability need be found where an institution's policy or practice caused the injury. *See Daniel*, 833 F.3d at 734 (holding plaintiff need not "hold any one doctor responsible for his injury" if the plaintiff proves "instead that the delays and confusion that caused his injury were caused by systemic problems in the health care system for the Cook County Jail that reflect deliberate indifference to inmates' health needs as a matter of official custom, policy, or practice."); *Shields*, 746 F.3d at 799 (plaintiff may be "the victim not of any one human being's deliberate indifference but of a system of medical care that diffuse[s]

6

responsibility for his care to the point that no single individual [is] responsible for seeing that he receive[s] the care he need[s] *in a timely way*" (emphasis added)).  This is particularly so where a prisoner suffers from a "serious illnesses that required comprehensive and coordinated care." *Howell*, 987 F.3d at 655 (noting viability of systemic claim where "no single individual" is responsible for providing the care).

Plaintiff's *Monell* theory, and the facts on which it is based, bear little resemblance to *Kitchen*.  In that case, a finding *for* the officers—that they had not tortured Mr. Kitchen—would necessarily be inconsistent with the plaintiff's *Monell* theory that the City was indifferent to police torture.  *Kitchen* ECF 399 at 6.  Here, by contrast, Mr. McCullough was passed on from one employee to the next for years—with nobody responsible for figuring out what was wrong with him.  Under such diffused responsibility, a verdict that no individual employee's care rose to deliberate indifference would not be inconsistent with plaintiff's *Monell* theory that the failure to diagnose Mr. McCullough was caused by Wexford's very failure to coordinate patient medical care and her related claims.  *Cf. Thomas*, 604 F.3d at 305.  As one court put it, the "rule [in *Thomas*] means that municipalities (and government contractors like Wexford) cannot dodge liability by obscuring which individual employees were responsible for a constitutional violation, or by diffusing responsibility so widely that no individual employee could ever be held responsible."  *Crawford v. Davis-Huntley*, No. 14-cv-06211, 2018 WL 3630023, at *6 (N.D. Ill. July 31, 2018) (citing *Thomas*).  Under *Thomas*, bifurcation is inappropriate.

Wexford also exports its "dependent" *Monell* argument to the realm of causation.  Noting that the conduct of the individual defendants in this case only goes back to 2019, Wexford argues that the delay attributable to these individuals is only a maximum of six months, and that such an insignificant delay is unlikely to have changed Mr. McCullough's prognosis—and that because

7

Plaintiff's *Monell* theory depends on her claims against the individual defendants, the *Monell* discovery Plaintiff seeks is not worth the burden. ECF 111 at 9.

This simply misunderstands *Monell* theory. While Plaintiff has only sued individuals going back to 2019, she alleges that Mr. McCullough's inadequate care, at the hands of various Wexford employees, goes back to 2016. ECF 32 ¶¶ 17-27. "The fact that the individual defendants did not violate plaintiff's constitutional rights does not necessarily eliminate the possibility that [a *Monell* defendant] is liable," as "[*Thomas*] leaves room for the possibility that a non-defendant may have violated plaintiff's constitutional rights. *Montague v. Wexford Health Sources, Inc.*, No. 11-cv-5080, 2014 WL 3724953, at *3 (N.D. Ill. July 28, 2014). As *Thomas* put it, a *Monell* claim can be viable even if the plaintiff "only sued the County," or "didn't know . . . who the [correct individual defendants] were." 604 F.3d 305. Indeed the Court has already reached that conclusion in this case. In 2018 Mr. McCullough was transferred from Pinckneyville to Danville correctional centers, and while Plaintiff only sued individual providers at Danville, the Court held that she could prosecute her claim against Wexford for his inadequate care at both facilities: "transfer from Pinckneyville to Danville has no effect on Plaintiff's [*Monell*] claim against Wexford." ECF 43 at 7.

In sum: Wexford's bifurcation motion is founded on the conceit that Plaintiff's *Monell* claims against Wexford are dependent on her claims against the individual defendants. But he *Monell* claims in this case are ***not*** dependent. As such, whatever happens with the claims against the individual defendants, Plaintiff's *Monell* claims against Wexford will remain, and that discovery will still need to be taken. Bifurcation will achieve nothing except confusion and yet more delay in this case.

