**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Keyana Wiley, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:21-cv-00599-JPG |
| | ) | |
| v. | ) | Judge J. Phil Gilbert |
| | ) | |
| Wexford Health Sources, Inc., *et al.*, | ) | Magistrate Judge Reona J. Daly |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

Plaintiff, through her undersigned counsel, respectfully moves the Court to compel the Illinois Department of Corrections ("IDOC") to produce documents responsive to Plaintiff's subpoena, as described herein. Plaintiff's subpoena is attached hereto as **Exhibit 1**. Pursuant to Federal Rule of Civil Procedure 37, Plaintiff certifies that she has conferred with the IDOC and attempted to reach resolution of this discovery dispute before the filing of this motion. Those efforts are described herein. Counsel have been able to resolve certain discovery disputes that have arisen regarding the IDOC's response to the subpoena, but they have not, despite their best efforts, been able to resolve others. In this motion, Plaintiff presents those unresolved matters to this Court.

**INTRODUCTION**

The IDOC objects to Plaintiff's subpoena on grounds that it is unduly burdensome, because the IDOC's rudimentary search technology has identified tens of thousands of potentially responsive documents—a universe too large and too unduly burdensome for IDOC counsel to manually review. This problem, however, is one of the IDOC's own making. The IDOC has refused to employ decades-old, industry-standard search methods, such as proximity operator searches and metadata searches of sender/recipient and subject-matter information, that

litigants across the country use every day and to address the "problem" that the IDOC is facing. In other words, the IDOC claims that responding to this subpoena presents an undue burden, while it refuses to use readily available methods to alleviate that same burden and respond to Plaintiff's discovery.

The IDOC has failed to use appropriate search methods because it refuses to acquire a document review program that allow litigants to conduct proximity searches and to filter collected documents using metadata. These programs are not a cutting-edge litigation technology, by any measure: document review programs that perform basic filtering have been available for decades, and today they are notably inexpensive. To cite one example, the Goldfynch document review program costs $35 per month to operate. Plaintiff's counsel has pointed this out to counsel for the IDOC. IDOC counsel does not disagree that such a program would resolve their inability to perform document searches. Instead, IDOC counsel takes the position that because the IDOC is a governmental agency, it should not be made to acquire such a program.

The IDOC cannot be heard to take this position. Whatever else the IDOC may be, it is not exempt from the Federal Rules of Civil Procedure. It is the recipient of a subpoena issued under the Court's subpoena power. As such, its attorneys must abide by its obligations under Rule 45 and the related rules of discovery. And as one court-appointed eDiscovery special master recently observed, an attorney who refuses to employ keyword search technology capable of operations like proximity searches does not satisfy the "reasonable inquiry" standard imposed by Rule 26(g). *See Deal Genius, LLC v. O2COOL, LLC*, No. 21-cv-2046, 2022 WL 17418933, at *2 (N.D. Ill. Oct. 24, 2022). Yet that is exactly what the IDOC insists on doing here: after collecting what is likely a widely overbroad set of documents, the IDOC has refused to employ

established litigation tools that will allow it to filter those documents for an eventual manual review—and *then*, based on that same overbreadth, it has objected that responding to the subpoena on the grounds that it is unduly burdensome. The Court cannot permit that outcome. The IDOC must be required to respond to Plaintiff's subpoena.

**BACKGROUND**

This motion arises from Plaintiff's efforts to gather evidence to support their allegations that Omar McCullough died because Wexford Health Sources, Inc., the IDOC's medical vendor, has widespread practices of failing to diagnose cancer and similar conditions among its patients. Mr. McCullough died of cancer a few months after being released from the IDOC, where he was under Wexford's medical care. Plaintiff alleges, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that this happened because Wexford allows widespread practices by which its employees provide grossly inadequate medical care, including inadequate diagnosis of cancer and similar conditions.

Before proceeding to the substance of the discovery dispute, Plaintiff offers a brief note to place her prosecution of this discovery in context: the prosecution of *Monell* discovery in this case closely parallels the discovery being prosecuted in *Reed v. Wexford Health Sources, Inc.*, No. 3:20-cv-01139-SPM (S.D. Ill.), which is pending before Judge McGlynn. The facts in the two cases are closely similar: both involve IDOC prisoners whose cancer was not diagnosed (and in *Reed*, was additionally not treated) until it became too late to save the patient. The plaintiffs in this case and in *Reed* are represented by the same counsel, and in both cases the plaintiffs served identical *Monell* discovery requests, which are at issue in this motion. *Compare* Ex. 1 with *Reed* ECF 92-1 (the *Reed* subpoena). The plaintiffs in *Reed* began the Rule 37 enforcement discussions described herein in September 2022, which culminated in a motion to

compel, which the *Reed* plaintiffs filed on December 23, 2022. *See Reed* ECF 92. That motion is still being briefed before Judge McGlynn, with the IDOC's responsive brief due on March 23, 2023, and a Zoom hearing scheduled for April 12, 2023. *See Reed* ECF 117.

