IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEYANA WILEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-cv-599-JPG-RJD |
| ) | |
| JUSTIN YOUNG, M.D., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Plaintiff's Motion to Reconsider and for Clarification (Doc. 109) of the undersigned's Order (Doc. 107) on Plaintiff's Motion to Compel (Doc. 86). Defendant responded (Doc. 112) and Plaintiff replied (Doc. 103).

Plaintiff alleges that Defendants were deliberately indifferent to Omar McCullough's gastrointestinal symptoms and complaints at Pinckneyville Correctional Center, where he was incarcerated from 2016 and 2019. Mr. McCullough was diagnosed with intestinal cancer in 2019. Defendants are individual practitioners employed by Wexford Health Sources, Inc. ("Wexford"), a company that contracts with the Illinois Department of Corrections to provide medical care to inmates. Wexford is also a defendant in this case, and was a defendant in a class action case in the Northern District of Illinois, *Lippert v. Ghosh, et al*. The *Lippert* Court appointed an expert to investigate whether IDOC was "providing health care service to the offenders in its custody that meet the minimum constitutional standard of adequacy." *Lippert v. Ghosh, et al*., Case No. 10-cv-4603, Doc. 244 (N.D. Ill. Dec. 19, 2013). Over the course of the litigation, two reports were

prepared and subsequently made available to the public.

In this case, Plaintiff's Motion to Compel asked the Court to order Defendants to respond to 14 Requests for Production regarding the *Lippert* reports. Plaintiff's requests were so overly broad that even to the extent *some* relevant information was responsive to the requests, it would be impossible for Wexford to respond in any meaningful fashion. At the hearing on Plaintiff's Motion to Compel, counsel for Wexford explained that creating a privilege log in response to these requests would be an impossible task because the *Lippert* reports were made during litigation and have been the subject of multiple discovery and evidentiary disputes in subsequent cases over the last nine years. Wexford has many, many documents authored by its attorneys regarding the issues discussed in the *Lippert* reports. Regarding communications between Wexford and its attorneys, Plaintiff's counsel said that he was "not interested in that." Plaintiff's counsel also informed the Court that the parties had not engaged in meaningful meet and confer sessions regarding the issues and objections to Plaintiff's *Lippert* report requests.

Instead of just denying Plaintiff's Motion to Compel (having noted that the parties had made little, if any, progress on discovery in Plaintiff's claim against Wexford), the undersigned narrowed Plaintiff's requests, ordering Wexford to produce "all documents and/or communications that memorialize or discuss Wexford's efforts (if any) prior to July 1, 2019 to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates." Doc. 107, p. 5-6. However, to expedite the production and review of these documents, the undersigned ordered that Wexford did not have to create entries on its privilege log for clearly privileged communications, e.g., "communications between outside counsel (meaning, attorneys that work at law firms retained by Wexford) and Wexford that 'memorialize or discuss Wexford's efforts (if any) prior to July 1, 2019 to address

the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates."

Three days after the Court entered the Order on the Motion to Compel, Plaintiff filed the instant motion, requesting the Court "reconsider the application of its order that Wexford need not create a privilege log for any responsive communications or other in which Wexford's outside counsel is copied." This non-sensical request grossly exaggerates the Court's Order.[1] An otherwise non-privileged e-mail does not become privileged simply because an attorney is "copied" on the e-mail. *See Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 213, 316 (N.D. Ill. 2010). Wexford must *produce* that document, not withhold it as privileged, and therefore the question of it being placed on a privilege log is irrelevant.

Plaintiff then argues that because the undersigned narrowed Plaintiff's requests for documents related to the *Lippert* reports, then *perhaps* it is no longer unduly burdensome for defense counsel to log communications between Wexford and its outside counsel regarding other litigation that are responsive to the undersigned's Order because it is *possible* that Wexford does not possess many records responsive to the undersigned's Order. The Court acknowledges that it is *possible* Wexford has few documents responsive to undersigned's Order. It is also *possible* other cases involving "cancer and other life-threatening conditions" have been filed against Wexford in which documentation discussing *Lippert* was requested, produced, and/or the subject of motion practice, and therefore it is *possible* there are hundreds of clearly privileged e-mails between Wexford and its outside attorneys discussing, e.g., discovery requests, the subjects of

---

[1] The undersigned's ruling that "communications between outside counsel (meaning attorneys that work at law firms retained by Wexford) and Wexford…..need not be produced or included on the privilege log" **only pertains** to responsive communications that fall under the category of "memorializ[ing] or discuss[ing] Wexford's efforts (if any) prior to July 1, 2019 that address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates." Doc. 107, p. 11.

corporate representative depositions, or dispositive motion arguments. The Court recalls Plaintiff's counsel saying he was "not interested in that."

When parties do not engage in meaningful meet and confer sessions prior to filing motions to compel, the Court deals in endless possibilities and must use its best judgment in determining what to compel a party to produce. Requiring defense counsel in this case to log hundreds of e-mails from other cases that are clearly attorney client privileged (written by Wexford to its outside counsel OR written by outside counsel to Wexford) regarding, *inter alia*, discovery responses would, at this point, only cause further delay. Perhaps there are not hundreds of e-mails, and/or perhaps Wexford did not make "efforts prior to July 1, 2019 to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates." Even if Wexford did make such efforts, perhaps this case is the first time those efforts have been deemed relevant and discoverable. Regardless, when Plaintiff filed her Motion to Reconsider, she had no more information to present to the Court than she had when she filed her Motion to Compel, which was very little. Until defense counsel starts searching for and producing *Lippert* report documents (or providing responses that say there are none), neither the parties nor the Court can make decisions about additional written discovery needed from Wexford (if any) to advance this case. Accordingly, Plaintiff's Motion to Reconsider is DENIED.

Plaintiff also asks the Court to clarify one aspect of the Order on the Motion to Compel. In the Motion to Compel, Plaintiff claimed that Wexford refused to produce any materials created prior to June 16, 2017 (the statute of limitations for Plaintiff's state law claims). That objection was not clearly made in Defendant's objections to the Requests for Production, though Wexford did repeatedly state within its objections that Plaintiff's requests should be "sufficiently limited to the scope or time of the allegations in the Complaint." In Wexford's response to Plaintiff's

Motion to Compel, Wexford did not argue that discovery should be limited to documents produced after June 16, 2017.  The Court ordered Wexford to produce several categories of materials, some of which by their very definition include materials dated prior to June 16, 2017 (e.g., "documents that refer to Wexford's unwritten customs and practices since January 1, 2014, but before July 1, 2019). Doc. 107, p. 11.  Plaintiff now asks the Court to clarify whether it sustained Defendant's objection to documents predating June 16, 2017.  In its Response to Plaintiff's Motion, Wexford explains that the Court's Order clearly did not limit its discovery production to documents postdating June 16, 2017.   Nevertheless, to the extent necessary to clarify, the Court's Order on Plaintiff's Motion to Compel (Doc. 107) should not be read in such a way to limit Wexford's discovery production to documents postdating June 16, 2017.

**IT IS SO ORDERED.**

**DATED:  4/17/2023**

*s/ Reona J. Daly*
**Hon. Reona J. Daly
United States Magistrate Judge**
