IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEYANA WILEY, Administrator of the Estate of Omar McCullough, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| JUSTIN YOUNG, COURTNEY WALKER, ANGELICA WACHTOR, JUSTIN DUPREY, WEXFORD HEALTH SOURCES, INC., CYNTHIA ROSS, | ) ) ) ) ) ) ) Case No. 3:21-cv-599-DWD |
| Defendants, | ) ) |
| vs. | ) ) |
| ILLINOIS DEPARTMENT OF CORRECTIONS | ) ) ) ) |
| Interested Party. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Before the Court is Defendants' Motion to Bifurcate Plaintiff's *Monell* Claim ("Motion to Bifurcate") (Doc. 111). Also before the Court is Plaintiff's Motion to Compel Document Production ("Motion to Compel") (Doc. 117), which is directed at the Interested Party, the Illinois Department of Corrections ("IDOC"). The Motions are fully briefed, and the Court has received the Joint Written Discovery Report ("JWDR") submitted in relation to the Motions. (Docs. 114, 118, 129, 130, 135). As explained below, the Motion to Bifurcate is **DENIED** and the Motion to Compel is **DENIED as moot**.

Plaintiff and the IDOC's cost-shifting issue, which was raised for the first time in the IDOC's Response to the Motion to Compel, is **DEFERRED** based upon the JWDR.

## I. Background

Omar McCullough was an inmate at the Pinckneyville or Danville Correctional Centers, within the IDOC, between 2016 and 2019. (Doc. 32, ¶¶ 16, 28). While serving his sentence, McCullough allegedly reported gastrointestinal symptoms to the Individual Defendants, who are medical professionals employed by Defendant Wexford. (Doc. 32, ¶¶ 16-47). Defendant Wexford contracts with the IDOC to provide inmate medical care.

In mid-2019, McCullough was diagnosed with intestinal cancer. (Doc. 32, ¶¶ 45-46). Around that same time, McCullough was released from IDOC custody. (Doc. 32, ¶ 47). McCullough subsequently died of cancer in March 2020. (Doc. 32, ¶ 49).

Plaintiff, as Administrator of McCullough's Estate, filed an Amended Complaint (Doc. 32) on December 3, 2021. Plaintiff alleged, *inter alia*, the following: (1) a denial of medical care by all Defendants under the Eighth Amendment and 42 U.S.C. § 1983 (Count I); (2) a failure to intervene by all Defendants under the Eighth Amendment and § 1983 (Count II); (3) a wrongful death action against all Defendants under 740 ILCS 180/1 (Count III); and (4) a survival action against all Defendants under 755 ILCS 5/27-6 (Count IV).[1] (Doc. 32, generally). For purposes of *Monell* liability, Plaintiff theorizes that Defendant Wexford has a widespread and persistent practice of failing to follow-up on

---

[1] Defendant Wexford was subsequently dismissed from Count II. (Doc. 43, pgs. 14-15). Likewise, Defendants Ross, Duprey, and Wachtor were dismissed from Counts III and IV. (Doc. 43, pg. 15). As for Defendant Wexford, Counts III and IV were limited to events beginning on June 16, 2017. (Doc. 43, pg. 15). Count V, alleging *respondeat superior* liability against Defendant Wexford, was dismissed. (Doc. 43, pg. 15).

inmates' symptoms, determining the cause of those symptoms, and making timely diagnoses of cancer or other life-threatening conditions. (Docs. 32, generally; 107, pg. 3).

Defendants filed the Motion to Bifurcate on February 27, 2023. Plaintiffs filed the Motion to Compel on March 15, 2023. District Judge J. Phil Gilbert recused from the case on April 13, 2023, and the matter was transferred to the undersigned that same day. (Doc. 125). At the time, discovery matters were pending before Magistrate Judge Reona J. Daly. (Docs. 110 & 127). Those matters were resolved on April 17, 2023.[2] (Docs. 117 & 118). As of May 3, 2023, the Motions were ripe for a ruling by the Court. However, the Court found it necessary for the parties to meet, confer, and report on discovery disputes, related to the pending Motions, under its Case Management Procedures. The Court, in part, ruled:

