UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEYANA WILEY, Administrator of the Estate of OMAR MCCULLOUGH #K77858,<br>      Plaintiff,<br>v.<br><br>JUSTIN YOUNG, C. WALKER, ANGELA WACHTOR, JUSTIN DUPREY, JANE DOE, WEXFORD HEALTH SOURCES, INC., and NURSE CYNTHIA,<br>      Defendants. | Case Number 3:21-cv-00599-DWD<br><br>Judge David W. Dugan |

## RENEWED MOTION TO STRIKE PLAINTIFFS' 26(a)(2)(B) DISCLOSURES

COME NOW Defendants WEXFORD HEALTH SOURCES, INC., CYNTHIA ROSS, R.J. DUPREY, COURTNEY WALKER, JUSTIN YOUNG, and ANGELICA WACHTOR, by and through their attorneys, CASSIDAY SCHADE LLP, and for their Renewed Motion to Strike Plaintiff's 26(a)(2)(B) Disclosure, state as follows:

## PROCEDURAL HISTORY

1.  Plaintiff filed this lawsuit on June 16, 2021. (Doc. 1).

2.  Plaintiff's original expert deadline in this case was December 30, 2022. (Doc. 63).

3.  On December 30, 2022, the parties jointly moved for an extension of time to complete discovery as discovery motions were pending and additional party depositions needed to be taken. This motion was granted, and Plaintiff's expert deadline was extended to May 31, 2023. (Doc. 97).

4.  On March 31, 2023, Plaintiff filed another Motion for Extension of Time seeking to extend discovery to August 11, 2023, which Defendants did not object to, and the Court granted. Plaintiff did not seek an extension of her expert disclosures and did not produce an expert disclosure. (Doc. 122).

5.      On May 31, 2023, Plaintiff filed another Motion for Extension of Time seeking, in part, to extend her overdue expert disclosures to July 31, 2023, which Defendants did not object to, and the Court granted. (Doc. 133-134).

6.      After a series of extensions of time, on July 31, 2023, the parties submitted their joint report. (Doc. 136-141).

7.      On September 28, 2023, Plaintiff filed an unopposed Motion to Stay and Continued Expert Discovery, which was granted, and the Court ordered the parties submit a joint status report for the completion of discovery. (Docs. 149-150).

8.      After 8 extensions of time, the status report and proposed schedule was submitted on January 12, 2024. (Docs. 151-167).

9.      On February 14, 2024, the Court entered the Amended Scheduling Order setting fact discovery to close on April 15, 2024. (Doc. 170).

10.     On the evening of the deadline to complete fact discovery, April 15, 2024, Plaintiff sought yet another extension of two more months of fact discovery and an unknown amount of time for the remaining deadlines, including expert disclosure deadlines. (Doc. 176). Defendants objected but Plaintiff's Motion was granted, and fact discovery closed on May 27, 2024. (Docs. 177; 182). The Court ordered the parties to confer and provide an amended scheduling order and warned that "[a]bsent extraordinary circumstances, the Court will not allow further extensions of time." (Doc. 182).

11.     On May 28, 2024, Plaintiff filed yet another Motion for Extension of Time seeking another month of fact discovery and an unknown amount of time for the remaining deadlines, including expert disclosure deadlines. (Doc. 183).

12. On June 7, 2024, the Court denied Plaintiff's Motion for Extension of Time to Complete Fact Discovery. (Docs. 183; 188). Except for one class of documents, fact discovery had closed. (Doc. 188).

13. Plaintiff and Defendants provided the Court proposed scheduling and discovery orders. On June 24, 2024, the Court adopted Plaintiff's proposed scheduling and discovery order. (Doc. 189). Accordingly, Plaintiff's expert reports were due on August 5, 2024. *Id.* Defendants' expert reports were due on October 5, 2024. *Id.* All discovery was due on October 17, 2024. *Id.* Dispositive motions were due November 22, 2024. *Id.*

14. Because the deposition will require extensive travel, prior to the disclosure deadline, the parties agreed that one of Plaintiff's experts would be conducted on August 15-16, 2024,[1] in Missoula, Montana.

