UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEYANA WILEY, Administrator of the Estate of OMAR MCCULLOUGH #K77858, Plaintiff, <br> v. <br><br> JUSTIN YOUNG, C. WALKER, ANGELA WACHTOR, JUSTIN DUPREY, JANE DOE, WEXFORD HEALTH SOURCES, INC., and NURSE CYNTHIA, <br> Defendants. | Case Number 3:21-cv-00599-DWD <br><br> Judge David W. Dugan |

### REPLY IN SUPPORT OF RENEWED MOTION TO STRIKE PLAINTIFF'S 26(a)(2)(B) DISCLOSURES

COME NOW Defendants WEXFORD HEALTH SOURCES, INC., CYNTHIA ROSS, R.J. DUPREY, COURTNEY WALKER, JUSTIN YOUNG, and ANGELICA WACHTOR, by and through their attorneys, CASSIDAY SCHADE LLP, and for their Reply in Support of their Renewed Motion to Strike Plaintiff's 26(a)(2)(B) Disclosure, state as follows:

### REPLY ARGUMENT

Overarchingly, Defendants are not seeking "a windfall" from a "brief delay." While Plaintiff attempts to characterize the issue before the Court as mere a two-day delay, Plaintiff has repeatedly failed to meet deadlines in this case and sought numerous extensions, dragging this case out for over three years. Then, after being forced to disclose retained witnesses after three years, they were not only late, but they were also incomplete. Most significantly, at both retained witnesses' depositions, Defendants learned that Plaintiff had withheld opinions and documents required under FRCP 26(a)(2)(B). Instead of taking accountability, Plaintiff prejudices Defendants by minimizing their opportunity to investigate and defend this matter and misrepresenting objective facts to this Court. In other words, Plaintiff has blatantly disregarded the deadlines and Federal Rules, and now seeks to confuse the Court in order to avoid any

accountability and transfer all consequences to Defendants. As such, although reply motions are disfavored (Local Rule 7.1), exceptional circumstances warrant a reply as Plaintiff's Response (Doc. 201) is riddled with demonstrable false statements in an attempt to mislead the Court.

First, Plaintiff's counsel proffered to this Court that they emailed undersigned counsel and offered a two-day extension of their deadline to depose Plaintiff's experts in exchange for Defendants' withdrawal of their Motion to Strike. (Doc. 201, p. 3). Plaintiff's counsel further proffered to this Court that "Defense counsel rejected the offer." *Id.* **This did not happen**. Plaintiff did not offer to move Dr. Schmidt's deposition. In fact, Plaintiff's counsel indicated, in writing, they would not move any dates except the Defendants' expert disclosure deadline.

On August 7, 2024, Steve Weil emailed undersigned counsel stating, Plaintiffs[1] "propose that given the delay in submitting the reports to you, your deadlines for filing responsive expert reports could be extended from the current October 5 deadline to October 7, with no changes to any other deadlines."[2] (Exhibit A, Communications Regarding Plaintiff's Offer). To alleviate any doubt, a simple review of the parties' correspondence would have revealed that undersigned counsel responded, "October 5 is a Saturday, so the deadline is October 7, *but the larger picture is this doesn't resolve the issue with the depositions next week* or other issues mentioned in the motions." (Ex. A, emphasis added). **No further offer was provided by Plaintiff.** Plaintiff's counsel informed the Court that they offered Defendants a remedy that they did not. Plaintiff's counsel also informed the Court that Defendants rejected an offer that they did not.

Upon reading such blatant misstatements of objective fact in Plaintiff's Response to the Renewed Motion to Strike, undersigned counsel contacted Plaintiff's counsel and provided the

---

[1] This communication was sent in the instant case and in *Reed v. Wexford Health Sources, Inc., et al.,* Case No. 3:20-cv-01139-SPM.
[2] Ms. Makar was included on these exchanges.

2

exact verbiage of the offer made by Plaintiff's counsel. By doing so, undersigned counsel provided Plaintiff's counsel an opportunity to correct these false proffers to the Court. (Exhibit B, Correspondence Regarding Plaintiff's Misrepresentations). Plaintiff's counsel refused. (Ex. B). Not only is Plaintiff's Response untrue, but also these false statements are specifically made to attack undersigned counsel's credibility and motivation in seeking just relief. Plaintiff's counsel hopes the Court will rely on her misrepresentations in denying Defendants' Renewed Motion to Strike.[3] This is a prime example of lacking candor with the Court. Given the seriousness of these concerns and given that this has been a pattern of behavior for many years, Defendants will be serving a Motion for Sanctions on Plaintiff's counsel giving them, yet another, opportunity to cure before seeking further Court intervention.[4] Of note, Plaintiff's counsel also sought a hearing on Defendants' Motion and, for different reasons,[5] including raising these false statements with the Court, Defendants do not object.

