UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEYANA WILEY, Administrator of the Estate of OMAR MCCULLOUGH #K77858, Plaintiff, <br> v. <br><br> JUSTIN YOUNG, C. WALKER, ANGELA WACHTOR, JUSTIN DUPREY, JANE DOE, WEXFORD HEALTH SOURCES, INC., and NURSE CYNTHIA, <br> Defendants. | Case Number 3:21-cv-00599-DWD <br><br> Judge David W. Dugan |

### DEFENDANTS' MOTION FOR SANCTIONS

COME NOW Defendants WEXFORD HEALTH SOURCES, INC., CYNTHIA ROSS, R.J. DUPREY, COURTNEY WALKER, JUSTIN YOUNG, and ANGELICA WACHTOR, by and through their attorneys, CASSIDAY SCHADE LLP, and for their Motion for Sanctions in accordance with FRCP 11, 28 USCS § 1927, and/or Illinois Supreme Court Rule 137, state as follows:

### PRODECURAL HISTORY

1. Plaintiff filed this lawsuit on June 16, 2021. (Doc. 1).

2. Plaintiff's original expert deadline in this case was December 30, 2022. (Doc. 63).

3. On December 30, 2022, the parties jointly moved for an extension of time to complete discovery as discovery motions were pending and additional party depositions were needed. This motion was granted, and Plaintiff's expert deadline was extended to May 31, 2023. (Doc. 97).

4. On March 31, 2023, Plaintiff filed another Motion for Extension of Time seeking to extend discovery to August 11, 2023, which Defendants did not object to, and the Court granted. Plaintiff did not seek an extension of her expert disclosures and did not produce an expert disclosure. (Doc. 122).

5. On May 31, 2023, Plaintiff filed another Motion for Extension of Time seeking, in part, to extend her overdue expert disclosures to July 31, 2023, which Defendants did not object to, and the Court granted. (Docs. 133-134).

6. July 31, 2023 came and went with no expert disclosure or motion for extension of time.[1]

7. On September 26, 2023, Plaintiff filed a Motion to Compel. In her Motion, Plaintiff proffered "Wexford revealed to Plaintiff, for the first time, that Wexford's executives had avoided the use of email to communicate about the information in the Lippert reports, and instead had communicated about the Lippert reports by holding meetings." Plaintiff also proffered, "[u]pon learning that Wexford executives used meetings to avoid communicating about the Lippert reports via email..." (Doc. 146). These statements are complete fabrications.

8. Furthermore, Plaintiff falsely proffered "Wexford has not produced a single document in response to Plaintiff's written discovery." (Doc. 146, p. 6).

9. Immediately upon reviewing such false statements, undersigned counsel emailed Plaintiff's counsel as follows:

> The following excerpts from your motion to compel are fabrications. I have not said that Wexford executives "avoided the use of email." You can make whatever argument you want but saying that my client made this statement to you is false and highly inappropriate. You are publicly filing false statements about myself and my client, in a perceived attempt to improperly damage our relationship. Amend this motion to be forthright with the Court. If you do not remedy this misrepresentation, we will seek relief from the Court and all future communication between us will need to be in writing.

10. Instead of amending the motion, Plaintiff's counsel filed a supplement partially addressing undersigned counsel's concerns. (Doc. 147).

---

[1] After a series of extensions of time, on July 31, 2023, the parties submitted their joint report on outstanding discovery issues. (Docs. 136-141).

2

11. On September 28, 2023, Plaintiff filed an unopposed Motion to Stay and Continued Expert Discovery, which was granted, and the Court ordered the parties submit a joint status report for the completion of discovery. (Docs. 149-150).

12. Meanwhile, Defendants continued to attempt to address Plaintiff's discovery disputes. The parties participated in numerous communications and Defendants supplemented discovery to address Plaintiff's concerns. After numerous extensions of time, on December 8, 2023, the parties submitted a Joint Report to the Court as to their positions on the outstanding discovery. (Exhibit A, Discovery Dispute Letter and Attachments).