8

## II.     Wexford's trial bifurcation motion is premature.

Wexford has also moved to bifurcate the trial in this case. ECF 111 at 12-13. That request is patently premature. Wexford and the other defendants claim that a combined trial would cause considerable prejudice, but they do not define the contours of that trial or the evidence that will be presented there—nor could they. Expert reports that might place Plaintiff's allegations in context have not yet been served. Summary judgment motions have not been decided, such that the contours of the case headed to trial are not yet known. No party has proposed a trial plan, and the parties have not discussed one. No Rule 26(a)(3) disclosures have been made. No other motions *in limine*, which might help define the contours of an eventual trial, have been filed or decided upon. No settlements have occurred, which might affect which defendants would be present before a jury and what facts would be presented to them. It is simply impossible for Plaintiff to respond to Wexford's request. The parties and the Court will have ample time to address the structure of a trial, if and when it occurs. As of now, however, Wexford's request is entirely premature and the Court should reject it.

## III.    Wexford has failed to establish any undue burden connected with Plaintiff's *Monell* discovery.

Wexford argues that bifurcation is also appropriate because *Monell* discovery will be exceptionally burdensome and generate additional delay. ECF 111 at 10. This argument, however, is little more than an effort to undermine the Court's February 13 discovery order, and generate yet further delay in the taking of the *Monell* discovery that the Court has instructed the parties to undertake.

In its February 13 Order, the Court gave careful consideration to Wexford's burden and proportionality arguments regarding Plaintiff's *Monell* discovery, and it refashioned Plaintiff's discovery to account for them, taking the uncommon step of modifying Plaintiff's requests in a

9

manner that would render them proportional under Rule 26(b)(1). ECF 107 at 5. It would be one thing if Wexford had attempted answer this modified discovery and determined that doing so was unduly burdensome or would take too long. But Wexford, demonstrably, has done nothing of the sort.

In its bifurcation motion, Wexford tells the Court that it is "currently working to identify how to comply with and/or respond to the Court's [February 13] Order." ECF 111 at 10. But it made the opposite representation to Plaintiff's counsel—instead, Wexford made clear that it was making no efforts to comply with the portions of the order that concerned *Monell*. On March 3, Plaintiff emailed Wexford to inquire about the status of Wexford's compliance with the February 13 Order. Plaintiff's email stated:[4]

> I'm writing to check on Wexford's compliance with the Court's February 13 order. We request a Rule 37 conference next week to understand the status of your compliance and confer on what remains.
> . . . .
> I'm attaching a proposed ESI protocol with search terms. The protocol is identical to the one I sent you last August 9, except that the date range has been adjusted slightly to comply with the relevant discovery period set out in Judge Daly's order (1/1/14 - 7/1/19, see e.g., ECF 107 at 10).

Plaintiff's March 3 email otherwise reviewed each of the production instructions in the Court's February 13 Order and asked Wexford to explain the status of compliance. On March 6, Wexford's counsel responded. Counsel's email is quoted in full:

> The Court entered the Order 3 weeks ago and there was no deadline to comply, thus there is no untimely disclosure or anything to discuss for a rule 37 hearing. In the last 3 weeks, you have filed a Motion to Reconsider the Court's Order, we have responded, and we have filed a Motion to Bifurcate. Your Motion to Reconsider requests a substantial deviation as to the scope and obligation on

---

[4] Plaintiff has not attached correspondence between counsel, in compliance with the Standards for Professional Conduct Within the Seventh Federal Judicial Circuit – Lawyers' Duties to Other Counsel ¶ 30 ("Unless specifically permitted or invited by the court, we will not send copies of correspondence between counsel to the court.)

10

> Defendants. Thus, I cannot begin an assessment of the least burdensome manner, nor could I begin a review, until we have a ruling from the Court.
>
> Additionally, our Motion to Bifurcate remains pending, which expressly seeks to stay this discovery due to the burden and prejudice. This Motion also answers some of your questions below. Accordingly, we will also await a ruling from the Court on this issue to avoid unnecessarily increasing the cost of litigation. The Court has been prompt in its ruling.
>
> We will be complying with the Court's order regarding the personnel files of the individual defendants in a reasonable time frame, given the other obligations in this case and others.