In this case, the Court granted Plaintiff's motion for a HIPAA-qualified protective order on October 17, 2022, *see* ECF 84, and entered the HIPAA order on the same day. ECF 85. With the HIPAA order in place, Plaintiff promptly prepared a subpoena to the IDOC, and provided notice of the serving of the subpoena to defendants pursuant to Rule 45(a)(4) on October 26. Due to an internal oversight, the subpoena was not served on at that time. When Plaintiff counsel realized the error, Plaintiff promptly served the subpoena on January 31, 2023. IDOC counsel responded and, given that the subpoenas in this case and in *Reed* are the same, counsel for IDOC and Plaintiff agreed to adopt their respective positions in *Reed*. The remainder of the present motion, therefore, is substantively identical to the motion to compel filed in *Reed*. *See Reed* ECF 92.

* * *

In relevant part, the subpoena at issue in this motion asks the IDOC to produce:

- Documents and communications regarding certain Wexford patients who were identified as receiving inadequate medical care by the court-appointed experts in the *Lippert v. Godniez* case.[1] *See* **Ex. 1** ¶¶ 23, 30.

- Documents and other communications relating to the *Lippert* reports and related matters. *See id.* ¶¶ 14-22, 24-29, 31-36.

In September 2022, the parties began discussing the IDOC's response to the subpoena. IDOC counsel were able to gather a limited set of documents by consulting custodians. For the

[1] The Court has examined the *Lippert* reports in the context of this case previously. *See Wiley* ECF 107 at 4-9.

remainder, Plaintiff proposed that the IDOC gather documents by identifying likely custodians and using search terms.

The IDOC's ESI is generally stored on servers that are operated by a different state agency, the Illinois Department of Information Technology ("DoIT"). As Plaintiff counsel understands it, IDOC/DoIT uses the Microsoft Outlook enterprise email program, which is hosted on Microsoft 365. Notably, "Microsoft 365 has technological limitations that may not allow a responding party to generate reliable search results—as would typically be possible with an electronic discovery platform that has a fully indexed database and an advanced search engine—and thus satisfy the Rule 26(g) reasonable inquiry standard." *Deal Genius*, 2022 WL 17418933, at *2. Among other things, "Microsoft 365 does not accommodate complex Boolean searches, including certain wildcard operators, proximity operators, or connector terms, nor cannot it handle 'fuzzy logic' searches." *Id.* These limitations mean that DoIT's document gathering capabilities have several, key limitations.

With respect to DoIT's document-gathering capabilities, IDOC counsel have told Plaintiff counsel the following:

***First***, while DoIT can conduct simple Boolean searches in documents (e.g., searches **x** AND **y**, **x** OR **y**, or **x** NOT **y**), the searches cannot be refined with proximity operators, such as **x** /p **y** (**x** in the same paragraph as **y**), or **x** /5 **y** (**x** within 5 words of **y**). As a result, DoIT/IDOC's document collection tool requires the use of broad search terms, such as **Lippert** AND **delay** or **cancer** AND **delay**.

***Second***, DoIT's document collection tool will gather documents from certain custodians, but the IDOC cannot filter those results by custodian thereafter. For example, documents cannot

be filtered by sender or recipient, nor can "broadcast" emails (e.g., the same email sent to numerous different recipients) be filtered from a cross-custodian search.

***Third***, DoIT's document collection technology cannot distinguish metadata, such as distinguishing limiting searches that contain words in the subject-matter, that contain attachments, or that were only sent or received by certain persons.

After learning of these limitations, Plaintiff counsel proposed that IDOC counsel use a document review program for more precise filtering. IDOC counsel demurred, since the IDOC had not acquired such a program. On October 27 the parties agreed that before bringing their dispute to the Court, DoIT should perform two sets of "searches" for documents. *See* **Ex. 2**. These were (1) a cross-custodian search for the patients identified in the *Lippert* reports and requested in the subpoena, and (2) a search of approximately 13 custodians with a broad seat of Boolean "AND" search terms. *See id.* (correspondence setting out search).[2]

A cross-custodian search for the name and IDOC number of a single *Lippert* patient resulted in tens of thousands of hits. *See* Doc. 80 ¶ 8 (describing hit counts). Meanwhile, the Boolean "AND" searches of the 13 custodians produced more than 110,000 hits. *See* **Ex. 3**.