> [T]he filings related to these Motions indicate that there has been movement in the parties' respective positions as well as updated circumstances in the case. Also, the Court notes that issues of substantially the same nature, between the same attorneys, are pending before another member of this Court. *Reed v. Wexford Health Sources, Inc., et al.*, No. 20-cv-1139-SPM (S.D. Ill.). Accordingly, the Court finds it would be prudent for the parties to meet, confer, and report on all current discovery disputes, related to the postures of the pending motions, under its Case Management Procedures. On or before **July 14, 2023**, the parties are **DIRECTED** to submit a Joint Written Discovery Report to the Court…. The report shall be signed by all parties and detail the date, duration, and medium used for the meet and confer process. The report shall further identify and describe: (1) all issues discussed by the parties; (2) the issues resolved by the parties; (3) the issues not resolved by or still in dispute between the parties, and (4) the effect of this process on the pending Motions. For any issues still in dispute, the parties shall specify in a clear and concise fashion the exact basis or bases for the opponent's objection and the proponent's response thereto. Upon review of the parties' submission, the Court intends to set the matter for a hearing via Zoom.

---

[2]As discussed in the Analysis, Judge Daly also previously resolved other relevant discovery matters. (Doc. 107).

3

(Doc. 135).³

On July 31, 2023, after three one-week extensions of time, the parties submitted the JWDR. (Docs. 137, 139, 141). Therefore, the Court is now prepared to rule on the Motions.

## II. Analysis

The Court separately considers each Motion in the sections below. Additional background, related to the Motions and the JWDR, is incorporated into those sections.

### A. Motion to Bifurcate

The Court may, in the interest of convenience, avoiding prejudice, or expediting and economizing the case, order a separate trial of separate claims. *See* Fed. R. Civ. P. 42(b); *accord Horton v. City of Chicago*, No. 13-cv-6865, 2016 WL 316878, *2 (N.D. Ill. Jan. 26, 2016). The Court has broad discretion when deciding whether to bifurcate the claims presented in a case. *See Carr v. City of North Chicago*, 908 F. Supp. 2d 926, 928 (7th Cir. 2012). Notably, "there is a growing body of precedent for both granting and denying bifurcation of *Monell* claims in § 1983 cases." *See Arsberry v. Wexford Health Sources, Inc.*, No. 17-cv-50044, 2021 WL 4942039, *1 (N.D. Ill. Oct. 22, 2021) (citing *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1080 (N.D. Ill. 2018); *Giles v. Ludwig*, No. 12-cv-6746, 2013 WL 6512683, *1 (N.D. Ill. Dec. 6, 2013)). However, bifurcation remains the exception rather than the rule, as such an action risks additional delay. *See id.* (citing *Tate v. City of Chicago*, No. 18-cv-7439, 2019 WL 2173802, *3 (N.D. Ill. May 20, 2019)). The Court's decision involves " 'a heavily fact-intensive analysis, dependent upon costs and benefits

---

³In light of the thoroughness of the JWDR, the Court finds a hearing is not necessary.

4

of bifurcation under the unique circumstances of each case.' [Citation]." *See id*. (quoting *Awalt v. Marketti*, No. 11-cv-6142, 2012 WL 1161500, *10 (N.D. Ill. April 9, 2012)).

Defendants argue the scope of and time required for *Monell* discovery, especially in light of the *Lippert* class action and Magistrate Judge Daly's Discovery Order at Doc. 107, will be extensive.[4] (Doc. 111, pgs. 2, 10). They argue the same is not true for discovery on the underlying claims against the Individual Defendants. (Doc. 111, pgs. 2, 11). Defendants argue, since *Monell* discovery will delay a resolution of those underlying claims, and the *Monell* claim is dependent upon the success of the underlying claims, a bifurcation of the *Monell* claim is appropriate under Rule 42(b). (Doc. 111, pgs. 2-3). More specifically, Defendants state, "if the individual Defendants did not…deliberately delay [McCullough's] diagnosis and/or if any alleged delay did not affect…McCullough's prognosis, the *Monell* claim [against Defendant Wexford] must fail." (Doc. 111, pg. 8). In Defendants' view, a bifurcation will avoid unnecessary expenses, delays of proceedings, the inefficient use of resources, and prejudice to Defendants. (Doc. 111, pgs. 2-3, 9, 11). As to prejudice, Defendants state, "[i]t takes little effort to foresee that alleged evidence of a widespread practice of delays in diagnosing other patients, with other conditions, at other prisons, by other doctors, at different time frames, but with the same employer, would prejudice the Individual Defendants." (Doc. 111, pg. 12). Also, a jury could wrongly find Defendant Wexford is liable based on *respondeat superior*. (Doc. 111, pg. 12).