15. At 11:26pm on August 5, 2024, Plaintiff's emailed their 26(a)(2) disclosures, identifying two retained experts (Dr. Schmidt and Dr. Venters) but supplied no report. Plaintiff indicated the reports would be provided August 6, 2024 at noon.

16. Plaintiff did not seek an extension of time for her expert disclosures, likely suspecting it would be denied.

17. Defendants did not receive any expert reports at noon on August 6, 2024.

18. At 10:41 pm on August 6, 2024, Plaintiff produced a report by Dr. Schmidt, but no list outlining her testimony history and no report whatsoever by Dr. Venters.

19. Plaintiff finally produced Dr. Schmidt's deposition list and Dr. Venters' written reports (at 11:40am) on August 7, 2024, two days after Plaintiff's deadline.

---

[1] Dr. Schmidt prepared a report in this case and a separate report in the *Reed* case.

20. Given only four business days were left between Plaintiff's untimely disclosures and counsel's flight to Montana, on August 7, 2024, Defendants filed an Emergency Motion to Strike Plaintiff's Expert Disclosures. (Doc. 190). On August 8, 2024, the Court denied the Motion without prejudice, deferring consideration of this issue until after the depositions to "allow for a more fulsome consideration." (Doc. 192).

21. Dr. Schmidt was deposed in this matter on August 16, 2024.[2] At or shortly prior to her deposition, Dr. Schmidt produced documents and publications for the first time. First, Dr. Schmidt produced a 22-page "timeline and thoughts" that was not provided with Plaintiff's disclosures. Second, Dr. Schmidt testified that she timely provided publications to Plaintiff's counsel, and she was unaware that Plaintiff withheld them from her disclosures. Third, during her deposition, Dr. Schmidt produced for the first time internet inquiries she previously performed that she wholly relied on for her cancer doubling time opinions in this case.

22. On September 25th and 26th, Defendants deposed Dr. Venters concerning his untimely produced report. While Dr. Venters did not produce new materials at his deposition, Dr. Venters identified documents that he relied on in coming to his opinions that ***had never been produced***.

23. At the deposition, Dr. Venters discussed a spreadsheet that Plaintiff's counsel provided that contained summaries and descriptions of care provided to 25 non-party prisoners. Based on that spreadsheet, Dr. Venters selected 14 patients whose records he reviewed in this case because the spreadsheet suggested to Dr. Venters that their care was "relevant" to Mr. McCullough's care.

---

[2] Defendants note that continuing Dr. Schmidt's deposition was not a viable option at the time. At Dr. Schmidt's deposition, Mr. Weil for Plaintiffs, informed undersigned counsel for the first time that he would be leaving Loevy/Loevy. He subsequently requested to continue Dr. Venters' deposition and only then moved to continue the remaining deadlines due to his departure.

24. On Tuesday, October 15, 2024, Plaintiff produced a 283-page spreadsheet that was provided to Dr. Venters in coming to his opinions.

25. The trial in this matter is set for March 24, 2025.

26. For the reasons stated here, Defendants' Motion to Strike should be granted. Plaintiff's untimely Expert Disclosures should be struck. Alternatively, the Court should strike the opinions Dr. Schmidt withheld documentation of until her deposition, including but not limited to doubling time analysis, and the Court should order Dr. Venters' deposition be reconvened at Plaintiff's expense.

27. Defendants do not find a hearing is necessary at this time, unless the Court determines a hearing would assist in its consideration.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. Fed. R. Civ. P. 26(a)(2). A party that intends to rely upon an expert witness's testimony is required to furnish at the time and sequence ordered by the district court a report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.* Failure to comply with R. 26(a)(2)'s disclosure requirement results in a sanction: the offending party is not allowed to introduce the expert witness's testimony as evidence on a "motion, at a hearing, or at trial." Fed. R. Civ. P. 37(c)(1). This sanction of exclusion is automatic and

5

mandatory unless the party can show that its violation of Rule 26(a) was either justified or harmless. *Session v. Menasha Corp.,* No. 22-cv-1385-SPM, 2023 U.S. Dist. LEXIS 178384, at *4 (S.D. Ill. Oct. 3, 2023); citing *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1988). The non-moving party has the burden of proving that their conduct falls within an exception. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir. 2005).