Second, Plaintiff's Response claims that Plaintiff's late disclosures did not change Defendants' preparation or defense "in any way." (Doc. 201, p. 8). A statement Plaintiff's counsel lacks foundation to give. Nonetheless, Plaintiff's excuse for the undisputed discovery violation is that she waited until Sunday, the day before her disclosure deadline (extended several times already), to make sure she provided Dr. Schimdt with the deposition transcripts of the treaters. The treater depositions were taken in 2022-2023. It is nonsensical that Plaintiff's counsel would

---

[3] Defendants note that they seek to strike the disclosures or, in the alternative, to re-open the experts' depositions at Plaintiff's expense.

[4] On page 13, Plaintiff's argument that the time to prepare for Plaintiff's expert depositions has been extended beyond two days is another false statement to this Court. Again, Plaintiff did not agree to move Dr. Schmidt's deposition, and it was taken on the same date previously scheduled.

[5] Plaintiff's Motion for Hearing claims that counsel is inexperience or novice; however, according to her firm's website, she graduated from law school seven years ago. Nonetheless, a new attorney should be able to avoid the gross misrepresentations made to this Court and, if counsel needed additional guidance, certainly Mr. Loevy, who is entered on this case, could have provided it, instead of Defendants incurring the expenses for seeking Court intervention due to Plaintiff's faults.

not provide Dr. Schmidt with the deposition transcripts of the treaters upon her initial or early assessments of the case. That is, unless her opinions were already set in stone and a review of the transcripts was perfunctory. It is further remarkable, especially given the number of extensions already granted over Defendants' objections in this case, that counsel would wait until the day before the report is due to ensure Dr. Schmidt was provided material records in this case. Either way, the fault cannot be laid at Defendants' feet. In other words, Plaintiff argues that without these expert reports that she likely cannot meet her standard of proof, which should have been a significant motivator for Plaintiff to ensure her experts had deposition transcripts and the reports were timely and complete.

In actuality, Plaintiff's retained witness reports take issue with the care provided by non-defendants in 2016-2017, as opposed to the personal involvement of the Defendants. No expert has opined that any of the nurses acted inappropriately within their scope of practice. No expert has opined that NP Duprey acted inappropriately within his scope of practice. All experts agree that Dr. Young saw Mr. McCullough a month before his diagnosis and there was no earlier intervention he could have provided that would have changed Mr. McCullough's outcome. These issues and more will be outlined in more depth in Defendants' Motion for Summary Judgment should Plaintiff fail to voluntarily dismiss some or all of the named Defendants.

Next, Plaintiff argues that Dr. Venters' report was untimely because he needed to review Dr. Schmidt's reports prior to the completion of his own. Plaintiff provides no meaningful explanation why Dr. Venters was required to review Dr. Schmidt's report to finalize his own. Dr. Schmidt is an oncologist and Dr. Venters did not give oncological opinions. Dr. Venters testified that he did not adopt Dr. Schmidt's opinions. (Exhibit D, Deposition of Dr. Venters, Day 1, 227-

8).[6] Further, Plaintiff is completely silent as to why no motion was filed to obtain additional time from the Court or why Defendants should bear the consequences for Plaintiff's mistakes.

Third, the most significant prejudice relates to the opinions and materials that were ***not*** contained in the untimely reports. This issue goes well beyond the two-day delay. It is undisputed that Dr. Schmidt showed up to the deposition with materials. Shockingly, Plaintiff attempts to blame undersigned counsel for not stopping the deposition, while continuing to pay Dr. Schmidt's hourly rate, to review the doubling time computations and the 22-page "timeline and thoughts" on Mr. McCullough's care for the first time. Defendants already addressed the nature and complexity of these newly produced documents, including computations of the doubling time of cancer.[7] Nonetheless, Plaintiff can cite no rule shifting the blame for Plaintiff's failure to disclosure to Defendants. Again, this argument flies in the face of the purpose of FRCP 26(a)(2)(B). Plaintiff repeatedly seeks discovery by ambush. Yet, even in Plaintiff's preferred scenario, undersigned counsel was prevented from conducting independent research as to the medicine contained in or underlying the materials and from consulting with Defendants' experts on the same. Compiling the reduced time to prepare on top of the failure to disclose materials, Defendants' ability to prepare for Dr. Schmidt's deposition was needlessly impaired. Had Defendants been provided with the necessary materials timely, Defendants would have had additional questions for Dr. Schmidt related to these materials, particularly the internet inquiries that Dr. Schmidt used incorrectly. Plaintiff's argument that Defendants' preparation or defense was not hampered "in any way" is ludicrous.