13. The Joint Report explained,

> For the *Lippert* meetings invitations issue, I want to confirm your offer to resolve this issue. If we conduct a third review of the Lippert ESI protocol results for meeting invitations responsive to interrogatories #15-18 in *Wiley* and #16-19 in *Reed*, and supplement these interrogatories with the date, subject, and invitees for each meeting, will this resolve written discovery on meeting invitations/meeting dates. In other words, there will be no further written request or demand by Plaintiff to review/conduct Lippert ESI again or conduct further investigation/production as to the dates, subject, invitees, etc. related to Lippert meetings.
> If so, we may be able to come to an agreement to avoid additional briefing on the issue and move forward in discovery but I need to be clear on the agreement to confirm with my client.
> Despite Plaintiff's original optimism that this proposal "would go a long way to resolving this," last night Plaintiff declined continued discuss[ion] of this proposal and seeks Defendant conduct further investigation into when Lippert meeting occurred and who was in attendance/invited.

14. On February 14, 2024, the Court entered the Amended Scheduling Order setting fact discovery to close on April 15, 2024. (Doc. 170).

15. On March 1, 2024, Plaintiff filed yet another Motion to Compel, falsely alleging "Plaintiff has also offered to confine the meetings to the various electronic 'invitations' that Wexford's counsel reviewed (but did not produce) as part of the ESI discovery in this case." (Doc. 173, p. 8).

3

16. Undersigned counsel promptly contacted Plaintiff's counsel about these false representations and the parties conducted a meet and confer on March 6, 2024. (Ex. A).

17. On March 7, 2024, Plaintiff filed a Motion to Withdraw the Motion to Compel, stating the issues were resolved after Plaintiff filed the Motions, instead of taking accountability for filing motions that were blatantly wrong or clarifying the false statements about Defendants and their counsel. (Doc. 174).

18. Given the repeated and escalating nature of the misrepresentations, on March 12, 2024, undersigned counsel propounded a letter to Plaintiff's counsel's firm addressing a pattern of false and/or misleading representations in this case (and *Reed*) in an attempt to undermine counsel's relationship with her client and reputation with the Court. (Ex. A).

19. On the evening of the deadline to complete fact discovery, April 15, 2024, Plaintiff sought yet another extension of two more months of fact discovery and an unknown amount of time for the remaining deadlines, including expert disclosure deadlines. (Doc. 176). Defendants objected but Plaintiff's Motion was granted, and fact discovery closed on May 27, 2024. (Docs. 177; 182). The Court ordered the parties to confer and provide an amended scheduling order and warned that "[a]bsent extraordinary circumstances, the Court will not allow further extensions of time." (Doc. 182).

20. On May 28, 2024, Plaintiff filed yet another Motion for Extension of Time seeking another month of fact discovery and an unknown amount of time for the remaining deadlines, including expert disclosure deadlines. (Doc. 183).

21. On June 7, 2024, the Court denied Plaintiff's Motion for Extension of Time to Complete Fact Discovery. (Doc. 188). Except for one class of documents, fact discovery had closed. The Court ordered a proposed scheduling orders for the remainder of discovery.

4

22. Dr. Schmidt was retained by Plaintiff in June 2024. (Exhibit B, Portion of Dr. Schmidt's Deposition Transcript, p. 9-10).

23. On June 17, 2024, Plaintiff and Defendants provided the Court proposed scheduling and discovery orders. Plaintiff's proposed amended scheduling order specifically surrendered Plaintiff's rebuttal discovery in order to obtain additional time for her expert disclosures. (Exhibit C, Plaintiff's Proposed Amended Scheduling Order).

24. On June 24, 2024, the Court adopted Plaintiff's proposed scheduling and discovery order. (Doc. 189). Accordingly, Plaintiff's expert reports were due on August 5, 2024 and no rebuttal discovery was allotted for. *Id.*

25. At 11:26pm on August 5, 2024, Plaintiff emailed their 26(a)(2) disclosures, identifying Dr. Schmidt and Dr. Venters but supplied no reports. Plaintiff did not identify Dr. Shansky, Dr. Saylor, or RN Hewitt in her 26(a)(2) disclosures.