Wexford's unilateral decision to delay compliance with the Court's February 13 Order cast its arguments for bifurcation in a new light. The bifurcation motion, for example, argues that "[t]here can be little dispute that compliance with the Court's [February 13] Order . . . cannot be completed within the current timeframe for discovery." ECF 111 at 2. Of course not—because as Wexford's March 6 email reveals, it has unilaterally delayed compliance with the Court's February 13 order *because it filed the bifurcation motion* (and because, it said, the February 13 Order lacked a deadline for compliance). That is simply not good faith conduct.[5]

The March 6 email undermines Wexford's other arguments as well. Wexford argues in its bifurcation motion, for example, that the February 13 Order instructed it to "produce all documents and communications . . . that memorialize Wexford's efforts to address the *Lippert* monitors reports regarding diagnosis of cancer and other life-threatening conditions," and suggests that this will impose a vast burden. ECF 111 at 10. But as the Court noted, this

---

[5] Wexford's claim of delay because of Plaintiff's motion for clarification or reconsideration (ECF 109) is also perplexing. Plaintiff's request for clarification concerned Section D of her original motion to compel, a portion so evidently insignificant that neither Wexford nor the Court even addressed it. ECF 109 at 3-4. Plaintiff's motion to for reconsideration, meanwhile, simply argued that the Court's order dispensing with the privilege log requirement was premature until the parties had identified the number of documents that might need to be reviewed for privilege. *Id.* at 7-8. That request could not affect the scope of discovery *by definition*—it argued that the privilege log matter should not be decided until the volume of gathered documents was known, through collection.

11

discovery could be exceptionally targeted: "[Wexford] counsel might simply confer with the individuals at Wexford who were involved in those efforts (if any) and find out whether any documents memorialized or discussed such efforts." ECF 107 at 8. Plaintiff's March 3 email asked Wexford if it had taken even this minimal step, and Wexford's March 6 response indicates that it has not.

Indeed Wexford has come forward with little actual evidence that the *Monell* discovery Plaintiff seeks will impose a meaningful burden at all. The bulk of the *Monell* documents in this case—the medical files of other prisoners—are in the hands of the IDOC, as this Court recognized in its February Order, *see* ECF 107 at 7. Plaintiffs have subpoenaed the IDOC, which has been producing the records of numerous patients without incident. Wexford bears no burden for producing such documents.[6] It certainly is *possible* that Plaintiff's other *Monell* requests might result in significant burdens—but in the first instance, the parties are expected to identify and address such burdens through Rule 37 conferences and ESI protocols that permit the parties to target specific custodians and search terms, and thereby limit the universe of documents that must be reviewed. Plaintiff has offered to do this twice now, in August of 2022, and now on March 3, 2023, in light of the Court's February 13 Order. Both times Wexford has refused—yet insists at the same time that *Monell* discovery should be delayed because it will impose vast burdens on it and cause lengthy delay. That is not the way discovery should be conducted.

---

[6] Wexford speculates that gathering its UM notes and internal Wexford emails regarding even 21 patients might be unduly burdensome. ECF 111 at 10. That argument is unsupported with any affidavit or other evidence, and it does not comport with experience: UM notes are organized by prisoner, and Wexford typically produces them without objection or much evident effort. Communications about any individual patient, meanwhile, are usually few in number and easy to locate simply by searching for that patient's name or IDOC number. In most litigation Wexford produces such UM notes and emails about each patient as a matter of routine.

Finally, Wexford complains that Plaintiff has served additional discovery in light of the Court's February 13 Order.  *See* ECF 111 at 10-11.  Wexford has attached Plaintiff's new discovery requests to its bifurcation motion, *see* ECF 111-1, and Plaintiff encourages the Court to read them.  There are six requests.  Each one adapts one of Plaintiff's original *Monell* discovery requests to fit the parameters of the Court's February 13 Order—indeed, each request cites the relevant portion in the Court's order.  Plaintiff has used the Court's February 13 Order as a guide, and has re-fashioned a handful of existing requests to conform to the scope of discovery that the Court determined was appropriate in this case.  That is what parties *should* do in taking discovery.  The requests, moreover, are interstitial—they fill out the scope of discovery set out in the Court's February 13 Order, but do not alter it significantly.  Wexford has nothing to complain about.

## CONCLUSION

The stay and bifurcation Wexford proposes would serve no purpose other than to delay resolution of this case.  The Court should deny Wexford's motion.


Dated: March 14, 2023                                      Respectfully submitted,


                                                           /s/ *Stephen H. Weil*
                                                           Stephen H. Weil
                                                           Counsel for Plaintiffs

Jon Loevy
Stephen H. Weil
Maria Makar
LOEVY & LOEVY
311 North Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900
weil@loevy.com

13