Confronted with these results, both parties expressed willingness to refine the searches yielding high hit counts. But because IDOC does not utilize document review software, it was impossible to narrow the searches without depriving Plaintiff of relevant discovery. First, the process to determine which "AND" combinations resulted in high hit counts promised to be

---

[2] The parties have remained in disagreement regarding the search through the emails of another custodian, Kelly Presley, whom the IDOC had identified earlier as a likely custodian but whom the IDOC later objected to searching because she was likely to have numerous privileged communications. *See* **Ex. 3**. Plaintiff's counsel proposed that the IDOC run the Presley searches excluding certain senders and recipients, whose emails with Presley were more likely to be privileged, but the IDOC is unable to limit custodian searches by sender or recipient.

extremely burdensome, with DoIT running potentially hundreds of separate "AND" searches to isolate high hit-count words. To illustrate, IDOC provided a hit count of 18,089 for the search:

> cancer AND (delay!; month!; week!; diagnos!; differen!; dd; "red flag"; review; mortality; morbidity; quality; cqi; problem!; deficien!; treat!; timel!; risk; weigh!; emergency; er; adverse; corrective; cap; peer; xray; "x-ray"; sentinel)

*See.* Ex. 3. Since IDOC cannot isolate the hit counts to show which word combinations return high hits, the parties cannot reasonably pinpoint the cause and determine how to narrow the searches, except by conducting dozens upon dozens of individual searches for each "AND" word combination. Nor can IDOC divide the hit counts by custodian, which might also pinpoint the cause of the numerous hits.

Second, even if the parties could identify the cause of the high hit counts, IDOC does not have the software to narrow its searches using tools like proximity operators, and instead must rely on simply eliminating search terms. To illustrate, even if IDOC could determine that "cancer AND delay" was responsible for, *e.g.*, 15,000 of 18,089 documents in the search described above, IDOC cannot narrow the search to "cancer" within the same paragraph as "delay," or within the same sentence, or within ten words. Using DoIT's document gathering technology, as the IDOC has explained it to Plaintiff counsel, only a search for "cancer AND delay" is possible. In sum, the parties cannot determine which word combinations may need to be narrowed and even if they could, they cannot narrow the searches in a useful manner.

After reviewing the results, Plaintiff's counsel again proposed that IDOC counsel employ a document review program that would allow for more targeted searches (including searches using proximity operators, searches isolating certain senders and recipients, etc.). The IDOC refused and proposed instead to review a sample of the document hits (*e.g.*, to review 500 of the 110,000 documents returned from Boolean hits) to determine the rate of responsiveness. Plaintiff's counsel objected that this method would be uninformative: because of DoIT's

limitations, the documents had been collected using only the broad Boolean "AND" searches, making it almost certain that the resulting population of documents was overbroad—i.e., it would be likely to contain a low percentage of responsive documents, and a high percentage of non-responsive documents. In turn, any random sample of such an overbroad population would be guaranteed to indicate that the Boolean search had indeed collected an overbroad set of documents with a low incidence of relevant documents.

A sample of an overbroad search, in short, would inevitably indicate a population of documents that was overbroad. Once again, Plaintiff counsel reiterated that the solution was not to sample the admittedly overbroad population of documents, but to use filtering methodologies that would narrow the population of documents into a narrower, more targeted set of documents, more likely to be responsive. IDOC counsel again refused to use such methods because doing so would require the utilization of a document review program. On December 12, the parties determined that they were at issue; and the parties confirmed they were at issue with respect to the *Wiley* litigation on March 1, 2023. This motion follows.

## ARGUMENT

### I. Under Rule 45, a responding party like IDOC is obligated to calibrate search terms and take other similar steps.

In a seminal opinion issued in 2009, the district court for the Southern District of New York issued "a wake-up call to the Bar . . . about the need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms or 'keywords' to be used to produce emails or other [ESI]." *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 134 (S.D.N.Y. 2009). "[A]t a minimum," *Wm. A. Gross* admonished, counsel "must carefully craft the appropriate keywords . . . to assure accuracy in retrieval and elimination of 'false positives.'" *Id.* at 136.