---

[4]*See Lippert v. Ghosh*, No. 10-cv-4603 (N.D. Ill. filed on July 23, 2021), which alleged inadequate medical care of inmates within the IDOC. On May 4, 2023, Plaintiff was allowed to intervene in *Lippert* and to use ciphers that will permit the identification of IDOC medical patients in discovery in this case.

5

In response, Plaintiff argues Defendants are pursing a strategy of delay rather than seeking to prevail on the merits of the *Monell* claim. (Doc. 114, pgs. 1-2). That is, Defendants have caused the delay in *Monell* discovery and are now attempting to use that delay as grounds for a bifurcation. (Doc. 114, pgs. 3, 9-11). According to Plaintiff, Defendants "lodged an extraordinary series of objections against *Monell* discovery that…required protracted briefing…and numerous lengthy decisions by the Court" while "simultaneously refusing to cooperate in even basic aspects of that discovery." (Doc. 114, pg. 1). When it was appropriate to confer on the merits of *Monell* discovery, Plaintiff states Defendant Wexford, "save for…a handful of anodyne written policies, refused to produce a single document in response." (Doc. 114, pg. 2). Plaintiff indicates these circumstances culminated in Judge Daly's Discovery Order at Doc. 107, with which Defendant Wexford has now "unilaterally delayed compliance." (Doc. 114, pgs. 2, 11).

Further, Plaintiff asserts Defendants are incorrect that the *Monell* claim is dependent upon the underlying claims against the Individual Defendants. (Doc. 114, pg. 3). Plaintiff notes, between June 2016 and June 2019, McCullough had "nearly two dozen encounters" with medical professionals employed by Defendant Wexford. (Doc. 114, pg. 5). He was allegedly "passed from one Wexford employee to the next with instructions to follow up if his symptoms persisted." (Doc. 114, pgs. 5, 7). Plaintiff submits that Defendant Wexford ensured McCullough "saw a parade of different Wexford staff members, none of whom was ever made responsible for his care." (Doc. 114, pgs. 3, 5, 7). In such a case of "diffused responsibility," Plaintiff argues a finding of individual liability

is unnecessary because Defendant Wexford's policy or practice caused the injury. (Doc. 114, pgs. 5-7). For these reasons, Plaintiffs maintain a bifurcation is inappropriate.

Initially, the Court notes that the parties agree Judge Daly's Discovery Order at Doc. 107 "bears on the bifurcation motion." (JWDR, pg. 2).[5] The Court also notes its appreciation for the time and effort spent by the parties, when drafting the JWDR, to describe the status of that discovery and the disputes that have arisen. However, lest there be any confusion, it was not the Court's intention when ordering the JWDR to relitigate the issues decided by Judge Daly. The Court is of the opinion that Judge Daly's directives, recited in footnote 4 here, are quite clear. With all pending motions now resolved by this Memorandum & Order, the parties are **DIRECTED** to continue meeting and conferring, in good faith, on those disputes and on how to comply with Judge Daly's Discovery Order. Neither party suggests a ruling on the Motion to Bifurcate is inappropriate, in light of the additional disputes identified in the JWDR, so the Court issues that ruling below.

Defendant Wexford may be liable under *Monell*, even where the Individual Defendants are not, if such a finding does not create an inconsistent verdict. *See Thomas*

---

[5]Judge Daly required Defendant Wexford to produce: (1) "all documents and/or communications that memorialize or discuss Wexford's efforts (if any) prior to July 1, 2019 to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates"; (2) "documents responsive to Plaintiff's Requests for Production #47 (a) (e) and #[54] (a)-(c), (e), (g)-(q), and (s)"; (3) "documents that refer to Wexford's unwritten customs and practices since 1/1/2014, but before July 1, 2019, within the IDOC regarding (1) diagnosis, evaluation, treatment for colon cancer; and (2) diagnosis, evaluation, and treatment for sudden or dramatic weight loss"; and (4) "documents responsive to Plaintiff's Requests for Production #17, #18, and #19. Any personal identification numbers (e.g., Social Security numbers), licensing numbers, contact information (including e-mail, phone numbers, and home addresses), bank or financial account information, and family information may be redacted and the records themselves may be marked 'For Attorney's Eyes Only.' " (Doc. 107, pg. 11). Disputes have arisen with respect to (1) and (3) above. (JWDR, pg. 4). The parties anticipate reaching an agreement as to (2). (JWDR, pg. 4). They also agree (4) is irrelevant to the instant Motion. (JWDR, pg. 4).