The determination of whether a failure to comply with Rule 26(a) is harmless or justified is left to the broad discretion of the district court. *Westefer v. Snyder*, 422 F.3d 570, 584 n.21 (7th Cir. 2005), citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). Although the court "need not make explicit findings regarding a justification or the harmlessness of the Rule 26 violation," the Seventh Circuit has indicated that the following factors should guide the court's discretion: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Westefer*, 422 F.3d at 584 n.21, citing *David*, 324 F.3d at 857.

## ARGUMENT

Defendants incorporate by reference their arguments as set forth in their Motion to Strike (Doc. 190). In that Motion, Defendants moved to strike Plaintiff's retained witness disclosures as untimely, outlining Plaintiff's failure to comply with the disclosure deadline and resulting prejudice to Defendants. The Court entered an order stating,

> the Court defers consideration of this issue until after that deposition, which will allow for a more fulsome consideration of prejudice, Plaintiff's ability to cure any prejudice, the potential disruption to the trial schedule, and any bad faith or willfulness on the part of Plaintiff. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (discussing the factors for finding the existence of a substantial justification or harmlessness in the context of Rule 37(c)(1)). For these reasons, Defendants' "Urgent" Motion to Strike is DENIED without prejudice.

(Doc. 192). Defendants now renew and supplement their Motion to Strike Plaintiffs' disclosure both as the delay prejudiced Defendants ability to prepare for Dr. Schmidt's deposition and as Dr. Schmidt and Dr. Venters withheld relevant materials that Defendants only learned about at their depositions, prohibiting Defendants from any inquiry or examination.

### A. Dr. Schmidt

Plaintiff offers no meaningful explanation as to why Plaintiff's disclosure of Dr. Schmidt's report was delayed. While Plaintiff previously proffered that some materials were omitted from the review, this proffer is not consistent with Dr. Schmidt's testimony below. Regardless, Plaintiff's failure to prepare should not be Defendants' responsibility. Plaintiff's counsel did not obtain an extension of time but unilaterally limited Defendants' time to prepare. At the time of Plaintiff's deadline, Dr. Schmidt's deposition was set, and Plaintiff knew that it would occur in just over a week's time and it required extensive travel. After unilaterally reducing Defendants' expert discovery window, Plaintiff offered to extend Defendants' expert disclosure deadline by a few days; however, that offer did not address the timing of Dr. Schmidt's deposition, which was the substantial prejudice to Defendants.

Given the history in this case and Plaintiff's failure to timely disclose his expert reports, especially knowing Dr. Schmidt's deposition was the following week, the Court should find Plaintiff willfully failed to timely disclose Dr. Schmidt's report and this delay prejudiced Defendants' ability to prepare. *See SEC v. Lipson*, No. 97 C 2661, 1999 U.S. Dist. LEXIS 1938, 1999 WL 104357, at *2 (N.D. Ill. Feb. 24, 1999). ("[T]his Court takes seriously the scheduling orders it issues—and so should the litigants… a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."); *see also Custom Foam Works, Inc. v. Hydrotech Sys., LTD.*, No. 09-cv-710-MJR, 2011 U.S. Dist. LEXIS 58797,

7

2011 WL 2161106, at *3 (S.D. Ill. June 1, 2011) ("[D]eadlines have meaning and consequences." (collecting cases))[3]; *see also Vakharia v. Little Co. of Mary Hosp.,* No. 94 C 5599, 2002 U.S. Dist. LEXIS 5917, 2002 WL 485362, at *5 (N.D. Ill. Mar. 29, 2002) (quoting *White v. Bentsen,* 31 F.3d 474, 476 (7th Cir. 1994))("One who decides to follow a schedule of [her] own devising, for reasons of [her] own invention, has no legitimate complaint when the tribunal adheres to the rules.").