---

[6] The numerous typos in his report suggest a different cause for the late disclosure.
[7] Additionally, the computations are not apparent on their face and, as Dr. Pennington explained, this is in part because Dr. Schmidt used it incorrectly.

5

With respect to Dr. Venters, it appears Plaintiff's central argument is Defendants were not prejudiced by Plaintiff's failure to produce the spreadsheet because Defendants possessed patient medical records in advance of Dr. Venters' deposition. Plaintiff attempts to couch her failure to disclose this spreadsheet as a routine discovery dispute. However, the moment she provided the 283-page spreadsheet containing counsel's summaries of medical care for 25 patients to Dr. Venters to utilize in his review in this case, the spreadsheet undeniably became discoverable. Furthermore, when Dr. Venters used the spreadsheet in his sampling of which patients' charts to review, Plaintiff had an obligation under the Federal Rules to produce the spreadsheet with her expert disclosures. Plaintiff provides no justification for withholding the existence of the spreadsheet so any dispute could be raised before Dr. Venters' deposition. Her last retort is that the spreadsheet contained no new information. A simple glance at the 283-page spreadsheet fully undermines this argument. (Exhibit C, Plaintiff's Spreadsheet Used by Dr. Venters).

Contrary to Plaintiff's assertions, Rule 26 demands more than mere disclosure of patient medical records. With Plaintiff's logic, experts need not provide a report whatsoever if the medical records have been produced. Instead, Rule 26(a)(2)(B) requires experts to provide a written report and disclose the facts or data considered by the witness in forming their expert opinions. One of the key purposes of Defendants' deposition of Dr. Venters was to understand and challenge the foundation of his opinions and the methodology he used in forming his opinions. Defendants were deprived of this opportunity as the spreadsheet was not produced until after Dr. Venters' deposition. Defendants went into great depth as to the flaws in Dr. Venters' opinions based on his purported review of the medical records, as the medical records did not say what Dr. Venters said. There is great cause for concern that Dr. Venters significantly relied on Plaintiff's spreadsheet in, not just sampling, but also forming his opinions. Defendants should have been able to review the

spreadsheet and ask questions to determine whether it was accurate and reliable for Dr. Venters to utilize in sampling and/or forming his opinions.

Finally, Plaintiff's objection that Defendants did not stop Dr. Venters' deposition to file a Motion to Bar is preposterous as Defendants **had** already filed a Motion to Strike, which was denied.[8] Collectively, Plaintiff has shown a pattern of flagrant disregard for the Federal Rules, the Court deadlines, and the truth, at Defendants' expense. Defendants' Motion should be granted, and Dr. Schmidt and Dr. Venters should be struck.

WHEREFORE, for the above reasons, Defendants respectfully request this Honorable Court grant their Renewed Motion to Strike Plaintiff's 26(a)(2)(B) Disclosures, and for such further relief deemed appropriate.

        Respectfully submitted,

        CASSIDAY SCHADE LLP

        By: /s/ Jaclyn A. Kinkade
            One of the Attorneys for Defendants
            WEXFORD HEALTH SOURCES, INC.,
            CYNTHIA ROSS, R.J. DUPREY, COURTNEY
            WALKER, JUSTIN YOUNG, and ANGELICA
            WACHTOR

Jaclyn A. Kinkade
ARDC No. 6333722
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102

---

[8] In the Court's Order (Doc. 192), although the Court denied Defendants' Motion, the Court indicated that Defendants may renew their Motion to Strike upon completion of the depositions.

7

(314) 241-1377
(314) 241-1320 (Fax)
jkinkade@cassiday.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

Jon I. Loevy
Maria Makar
Loevy & Loevy
311 N. Aberdeen Street, Third Floor
Chicago, IL 60607
jon@loevy.com
makar@loevy.com

/s/ Jaclyn A. Kinkade

13057612