26. Plaintiff did not seek an extension of time for her expert disclosures.

27. Plaintiff indicated the reports would be provided on August 6, 2024, at noon, but Defendants did not receive any expert reports at noon on August 6, 2024.

28. Because the deposition required extensive travel, prior to the disclosure deadline, the parties agreed that Dr. Schmidt's deposition would be conducted on August 15-16, 2024, in Missoula, Montana. Counsel for Defendants was scheduled to travel to Missoula on August 14th.

29. Plaintiff did not seek an extension of time for their expert disclosures, likely suspecting it would be denied.

30. At 10:41 pm on August 6, 2024, Plaintiff produced a report by Dr. Schmidt, but no list outlining her testimony history and no report whatsoever by Dr. Venters.

31. Plaintiff finally produced Dr. Venters' written reports (at 11:40am) on August 7, 2024, two days after Plaintiff's deadline.

32. Given only four business days were left between Plaintiff's untimely disclosures and counsel traveling to Montana, on August 7, 2024, Defendants filed an Urgent Motion to Strike Plaintiff's untimely 26(a)(2)(B) disclosure. (Doc. 190).

33. On August 7, 2024, Plaintiff's counsel emailed undersigned counsel stating, Plaintiff "propose that given the delay in submitting the reports to you, your deadlines for filing responsive expert reports could be extended from the current October 5 deadline to October 7, with no changes to any other deadlines."[2] (Doc. 205, Exhibit A, Communications Regarding Plaintiff's Offer). Undersigned counsel responded, "October 5 is a Saturday, so the deadline is October 7, but the larger picture is this doesn't resolve the issue with the depositions next week or other issues mentioned in the motions." *Id*.

34. Dr. Schmidt was deposed in this matter on August 16, 2024.[3] At or shortly prior to her deposition, Dr. Schmidt produced documents and publications for the first time. First, Dr. Schmidt produced a 22-page "timeline and thoughts" that was not provided with Plaintiff's disclosures. Second, Dr. Schmidt testified that she timely provided publications to Plaintiff's counsel, and she was unaware that Plaintiff withheld them from her disclosures. Third, during her deposition, Dr. Schmidt produced for the first time internet inquiries she wholly relied on for her cancer doubling time opinions in this case. (See Defendants' Renewed Motion to Strike Plaintiff's 26(a)(2)(B) Disclosure, Doc. 197).

---

[2] Ms. Makar was included on these exchanges.

[3] Defendants note that continuing Dr. Schmidt's deposition was not an option provided to Defendants at the time. At Dr. Schmidt's deposition, Mr. Weil for Plaintiff, informed undersigned counsel for the first time that he would be leaving Loevy/Loevy. He subsequently requested to continue Dr. Venters' deposition and only then moved to continue the remaining deadlines due to his departure.

6

35. On September 25th and 26th, Defendants deposed Dr. Venters concerning his untimely produced report. While Dr. Venters did not produce new materials at his deposition, Dr. Venters identified a spreadsheet that Plaintiff's counsel provided that contained summaries and descriptions of care provided to 25 non-party prisoners. Based on that spreadsheet, Dr. Venters selected 14 patients' records to review in this case because the spreadsheet suggested their care was "relevant." Yet, this spreadsheet was not produced until after his deposition.

36. On October 22, 2024, Defendants renewed their Motion to Strike Plaintiff's 26(a)(2)(B) disclosures given the additional discovery violations learned during the deposition of Dr. Schmidt and Dr. Venters. (Doc. 197).

37. In her response, Plaintiff falsely proffered to this Court that she emailed undersigned counsel and offered a two-day extension of their deadline to depose Plaintiff's experts in exchange for Defendants' withdrawal of their Motion to Strike. (Doc. 201). Plaintiff's counsel further proffered to this Court that "Defense counsel rejected the offer." *Id.*

38. Discovery closed on November 18, 2024. (Doc. 194).

39. On November 18, 2024, Plaintiff emailed their 26(a)(2)(C) disclosures, identifying Dr. Ron Shansky, Dr. Karen Saylor, and Mr. Larry Hewitt, concerning the 2014 *Lippert* Report and indicating only that they would testify consistently with the opinions contributed to and authored in it, including knowledge of and expert opinions on the methodology implemented by the medical investigation team. (See Doc. 207, Exhibit E, Plaintiff's November 18, 2024 Disclosure).