In the decade-plus since it was issued, leading authorities and courts across the country have cited *Wm. A. Gross* for the rule that keyword searches (and similar filtering ESI techniques) must be carefully calibrated to comply with parties' discovery obligations under the Federal Rules. *See, e.g.*, The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery, 15 Sedona Conf. J. 217, 234 (2014) (quoting *Wm. A. Gross* at length); *City of Rockford v. Mallinckrodt ARD Inc.,* 326 F.R.D. 489, 493 (N.D. Ill. 2018) (citing *Wm. A. Gross* for the proposition that "it is critical that key word searches are carefully created"); *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 926 (N.D. Ill. 2021) (citing *Wm. A. Gross* to observe that "[b]y 2009, courts were issuing wake up calls to counsel about electronic discovery."). It is well established, in short, that parties have an obligation to calibrate search terms and take similar steps to focus and narrow what would otherwise create overwhelming discovery burdens.

Admonitions to perform such calibration are often directed to discovering parties, who frequently advocate for too-broad search terms that can sweep in high proportions of non-responsive documents and create undue burdens for the discovery recipient to sort through the document "hits" and identify those documents that are responsive. Here, the opposite is true—the admonition applies to the IDOC, the discovery target. By refusing to use a document review program, the IDOC insists on performing too-broad searches—and then objects that the resulting collection is overly broad and too large to review for documents responsive to the subpoena.

Indeed, given that the IDOC's only existing tool for narrowing searches is repeated deployments of the "AND" Boolean tool, the only potential solution that the IDOC is able to propose is simply to insist that Plaintiff abandon certain words. But that creates the opposite problem: under-inclusiveness or failing to capture responsive documents with inadequate search

terms. *Cf. Makowski v. SmithAmundsen LLC*, No. 08-C-6912, 2012 WL 1634832, at *1 (N.D. Ill. May 9, 2012) ("Chief among [the limitations of search terms] is that such a search necessarily results in false positives (irrelevant documents flagged because they contain a search term) and false negatives (relevant documents not flagged since they do not contain a search term)."). The IDOC's sampling proposal would ultimately deprive Plaintiff of responsive documents, not just the unresponsive documents, that appear in the searches.

The Court cannot permit Plaintiff's discovery to be frustrated in this way. Courts have long held a responding party cannot claim that responding to discovery is unduly burdensome when the responding party created the burden in question. *See Miller UK Ltd. v. Caterpillar, Inc.*, No. 10 C 3770, 2013 WL 474380, at *6 (N.D. Ill. Feb. 7, 2013) ("To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules." (citation omitted)); *Alliance to End Repression v. Rochford*, 75 F.R.D. 441, 447 (N.D. Ill. 1977) (finding defendants' burden objection "totally without merit" where the objection primarily rested on the difficulty of production because the materials were "not stored in an organized filing system"); *see also Bollinger*, WL 13529562, at *4 ("[E]ven if the government ordinarily maintains its records in a haphazard fashion . . . the government's production did not comply with Rule 34."). That rule applies with equal force to parties who voluntarily create discovery burdens by refusing to employ basic search technology. As the court-appointed special master noted in *Deal Genius*:

> Microsoft 365 has technological limitations that may not allow a responding party to generate reliable search results—as would typically be possible with an electronic discovery platform that has a fully indexed database and an advanced search engine—and thus satisfy the Rule 26(g) reasonable inquiry standard.

2022 WL 17418933, at *2. These include, specifically, a failure or inability to perform "complex Boolean searches, including certain wildcard operators, proximity operators, or connector terms, [and] 'fuzzy logic' searches." *Id.*

A refusal to acquire widely accepted technology that can perform such search functions is rare in modern litigation. But where litigants do take such positions, the courts have not hesitated to order them to use technological measures to meet their discovery obligations. *See Seven Seas Cruises S. De R.L. v. V. Ships Leisure SAM*, No. 09-23411-CIV, 2011 WL 772855, at *7 (S.D. Fla. Feb. 19, 2011) (ordering responding party to procure an ESI vendor at its own expense). Courts also require parties objecting to discovery to isolate and narrow the offending search terms. *See L–3 Commc'ns Corp. v. Sparton Corp.*, 313 F.R.D. 661, 670 (M.D. Fla. 2015) ("[The objecting party] must offer specific suggestions for narrowing the offending search terms in a way that addresses their concerns while still retrieving as many of the relevant documents targeted by the disputed search terms as possible." (citing 10 Sedona Conf. J. 339, 354 (2009), and Fed. R. Civ. P. 37(a)(1))). The problem here, of course, is that the IDOC cannot do this without document review software, which it refuses to acquire.