*v. Cook County Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2010) (citing *Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)); *accord Carr*, 908 F. Supp. 2d at 929; *see also Vaught v. Quality Correctional Care, LLC*, 323 F. Supp. 3d 997, 1010 (N.D. Ind. 2018) ("[A] municipal or corporate entity may be liable even if none of its individual officers deprive a plaintiff of a constitutional right so long as the institutional policies themselves give rise to the constitutional violation."). To determine whether Defendant Wexford's liability is dependent upon that of the Individual Defendants, the Court considers the nature of the constitutional violation, the theory of liability under *Monell*, and the asserted defenses. *See Thomas*, 604 F.3d at 305 (citing *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002)); *accord Carr*, 908 F. Supp. 2d at 929-30. Defendants are correct that the dependency of the *Monell* claims on the claims against the Individual Defendants may support a bifurcation. *See Carr*, 908 F. Supp. 2d at 929; *see also Lindsey v. Orlando*, 232 F. Supp. 3d 1027, 1035 (N.D. Ill. 2017) ("Bifurcating the claims makes particular sense where the *Monell* claim is wholly dependent on the outcome of the cases against the individual defendants.").

Here, the Court **FINDS** a bifurcation is unwarranted. Defendant Wexford could be liable even absent the liability of the Individual Defendants. *See Thomas*, 604 F.3d at 305; *Carr*, 908 F. Supp. 2d at 929. In short, a jury could find Defendant Wexford's policies or practices resulted in an inadequate, but not deliberately indifferent, response to McCullough's gastrointestinal symptoms by the Individual Defendants. *See Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 378 (7th Cir. 2017) ("[T]his case well illustrates why an organization might be liable even if its individual agents are not. Without the full picture, each person might think that her decisions were an appropriate response to a

8

problem; her failure to situate the care within a broader context could be at worst negligent, or even grossly negligent, but not deliberately indifferent. But if institutional polices are themselves deliberately indifferent to the quality of care provided, institutional liability is possible."); *Thomas*, 604 F.3d at 305 (finding verdicts were reconcilable, such that there was nothing amiss in holding Cook County liable even though none of the individual defendants were responsible, where "the jury could have found that the CMTs were not *deliberately indifferent* to Smith's medical needs, but simply could not respond adequately because of the well-documented breakdowns in the County's policies for retrieving medical request forms") (Emphasis in original.); *Arsberry*, No. 17-cv-50044, 2021 WL 4942039, *2 (finding "it [wa]s possible that a jury could find that the individual defendants were not deliberately indifferent to Plaintiff's medical needs, but rather that they could not respond adequately because of Wexford's unconstitutional policies," such that individual liability was not required for corporate liability). In this way, the case is unlike those cited by Defendants. *See e.g.*, *Kitchen v. Burge*, No. 10-cv-4093, 2012 U.S. Dist. LEXIS 158088, *11 (N.D. Ill. Nov. 2, 2012) ("[I]f the named individual defendants did not coerce a confession from plaintiff through the use of torture, a City policy of encouraging/concealing the use of torture is…beside the point.").

By extension, a bifurcation of the *Monell* claim would not promote convenience, avoid prejudice, or expedite and economize the case. *See* Fed. R. Civ. P. 42(b). Since Plaintiff's claims against Defendant Wexford are not dependent upon her claims against the Individual Defendants, *Monell* discovery will have to occur one way or another. *See Arsberry*, No. 17-cv-50044, 2021 WL 4942039, *3 (finding arguments relating to the

prejudicial and burdensome nature of *Monell* discovery were unavailing, as the *Monell* claim against Defendant Wexford was not contingent upon the claims against the individual defendants, so "there [wa]s no situation in which they d[id] not conduct *Monell* discovery"). This being the case, it is actually possible a bifurcation would create inconvenience, prejudice, or a delay of necessary discovery. The Court notes that Plaintiff intervened in *Lippert* since the filing of the Motion to Bifurcate and, with all pending motions resolved in this case, the parties have every incentive to meet, confer, and resolve their disputes about Judge Daly's discovery order without further Court involvement.

For these reasons, the Motion to Bifurcate is **DENIED**.