Compounding the prejudice to Defendants, at her deposition, Dr. Schmidt produced additional materials for the first time. Dr. Schmidt prepared a 22-page "timeline and thoughts" that she created when she reviewed Mr. McCullough's medical records, on or about July 14, 2023. For unclear reasons, Plaintiff did not disclose it until August 14, 2024. (Exhibit A, Deposition of Dr. Schmidt, p. 11). The timeline was provided to Defendants the day before Dr. Schmidt's first deposition (in the *Reed* case),[4] when Plaintiff knew undersigned counsel was traveling to Montana; thus, depriving Defendants the ability to assess and inquire into the timeline, its thoroughness or its accuracy.[5]

---

[3] *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996) (noting the district court's adherence to "sound policy" in stating, "If the court allows litigants to continually ignore deadlines and seek neverending [*8] extensions without consequence, soon the court's scheduling orders would become meaningless."); *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1024 (7th Cir. 1991) (discussing barring the use of expert testimony and stating that "[j]udges must be able to enforce deadlines."); *Wilson v. Sundstrand Corp.*, 2003 U.S. Dist. LEXIS 1525, 2003 WL 259139, at *2 (N.D.Ill. 2003) ("Any purported problem created by the pendency of expert disclosure ... was well known to the defendant; ... Rule 26(b)(2)(C) is crystal-clear about the expert disclosure schedule that applies if the Court does not set its own."); *Amari v. C.R. England, Inc.*, 2010 U.S. Dist. LEXIS 74111, 2010 WL 2943686, at *3 (S.D.Ind. 2010) ("Failing to provide information before a deadline results in disqualification of the use of that information.... Moreover, 'exclusion of non-disclosed evidence is automatic and mandatory ... unless nondisclosure was justified or harmless.'") (internal citation and citation omitted); *Finwall v. City of Chicago*, 239 F.R.D. 494, 503 (N.D.Ill. 2006) ("Deadlines such as those envisioned by Rule 26(a)(2)(B) and 37(c)(1) are essential to the maintenance of a smooth and orderly flow of cases") (citations omitted).

[4] It is worth noting that Dr. Schmidt produced new documents, publications, and entirely new opinions at her deposition in the *Reed* case, as well. Defendants' Joint Motion to Strike in *Reed* is currently pending.

[5] It would be unreasonable and unsupported by the Federal Rules to argue that Defendants could have inquired during the deposition into the timeline, without previously reviewing the documents; however, additionally, it is particularly prejudicial in this instance given the length and breadth of the deposition. The parties did not break for lunch and took minimal breaks due to the length of the deposition, based on the existing report prior to the disclosure of new documents. Further, in combination with the new opinions

8

To the extent Plaintiff argues that the "timeline and thoughts" were consistent with Dr. Schmidt's opinions in her report, it begs the question why Dr. Schmidt prepared it at all. This 22-page document was not a succinct summation and contains information not discussed in Dr. Schmidt's report. Further, instead of reviewing or relying on the medical records at her deposition, Dr. Schmidt repeatedly referred to her timeline to answer questions about Mr. McCullough's care. (Ex. A, p. 56, 88, 104, 107, 129-130). Yet, Dr. Schmidt's timeline did not contain the page numbers for the medical records, precluding spontaneous assessment or inquiry into the thoroughness or accuracy of the timeline, i.e. the thoroughness and accuracy of her testimony. (Ex. A, 120).[6] This failure to comply with the Federal Rules deprived Defendants of ***any*** inquiry into Dr. Schmidt's "timeline and thoughts," and the harm cannot be insignificant as Defendants were wholesale unable to assess or inquire. Thus, Defendants' Motion to Strike should be granted.

Next, Dr. Schmidt testified that she emailed Plaintiff's counsel all the references she relied on in forming her opinions on August 3, 2024, prior to Plaintiff's expert disclosure deadline but those materials were not provided either on the deadline or with Dr. Schmidt's untimely report. (Ex. A, 73-74).[7] Thus, Defendants were deprived access to some of the publications Dr. Schmidt relied on in her report, despite the fact that Dr. Schmidt testified that she provided them to Plaintiff's counsel for her report in this case. *See* Ex. A, Deposition Exhibit 4.

---

and medical research publication disclosed via ambush in both this case and the *Reed* case the day prior, undersigned counsel had no time or opportunity to review the summary or timeline even on a restroom break.

[6] Dr. Schmidt also used certain dates in this timeline to conduct online inquiry, discussed more below, that was also withheld from Defendants. (Ex. A, 151).

[7] Additionally, on August 13, 2024, undersigned counsel emails Plaintiffs' counsel, "Dr. Schmidt's reports both cite to medical publications that are not publicly available. Can you please provide a copy of the cited publications that Dr. Schmidt relied on ASAP? Given the depositions start this Thursday and I'm traveling tomorrow, I really need this tonight." While these separate publications were cited to in Dr. Schmidt's report, they were not provided with the report.

9

Most importantly, at her deposition, Dr. Schmidt produced for the first time online inquiries she performed for her opinions on Mr. McCollough's doubling time cancer rate. (Ex. A, 150-168; Deposition Exhibit 3). It appears that Dr. Schmidt went to a website that asked for two known measurements of a cancer tumor on definitive dates to calculate the doubling time of the cancer (days it took the tumor to double). Dr. Schmidt entered in the size of Mr. McCullough's tumor in June 2019, and then made up a sizes and dates until she reached numbers that made the doubling time 112 days. (Ex. A, p. 151-154). Dr. Schmidt manipulated the calculator to come to the preconceived number she came up with, 112 days. Dr. Schmidt did not have two known measurements of the tumor from definitive dates from the records; thus, the online generator could not calculate Mr. McCullough's cancer growth over time. *Id.* In other words, instead of calculating the doubling time, Dr. Schmidt used the website to guess what size Mr. McCullough's cancer was on certain dates based on her manufactured doubling time rate. Dr. Schmidt knew well enough to print off the computations she made, but Dr. Schmidt and/or Plaintiff did not produce them. Defendants had no ability to assess or prepare for this line of questioning. It is especially prejudicial here as Dr. Schmidt did not just fail to disclose the computations she performed, but she also used the website incorrectly and not in the manner intended, which Defendants could not have anticipated.

There is no justification for the failure for either Dr. Schmidt or Plaintiff to timely prepare a report containing all of Dr. Schmidt's opinions and what her opinions are based on. While undersigned counsel conducted impromptu inquiry into these new opinions and publications at the deposition, this is insufficient and contrary to the plain language and meaning of the Federal Rules of Civil Procedure. The purpose of these rules is to prevent what occurred in Dr. Schmidt's deposition. *Salgado*, 150 F.3d 735, at 741 n.6 expert reports must be "detailed and complete" so

that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources."); *Session,* No. 22-cv-1385-SPM, 2023 U.S. Dist. LEXIS 178384, at *4 ("The purpose of the report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response" and striking an expert disclosure produced 11 days after the deadline.); *see also Stibb v. Gomez*, No. 17-cv-504-jdp, 2018 U.S. Dist. LEXIS 229771, at *3-4 (W.D. Wis. July 16, 2018).

Of note, the subject matter of the publications and internet inquiry falls within a sub-specialty of oncology and are not expected to be known within the general medical community, let alone common knowledge. To expect counsel to spontaneously inquire about the accuracy of newly disclosed, improper doubling time computations is fundamentally unfair to Defendants.

Furthermore, what Dr. Schmidt relied on and whether it was reasonable, reliable, and accepted in the field of oncology is material to whether Dr. Schmidt qualifies as an expert witness. FRE 702. Denying Defendants an opportunity to examine the online computations that Dr. Schimdt performed for her opinions in order to prepare to question Dr. Schmidt about her foundation as an expert constitutes undue prejudice. This is especially true here as Dr. Schmidt testified that she does not know the formula or mathematical expression for doubling time and solely relied on the website. (Ex. A, p. 140-143). It is also true as the website used diameter to calculate volume growth, but Dr. Schmidt could not articulate the relationship between size and volume. Dr. Schimdt did not know the volume of Mr. McCullough's tumor at any time to explain or confirm this theory that it doubled in volume according to her numbers, let alone in reality. Instead, according to her report and based on her online inquiry, the cancer did not come close to doubling in size every 112 days and Dr. Schmidt could not explain this. (Ex. A, 145-148; 161-

11

167). There can be no real dispute that preparation for an expert's deposition, especially on such nuanced and specialized topics in a case involving allegations of wrongful death, is necessary, and denying Defendants such preparation constitutes significant harm.

For these reasons collectively, Defendants' Motion to Strike Plaintiffs' Expert Disclosure should be granted. *Butler v. Sears Roebuck & Co.,* No. 06 C 7023, 2010 U.S. Dist. LEXIS 67377, 2010 WL 2697601, at *2 (N.D.Ill. July 7, 2010) (striking untimely expert report where the "case has been pending for over three years and filing and briefing of a class certification motion has already been delayed several times"); *see also Musser v. Gentiva Health Servs.*, 356 F.3d 751, 759 (7th Cir. 2004) ("[I]t is not an abuse of discretion to conclude that the additional costs to Gentiva of preparing a new summary judgment motion and further delay in extending the trial date are not harmless."). Alternatively, Defendants move to strike Dr. Schmidt's opinions related to the doubling time online computations and publications withheld from Defendants until days before her deposition or at her deposition due to Plaintiff's discovery violations. *See Osterhouse v. Grover*, No. 3:04-cv-93-MJR, 2006 U.S. Dist. LEXIS 50282 at *7-9 (S.D. Ill. Jul. 20, 2006).

Lastly, to the extent the Court does not strike Dr. Schmidt's opinions, Defendants would have additional inquiry into the newly disclosed online inquiry and Dr. Schmidt's doubling time opinions and the Court should order Plaintiff produce Dr. Schmidt to be deposed on these issues at Plaintiff's expense. However, such a ruling would also necessitate yet another continuation of the deadlines in this case, caused by Plaintiff, including a continuation of the trial date. Thus, instead of further delayed resolution of this case, Defendants' Motion to Strike Plaintiffs' Expert Disclosure should be granted.

### B.     Dr. Venters

Plaintiff produced Dr. Venters' written report on August 7, 2024, two days after Plaintiff's deadline. On September 25th and 26th, Defendants deposed Dr. Venters concerning his untimely report. While Dr. Venters did not produce new materials at his deposition, Dr. Venters identified a spreadsheet that he relied on in coming to his opinions that *had never been produced.* At the deposition, Dr. Venters discussed a spreadsheet that Plaintiff's counsel provided him with that contained summaries and descriptions of care provided to approximately 25 non-party prisoners. Based on that spreadsheet, Dr. Venters selected 14 patients whose records he reviewed in this case because the spreadsheet suggested to Dr. Venters that their care was "relevant" to Mr. McCullough's care. (Exhibit B, Partial, Redacted[8] Deposition Transcript of Dr. Venters, Day 1, p. 36-56, "Q: And that document is what you used to determine which of the 25 individuals that you were going to look at the entirety of the records for your review in this case? A; Yes….it was just a very brief glance at these types of encounters people had helped me identify the patients that I thought would be most relevant to Mr. Reed and Mr. McCullough's care"). This spreadsheet also indicated to Dr. Venters whether the patient was discussed in one of the *Lippert* reports. (Ex. B, p. 173-6).

Unsurprisingly, a key question for Defendants is how the 25 non-parties and the sub-pool of prisoners were selected for review in this case. Dr. Venters was repeatedly asked how he determined from the spreadsheet which encounters were relevant, but he failed to articulate any meaningful assessment. While Dr. Venters indicated the number of encounters (although he did not count them) with oncology and hospitalization was the only factor he could recall, this is

---

[8] As both Exhibits B and C contain the name of non-parties and refer generally to their medical care, Defendants have redacted their names. Defendants also do no believe that their names are material to this Motion.

13

unsupported by the evidence as Dr. Venters reviewed the few patients in the pool of 25 that did *not* have a primary cancer diagnosis and were not seen by oncology. (Exhibit C, Partial Deposition Transcript of Dr. Venters, Day 2, p. 169, 190, 205). While most of the remaining 14 individuals he reviewed had a different type of cancer from Mr. Reed and Mr. McCullough, at least one of the 25 patients in the pool had colon cancer, but Dr. Venters does not know why his care was not "relevant." (Ex. B, p. 51). When asked about whether the spreadsheet contained specific diagnoses or indicated whether the patient lost weight, Dr. Venters could not recall and did not bring a copy of the spreadsheet to the deposition to refresh his recollection (despite the deposition notice requesting such).

Additionally, during Dr. Venters deposition, it was revealed that Dr. Venters' report contained several examples where the medical care outlined in his report was not reflected in the medical records. (Ex. B, p. 274); (Ex. C, p. 5, 53, 118-9, 130-1, 149-150, 209-210). Defendants, thus, have cause for concern that some, if not all, of Dr. Venters' opinions were based, not on the medical records, but on Plaintiff's counsel's spreadsheet.

The existence of this spreadsheet was withheld by Plaintiff and Dr. Venters, despite the Federal Rules, Defendants written discovery requests, and the document requests on the Notice of Deposition of Dr. Venters. The parties have since met and conferred on this issue and Plaintiff produced the 283-page spreadsheet on October 15, 2024, *after* Dr. Venters' deposition. However, had Plaintiff informed Defendants of the existence and nature of this spreadsheet, Defendants would have resolved this issue *before* deposing Dr. Venters. Because Defendants were unaware of the existence of this spreadsheet, Defendants could not seek to compel it prior to the deposition or prepare to inquire further at Dr. Venters' deposition. Accordingly, Defendants were denied the ability to inquire into the methodology, if any, Dr. Venters used to create the review of records in

this case. As an expert has to show that s/he used a reliable and scientific method in coming to their opinions, Defendants were denied the ability to fully inquire and challenge Dr. Venters' foundation under FRE 702.[9] As with Dr. Schmidt's untimely disclosures, Defendants would have a substantial number of questions for Dr. Venters related to the 283-page spreadsheet, including questions related to Plaintiff's counsel's "summary" of the care provided, other categories of conclusions contained in the spreadsheet, and Dr. Venters' methodology for selecting which patients' records to review. However, again, should the Court reconvene Dr. Venters' deposition at Plaintiff's expense as a remedy to the discovery violations, it would likely also require a continuation of the remaining deadlines and the trial setting.

The failure to disclose the spreadsheet is one in a series of discovery violations and/or delays in this case. Plaintiff has repeatedly violated discovery rules and withheld the existence of documents created by, provided to, and relied on by her retained witnesses. Defendants have been thwarted from timely and full inquiry into Plaintiff's retained witnesses' opinions and what they are based on, which cannot be deemed harmless. *See Lincoln Diagnostics, Inc. v. Hollister-Stier Labs., LLC,* No 08-2062, (C.D. IL., Oct. 4, 2010), 2010 U.S. Dist. LEXIS 150586, *5. In line with caselaw cited above and for the reasons stated herein, Defendants' Motion to Strike should be granted.

WHEREFORE, for the above reasons, Defendants respectfully request this Honorable Court grant their Renewed Motion to Strike Plaintiffs' 26(a)(2)(B) Disclosure, and for such further relief deemed appropriate.

---

[9] If "an expert does not independently verify information from counsel and simply adopts data, methodology, or tests furnished to the expert by the attorneys," "this could lead to an effective cross-examination of the expert's opinion and methodologies." *Id.* (citing *Fid. Nat. Title Ins. Co. v. Intercounty Nat. Title Ins. Co*., 412 F.3d 745, 750 (7th Cir. 2005) ("[C]ounsel should be afforded an opportunity to conduct expert discovery in an effort to appropriately cross-examine an expert.")).

        Respectfully submitted,

        CASSIDAY SCHADE LLP

        By:  /s/ Jaclyn A. Kinkade
            One of the Attorneys for Defendants
            WEXFORD HEALTH SOURCES, INC.,
            CYNTHIA ROSS, R.J. DUPREY, COURTNEY
            WALKER, JUSTIN YOUNG, and ANGELICA
            WACHTOR

Jaclyn A. Kinkade
ARDC No. 6333722
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
jkinkade@cassiday.com

## CERTIFICATE OF SERVICE

   I hereby certify that on October 22, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

Jon I. Loevy, Esq.
Stephen H. Weil, Esq.
Loevy & Loevy
311 North Aberdeen Street
Third Floor
Chicago, IL 60607
(312) 243-5900
(312) 243-5902 (Fax)
jon@loevy.com
weil@loevy.com

                    /s/ Jaclyn A. Kinkade

12052745