40. On the same day, undersigned counsel emailed Plaintiff's counsel, providing both objections to the late disclosures and the *Lippert* Orders barring these same individuals from testify in any other case.[4]

41. The next day, Plaintiff's counsel simply responded, "We will not be withdrawing these disclosures." Thus, undersigned counsel responded, "Please provide a substantive response in regard to the fact that these witnesses have been barred from testifying."

42. Plaintiff's counsel's response lacked an understanding of the nature of the *Lippert* Order; thus, on November 20, 2024, in yet another attempt to avoid this Motion, undersigned counsel provided Plaintiff's counsel with additional *Lippert* holdings that soundly rejected Plaintiff's position.[5] Yet, the same day, Plaintiff's counsel responded, "We will not be withdrawing our disclosures," ending the discussion.

43. On November 27, 2024, Defendants filed a Motion to Strike Plaintiff's improper and untimely November 18, 2024 disclosures. (Doc. 207).

---

[4] "Counsel, setting aside the fact that Plaintiff's expert disclosures in this case and *Wiley* were due months ago and today is the close of discovery, attached please find the Orders in *Lippert* barring the monitors from testifying in another matter. See Doc 244, par. 1b and Doc. 593, par. 1c. As these individuals are barred from testifying in any case but *Lippert*, they could not testify as non-retained experts in this case, even if they were timely disclosed.
Please advise by the close of business tomorrow if you are withdrawing these disclosures. I will note that if we must file yet another Motion to Strike, we will seek attorneys' fees.
Please advise if you have any questions."

[5] "Getting back to the *Lippert* monitors disclosed as non-retained experts on the last day of discovery, please review the declaration of Dr. Shansky on this very issue that he "would not have accepted the appointment [] if [he] had believed that, in spite of the clear language of the Order, [he] could be subpoenaed for documents or testimony..." (*Lippert v. Baldwin*, Case No. 10-C-4603, Doc. 110-4). In that instance, the *Lippert* Court denied leave to intervene to modify the order of appointment and held that to "conclude Dr. Shansky should be allowed to be deposed [] in an unrelated case would be contrary to the plain language of [Rule 706] and this Court has no discretion to ignore the plain language of Rule 706." (*Lippert v. Baldwin*, Case No. 10-C-4603, Doc. 110-3, p. 10).
This is a settled issue. I am trying to avoid unnecessary litigation and expense. Please review the orders we have sent you and have referred to and advise if this changes your stance or if you have questions that can be addressed on a meet and confer. Alternatively, please advise if you are unwilling to withdraw the disclosure simply because of our pending Motion to Strike untimely retained expert reports/opinions."

8

44. Amongst other issues, in her response, Plaintiff's counsel falsely proffered to this Court that: 1) there was prior testimony from Dr. Shansky, 2) Defendants have this prior testimony, and 3) such testimony is why Defendants did not depose Dr. Shansky in this case. (Doc. 224).

45. Undersigned confirmed with both Wexford and counsel for Wexford in *Lippert,* that no such prior testimony was available. Undersigned counsel then requested Plaintiff's counsel remedy this misrepresentation to the Court. Plaintiff's counsel has refused and has failed to provide a good faith basis for these proffers to the Court.

46. This motion, minus this paragraph #46, was served on Plaintiff's counsel on June 6, 2025. (Exhibit D, Service of Motion for Sanctions).

## **LEGAL STANDARD**

FRCP 11(b) requires that an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Illinois law has similar requirements. Rule 137.

"The purpose of . . . section 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.,* 886 F.2d 1485, 1491 (7th Cir. 1989) "Sanctions against counsel under 28 U.S.C. § 1927 are appropriate when counsel acted recklessly, counsel raised baseless claims

9

despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013) (quotations omitted). "'Objective bad faith' will support a sanction under § 1927." *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1081-82 (7th Cir. 2018). "A lawyer demonstrates objective bad faith when [he] pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Id.* at 1082 (quotations and citation omitted). "A court has broad discretion using this power." *Id*; *New v. JPMorgan Chase Bank*, N.A., No. 23 Civ. 1016, 730 F. Supp. 3d 851, 2024 U.S. Dist. LEXIS 69942, 2024 WL 1663371 (N.D. Ind. 2024).

## ARGUMENT

Plaintiff's counsel has engaged in a pattern of making knowingly false statements and/or refusing to cure material errors in order to improperly influence the Court. Meanwhile, Plaintiff has failed to comply with the Court's deadlines in order to gain unfair advantages and to prejudice Defendants in this case. Taken collectively, sanctions are warranted to curb Plaintiff's counsel and others from engaging in these improper practices and to protect the rights afforded to defendants in discovery.

### I. Discovery Delays and Violations

Plaintiff filed this lawsuit on June 16, 2021. Plaintiff did not retain an expert for the next three years. Instead, Plaintiff filed motion after motion delaying expert discovery. While Defendants originally joined or did not oppose Plaintiff's motions, it became apparent that Plaintiff filed a claim of a delay in cancer care without consulting any medical professionals and was stalling discovery because she could not find a supportive expert. Plaintiff also repeatedly missed disclosure deadlines, but Defendants did not originally pursue relief. For example, Plaintiff's deadline for expert disclosures was extended to March 31, 2023 (Doc. 99), yet on such date

Plaintiff only moved to extend the mediation date. (Doc. 122). Nonetheless, Defendants did not oppose Plaintiff's May 31, 2023 request to extend her expert disclosures to July 31, 2023. (Doc. 133). Plaintiff missed that deadline as well, and on September 28, 2023, she sought to stay and continue expert discovery. (Doc. 149). Then, when Plaintiff obtained their last expert disclosure extension to August 5, 2024, she missed it. Plaintiff's counsel was aware that the parties had limited availability for expert depositions and, instead of either ensuring she complied with Plaintiff's deadlines or seeking to extent the deadlines from the Court, Plaintiff's counsel unilaterally shifted the burden of Plaintiff's continual delays to Defendants.

Defendants previously filed Motions to Strike Plaintiff's untimely disclosures incorporated herein as if fully stated. (Docs. 190; 197; 207). For the reasons stated therein, Defendants' Motions should be granted. While Plaintiff may argue that she missed her August 5, 2024 expert deadline by a matter of days, the whole story is that after numerous extensions and leave over the course of three years, Plaintiff refused to take the Court's deadlines seriously. Particularly, given the age of the case, missed deadlines, and granted extensions, the fact that Plaintiff did not timely and fully comply with their August 5, 2024 deadlines goes beyond forgivable neglect.

Then, on the last day of discovery, November 18, 2024, Plaintiff improperly disclosed new witnesses, without seeking leave or an extension of time. First, Plaintiff's expert disclosure deadline had passed more than three months before. Second, in order to procure the expert disclosure extension to August 5th, Plaintiff surrendered rebuttal disclosures (although this untimely disclosure cannot rightly be deemed proper rebuttal opinions). When confronted about the disclosure on the last day of discovery, months after the deadline, Plaintiff argued that she is now entitled to rebuttal disclosures without seeking leave of the Court or additional time for

11

rebuttal discovery. Plaintiff's counsel has shown a pattern of making contradictory and/or provably false statement in order to gain unfair advantages and to prejudice Defendants.

Even worse, Plaintiff identified witnesses that she knew were barred from testifying in this case. Plaintiff's counsel had proffered to the *Lippert* court that they would not seek the monitors' testimony for this reason. Plaintiff's counsel either made false representations to the *Lippert* court or failed to comply with their representations to the court.

Plaintiff's eleventh-hour disclosure is nothing more than improper gamesmanship to unnecessarily increase the cost of litigation. Plaintiff clearly conducted no good faith investigation into this disclosure as she would have learned that Dr. Shansky was deceased. Defendants attempted to resolve these late and improper disclosures without Court intervention. Despite Dr. Shansky being deceased, despite Plaintiff's counsel's representations to the *Lippert* court, despite the fact that the witnesses are barred, despite the fact that the disclosure was out of time, despite the fact that Plaintiff surrendered rebuttal discovery, and despite the fact that Plaintiff had absolutely no good faith basis that any identified *Lippert* witness could or would testify in this case, Plaintiff's counsel would not engage in a meaningful discussion. Instead, yet again, Defendants were forced to raised settled legal issues with the Court.

Defendants also note that the timing of these improper disclosures give the appearance of impropriety as they are disclosed at remarkably inopportune times for Defendants. Plaintiff's retained witness disclosures and supplements were produced just days prior to the deposition of Dr. Schmidt and when counsel was traveling. Furthermore, Plaintiff's untimely and improper disclosure of *Lippert* monitors was produced on the last day of discovery, denying Defendants discovery and necessitating Defendants brief another motion when preparing their summary judgment and *Daubert* motions (in this case and *Reed*). Even if the Court determines this pattern

12

in and of itself may not warrant sanctions, in totality with the misrepresentation addressed herein, the Court should grant Defendants' Motion for Sanctions.

## II.  Misrepresentations Made to the Court in Plaintiff's Filings

While Plaintiff's counsel can and should be an advocate for their clients, Plaintiff's counsel has repeatedly made false representations to this Court in order to seek unjust relief or avoid just relief.

### A. Plaintiff's Motions to Compel

In Plaintiff's September 26, 2023 Motion to Compel, Plaintiff made knowingly false representations about communication with Defendant Wexford and its documentation practices. At best, Plaintiff's representations were intentionally vague in order to mislead the Court (and others) to believe that such proffers were made. Plaintiff's counsel at the time, Mr. Weil, was a seasoned attorney and capable of differentiating his communication with counsel from his argument. Such intentionally misleading statements were made to prejudice the Court against Wexford, harm undersigned counsel's relationship with her client, and to publicly smear Wexford. These misrepresentations do not meet the standards of professional conduct.

This is but one example of a pattern of misrepresentations by Plaintiff's counsel to the Court. In the same motion, Plaintiff argued that "Wexford has not produced a single document in response to Plaintiff's written discovery." (Doc. 146). Amongst other discovery, including production of personnel files, guidelines, and other records, the parties previously spent numerous months developing an ESI protocol to identify documents Plaintiff sought in this case. Defendants objected to the ESI protocol and the Court, in ruling on Plaintiff's first Motion to Compel, did not order an ESI protocol. (Doc. 107). Nonetheless, Plaintiff persisted, and Defendants complied to avoid further Court intervention. After spending months preparing the ESI protocol, undersigned

counsel reviewed 3,817 emails, not including attachments. The review constituted 2GB of information and production was made on July 13, 2023. (Ex. A). Telling this Court that Wexford has not produced a single document in response to Plaintiff's discovery is a boldface lie meant to prejudice the Court against Defendants and their counsel.

Not to be discouraged by Plaintiff's previous errors, Plaintiff then filed a Motion to Compel on March 1, 2024, falsely alleging "Plaintiff has also offered to confine the meetings to the various electronic 'invitations' that Wexford's counsel reviewed (but did not produce) as part of the ESI discovery in this case." (Doc. 173). Defendants identified that, in fact, ***Defendants offered*** to search for meeting invitations and ***Plaintiff***, not Defendant, ***refused.*** Fortunately, this correspondence was captured both in email and in the Joint Report to the Court. Instead of clarifying this with the Court, Plaintiff filed a Motion to Withdraw, falsely stating that the issue was resolved after Plaintiff filed her Motion to Compel.

Plaintiff's counsel's misrepresentations became so egregious that undersigned counsel prepared a letter outlining these gross misrepresentations, attacks on counsel and/or her clients, and other hinderances by Plaintiff's counsel that prevented the parties from advancing this case.[6] (Ex A). However, as discussed below, the patterns continued. There has been a clear showing that Plaintiff's counsel is unafraid of being held accountable for lacking candor with the Court.

### B. Plaintiff's Responses to Defendants' Motions to Strike

When Defendants' counsel moved to strike Plaintiff's untimely Rule 26(a)(2)(B) disclosures, Plaintiff's counsel[7] proffered to this Court that she emailed undersigned counsel and offered a two-day extension of their deadline to depose Plaintiff's experts in exchange for

---

[6] For example, the discovery dispute that Plaintiff raised in March 2024, could have been resolved four or more months beforehand.
[7] No longer Mr. Weil.

14

Defendants' withdrawal of their Motion to Strike. (Doc. 201, p. 3). Plaintiff's counsel further proffered to this Court that "Defense counsel rejected the offer." *Id.*

**This did not happen.**

As Defendants outlined in their Reply motion, on August 7, 2024, Steve Weil emailed undersigned counsel stating, Plaintiff "propose that given the delay in submitting the reports to you, your deadlines for filing responsive expert reports could be extended from the current October 5 deadline to October 7, with no changes to any other deadlines."[8] (Doc. 205, Exhibit A). Undersigned counsel responded, "October 5 is a Saturday, so the deadline is October 7, ***but the larger picture is this doesn't resolve the issue with the depositions next week*** or other issues mentioned in the motions." *Id*. emphasis added.

Plaintiff informed the Court that she offered Defendants a remedy that she did not. Plaintiff also informed the Court that Defendants rejected an offer that they did not.

Upon reading such blatant misstatements of objective fact, undersigned counsel contacted Plaintiff's counsel and provided the exact verbiage of the offer made by Plaintiff's counsel. Plaintiff's counsel refused to cure this misrepresentation. Not only is Plaintiff's Response untrue, but also these false statements were specifically made to attack undersigned counsel's credibility and motivation in seeking just relief. Plaintiff's counsel hopes the Court will rely on her misrepresentations to deny Defendants' Motion to Strike.

Then, after untimely and improperly disclosing a deceased witness on the last day of discovery, Plaintiff's counsel falsely proffered to this Court that: 1) there was prior testimony from Dr. Shansky, 2) Defendants have this prior testimony, and 3) such testimony is why Defendants did not depose Dr. Shansky in this case. (Doc. 224). Plaintiff's proffer to this Court that

---

[8] Ms. Makar was included on these exchanges.

15

Defendants chose not to depose Dr. Shansky because Defendants had his prior testimony from *Lippert* is a false statement made for the purpose of improperly influencing the Court's decision. After reading such representation, undersigned counsel conferred with both Wexford and counsel for Wexford in *Lippert,* confirming that no such prior testimony was available. Undersigned counsel then requested Plaintiff's counsel remedy this misrepresentation to the Court.[9] Plaintiff's counsel has refused. Clearly, Plaintiff's counsel fears no accountability for making material assertions about Defendants without a good faith basis in fact or law.

Looking just at the number of times Defendants have had to reach out to Plaintiff's counsel in this case about misrepresentations to the Court about objective facts, there is a serious problem. Then, looking at the subject matter of the misrepresentations, i.e. client communication, discovery agreements, availability of testimony, these are not small issues. These are gross misrepresentations made to prejudice the Court against Defendants and their clients and to mislead the Court on material facts related to pending motions. These patterns have made litigation in this case unnecessarily difficult, unreasonably delayed, unduly expensive, and unnecessarily taxing on judicial resources. Accordingly, Defendants' Motion for Sanctions should be granted. *See Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005)(upholding sanctions against counsel for proceeding on claims "entirely without a factual basis," explaining "cases in which this court has upheld section 1927 sanctions have involved situations in which counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders.")(quoting *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184-85 (7th Cir. 1992).

---

[9] Quite obviously, Dr. Shansky was not deposed because: 1) he was not identified as a witness in this case, 2) he is not a witness in this case, 3) he is barred from testifying in this case, and 4) he passed away and is incapable of being deposed. Arguments to the contrary are absurd and disingenuous at best.

16

### C. Plaintiff's Response to Defendants' Motion for Summary Judgment

As briefed in Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 244), Plaintiff continued to make misrepresentations to the Court to attempt to confuse and mislead the Court to attempt to avoid summary judgment. Plaintiff's misrepresentations include but are not limited to: 1) arguing "[f]or years, Defendants disregarded Omar McCullough…" when no individual Defendant saw Mr. McCullough prior to 2019 and he was sent to the ER in June 2019; 2) arguing that Mr. McCullough was "left in severe pain, with persistent constipation, vomiting, blood in the urine, and nausea for years;" 3) intentionally conflating care provided by non-parties years prior to the allegations against the Defendants (i.e. citing opinions about others in 2016-2017 as the sole support for the claims against Defendants in 2019; 4) arguing Mr. McCullough's death was preventable in 2019 when the individual Defendants saw him (when all oncologists have opined in the opposite); and 5) arguing Defendants waived arguments for the nursing Defendants that were plainly raised.

Furthermore, Plaintiff's counsel repeatedly misrepresented facts and/or holdings in other cases. For example, as outlined in Defendants' Reply, Plaintiff argued that in *Piercy v. Warkins,* 14 CV 7398, 2017 U.S. Dist. LEXIS 62552, 2017 WL 1477959, at *12 (N.D. Ill. Apr. 25, 2017), the court found seven instances could constitute a widespread practice; however, "Dr. Evans reviewed 455 charts of inmates who had been incarcerated in WCJ (Whitehouse County Jail)," and in footnote 4 explains "[i]n 2013, WCJ had an average daily population of 74 detainees." Plaintiff's arguments, both on the objective facts and the law, lack a good faith basis and instead Plaintiff intentionally misrepresents objective facts to this Court. The history of this case shows that these errors are not mistakes but are a pattern of attempting to mislead the Court to attempt to avoid just relief. Not only does this unnecessary increase litigation costs by forcing Defendants to

17

brief each misrepresentation, but also it makes the Court's assessment much more difficult and time-consuming. For the reasons stated herein, Defendants' Motion for Sanctions should be granted.

## CONCLUSION

Defendants have had to brief the Court on Plaintiff's numerous, objectively false statements about counsel's communications, about the objective facts in Mr. McCullough's care, the documents produced in this case, holdings in other cases, the existence of testimony, Plaintiff's expert's own testimony, untimely disclosures, depositions by ambush, deceased/barred witnesses, etc. Plaintiff's counsel decided to make this case about delaying discovery to attack Defendants and their counsel and exponentially increase the cost of litigation, instead of the actual facts of Mr. McCullough's care when the named Defendants treated him. This is clearly a strategy choice to prejudice Defendants, confuse the Court, and make litigation as expensive as possible, all to leverage a case alleging Defendants did not cure terminal cancer.

Whether under FRCP 11 or 28 USCS § 1927, the Court should sanction Plaintiff's counsel for behaviors that only serve to increase frivolous and/or unnecessary litigation, increase the cost of litigation, and abuse the resources of the Court. The duration and degree of Plaintiff's counsel's disregard for the Court, basic tenets of litigation, and fundamental fairness cannot be ignored. As such, Defendants seek sanctions against Plaintiff's counsel, including striking the identified pleadings and an amount to be determined by the Court.[10]

---

[10] Defendants note that these issues are not isolated to a specific attorney but have spanned years and attorneys from Plaintiff's counsel's firm. Defendants have made these issues known, yet they continued. Thus, although Mr. Weil's behavior in this case is deeply troubling, these issues cannot rightly be assessed ***only*** against him.

WHEREFORE, for the aforementioned reasons, Defendants pray this Court grants their Motion for Sanction, sanction Plaintiff's counsel in accordance with the above, and for any further relief the Court deems just.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ Jaclyn A. Kinkade
One of the Attorneys for Defendants
WEXFORD HEALTH SOURCES, INC.,
CYNTHIA ROSS, R.J. DUPREY, COURTNEY
WALKER, JUSTIN YOUNG, and ANGELICA
WACHTOR

Jaclyn A. Kinkade
ARDC No. 6333722
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
jkinkade@cassiday.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2025, the forgoing was filed with the Court with service to the following:

ATTORNEYS FOR PLAINTIFF:
Jon I. Loevy
Maria Makar
Gianna Gizzi
Loevy & Loevy
311 N. Aberdeen Street, Third Floor
Chicago, IL 60607
jon@loevy.com
makar@loevy.com
Gizzi@loevy.Com

/s/ Jaclyn A. Kinkade