Acquiring such software this case would not be significantly burdensome. The software Goldfynch, for example, offers highly cost-efficient search and review capabilities for as low as $35 per month. *See* GOLDFYNCH, https://goldfynch.com/pricing (last visited Dec. 23, 2022). Some other document review software, or an outside e-Discovery vendor, would also allow IDOC counsel to identify specified hit counts and narrow the searches. Catherine Palo, *Computer Technology in Civil Litigation*, 71 Am. Jur. Trials 111 (2022) ("Most of the large, outside [automated litigation support system] vendors employ programs utilizing a hierarchical search mode. The hierarchical search mode permits the user to learn very quickly how many hits have

been generated by the search . . . . If the number of hits reported seems unmanageable, the operator can modify the search request to lower the number of responses to a reasonable number that can be easily examined.").

IDOC has provided no justification for their proposed method other than a bare, reflexive assertion—based on unspecified hit counts—that the searches may be overbroad. Courts have repeatedly rejected such unsupported objections. *See Human Rights Def. Ctr. v. Jeffreys*, No. 18-cv-1136, 2022 WL 4386666, at *3 (N.D. Ill. Sept. 22, 2022); *see also United States v. Bollinger Shipyards, Inc*., No. CV 12-920, 2015 WL 13529562, at *5 (E.D. La. Apr. 13, 2015) (finding no merit to government's argument that a request "would require the government to expend a significant amount of time and money to sift through the its large databases and identify responsive documents").

The IDOC's refusal to use standard methods to conduct discovery will deprive Plaintiff of discovery needed to prove their theory of the case. If left unchecked, the IDOC's refusal will delay this litigation and excuse the IDOC from producing documents showing whether Wexford—the company the IDOC contracts with to provide its prisoners medical care—is abiding by the Constitution. This Court should grant Plaintiff's motion.

## II. The Court should order IDOC to search and narrow Kelly Presley's documents.

The IDOC has also objected to searching the documents of Kelly Presley, IDOC's Chief Public Safety Legal Counsel during the relevant period. Plaintiff's understanding is that Ms. Presley had multiple roles, and was involved in both the IDOC's legal *and* its policy response to the information about the IDOC's provision of healthcare that came to light from the *Lippert* litigation. After initially identifying Ms. Presley as a key custodian likely to have responsive documents, the IDOC objected to treating her as a custodian because the legal aspects of her job would make the creation of a privilege log unduly burdensome.

Plaintiff proposed that this objection could be addressed by separating Ms. Presley's emails by, for example, excluding emails to and from those persons with whom Ms. Presley typically engaged in privileged communications, while searching communications with other senders or recipients with whom she did not. The IDOC refused to take this course because, once again, it lacked a document review program that would allow it to segregate emails by sender and recipient.

That position, like the IDOC's position on keyword searches, is impermissible. The fact that Ms. Presley is an attorney does not mean that all her communications are privileged, and indeed the fact that she played other roles means many of her communications are likely *not* to be privileged. *See BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 176, 180-81 (N.D. Ill. 2018) (explaining the contours of the attorney-client privilege). And the existence of some privileged documents "does not provide a basis for denying the motion to compel the production of non-privileged responsive documents." *S.E.C. v. Kovzan*, No. 11-2017-JWL, 2012 WL 4819011, at *6 (D. Kan. Oct 10, 2012). Plaintiff has proposed a reasonable method for the IDOC to isolate those communications that are likely to be privileged, while the IDOC reviews those emails not likely to be privileged. Once again, the IDOC has objected to this common-sense proposal because it has refused to acquire off-the-shelf document review programs that would allow it to isolate emails by sender and recipient. The Court should not allow the IDOC to frustrate legitimate discovery in this manner. The Court should order the IDOC to search Ms. Presley's communications and produce a privilege log.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her Motion to Compel.

Dated: March 15, 2023

Respectfully submitted,

*/s/ Stephen H. Weil*
Stephen H. Weil
Counsel for Plaintiff

Jon Loevy
Steve Weil
Maria Makar
LOEVY & LOEVY
311 North Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900
weil@loevy.com

**CERTIFICATE OF SERVICE**

I, Stephen H. Weil, an attorney, hereby certify that on March 15, 2023, the foregoing was filed on the Court's CM/ECF system, which will automatically transmit copies to all counsel of record.

I further certify that the foregoing was served on the following counsel, who represented the Illinois the Illinois Department of Corrections with respect to the subpoena at issue in this motion.

Bronwyn Sears - Bronwyn.Sears@illinois.gov

*/s/ Stephen H. Weil*
Stephen H. Weil
One of Plaintiff's attorneys