### B. Motion to Compel

The JWDR indicates Plaintiff and the IDOC have resolved the issues raised in the Motion to Compel. Specifically, the IDOC has agreed to obtain a third-party document review platform to conduct ESI searches. (JWDR, pg. 22). The parties outlined the two categories of searches that have been exported into that third-party document review platform and the steps discussed for narrowing the searches to yield a manageable number of documents for review. (JWDR, pg. 22). Ultimately, the parties have agreed on appropriate search terms and qualifiers that will narrow the two categories of search results. (JWDR, pg. 22). The parties "intend to continue to work together to further narrow th[ose] results if necessary." (JWDR, pg. 22). Also, for present purposes, Plaintiff has withdrawn the issue related to Kelley Presley's emails. (JWDR, pg. 22).

Therefore, according to the JWDR, the only remaining issue in dispute is whether the costs related to the IDOC's use of the third-party document review platform should

be shifted to Plaintiff. (JWDR, pg. 23). *See DeGeer v. Gillis*, 755 F. Supp. 2d 909, 928-29 (N.D. Ill. 2010) (stating the various factors to be considered when the issue of cost-shifting involves a nonparty and a subpoena under Federal Rule of Civil Procedure 45); *see also Keaton v. Hannum*, No. 12-cv-641, 2013 WL 4481889, *1 (S.D. Ind. Aug. 2013) ("[O]nly where a nonparty is subjected to 'significant expense' should the burden of cost shift to the requesting party."). However, the cost-shifting issue was not raised by Plaintiff in the Motion to Compel. The IDOC injected that issue into its Response to the Motion to Compel, apparently after it agreed to obtain the third-party document review platform sought by Plaintiff. (Doc. 129, pgs. 6-9). It was partly due to this shift in positions that the JWDR was ordered by the Court prior to a ruling. (Doc. 135). In any event, in the interest of avoiding possible disruptions to the parties' progress on the above-described issues, the Court **FINDS** it appropriate to **DENY** the Motion to Compel **AS MOOT** and to address cost-shifting on the parties' most recent submission, the JWDR.

In the JWDR, the IDOC, a nonparty, argues such a shifting of the costs to Plaintiff is warranted because she is better positioned than a public entity, funded by State tax dollars, to bear those costs. (JWDR, pg. 23). Further, the IDOC notes Plaintiff is a private citizen who filed this lawsuit against, among others, a private corporation. (JWDR, pg. 23). Shifting the costs to Plaintiff will allegedly incentivize Plaintiff to work with the IDOC to narrow the search results to a reasonable number for review. (JWDR, pg. 23).

In response, Plaintiff argues cost-shifting is meant to protect disinterested third parties. (JWDR, pg. 23). Since the IDOC has an interest in Plaintiff losing and Defendant Wexford winning in this case, Plaintiff argues it is inappropriate for the IDOC to use cost-

shifting as a sword. (JWDR, pg. 23). Plaintiff also disputes that she is better positioned, as the administrator of a deceased inmate's estate, to bear the costs of using the third-party document review platform. (JWDR, pg. 23). Lastly, Plaintiff argues the premise of the IDOC's argument as to cost is incorrect, stating "once the documents have been filtered using the review platform, they can be moved off the platform for manual review…[and] the number of such documents…will have no impact on the cost." (JWDR, pg. 23).

Now, the Court notes Plaintiff and the IDOC have worked commendably to resolve their disputes without the Court's involvement. Indeed, the JWDR does not indicate any present disputes related to the *use* of the third-party document review platform. At present, the Court has no reason to believe they cannot complete discovery in that area without dispute. Therefore, it would be unwise for the Court to opine of who must bear the costs of that discovery. The JWDR touches upon the incentives that could stem from such an order, but it seems the disincentives are just as apparent. Accordingly, the Court **DEFERS** ruling on the cost-shifting issue. If necessary, the IDOC may file a Motion, requesting the shifting of costs related to its use of the third-party document review platform, at the completion of the related discovery. At that time, unlike the present, the costs will be firmly established for full briefing. The Court emphasizes that the parties have not indicated with any certainty the costs at issue. Further, before seeking the Court's involvement, the parties are **DIRECTED** to meet and confer on the issue. Until then, the Court expresses no opinion. The parties should work in good faith to frugally complete the discovery, knowing the issue may be re-presented to the Court.

## III. Conclusion

For the foregoing reasons, the Motion to Bifurcate is **DENIED** and the Motion to Compel is **DENIED as moot**. Plaintiff and the IDOC's cost-shifting issue is **DEFERRED**.

**SO ORDERED.**

Dated: August 14, 2023

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge
