

**From:** Linnenbrink, Miranda M. <mlinnenbrink@cassiday.com>
**Sent:** Tuesday, March 12, 2024 3:31 PM
**To:** jon@loevy.com; Steve Weil <weil@loevy.com>; makar@loevy.com
**Cc:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Wiley v. Wexford Health Sources, Inc., et al. ; 3:21-cv-00599-DWD - Discovery Dispute Letter to Plaintiff

Good afternoon! The attached the being sent on behalf of Jaclyn Kinkade. If you have any questions, please reach out to Jaclyn directly.

Thank you,

**Miranda Linnenbrink** | Paralegal
Cassiday Schade LLP | Phone: 314.655.4715 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

CASSIDAY SCHADE LLP

CASSIDAY SCHADE LLP ST. LOUIS
100 NORTH BROADWAY, SUITE 1580    ST. LOUIS, MISSOURI 63102
OFFICE 314 241 1377    FAX 314 241 1320    CASSIDAY.COM

March 12, 2024

**JACLYN A. KINKADE**
WRITER'S DIRECT DIAL 314-655-4709
JKINKADE@CASSIDAY.COM

Jon I. Loevy, Esq.
Stephen H. Weil, Esq.
Maria Makar, Esq.
Loevy & Loevy
311 North Aberdeen Street
Third Floor
Chicago IL 60607
(312) 243-5900
(312) 243-5902 (Fax)
jon@loevy.com
weil@loevy.com
makar@loevy.com

Re:    KEYANA WILEY, Administrator of the Estate of OMAR MCCULLOUGH #K77858 v. JUSTIN YOUNG, C. WALKER, ANGELA WACHTOR, JUSTIN DUPREY, JANE DOE, WEXFORD HEALTH SOURCES, INC., and NURSE CYNTHIA
Court No.:    3:21-cv-00599-DWD
Our File No.:    048792/21061/TPD/JAK

Dear Mr. Weil:

This letter is in response to your email sent during the evening hours of March 7, 2024. This letter is also in response to your pattern of false representations to the Court about my client and myself in both *Reed* and *Wiley*. This letter is intended to clearly set out what is unacceptable behavior that if it persists will be the subject of a request for sanctions.

**Correspondence re Lippert Meetings**

On October 19, 2023, my client attested under oath as follows:

*Defendant has conducted numerous internal meetings and meetings with IDOC over the past decade to address the 2014 Lippert report. Inasmuch as cancer and life-threatening conditions are addressed in the Lippert report, these meetings may have related in part to diagnoses of cancer and other life-threatening conditions for IDOC inmates. Defendant does not maintain lists of such meetings and, therefore, cannot confirm which of the numerous meetings particularly discussed the untimely diagnoses of cancer and other life-threatening conditions. However, such meetings were conducted for the purpose of defending litigation, in anticipation of litigation, and with/at the direction of counsel. Additionally, any meetings that were conducted with the IDOC relating to reviewing, investigating, analyzing, uncovering, preventing, or determining the prevalence of deficiencies described in the 2014 Lippert report were done pursuant to the joint defense – common interest-*

ATTORNEYS AT LAW          ILLINOIS          INDIANA          MISSOURI          WISCONSIN



March 12, 2024
Page 2

> *agreement with the IDOC; thus, any subjects discussed or documents discussed/prepared at (or as the result of) the meetings are privileged.*

(Enclosed Answer to Plaintiff's Second Set of Interrogatories).

We conducted a discovery dispute call where you claimed if my client amended the answer expressly stating whether there was a business purpose it would resolve the issue. We also discussed the self-critical and deliberative process privileges. On October 26, 2023, you sent a lengthy email including the following excerpts:

> *The log asserts only attorney work product privilege for the remaining document (Log no. 11). I explained to you that as to the 8 documents, dual-use was indicated (i.e., documents used for a legal purpose (attorney-client / work-product) and a non-legal purpose (a purpose covered by the deliberative process and self-critical analysis privilege). You disagreed. We are at issue as to that question...*

> *Third, each of the interrogatories asked Wexford to state whether each of the responsive meetings had a "legal purpose" (subparagraph c), and also to state whether the meetings had a "business purpose" (subparagraph d). The interrogatories define both "legal purpose" and "business purpose". Your interrogatory responses state that each meeting had a legal purpose (viz. that each meeting was "conducted for the purpose of defending litigation, in anticipation of litigation, and with/at the direction of counsel.") The interrogatory responses do not state whether any of the meetings also had a business purpose (i.e., whether they had a dual purpose--a legal purpose and a business purpose). As I understand it, you agreed to revisit this issue with Andy Ramage, who, you said, prepared the interrogatory responses. Please confirm. We ask that the interrogatory responses be amended to respond to subparagraph "d" of each of the interrogatories, and state whether any responsive meetings had a business purpose (in addition to or instead of a legal purpose).*

(Enclosed October 2023 Emails). The next day, I responded as follow:

> *The objections in the privilege log are not a description of the documents. They are legal objections made to preserve and not waive. The description of the type and purpose of the documents is given through testimony under oath by Wexford in the interrogatory answers. The purposes of the meeting/documents made therefrom was in defense of litigation with or at the direction of counsel. I agreed to ask Andy Ramage about your request to supplement the interrogatory answer concerning whether there was a business purpose, but the definition of business purpose in your interrogatory said a "non-legal" purpose and thus I believe the answer clearly states that the meeting were for a legal purpose. I explained to you that mortality reviews, peer reviews, etc. were performed separately.*

> *It is not my understanding of the law that a self-critical or deliberative process objection requires the documents be created for a business purpose. If you have any caselaw on this issue, stating that they cannot be used for documents created at the direction/assistance of counsel in defense of litigation, then I will review for potentially removing the self-critical and/or deliberative privileges, but none of my experience or research confirms your position. In fact, I found many cases where work product, self-critical, and deliberative privileges were lodged together. This is because, as held in the case you cite, while they could apply to internal processes and review, it also protects "other documents containing an organization's self-critical analyses." Lund v. City of Rockford, No. 17 CV 50035, 2017 U.S. Dist. LEXIS 196202, 2017 WL 5891186, at \*4 (N.D. Ill. Nov. 29, 2017). As mentioned on the call, as essential component of defense of litigation is assessment of the allegations and, in Lippert, it was claims about the 15 major services provided by the IDOC. If you will be arguing that lodging self-critical or deliberative process privileges means that the documents were prepared for a non-legal purpose, I will need the caselaw from you in advance of our call to meaningfully consider withdrawing the objection because I have been unable to find any law to support this argument- and the documents were not prepared for a non-legal purpose.*

March 12, 2024
Page 3

> You referenced Green on our call.  I am not entered so I conducted a review and it appears the privilege at issue in Green was IMSA (not alleged at this time), which is expressly applied to documents "used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation."  Thus, Sarah argued that the documents were dual privilege and should be produced.  That argument did not win the day.  Instead, Judge McGlynn denied application of IMSA (again not at issue at this time) and then found insufficient information was provided for the work product objections.  Green v. Meeks, 2023 U.S. Dist. LEXIS 17092, *13, 2023 WL 1447817.  These are also different documents.

> There are no dual purpose documents at issue.  These meeting and documents were prepared in defense of litigation at the direction of or with the assistance of counsel.  Furthermore, I do not think you are using the term dual purpose appropriately and dual purpose documents can still be privileged.  "According to the Seventh Circuit, a dual purpose document, one prepared in anticipation of litigation and for another purpose as well, is work product only if the primary motivating purpose behind [its] creation is to aid in possible future litigation."  Smith-Brown v. Ulta Beauty, Inc., No. 18 C 610, 2019 U.S. Dist. LEXIS 108021, 2019 WL 2644243, at *1 (N.D. Ill. June 27, 2019) (citing Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1119 (7th Cir. 1983)).  These documents were prepared for the purpose of responding to ACTIVE litigation, not in anticipation of future litigation.  Nonetheless, should you believe that based on my objection somehow the documents transformed into some additional purpose (without fact or law that I've been made aware of), the primary purpose of the documents on the privilege log was undeniably responding to the class action lawsuit, as attested to…

> I haven't been able to attempt to filter for Lippert meeting email invites (vs regular emails) and review for burden from the Lippert ESI (I already reviewed once) because of the amount of time allocated to our hour and a half call yesterday and this email chain afterward. I will have to follow up. I don't believe invites are responsive to RFPs so they wont be produced but my understanding is you want me to look to see if they say who attended and then supplement the interrogatories.  As referenced above, wouldn't an easier way to avoid all of this be to simply ask who were the executives that oversaw the reviews for cancer care/life threatening conditions mentioned in Lippert?  It would be much more reliable and less burdensome than review of meeting invitations from an ESI.  You referenced testimony you have from Dean, so you proffer to have some of this information already, but if this will resolve the meeting minutes/notes/attendees issue then I will inquire about a supplemental response of this nature.

*Id.*  On November 9, 2023, we held another meet and confer and you followed up with the following:

> Jaclyn I'm writing to follow up on our call today, to make sure we are on the same page regarding two positions you articulated on the call.

> First, my understanding is that in the event of a Rule 30 / Rule 30(b)(6) deposition going to the same topics as Plaintiff's Sept. 27 interrogatories, a witness would testify that meetings among Wexford executives to address the criticisms in the Lippert report did occur; but that the witness would be instructed not to answer questions about the substance of any such meetings because Wexford takes the position that the substance of any such meetings is privileged under the attorney client and attorney work-product doctrines.  Please confirm I understand your position correctly.

> Second, Wexford takes the position that none of the Lippert meetings or communications connected with those meetings, were dual-purpose, i.e., having both a legal purpose and a business purpose as we have described those terms in the Sept. 27 interrogatories.  Please confirm I understand your position correctly.

(Enclosed November 9, 2023 Email).  The following day, I confirmed your understanding of both issues.

March 12, 2024
Page 4

Over the following weeks, you requested several extensions of time to prepare the Joint Report to the Court. I also inquired about production of records from the IDOC as we had received no responses from the IDOC subpoena in *Wiley* (which was propounded after disclosure of IDOC records in *Reed*). To date, we have not received a full response as to the IDOC production in each case.

On November 30, 2023, you sent a lengthy email including the following:

> **Wexford's refusal to produce Lippert meeting invitations**. *(Wiley ECF 146 at 8-9). We disagree with, but will not contest in Wiley, Judge McGlynn's ruling that our discovery requests do not cover meeting invitations. Instead, however, in our 9/27/23 interrogatories to Wexford, we have asked specifically that Wexford provide information regarding meetings. We therefore ask that Wexford agree to identify responsive meetings indicated among the ~2,000 documents produced for review, in response to the 9/27/23 interrogatories.*

(Enclosed November 30, 2023 email). We conducted another meet and confer, and on December 5, 2023, I responded, including the following:

> **[In response to the section of your email identified as] Wexford's refusal to produce Lippert meeting invitations**. *I am circling back to my client on this. Since the Court denied this part of your motion and as I thought we resolved it with the supplemental rog response, I had not addressed it with them again. However, we have reviewed the Lippert ESI twice now already. I'll follow up though.*

*Id.* Again, on December 6th, I inquired as to our agreement:

> *For the Lippert meetings invitations issue, I want to confirm your offer to resolve this issue. If we conduct a third review of the Lippert ESI protocol results for meeting invitations responsive to interrogatories #15-18 in Wiley and #16-19 in Reed, and supplement these interrogatories with the date, subject, and invitees for each meeting, will this resolve written discovery on meeting invitations/meeting dates. In other words, there will be no further written request or demand by Plaintiff to review/conduct Lippert ESI again or conduct further investigation/production as to the dates, subject, invitees, etc. related to Lippert meetings.*
>
> *If so, we may be able to come to an agreement to avoid additional briefing on the issue and move forward in discovery but I need to be clear on the agreement to confirm with my client.*

*Id.* On December 7th, I followed up: "*Please include your proposed language for the agreement on the meeting invitations and I'll pass it by my client in the morning.*" *Id.*

During the evening of December 7, 2023, you reneged on the agreement to resolve the meeting invitations interrogatory by amendment. Thus, in our Joint Report to the Court the following day we stated:

> *In the recent discovery dispute conferences related to meeting invitations/dates/attendees, Plaintiff asked Defendant to review the ESI a third time to locate any Lippert meeting invitations concerning the scope of Plaintiff's (September 27, 2023) interrogatories and, if there were any, to supplement the interrogatory answers with the dates, attendees, and subject of the meeting in the invitation. Defendant was originally hesitant to perform the same review a third time, not just because of the duplicative efforts and costs, but also because it seemed that each time Defendant agrees to take action to resolve a discovery dispute, the results are unsatisfactory and Plaintiff raises new disputes, not previously requested. However, significant time has been undertaken concerning Plaintiff's Lippert requests and, in an effort to move forward, on December 6, 2023, Defendant sent the following to Plaintiff:*

March 12, 2024
Page 5

> For the Lippert meetings invitations issue, I want to confirm your offer to resolve this issue. If we conduct a third review of the Lippert ESI protocol results for meeting invitations responsive to interrogatories #15-18 in Wiley and #16-19 in Reed, and supplement these interrogatories with the date, subject, and invitees for each meeting, will this resolve written discovery on meeting invitations/meeting dates. In other words, there will be no further written request or demand by Plaintiff to review/conduct Lippert ESI again or conduct further investigation/production as to the dates, subject, invitees, etc. related to Lippert meetings.
> If so, we may be able to come to an agreement to avoid additional briefing on the issue and move forward in discovery but I need to be clear on the agreement to confirm with my client.

> Despite Plaintiff's original optimism that this proposal "would go a long way to resolving this," last night Plaintiff declined continued discussed of this proposal and seeks Defendant conduct further investigation into when Lippert meeting occurred and who was in attendance/invited. This begs the question if the Lippert ESI that Plaintiff requested is not sufficient to resolve this issue, why did Plaintiff insist on a Lippert ESI protocol (with terms Plaintiff selected).

(Enclosed Joint Report); (Enclosed December 7, 2023 Email and March 5, 2024 Response).

In the following months, we consented to extensions of time, received over 10,000 pages of IDOC documents with no context, and followed up about information regarding this production, outstanding discovery responses from Plaintiff, and missing *Lippert* ciphers. There was no further discussion on the meeting invitations.

On March 1, 2024, you filed a Motion to Compel in *Wiley* and on March 5, 2024, you filed nearly an identical Motion to Compel in *Reed*. Both falsely allege: "*Plaintiffs have also offered to confine the meetings to the various electronic "invitations" that Wexford's counsel reviewed (but did not produce) as part of the ESI discovery in this case.*"

As this was patently and demonstrably false, we promptly emailed you on March 5th addressing this misrepresentation, along with others in your Motions to Compel. *Id.*

We held a meet and confer the following day, March 6th, for an hour and twelve minutes. In this call we raised great concerns with the above misrepresentations and a pattern of such in both cases. We also raised issues with you offering discovery dispute resolutions and then, after we performed our end of the agreement, you reneged on the agreement and demanded more. It should also be noted that your tone is consistently one of condemnation and accusation. Because of this, our offer was clear that a second amended interrogatory answer would resolve this issue. You agreed and we memorialized the agreement in an email the same day:

> To memorialize our call this morning, we will supplement the meeting interrogatories after a third review of the Lippert ESI for information from meeting invitations, in accordance with the December 7, 2023 agreement (and as reflected in the Joint Report in Wiley). Accordingly, you will be promptly withdrawing the Motions to Compel in Reed and Wiley. We will not be producing the meeting invitations but will set them aside.

(Enclosed March 6, 2024 Email).

On March 7th, you filed Motions to Withdraw your Motions to Compel in *Wiley* and *Reed,* stating the issues were resolved ***after*** you filed the Motions, instead of taking accountability for filing motions that were blatantly wrong or clarifying your false statements about myself and my client.

March 12, 2024

Page 6

Yet, in the evening of March 7, 2024, you sent a long, accusatory email attempting to resurrect issues that should have been resolved 5 months ago and that we agreed were resolved the day prior.

You first state:

*On our call yesterday you told me that Wexford was amending the Nov. 22, 2023 privilege log to eliminate assertions of self-critical analysis privilege and deliberative process privilege.  That change, which is one of multiple changes in Wexford's position about the purpose of its internal communications about the Lippert reports requires clarification.  I'll note that these evolving positions are making it difficult for us to conduct discovery in an orderly manner, as we continually have to adjust to changing representations by Wexford about how it responded to the Lippert reports.*

Here again, your accusations are demonstrably false.  Our position has remained the same and was explained in detail in my October 28, 2023 email above, where I both explained how lodging privileges work and caselaw concerning the privileges, but expressing a willingness to withdraw the self-critical and deliberative privileges if they were causing you confusion.

To be clear, our position has not shifted one iota.  No privilege I have lodged here is solely used for business records. No privilege I have lodged here waives attorney client communication or work product.  Again, I told you this numerous times over several months. Your pretense of confusion is only an insistence in disregarding everything I have said for months. A pattern that has resulted more than once in you filing misrepresentations to the Court. Nonetheless, in order to resolve the issue (as I keep trying to do) and as those two privileges have not been applied in federal cases there is no point in arguing over them, I again agreed to withdraw them.  Nothing has changed.

You then raise a series of questions to five-month-old objections to the meeting interrogatories that we just resolved, in an apparent attempt to create new disputes, yet again.  The answers to your questions are outlined above in the numerous communications we have had on these issues.

For the last time, asserting an objection to the scope and demands of your requests reflects the problems with **your request**.  Specifically, my objection to the scope in its entirety and context was:

*Furthermore, Defendant does not maintain such meeting logs and Plaintiff's request demands an expansive investigation into all meetings over a decade, including each date, each attendee, and all documents created or provided therein.  This information is not readily available and such efforts are unduly burdensome and disproportionate to the needs of this case.  It further demands an assessment of each document and communication for its purpose (and improperly assumes that a meeting can only have one purpose).*

(Enclosed Answer to Plaintiff's Second Set of Interrogatories).  As the plain language states, Wexford does not have a log of meeting dates and your request would require a review of all communication related to *Lippert* to see if it indicated a meeting occurred.  In this unwieldy context of investigation, we would have to review an obscene number of records to attempt to locate anything with a meeting date on it.  This makes a meaningful response impossible.  See Judge Daly's Order on your Motion to Compel in *Wiley*. Subject to those objections (and others), my client explained the purpose of the *Lippert* meetings specifically.  So again, you are conflating the investigation into finding records that are not reasonably available and the purpose of the meetings.

Next, you imply the interrogatory was amended for some nefarious or unclear purpose.  As addressed above, the interrogatory was amended because **you demanded it** and (falsely) said it would

March 12, 2024
Page 7

resolve the issue. We amended the answers to be painfully clear that there was no business purpose, yet you reneged on the agreement. There was no change in our position.

With your use of false dichotomies, gaslighting (making untrue statement about our prior communications or history in this case), and demands that I answer differently on behalf of Wexford when Wexford has already answered the interrogatories, it seems apparent there is no candid confusion here and you are trying to improperly twist my objections, my words, and the law, to manufacture an argument that we have waived privileges that we most certainly have not. It is clear to me that your communication on this issue is not to genuinely resolve discovery disputes but an ongoing attempt *to create them* with a resolution not to stop until you have contorted each response enough to argue we have waived my client's rights. As discussed below, this is not the first time it appears you have tried to create a conflict between myself and my client, which is unethical.

The dispositive issue for the meeting invitations is there is no meeting log.

There has been no change in our position, despite your relentless questioning for 5 months. These long, repetitive emails accomplish nothing new and needlessly increase my client's litigation costs. This is exactly why I expressed numerous times, including on December 7, December 8, and last week that we would supplement the answer *only if it ended the issue*.

Per our conversation last week, followed up by email, we are supplementing the answers yet again in order to resolve this issue. Per our agreement, this issue is resolved. This will be the last time that I waste time and resources reiterating the same thing I've said for 5 months.

**Allegations of delay or other improper tactics**

I practice law with integrity and candidness. I have endured many false accusations and personal attacks and will not endure it further. Nearly every filing you submit to the Court is laced with accusations blaming every issue you have had on myself and/or my client.

I am not the reason for your issues.

For example, your email yesterday stated:

*The reality is, however, that our Lippert discovery has been complicated by Wexford's changing factual representations about the nature and purpose of its communications about Lippert, all of which appear designed to fit Wexford's changing understanding of what is most advantageous to it from a legal perspective. These changes are troubling, but for the moment, because those changes have led to the contradictions I have outlined above, we want to understand from you what Wexford's current position is regarding these representations.*

As addressed fully above, this is false. You decided to renege on our agreement in December and took no further action for nearly 3 months, when you filed Motions to Compel claiming myself and my client were refusing to do the exact things we offered to do. This is not the first, second, third, or even sixth time you have made such false statements.

You have made numerous allegations against my clients you know to be untrue. For example, in the Complaint in *Reed,* you allege Dr. Shah denied Mr. Reed outside medical care when he was inpatient at the hospital. This is one of the few misrepresentations you corrected as we were prepared to move on it. In Docs. 56; 58 you made a misrepresentation about your production of medical records. In Docs. 72-73 you claim Mr. Reed died without receiving chemotherapy, when he received chemotherapy. In

March 12, 2024
Page 8

Docs. 81; 88 you claimed Defendant refused to respond to certain discovery requests, which it did not. In Docs. 101; 107 you misrepresent the justification for your request for additional time and claim not to have reviewed Dr. Moriconi's report, but then in Docs. 110; 113 you misrepresent Dr. Moriconi's report (that you allegedly were not going to review).

At first, I assumed there was a lack of thoroughness, but after informing you (and the Court) of repeated demonstrably false statements, the behavior not only continued, but escalated.

You have lied to the Court about myself and my client to intentionally harm our credibility and reputations, with statements like, "Wexford has not produced a single document in response to Plaintiffs' written discovery." (Doc. 139, p. 6).

Perhaps the worst of it was in September, in your last Motion to Compel when you falsely filed a public document stating that:

> *Wexford revealed to Plaintiff, for the first time, that Wexford's executives had avoided the use of email to communicate about the information in the Lippert reports, and instead had communicated about the Lippert reports by holding meetings," and "[u]pon learning that Wexford executives used meetings to avoid communicating about the Lippert reports via email.*

I immediately emailed you that these statements were fabrications and such intentionally misleading public statement about myself and my client was an attempt to improperly damage our relationship. These false statements could also be used against Wexford in other cases. As a seasoned attorney, there can be no question you can appreciate the grave repercussions these statements could have. I demanded you amend the motion to be forthright with the Court and raised concerns about future communications with you. (Enclosed September 26, 2023 Email).

We have had grounds for a Motion for Sanctions for quite some time. We have been extremely lenient as it appears you are having some personal issues. Instead of addressing what has caused this course of conduct, you accuse me of dilatory action or unethical behavior, which is grossly reckless and wholly unsupported by our communications in this case. We will not continue to be dragged through the mud to shield you from your own responsibility. You have blown expert deadlines repeatedly, filed false motions with the Court, failed to timely respond to communication, etc. I could go on, but the purpose of this letter is not to list all your failures. Instead, it is my last effort to show you that your conduct is unprofessional and unethical and informing you that professionalism and honesty is required or we will be forced to seek relief from the Court.

Sincerely,

Cassiday Schade LLP

Jaclyn Kinkade

11769288

**Linnenbrink, Miranda M.**

---

| | |
|---|---|
| **From:** | Kinkade, Jaclyn A. |
| **Sent:** | Tuesday, March 12, 2024 12:09 PM |
| **To:** | Byers, Melissa A.; Wallace, Dina L.; Linnenbrink, Miranda M. |
| **Subject:** | FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order |

Email 1 for Wiley discovery letter.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Sent:** Friday, March 8, 2024 11:15 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A.
**Sent:** Friday, October 27, 2023 2:41 PM
**To:** 'Steve Weil' <weil@loevy.com>
**Subject:** RE: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

To add to the meeting minutes issue, the interrogatory answer also explains that it would be impossible to track down meeting minutes, but yes they would also be privileged.

I am not doing the non-*Lippert* search because we have a disagreement about the scope. I believe this issue was raised in the response to the MTC in *Reed*. I can start if you want but I will be reviewing in accordance with the scope set out by Judge Daly and will object to doing it a second time. Please advise.

The documents produced are not meeting minutes (which would be privileged) but are meeting agendas.

The objections in the privilege log are not a description of the documents. They are legal objections made to preserve and not waive. The description of the type and purpose of the documents is given through testimony under oath by Wexford in the interrogatory answers. The purposes of the meeting/documents made therefrom was in defense of litigation with or at the direction of counsel. I agreed to ask Andy Ramage about your request to supplement the interrogatory answer concerning whether there was a business purpose, but the definition of business purpose in your interrogatory said a "non-legal" purpose and thus I believe the answer clearly states that the meeting were for a legal purpose. I explained to you that mortality reviews, peer reviews, etc. were performed separately.

It is not my understanding of the law that a self-critical or deliberative process objection requires the documents be created for a business purpose. If you have any caselaw on this issue, stating that they cannot be used for documents created at the direction/assistance of counsel in defense of litigation, then I will review for potentially removing the self-critical and/or deliberative privileges, but none of my experience or research confirms your position. In fact, I found many cases where work product, self-critical, and deliberative privileges were lodged together. This is because, as held in the case you cite, while they *could* apply to internal processes and review, it also protects "other documents containing an organization's self-critical analyses." *Lund v. City of Rockford*, No. 17 CV 50035, 2017 U.S. Dist. LEXIS 196202, 2017 WL 5891186, at *4 (N.D. Ill. Nov. 29, 2017). As mentioned on the call, as essential component of defense of litigation is assessment of the allegations and, in *Lippert*, it was claims about the 15 major services provided by the IDOC. If you will be arguing that lodging self-critical or deliberative process privileges means that the documents *were prepared for a non-legal purpose*, I will need the caselaw from you in advance of our call to meaningfully consider withdrawing the objection because I have been unable to find any law to support this argument- and the documents *were not prepared for a non-legal purpose*.

You referenced *Green* on our call. I am not entered so I conducted a review and it appears the privilege at issue in *Green* was IMSA (not alleged at this time), which is expressly applied to documents "used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation." Thus, Sarah argued that the documents were dual privilege and should be produced. That argument *did not* win the day. Instead, Judge McGlynn denied application of IMSA (again not at issue at this time) and then found insufficient information was provided for the work product objections. *Green v. Meeks*, 2023 U.S. Dist. LEXIS 17092, *13, 2023 WL 1447817. These are also different documents.

There are no dual purpose documents at issue. These meeting and documents were prepared in defense of litigation at the direction of or with the assistance of counsel. Furthermore, I do not think you are using the term dual purpose appropriately and dual purpose documents can still be privileged. "According to the Seventh Circuit, a dual purpose document, one prepared in anticipation of litigation and for another purpose as well, is work product only if the primary motivating purpose behind [its] creation is to aid in possible future litigation." *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 U.S. Dist. LEXIS 108021, 2019 WL 2644243, at *1 (N.D. Ill. June 27, 2019) (citing *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)). These documents were prepared for the purpose of responding to ACTIVE litigation, not in anticipation of future litigation. Nonetheless, should you believe that based on my objection somehow the documents transformed into some additional purpose (without fact or law that I've been made aware of), the primary purpose of the documents on the privilege log was undeniably responding to the class action lawsuit, as attested to.

My suggestion for a 30(b)(6) is to get at the substance of what you want because this is not getting anywhere. When meetings occurred doesn't matter and only can cause a lot of run around. What was discussed at each meeting cannot be elucidated. If you want to know who were the main individuals who were involved with review of certain portions of the *Lippert* report, then you could ask that question but that's not what you are asking. You are asking for dates, invites, notes, and all attendees for a decade which is impossible to do and is not probative of anything. Whether they had yearly, quarterly, or weekly meetings, it is of no consequence and I'd be shocked if anyone can tell you what occurred in a meeting in 2014. The outcome of the meetings, as it relates to our topics, are reflected in the documents on the privilege log, but ultimately this is all privileged because it is defense of active litigation. It boggles my mind to spend all this time trying to recreate when meetings occurred for a decade and who was there when we both know that if you ask what was discussed we will object.

I haven't been able to attempt to filter for *Lippert* meeting email invites (vs regular emails) and review for burden from the *Lippert* ESI (I already reviewed once) because of the amount of time allocated to our hour and a half call yesterday and this email chain afterward. I will have to follow up. I don't believe invites are responsive to RFPs so they wont be produced but my understanding is you want me to look to see if they say who attended and then supplement the interrogatories. As referenced above, wouldn't an easier way to avoid all of this be to simply ask who were the executives that oversaw the reviews for cancer care/life threatening conditions mentioned in *Lippert*? It would be much more reliable and less burdensome than review of meeting invitations from an ESI. You referenced testimony you have

from *Dean*, so you proffer to have some of this information already, but if this will resolve the meeting minutes/notes/attendees issue then I will inquire about a supplemental response of this nature.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, October 26, 2023 5:28 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

To follow up on our call.

You are requesting a two-week extension (to Nov. 10) for our report tomorrow in Wiley, because you are taking vacation. We will not oppose that request, but we request that you please provide a copy of the motion in advance.

To make sure we don't have to request yet another extension, I would ask that you be prepared to state your outstanding positions on the discovery issues we discussed on Nov. 6 or 7, and that we schedule a follow-up call for Nov. 7 or Nov. 8, so that we have enough time to complete our report to the court by Friday Nov. 10.

Otherwise, I'm writing to memorialize the discussion on our call today, to confirm where we are at issue.

**Existing motion to compel** (Wiley ECF 146, Reed ECF 139).

The motion to compel covered three areas:

(1) review of documents gathered in response to the Lippert ESI for responsiveness to other discovery requests. You confirmed that we remain at issue.

(2) Production of notes from meetings discussing Lippert. You confirmed that we are at issue. You stated that you would not search for the notes, because they would be privileged in any event, as all the meetings had a legal purpose. We remain at issue.

(3) Production of computerized meeting invitations from among the Lippert documents gathered. You stated that you would search for these documents, if there was some way to do so by isolating MS Office invitations. We are waiting to hear back from you on this one.

You also confirmed that Wexford had completed its production of documents from the Lippert ESI search terms (I do not believe you have conducted a review of the documents gathered for the non-Lippert search terms. **Please confirm**, and provide a date by which that review will be completed.) The production consists of a privilege log listing nine documents, and production of meeting minutes from two meetings between Wexford and IDOC that occurred in 2019. For 8 of the 9 documents listed on the privilege log, the log asserts both attorney client / attorney work-product privileges AND deliberative process / self-critical analysis privilege. The log asserts only attorney work product privilege

for the remaining document (Log no. 11).  I explained to you that as to the 8 documents, dual-use was indicated (i.e., documents used for a legal purpose (attorney-client / work-product) and a non-legal purpose (a purpose covered by the deliberative process and self-critical analysis privilege).  You disagreed.  We are at issue as to that question.

Regarding the asserted privileges themselves--neither the deliberative process privilege or the dual-use privilege protect documents in this case.  The deliberative process privilege applies to governmental entities, not private companies like Wexford.  The self-critical analysis privilege, meanwhile, is inoperative in federal civil rights cases like this one.  *See, e.g.,* Lund v. City of Rockford, No. 17 CV 50035, 2017 WL 5891186 (N.D. Ill. Nov. 29, 2017).  Because both those privileges do not apply in this case, the eight dual-use documents listed in your privilege log are subject to disclosure.  Based on our discussion today I believe we are at issue regarding this matter.  Please correct me if I am wrong; if so let me know where we are not yet at issue.

**Plaintiff's Sept. 27 interrogatories in Wiley and Reed**, concerning certain Lippert meetings.

As I noted, the purpose of these interrogatories was to comport with Judge McGlynn's admonition (made in light of your contention that the Reed plaintiffs should depose persons regarding Wexford's meetings about the Lippert reports) that I should depose Wexford employees who participated in meetings about the Lippert reports.

First, you objected that the interrogatories target privileged information. But I explained that none of the information sought in the interrogatories (essentially, who participated in certain meetings and when they occurred, whether documents were generated, etc.) do not seek the substance of the communications in those meetings.  As such, assuming the communications at the meetings were privileged, the information sought in the interrogatories, which does not seek the substance of the communications, is not.  I believe we are in agreement on this point, but please correct me if I am wrong.

Second, you object that the interrogatories are overbroad because they are not limited in time, that they treat as responsive meetings in which the responsive topics were discussed along with other topics, and that Wexford did not keep "meeting logs."  As such, you object that responding to this part of the interrogatories would require you to search all meetings over a decade.  Instead, you suggested that I provide a Rule 30(b)(6) notice, after which (if I understand you correctly) the targeted meetings could be identified.

I noted (as I had done before) that these interrogatories should be limited to responsive meetings in which senior executives participated.  I also noted that Plaintiff counsel could not know when responsive meetings occurred, but presumably they would have occurred when Wexford executives were assessing the assertions in the reports.  As such, I noted, the number of responsive meetings would likely be limited and more straightforward to find. I noted that many of the meetings could be identified in the documents gathered pursuant to the ESI Protocol.  I also noted that documents generated for or about the meetings (which the interrogatory asks you to identify) could also indicate the purpose of the meetings, as well as their participants.  You responded that you were "not in-house counsel" at Wexford and that as such you were not in a position to identify when such meetings occurred.

In response to your request that I serve a Rule 30(b)(6) notice instead of these interrogatories, I noted that the Rule 30(b)(6) notice would be substantively identical--seeking the same information as the interrogatories.  If I understood you correctly, you stated that responding to such a Rule 30(b)(6) notice would be unduly burdensome as well, even if the Rule 30(b)(6) notice were confined to responsive meetings by senior executives.

As understand it, you are agreeing to search for responsive meeting invites among the Lippert ESI documents that have been gathered, if the invitations can be isolated from other communications using search features.  Please confirm.

Third, each of the interrogatories asked Wexford to state whether each of the responsive meetings had a "legal purpose" (subparagraph c), and also to state whether the meetings had a "business purpose" (subparagraph d).  The interrogatories define both "legal purpose" and "business purpose".  Your interrogatory responses state that each meeting had a legal purpose (viz. that each meeting was "conducted for the purpose of defending litigation, in

anticipation of litigation, and with/at the direction of counsel.")  The interrogatory responses do not state whether any of the meetings also had a business purpose (i.e., whether they had a dual purpose--a legal purpose and a business purpose).  As I understand it, you agreed to revisit this issue with Andy Ramage, who, you said, prepared the interrogatory responses.  Please confirm.  We ask that the interrogatory responses be amended to respond to subparagraph "d" of each of the interrogatories, and state whether any responsive meetings had a business purpose (in addition to or instead of a legal purpose).

Best regards,

Steve
 --
Stephen H. Weil
LOEVY & LOEVY
311 N. Aberdeen
Chicago, IL 60607
Tel:  312-243-5900
Fax: 312-243-5902
weil@loevy.com
he/him


On Wed, Oct 25, 2023 at 1:14 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

Can we do 9:30am?


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Wednesday, October 25, 2023 10:11 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order


**EXTERNAL**


How about 9:00 tomorrow morning?


--

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Wed, Oct 25, 2023 at 6:34 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

I actually won't be able to do a call today but am pretty open tomorrow.

Sent from my iPhone

On Oct 24, 2023, at 6:55 PM, Steve Weil <weil@loevy.com> wrote:

EXTERNAL

That works for me.  I'd also like to talk about the Wiley / Reed interrogatory responses then too.  I'll plan to call you at 3:30.

--

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Tue, Oct 24, 2023 at 5:44 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

I have a depo tomorrow but I can try to do 3:30 if I'm out by then.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image004.jpg>

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, October 24, 2023 12:26 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

Are you available tomorrow for a call?

--

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Thu, Oct 19, 2023 at 10:41 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

FYI I go on vacation the evening of 10/27 so I will not be available after 4pm that day.  I will be gone the following week and will return on 11/6.  Just wanted you to know so you could plan accordingly with our deadlines.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image003.jpg>

Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A.
**Sent:** Tuesday, October 17, 2023 10:05 AM
**To:** Steve Weil <weil@loevy.com>
**Subject:** RE: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

No objection.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image003.jpg>

Illinois | Indiana | Missouri | Wisconsin

---

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, October 17, 2023 8:00 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn can you please advise?  Thanks.

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Mon, Oct 16, 2023 at 9:50 AM Steve Weil <weil@loevy.com> wrote:

Jaclyn,


I have a major hearing in a Louisiana case on Thursday and will be on the road beginning tomorrow to prepare.  That will make it hard to complete our meet-and-confer and prepare a report.  I'd like to request a one-week extension on the 10/20 deadlines in Wiley, to 10/27.  Any objection?


 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him




---------- Forwarded message ---------
From: <ilsd_nef@ilsd.uscourts.gov>
Date: Fri, Sep 29, 2023 at 4:24 PM
Subject: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order
To: <ilsd_nef@ilsd.uscourts.gov>



**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of Illinois**

## Notice of Electronic Filing

The following transaction was entered on 9/29/2023 at 4:23 PM CDT and filed on 9/29/2023

| | |
|---|---|
| **Case Name:** | Wiley v. Wexford Health Sources, Inc. et al |
| **Case Number:** | 3:21-cv-00599-DWD |
| **Filer:** | |
| **Document Number:** | 150(No document attached) |

**Docket Text:**
**ORDER regarding Plaintiff's Unopposed Motion to Stay and Continue Expert Discovery (Doc. 149). On September 27, 2023, the Court denied Plaintiff's Motion to Compel (Doc. 146), without prejudice, because the parties had not complied with the Court's Case Management Procedures. (Doc. 148). The parties were ordered to conduct a discovery dispute conference on or before October 10, 2023, and to submit a Joint Written Discovery Report on or before October 20, 2023. (Doc. 148). Now, the instant Unopposed Motion seeks to stay and continue the expert discovery deadlines in light of the aforementioned ruling. The Unopposed Motion notes that Defendants' expert reports were due September 28, 2023, and all expert discovery is due October 28, 2023. (Docs. 133 & 134). Further, the Unopposed Motion notes that fact discovery relating to the medical events at issue is "essentially complete," but *Monell* discovery relevant to the soon-to-be-submitted Joint Written Discovery Report remains ongoing. Accordingly, the Unopposed Motion is GRANTED. In addition to the requirements already articulated at Doc. 148, the parties are DIRECTED to update the Court on the status of *Monell* discovery and to jointly propose dates for the completion of expert discovery in the Joint Written Discovery Report due on October 20, 2023. Signed by Judge David W. Dugan on 9/29/2023. (jnh)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED.**

**3:21-cv-00599-DWD Notice has been electronically mailed to:**

Jaclyn A. Kinkade &nbsp &nbsp jkinkade@cassiday.com

Jon I. Loevy &nbsp &nbsp jon@loevy.com, melinda@loevy.com

Maria Makar &nbsp &nbsp makar@loevy.com, brooks@loevy.com, feddor@loevy.com

Mediator Donald Wilkerson &nbsp &nbsp dwilkerson@jamsadr.com

Stephen H. Weil &nbsp &nbsp weil@loevy.com, brooks@loevy.com, feddor@loevy.com

Tara Marie Barnett &nbsp &nbsp Tara.Barnett@ilag.gov, gabriela.dale@ilag.gov, gls@ilag.gov, nathan.sloan@ilag.gov

Timothy P. Dugan &nbsp &nbsp tdugan@cassiday.com, mlinnenbrink@cassiday.com

**3:21-cv-00599-DWD Parties and Attorneys without registered email addresses requiring notice by other means:**

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

## Linnenbrink, Miranda M.

**From:** Kinkade, Jaclyn A.
**Sent:** Tuesday, March 12, 2024 12:08 PM
**To:** Byers, Melissa A.; Wallace, Dina L.; Linnenbrink, Miranda M.
**Subject:** FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

Email 2 for Wiley discovery letter.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Sent:** Friday, March 8, 2024 11:18 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A.
**Sent:** Friday, November 10, 2023 9:11 AM
**To:** Steve Weil <weil@loevy.com>
**Subject:** RE: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

You are correct on both accounts.  I do expect that we will provide a supplemental interrogatory answer as you requested concerning the purpose of the Lippert meetings.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 9, 2023 2:50 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn I'm writing to follow up on our call today, to make sure we are on the same page regarding two positions you articulated on the call.

First, my understanding is that in the event of a Rule 30 / Rule 30(b)(6) deposition going to the same topics as Plaintiff's Sept. 27 interrogatories, a witness would testify that meetings among Wexford executives to address the criticisms in the Lippert report did occur; but that the witness would be instructed not to answer questions about the substance of any such meetings because Wexford takes the position that the substance of any such meetings is privileged under the attorney client and attorney work-product doctrines. Please confirm I understand your position correctly.

Second, Wexford takes the position that none of the Lippert meetings or communications connected with those meetings, were dual-purpose, i.e., having both a legal purpose and a business purpose as we have described those terms in the Sept. 27 interrogatories. Please confirm I understand your position correctly.

Thanks,

Steve

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**

Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**

On Thu, Nov 9, 2023 at 8:55 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

I can do 12:30-1:30 today. But in advance I need responses to the questions raised in my 10/27 email to discuss further.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

**CASSIDAY SCHADE** LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 9, 2023 8:13 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn when are you available to meet today?  I have something at 10-10:30 and then a hearing at 1:30 that should go 45 minutes.  Other than that I am open.

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**

Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Fri, Oct 27, 2023 at 2:41 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

To add to the meeting minutes issue, the interrogatory answer also explains that it would be impossible to track down meeting minutes, but yes they would also be privileged.

I am not doing the non-*Lippert* search because we have a disagreement about the scope.  I believe this issue was raised in the response to the MTC in *Reed.*  I can start if you want but I will be reviewing in accordance with the scope set out by Judge Daly and will object to doing it a second time. Please advise.

The documents produced are not meeting minutes (which would be privileged) but are meeting agendas.

The objections in the privilege log are not a description of the documents.  They are legal objections made to preserve and not waive.  The description of the type and purpose of the documents is given through testimony under oath by Wexford in the interrogatory answers.  The purposes of the meeting/documents made therefrom was in defense of litigation with or at the direction of counsel. I agreed to ask Andy Ramage about your request to supplement the interrogatory answer concerning whether there was a business purpose, but the definition of business purpose in your interrogatory said a "non-legal" purpose and thus I believe the answer clearly states that the meeting were for a legal purpose.  I explained to you that mortality reviews, peer reviews, etc. were performed separately.

It is not my understanding of the law that a self-critical or deliberative process objection requires the documents created for a business purpose.  If you have any caselaw on this issue, stating that they cannot be used for documents created at the direction/assistance of counsel in defense of litigation, then I will review for potentially removing the self-critical and/or deliberative privileges, but none of my experience or research confirms your position.  In fact, I found many cases where work product, self-critical, and deliberative privileges were lodged together.  This is because, as held in the case you cite, while they *could* apply to internal processes and review, it also protects "other documents containing an organization's self-critical analyses." *Lund v. City of Rockford*, No. 17 CV 50035, 2017 U.S. Dist. LEXIS

3

196202, 2017 WL 5891186, at *4 (N.D. Ill. Nov. 29, 2017).  As mentioned on the call, as essential component of defense of litigation is assessment of the allegations and, in *Lippert*, it was claims about the 15 major services provided by the IDOC.  If you will be arguing that lodging self-critical or deliberative process privileges means that the documents *were prepared for a non-legal purpose*, I will need the caselaw from you in advance of our call to meaningfully consider withdrawing the objection because I have been unable to find any law to support this argument- and the documents *were not prepared for a non-legal purpose*.

You referenced *Green* on our call.  I am not entered so I conducted a review and it appears the privilege at issue in *Green* was IMSA (not alleged at this time), which is expressly applied to documents "used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation."  Thus, Sarah argued that the documents were dual privilege and should be produced.  That argument *did not* win the day.  Instead, Judge McGlynn denied application of IMSA (again not at issue at this time) and then found insufficient information was provided for the work product objections.  *Green v. Meeks*, 2023 U.S. Dist. LEXIS 17092, *13, 2023 WL 1447817.  These are also different documents.

There are no dual purpose documents at issue.  These meeting and documents were prepared in defense of litigation at the direction of or with the assistance of counsel.  Furthermore, I do not think you are using the term dual purpose appropriately and dual purpose documents can still be privileged.  "According to the Seventh Circuit, a dual purpose document, one prepared in anticipation of litigation and for another purpose as well, is work product only if the primary motivating purpose behind [its] creation is to aid in possible future litigation." *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 U.S. Dist. LEXIS 108021, 2019 WL 2644243, at *1 (N.D. Ill. June 27, 2019) (citing *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)).  These documents were prepared for the purpose of responding to ACTIVE litigation, not in anticipation of future litigation.  Nonetheless, should you believe that based on my objection somehow the documents transformed into some additional purpose (without fact or law that I've been made aware of), the primary purpose of the documents on the privilege log was undeniably responding to the class action lawsuit, as attested to.

My suggestion for a 30(b)(6) is to get at the substance of what you want because this is not getting anywhere.  When meetings occurred doesn't matter and only can cause a lot of run around.  What was discussed at each meeting cannot be elucidated.  If you want to know who were the main individuals who were involved with review of certain portions of the *Lippert* report, then you could ask that question but that's not what you are asking.  You are asking for dates, invites, notes, and all attendees for a decade which is impossible to do and is not probative of anything.  Whether they had yearly, quarterly, or weekly meetings, it is of no consequence and I'd be shocked if anyone can tell you what occurred in a meeting in 2014.  The outcome of the meetings, as it relates to our topics, are reflected in the documents on the privilege log, but ultimately this is all privileged because it is defense of active litigation.  It boggles my mind to spend all this time trying to recreate when meetings occurred for a decade and who was there when we both know that if you ask what was discussed we will object.

I haven't been able to attempt to filter for *Lippert* meeting email invites (vs regular emails) and review for burden from the *Lippert* ESI (I already reviewed once) because of the amount of time allocated to our hour and a half call yesterday and this email chain afterward. I will have to follow up.  I don't believe invites are responsive to RFPs so they wont be produced but my understanding is you want me to look to see if they say who attended and then supplement the interrogatories.  As referenced above, wouldn't an easier way to avoid all of this be to simply ask who were the executives that oversaw the reviews for cancer care/life threatening conditions mentioned in *Lippert*?  It would be

much more reliable and less burdensome than review of meeting invitations from an ESI.  You referenced testimony you have from *Dean*, so you proffer to have some of this information already, but if this will resolve the meeting minutes/notes/attendees issue then I will inquire about a supplemental response of this nature.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, October 26, 2023 5:28 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

To follow up on our call.

You are requesting a two-week extension (to Nov. 10) for our report tomorrow in Wiley, because you are taking vacation.  We will not oppose that request, but we request that you please provide a copy of the motion in advance.

To make sure we don't have to request yet another extension, I would ask that you be prepared to state your outstanding positions on the discovery issues we discussed on Nov. 6 or 7, and that we schedule a follow-up call for Nov. 7 or Nov. 8, so that we have enough time to complete our report to the court by Friday Nov. 10.

Otherwise, I'm writing to memorialize the discussion on our call today, to confirm where we are at issue.

**Existing motion to compel** (Wiley ECF 146, Reed ECF 139).

The motion to compel covered three areas:

(1) review of documents gathered in response to the Lippert ESI for responsiveness to other discovery requests.  You confirmed that we remain at issue.

(2) Production of notes from meetings discussing Lippert.  You confirmed that we are at issue.  You stated that you would not search for the notes, because they would be privileged in any event, as all the meetings had a legal purpose.  We remain at issue.

(3) Production of computerized meeting invitations from among the Lippert documents gathered.  You stated that you would search for these documents, if there was some way to do so by isolating MS Office invitations.  We are waiting to hear back from you on this one.

You also confirmed that Wexford had completed its production of documents from the Lippert ESI search terms (I do not believe you have conducted a review of the documents gathered for the non-Lippert search terms.  **Please confirm**, and provide a date by which that review will be completed.)  The production consists of a privilege log listing nine documents, and production of meeting minutes from two meetings between Wexford and IDOC that occurred in 2019.  For 8 of the 9 documents listed on the privilege log, the log asserts both attorney client / attorney work-product privileges AND deliberative process / self-critical analysis privilege.  The log asserts only attorney work product privilege for the remaining document (Log no. 11).  I explained to you that as to the 8 documents, dual-use was indicated (i.e., documents used for a legal purpose (attorney-client / work-product) and a non-legal purpose (a purpose covered by the deliberative process and self-critical analysis privilege).  You disagreed.  We are at issue as to that question.

Regarding the asserted privileges themselves--neither the deliberative process privilege or the dual-use privilege protect documents in this case.  The deliberative process privilege applies to governmental entities, not private companies like Wexford.  The self-critical analysis privilege, meanwhile, is inoperative in federal civil rights cases like this one.  *See, e.g.,* Lund v. City of Rockford, No. 17 CV 50035, 2017 WL 5891186 (N.D. Ill. Nov. 29, 2017).  Because both those privileges do not apply in this case, the eight dual-use documents listed in your privilege log are subject to disclosure.  Based on our discussion today I believe we are at issue regarding this matter.  Please correct me if I am wrong; if so let me know where we are not yet at issue.

**Plaintiff's Sept. 27 interrogatories in Wiley and Reed**, concerning certain Lippert meetings.

As I noted, the purpose of these interrogatories was to comport with Judge McGlynn's admonition (made in light of your contention that the Reed plaintiffs should depose persons regarding Wexford's meetings about the Lippert reports) that I should depose Wexford employees who participated in meetings about the Lippert reports.

First, you objected that the interrogatories target privileged information. But I explained that none of the information sought in the interrogatories (essentially, who participated in certain meetings and when they occurred, whether documents were generated, etc.) do not seek the substance of the communications in those meetings.  As such, assuming the communications at the meetings were privileged, the information sought in the interrogatories, which does not seek the substance of the communications, is not.  I believe we are in agreement on this point, but please correct me if I am wrong.


Second, you object that the interrogatories are overbroad because they are not limited in time, that they treat as responsive meetings in which the responsive topics were discussed along with other topics, and that Wexford did not keep "meeting logs."  As such, you object that responding to this part of the interrogatories would require you to search all meetings over a decade.  Instead, you suggested that I provide a Rule 30(b)(6) notice, after which (if I understand you correctly) the targeted meetings could be identified.


I noted (as I had done before) that these interrogatories should be limited to responsive meetings in which senior executives participated.  I also noted that Plaintiff counsel could not know when responsive meetings occurred, but presumably they would have occurred when Wexford executives were assessing the assertions in the reports.  As such, I noted, the number of responsive meetings would likely be limited and more straightforward to find. I noted that many of the meetings could be identified in the documents gathered pursuant to the ESI Protocol.  I also noted that documents generated for or about the meetings (which the interrogatory asks you to identify) could also indicate the purpose of the meetings, as well as their participants.   You responded that you were "not in-house counsel" at Wexford and that as such you were not in a position to identify when such meetings occurred.


In response to your request that I serve a Rule 30(b)(6) notice instead of these interrogatories, I noted that the Rule 30(b)(6) notice would be substantively identical--seeking the same information as the interrogatories.  If I understood you correctly, you stated that responding to such a Rule 30(b)(6) notice would be unduly burdensome as well, even if the Rule 30(b)(6) notice were confined to responsive meetings by senior executives.


As understand it, you are agreeing to search for responsive meeting invites among the Lippert ESI documents that have been gathered, if the invitations can be isolated from other communications using search features.  Please confirm.


Third, each of the interrogatories asked Wexford to state whether each of the responsive meetings had a "legal purpose" (subparagraph c), and also to state whether the meetings had a "business purpose" (subparagraph d).  The interrogatories define both "legal purpose" and "business purpose".  Your interrogatory responses state that each meeting had a legal purpose (viz. that each meeting was "conducted for the purpose of defending litigation, in anticipation of litigation, and with/at the direction of counsel.")  The interrogatory responses do not state whether any of the meetings also had a business purpose (i.e., whether they had a dual purpose--a legal purpose and a business purpose).  As I understand it, you agreed to revisit this issue with Andy Ramage, who, you said, prepared the interrogatory responses.  Please confirm.  We ask that the interrogatory responses be amended to respond to

subparagraph "d" of each of the interrogatories, and state whether any responsive meetings had a business purpose (in addition to or instead of a legal purpose).


Best regards,


Steve

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him




On Wed, Oct 25, 2023 at 1:14 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

Can we do 9:30am?


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Wednesday, October 25, 2023 10:11 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

How about 9:00 tomorrow morning?

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Wed, Oct 25, 2023 at 6:34 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

I actually won't be able to do a call today but am pretty open tomorrow.

Sent from my iPhone

On Oct 24, 2023, at 6:55 PM, Steve Weil <weil@loevy.com> wrote:

**EXTERNAL**

That works for me.  I'd also like to talk about the Wiley / Reed interrogatory responses then too.  I'll plan to call you at 3:30.


--

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him




On Tue, Oct 24, 2023 at 5:44 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

I have a depo tomorrow but I can try to do 3:30 if I'm out by then.


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image004.jpg>


Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, October 24, 2023 12:26 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order


**EXTERNAL**

Jaclyn,

Are you available tomorrow for a call?

--

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Thu, Oct 19, 2023 at 10:41 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

FYI I go on vacation the evening of 10/27 so I will not be available after 4pm that day.  I will be gone the following week and will return on 11/6.  Just wanted you to know so you could plan accordingly with our deadlines.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A.
**Sent:** Tuesday, October 17, 2023 10:05 AM
**To:** Steve Weil <weil@loevy.com>
**Subject:** RE: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

No objection.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image003.jpg>

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, October 17, 2023 8:00 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn can you please advise?  Thanks.

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Mon, Oct 16, 2023 at 9:50 AM Steve Weil <weil@loevy.com> wrote:

Jaclyn,

I have a major hearing in a Louisiana case on Thursday and will be on the road beginning tomorrow to prepare.  That will make it hard to complete our meet-and-confer and prepare a report.  I'd like to request a one-week extension on the 10/20 deadlines in Wiley, to 10/27.  Any objection?

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

---------- Forwarded message ---------
From: <ilsd_nef@ilsd.uscourts.gov>
Date: Fri, Sep 29, 2023 at 4:24 PM

Subject: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order
To: <ilsd_nef@ilsd.uscourts.gov>

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of Illinois**

**Notice of Electronic Filing**

The following transaction was entered on 9/29/2023 at 4:23 PM CDT and filed on 9/29/2023

**Case Name:**          Wiley v. Wexford Health Sources, Inc. et al
**Case Number:**     3:21-cv-00599-DWD
**Filer:**
**Document Number:** 150(No document attached)

**Docket Text:**
**ORDER regarding Plaintiff's Unopposed Motion to Stay and Continue Expert Discovery (Doc. 149). On September 27, 2023, the Court denied Plaintiff's Motion to Compel (Doc. 146), without prejudice, because the parties had not complied with the Court's Case Management Procedures. (Doc. 148). The parties were ordered to conduct a discovery dispute conference on or before October 10, 2023, and to submit a Joint Written Discovery Report on or before October 20, 2023. (Doc. 148). Now, the instant Unopposed Motion seeks to stay and continue the expert discovery deadlines in light of the aforementioned ruling. The Unopposed Motion notes that Defendants' expert reports were due September 28, 2023, and all expert discovery is due October 28, 2023. (Docs. 133 & 134). Further, the Unopposed Motion notes that fact discovery relating to the medical events at issue is "essentially complete," but *Monell* discovery relevant to the soon-to-be-submitted Joint Written Discovery Report remains ongoing. Accordingly, the Unopposed Motion is GRANTED. In addition to the requirements already articulated at Doc. 148, the parties are DIRECTED to update the Court on the status of *Monell* discovery and to jointly propose dates for the completion of expert discovery in the Joint Written Discovery Report due on October 20, 2023. Signed by Judge David W. Dugan on 9/29/2023. (jnh)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED.**

**3:21-cv-00599-DWD Notice has been electronically mailed to:**

Jaclyn A. Kinkade &nbsp &nbsp jkinkade@cassiday.com

Jon I. Loevy &nbsp &nbsp jon@loevy.com, melinda@loevy.com

Maria Makar &nbsp &nbsp makar@loevy.com, brooks@loevy.com, feddor@loevy.com

Mediator Donald Wilkerson &nbsp &nbsp dwilkerson@jamsadr.com

Stephen H. Weil &nbsp &nbsp weil@loevy.com, brooks@loevy.com, feddor@loevy.com

Tara Marie Barnett &nbsp &nbsp Tara.Barnett@ilag.gov, gabriela.dale@ilag.gov, gls@ilag.gov, nathan.sloan@ilag.gov

Timothy P. Dugan &nbsp &nbsp tdugan@cassiday.com, mlinnenbrink@cassiday.com

**3:21-cv-00599-DWD Parties and Attorneys without registered email addresses requiring notice by other means:**

**CONFIDENTIALITY NOTICE:** This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:** This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:** This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**Linnenbrink, Miranda M.**

---

| | |
|---|---|
| **From:** | Kinkade, Jaclyn A. |
| **Sent:** | Tuesday, March 12, 2024 12:08 PM |
| **To:** | Linnenbrink, Miranda M.; Byers, Melissa A.; Wallace, Dina L. |
| **Subject:** | FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order |
| | |
| **Importance:** | High |

Email 3 re Wiley discovery letter.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com
CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Sent:** Friday, March 8, 2024 11:31 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order
**Importance:** High

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com
CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A.
**Sent:** Wednesday, December 6, 2023 12:08 PM
**To:** 'Steve Weil' <weil@loevy.com>
**Cc:** 'Maria Makar' <makar@loevy.com>
**Subject:** RE: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order
**Importance:** High

For the *Lippert* meetings invitations issue, I want to confirm your offer to resolve this issue.  If we conduct a third review of the *Lippert* ESI protocol results for meeting invitations responsive to interrogatories #15-18 in *Wiley* and #16-19 in *Reed*, and supplement these interrogatories with the date, subject, and invitees for each meeting, will this resolve written discovery on meeting invitations/meeting dates.  In other words, there will be no further written request or demand by Plaintiff to review/conduct *Lippert* ESI again or conduct further investigation/production as to the dates, subject, invitees, etc. related to *Lippert* meetings.

If so, we *may* be able to come to an agreement to avoid additional briefing on the issue and move forward in discovery but I need to be clear on the agreement to confirm with my client.

Sincerely,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A.
**Sent:** Tuesday, December 5, 2023 4:56 PM
**To:** Steve Weil <weil@loevy.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** RE: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

Responding to the below as you requested:

**Wexford's responsiveness review**. For the 3 Lippert ESI searches, we wrote in response to the MTC in Reed, "Defendant has considered responsive any substantive communication concerning cancer care practices or deficiencies and will either produce them or identify them in the forthcoming updated privilege log."  Since then, we produced the updated privilege log and any responsive documents.  My associate has reviewed the results again per Judge McGlynn's Order and I will review everything she pulled to see if there is anything that has not already been produced or identified on the privilege log.

**Wexford's refusal to search for meeting notes**.  There were no meeting notes in the ESI related to the identified Lippert patients.  The documents related to the identified cancer patients is on the privilege log.  I have confirmed with Wexford, via *Lippert* counsel and numerous individuals, that there are no meeting notes related to the identified Lippert patients.  We do object to any further searches for or production of *Lippert* meeting notes for the previously stated reasons, including but not limited to that they are privileged.

**Wexford's refusal to produce Lippert meeting invitations**. I am circling back to my client on this.  Since the Court denied this part of your motion and as I thought we resolved it with the supplemental rog response, I had not addressed it with them again.  However, we have reviewed the Lippert ESI twice now already.  I'll follow up though.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 30, 2023 5:36 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

I'm responding here to your correspondence, to discuss Reed and Wiley.  Again, I apologize for not corresponding earlier--as I noted, my illness has considerably limited the amount of time I've been able to work this week. We will need an extension for the Wiley JSR due tomorrow.

REED

On review, I agree with you that the order only instructs Wexford to search for meeting notes about the particular individuals mentioned in the requests.  We'll await Wexford's gathering of other documents.

I suggest that, given my comments with respect to Wiley below, you have your associate pause the Reed ESI review to determine whether it can be combined with a slightly broader review in Wiley.

WILEY

What remains is the motion to compel / JSR with Judge Dugan.  In light of Judge McGlynn's order (i.e., Reed ECF 147) we think it is appropriate to modify the positions we have taken in the Wiley discovery in light of his ruling, which will affect the positions the parties take in the JSR.

I'll divide discussion along the lines of the outstanding MTC (i.e., Wiley ECF 146).

**Wexford's responsiveness review**.  (Wiley ECF 146 at 6-7).  Judge McGlynn held that notwithstanding the reduction of the scope of the documents to review to ~ 2000 documents, our requests, as originally written, remained overbroad.  We respectfully disagree with this ruling, particularly as to overbreadth, since the documents in question had already been reduced by a targeted ESI search.  Nevertheless, in light of the ruling we offer to narrow the request for responsiveness review in two ways.

First, we offer to incorporate my 5/3/23 letter to you in Reed to modify the corresponding requests in Wiley.  In the 5/3/23 letter, We offered to narrow Wexford RFPs 49-51 and 56-58, along with RFPs 52 and 59, considerably.  We propose to apply these same narrowed requests to the corresponding requests in Wiley, and have you review those requests for relevance.

Second, we note that in light of Judge Daly's Feb. 13 order, on Feb.22 we served a handful of additional discovery requests that were specifically tailored to comply with the instructions by Judge Daly regarding the appropriate phrasing and narrowing of requests.  We propose that this be the second set of requests that Wexford review for relevance in the ~2,000 documents.

In short: we propose to confine the relevance review to (a) the Wiley discovery requests as narrowed in the 5/3/23 Reed letter, and (b) the Feb. 22 discovery requests.

**Wexford's refusal to search for meeting notes**.  (Wiley ECF 146 at 7-8).  Judge McLynn's order limited this request to meeting notes that concerned particular patients, based on his ruling that the other (unmodified) requests were overbroad.  As noted above in the "Wexford's responsiveness review" section, we are offering to narrow our discovery requests.  We therefore propose that the request be limited to meeting notes responsive to the two sets of discovery set out in that section (i.e., the sets of discovery labeled "First" and "Second" in the "Wexford's responsiveness review" section).

**Wexford's refusal to produce Lippert meeting invitations**.  (Wiley ECF 146 at 8-9).  We disagree with, but will not contest in Wiley, Judge McGlynn's ruling that our discovery requests do not cover meeting invitations.  Instead, however, in our 9/27/23 interrogatories to Wexford, we have asked specifically that Wexford provide information regarding meetings.  We therefore ask that Wexford agree to identify responsive meetings indicated among the ~2,000 documents produced for review, in response to the 9/27/23 interrogatories.

I'm happy to discuss these items with you tomorrow Jaclyn, if you have time.  I am generally open and can make myself available at your convenience.

Best regards,

- Steve

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**

Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**


On Tue, Nov 28, 2023 at 4:14 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

Yes, the order related specifically to the RFPs that sought documents concerning the 17 patients.


Thanks,


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

**CASSIDAY SCHADE** LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, November 28, 2023 4:00 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order


**EXTERNAL**


Jaclyn,


Apologies for the slow response.  I've been under the weather and have been traveling to defend a deposition simultaneously.  I'll try and write you something more extensive to send to you tomorrow morning, and I propose that we get as much done over email as possible before holding a call--and then hold a call Thursday afternoon when I will have returned from the deposition.

In the meantime, one question:  I read the order as an instruction to search for / produce notes from the meetings generally--not just notes that touch on the 17 patients in particular.  It seems you read it as calling only for notes about the patients.  Is your reading?

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**

Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**

On Mon, Nov 27, 2023 at 12:21 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

To follow up on these issues after digesting the Order from Judge McGlynn on your Motion to Compel, there were some fundamental, significant issues with the Order that we believe constitute error.  For example, in one sentence the Order finds our work product objection conclusory when there was a factual section of the Response dedicated to both work product and an explanation that the objections were categorical as to scope and there had not yet been a search to review each document for privilege.  I am deeply troubled by this conclusion and the lack of discussion on a foundational privilege.  Additionally, after you filed the Motion to Compel, we kept working on written discovery to resolve some of these issues and produced interrogatory answers providing even more context for the work product objections.  However, given the below, we likely will not be raising a written objection to the Order at this time, but wanted to make clear why.

The Order was specific that it relates to the RFPs about the 17 identified Lippert patients.  As you may recall, one of the objections we raised was most of the Lippert reports were not about the death reviews but about 15 major services in 8 (or less) facilities.  We questioned whether such documents existed as they were not identified in the ESI already conducted and objected to performing further investigation into their existence given that the notes, if they existed, would be privileged.  After the Order, I had several communications with my client regarding whether such notes exist as there is no need to object to/appeal the Court's Order if there are no documents to produce.  As I mentioned before, this is not a quick process.  Some individuals have passed, some have retired, and some are unavailable for other reasons.  As of now, though, it appears that there were no meeting notes taken relating to the 17 identified patients.  I wanted to let you know since it may alleviate all or most of the issues in the joint report in Wiley.  I want to hear back from another person but at least 5 individuals that were involved in Lippert meetings have said they have no notes and are unaware of the existence of responsive notes.

I am also having an associate go through the 3 Lippert searches again, in line with Judge McGlynn's Order.  I do not expect anything additional to be found as I pulled everything related to cancer when I reviewed it the first time and I would have logged it on the privilege log if I found anything, but I will let you know if she finds anything else.

In the unlikely event that we learn of the existence of any responsive Lippert notes, we will be seeking reconsideration and an interlocutory appeal on the issue of work product.

Given this status, please let me know what you believe is outstanding and when we can discuss it further.

Sincerely,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com
CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 16, 2023 4:45 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

We have been digesting Judge McGlynn's order from yesterday, including in light of Wexford's supplemental interrogatory responses, which you served Monday. We think some further Rule 37 discussion may be called for, and as such, we should seek another extension to file the status report with Judge Dugan.

First, Judge McGlynn ordered for a search of notes taken at the Lippert meetings. And on consideration that makes sense, even with Wexford's Monday supplemental interrogatory response asserting that the meetings were conducted for the purpose of providing legal advice about the Lippert litigation. Wexford has asserted in the interrogatory responses that the meetings were called by attorneys for the purpose of providing legal advice, but it does not necessarily follow that every participant in every meeting created notes only for the purpose or recording legal advice, as opposed to making notes for another purpose as well--such as a business purpose as that has been defined in our discovery. Wexford certainly cannot resolve the question of whether the notes were privileged simply by asserting that the purpose of the meeting was privileged. That is particularly so given that you have asserted a self-critical analysis privilege over documents that would have been used at meetings, which indicates that some documents may have been dual purpose. We'd like to discuss this matter with you.

Second, as I noted in my email from earlier today, we intend to raise the Wiley February 22 discovery in relation to our request that Wexford review the approx. 2,000 "Lippert" documents for responsiveness.  We have discussed that discovery in previous conferences; I want to make sure we have discussed it in the context of our motion to compel, particularly in light of Judge McGlynn's ruling regarding the required specificity of discovery requests for the "Lippert" responsiveness review.

Third, as noted in my email from this morning, after giving further consideration to Wexford's supplemental interrogatory responses, we do intend to depose persons who were at the Lippert meetings, and thus we will need some means of identifying participants.  We would like to discuss this with you as well.

All three of these items call for further discussion, which can't be completed and briefed before our deadline tomorrow.  We'd therefore feel it's appropriate to request a further extension with the Court.

I can be available for a call tomorrow on the early side.  I can also be available for a call on Monday or Tuesday next week.

Please advise.

- Steve

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**

Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**

On Thu, Nov 16, 2023 at 11:35 AM Steve Weil <weil@loevy.com> wrote:

   Jaclyn,

I'm working on the joint report in Wiley and expect to have it to you by the end of the day. I wanted to advise you of two things in advance. First, understanding the representations in your supplemental interrogatory responses, we do intend to depose one or more people involved in responsive meetings. Therefore we request that as part of your re-supplementation of the interrogatory responses, you identify such people. Second, in the Wiley joint status report we do intend to point out our Feb. 22 Wiley discovery requests and argue that the Lippert production should be assessed for responsiveness to that discovery as well.

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**

Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**

On Fri, Nov 10, 2023 at 9:11 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

You are correct on both accounts. I do expect that we will provide a supplemental interrogatory answer as you requested concerning the purpose of the Lippert meetings.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 9, 2023 2:50 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn I'm writing to follow up on our call today, to make sure we are on the same page regarding two positions you articulated on the call.

First, my understanding is that in the event of a Rule 30 / Rule 30(b)(6) deposition going to the same topics as Plaintiff's Sept. 27 interrogatories, a witness would testify that meetings among Wexford executives to address the criticisms in the Lippert report did occur; but that the witness would be instructed not to answer questions about the substance of any such meetings because Wexford takes the position that the substance of any such meetings is privileged under the attorney client and attorney work-product doctrines.  Please confirm I understand your position correctly.

Second, Wexford takes the position that none of the Lippert meetings or communications connected with those meetings, were dual-purpose, i.e., having both a legal purpose and a business purpose as we have described those terms in the Sept. 27 interrogatories.  Please confirm I understand your position correctly.

Thanks,

Steve

_____

**Stephen H. Weil** (He/Him)
**LOEVY + LOEVY**
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Thu, Nov 9, 2023 at 8:55 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

I can do 12:30-1:30 today. But in advance I need responses to the questions raised in my 10/27 email to discuss further.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com
CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 9, 2023 8:13 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

---

**EXTERNAL**

---

Jaclyn when are you available to meet today?  I have something at 10-10:30 and then a hearing at 1:30 that should go 45 minutes.  Other than that I am open.

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Fri, Oct 27, 2023 at 2:41 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

To add to the meeting minutes issue, the interrogatory answer also explains that it would be impossible to track down meeting minutes, but yes they would also be privileged.

I am not doing the non-*Lippert* search because we have a disagreement about the scope.  I believe this issue was raised in the response to the MTC in *Reed.*  I can start if you want but I will be reviewing in accordance with the scope set out by Judge Daly and will object to doing it a second time. Please advise.

The documents produced are not meeting minutes (which would be privileged) but are meeting agendas.

The objections in the privilege log are not a description of the documents.  They are legal objections made to preserve and not waive.  The description of the type and purpose of the documents is given through testimony under oath by Wexford in the interrogatory answers.  The purposes of the meeting/documents made therefrom was in defense of litigation with or at the direction of counsel. I agreed to ask Andy Ramage about your request to supplement the interrogatory answer concerning whether there was a business purpose, but the definition of

business purpose in your interrogatory said a "non-legal" purpose and thus I believe the answer clearly states that the meeting were for a legal purpose. I explained to you that mortality reviews, peer reviews, etc. were performed separately.


It is not my understanding of the law that a self-critical or deliberative process objection requires the documents be created for a business purpose. If you have any caselaw on this issue, stating that they cannot be used for documents created at the direction/assistance of counsel in defense of litigation, then I will review for potentially removing the self-critical and/or deliberative privileges, but none of my experience or research confirms your position. In fact, I found many cases where work product, self-critical, and deliberative privileges were lodged together. This is because, as held in the case you cite, while they *could* apply to internal processes and review, it also protects "other documents containing an organization's self-critical analyses." *Lund v. City of Rockford*, No. 17 CV 50035, 2017 U.S. Dist. LEXIS 196202, 2017 WL 5891186, at *4 (N.D. Ill. Nov. 29, 2017). As mentioned on the call, as essential component of defense of litigation is assessment of the allegations and, in *Lippert*, it was claims about the 15 major services provided by the IDOC. If you will be arguing that lodging self-critical or deliberative process privileges means that the documents *were prepared for a non-legal purpose*, I will need the caselaw from you in advance of our call to meaningfully consider withdrawing the objection because I have been unable to find any law to support this argument- and the documents *were not prepared for a non-legal purpose*.


You referenced *Green* on our call. I am not entered so I conducted a review and it appears the privilege at issue in *Green* was IMSA (not alleged at this time), which is expressly applied to documents "used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation." Thus, Sarah argued that the documents were dual privilege and should be produced. That argument *did not* win the day. Instead, Judge McGlynn denied application of IMSA (again not at issue at this time) and then found insufficient information was provided for the work product objections. *Green v. Meeks*, 2023 U.S. Dist. LEXIS 17092, *13, 2023 WL 1447817. These are also different documents.


There are no dual purpose documents at issue. These meeting and documents were prepared in defense of litigation at the direction of or with the assistance of counsel. Furthermore, I do not think you are using the term dual purpose appropriately and dual purpose documents can still be privileged. "According to the Seventh Circuit, a dual purpose document, one prepared in anticipation of litigation and for another purpose as well, is work product only if the primary motivating purpose behind [its] creation is to aid in possible future litigation." *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 U.S. Dist. LEXIS 108021, 2019 WL 2644243, at *1 (N.D. Ill. June 27, 2019) (citing *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)). These documents were prepared for the purpose of responding to ACTIVE litigation, not in anticipation of future litigation. Nonetheless, should you believe that based on my objection somehow the documents transformed into some additional purpose (without fact or law that I've been made aware of), the primary purpose of the documents on the privilege log was undeniably responding to the class action lawsuit, as attested to.


My suggestion for a 30(b)(6) is to get at the substance of what you want because this is not getting anywhere. When meetings occurred doesn't matter and only can cause a lot of run around. What was discussed at each meeting cannot be elucidated. If you want to know who were the main individuals who were involved with review of certain portions of the *Lippert* report, then you could ask that question but that's not what you are asking. You are asking for dates, invites, notes, and all attendees for a decade which is impossible to do and is not

probative of anything.  Whether they had yearly, quarterly, or weekly meetings, it is of no consequence and I'd be shocked if anyone can tell you what occurred in a meeting in 2014.  The outcome of the meetings, as it relates to our topics, are reflected in the documents on the privilege log, but ultimately this is all privileged because it is defense of active litigation.  It boggles my mind to spend all this time trying to recreate when meetings occurred for a decade and who was there when we both know that if you ask what was discussed we will object.

I haven't been able to attempt to filter for *Lippert* meeting email invites (vs regular emails) and review for burden from the *Lippert* ESI (I already reviewed once) because of the amount of time allocated to our hour and a half call yesterday and this email chain afterward. I will have to follow up.  I don't believe invites are responsive to RFPs so they wont be produced but my understanding is you want me to look to see if they say who attended and then supplement the interrogatories.  As referenced above, wouldn't an easier way to avoid all of this be to simply ask who were the executives that oversaw the reviews for cancer care/life threatening conditions mentioned in *Lippert*?  It would be much more reliable and less burdensome than review of meeting invitations from an ESI.  You referenced testimony you have from *Dean*, so you proffer to have some of this information already, but if this will resolve the meeting minutes/notes/attendees issue then I will inquire about a supplemental response of this nature.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, October 26, 2023 5:28 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

To follow up on our call.

You are requesting a two-week extension (to Nov. 10) for our report tomorrow in Wiley, because you are taking vacation.  We will not oppose that request, but we request that you please provide a copy of the motion in advance.

To make sure we don't have to request yet another extension, I would ask that you be prepared to state your outstanding positions on the discovery issues we discussed on Nov. 6 or 7, and that we schedule a follow-up call for Nov. 7 or Nov. 8, so that we have enough time to complete our report to the court by Friday Nov. 10.

Otherwise, I'm writing to memorialize the discussion on our call today, to confirm where we are at issue.

**Existing motion to compel** (Wiley ECF 146, Reed ECF 139).

The motion to compel covered three areas:

(1) review of documents gathered in response to the Lippert ESI for responsiveness to other discovery requests.  You confirmed that we remain at issue.

(2) Production of notes from meetings discussing Lippert.  You confirmed that we are at issue.  You stated that you would not search for the notes, because they would be privileged in any event, as all the meetings had a legal purpose.  We remain at issue.

(3) Production of computerized meeting invitations from among the Lippert documents gathered.  You stated that you would search for these documents, if there was some way to do so by isolating MS Office invitations.  <u>We are waiting to hear back from you on this one.</u>

You also confirmed that Wexford had completed its production of documents from the Lippert ESI search terms (<u>I do not believe you have conducted a review of the documents gathered for the non-Lippert search terms.  **Please confirm**, and provide a date by which that review will be completed.</u>)  The production consists of a privilege log listing nine documents, and production of meeting minutes from two meetings between Wexford and IDOC that occurred in 2019.  For 8 of the 9 documents listed on the privilege log, the log asserts both attorney client / attorney work-product privileges AND deliberative process / self-critical analysis privilege.  The log asserts only attorney work-product privilege for the remaining document (Log no. 11).  I explained to you that as to the 8 documents, dual-use was indicated (i.e., documents used for a legal purpose (attorney-client / work-product) and a non-legal purpose (a purpose covered by the deliberative process and self-critical analysis privilege).  You disagreed.  <u>We are at issue as to that question</u>.

Regarding the asserted privileges themselves--neither the deliberative process privilege or the dual-use privilege protect documents in this case.  The deliberative process privilege applies to governmental entities, not private

companies like Wexford. The self-critical analysis privilege, meanwhile, is inoperative in federal civil rights cases like this one. *See, e.g.,* Lund v. City of Rockford, No. 17 CV 50035, 2017 WL 5891186 (N.D. Ill. Nov. 29, 2017). Because both those privileges do not apply in this case, the eight dual-use documents listed in your privilege log are subject to disclosure. Based on our discussion today <u>I believe we are at issue regarding this matter. Please correct me if I am wrong; if so let me know where we are not yet at issue.</u>

**Plaintiff's Sept. 27 interrogatories in Wiley and Reed**, concerning certain Lippert meetings.

As I noted, the purpose of these interrogatories was to comport with Judge McGlynn's admonition (made in light of your contention that the Reed plaintiffs should depose persons regarding Wexford's meetings about the Lippert reports) that I should depose Wexford employees who participated in meetings about the Lippert reports.

First, you objected that the interrogatories target privileged information. But I explained that none of the information sought in the interrogatories (essentially, who participated in certain meetings and when they occurred, whether documents were generated, etc.) do not seek the substance of the communications in those meetings. As such, assuming the communications at the meetings were privileged, the information sought in the interrogatories, which does not seek the substance of the communications, is not. <u>I believe we are in agreement on this point, but please correct me if I am wrong.</u>

Second, you object that the interrogatories are overbroad because they are not limited in time, that they treat as responsive meetings in which the responsive topics were discussed along with other topics, and that Wexford did not keep "meeting logs." As such, you object that responding to this part of the interrogatories would require you to search all meetings over a decade. Instead, you suggested that I provide a Rule 30(b)(6) notice, after which (if I understand you correctly) the targeted meetings could be identified.

I noted (as I had done before) that these interrogatories should be limited to responsive meetings in which senior executives participated. I also noted that Plaintiff counsel could not know when responsive meetings occurred, but presumably they would have occurred when Wexford executives were assessing the assertions in the reports. As such, I noted, the number of responsive meetings would likely be limited and more straightforward to find. I noted that many of the meetings could be identified in the documents gathered pursuant to the ESI Protocol. I also noted that documents generated for or about the meetings (which the interrogatory asks you to identify) could also indicate the purpose of the meetings, as well as their participants. You responded that you were "not in-house counsel" at Wexford and that as such you were not in a position to identify when such meetings occurred.

In response to your request that I serve a Rule 30(b)(6) notice instead of these interrogatories, I noted that the Rule 30(b)(6) notice would be substantively identical--seeking the same information as the interrogatories. If I understood you correctly, you stated that responding to such a Rule 30(b)(6) notice would be unduly burdensome as well, even if the Rule 30(b)(6) notice were confined to responsive meetings by senior executives.

As understand it, <u>you are agreeing to search for responsive meeting invites among the Lippert ESI documents that have been gathered</u>, if the invitations can be isolated from other communications using search features.  Please confirm.


Third, each of the interrogatories asked Wexford to state whether each of the responsive meetings had a "legal purpose" (subparagraph c), and also to state whether the meetings had a "business purpose" (subparagraph d).  The interrogatories define both "legal purpose" and "business purpose".  Your interrogatory responses state that each meeting had a legal purpose (viz. that each meeting was "conducted for the purpose of defending litigation, in anticipation of litigation, and with/at the direction of counsel.")  The interrogatory responses do not state whether any of the meetings also had a business purpose (i.e., whether they had a dual purpose--a legal purpose and a business purpose).  As I understand it, <u>you agreed to revisit this issue</u> with Andy Ramage, who, you said, prepared the interrogatory responses.  Please confirm.  We ask that the interrogatory responses be amended to respond to subparagraph "d" of each of the interrogatories, and state whether any responsive meetings had a business purpose (in addition to or instead of a legal purpose).


Best regards,


Steve

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Wed, Oct 25, 2023 at 1:14 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

Can we do 9:30am?

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

---

**From:** Steve Weil <weil@loevy.com>
**Sent:** Wednesday, October 25, 2023 10:11 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

EXTERNAL

How about 9:00 tomorrow morning?

--

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Wed, Oct 25, 2023 at 6:34 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

16

I actually won't be able to do a call today but am pretty open tomorrow.


Sent from my iPhone


On Oct 24, 2023, at 6:55 PM, Steve Weil <weil@loevy.com> wrote:


| **EXTERNAL** |
| --- |


That works for me.  I'd also like to talk about the Wiley / Reed interrogatory responses then too.  I'll plan to call you at 3:30.


 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him




On Tue, Oct 24, 2023 at 5:44 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

 I have a depo tomorrow but I can try to do 3:30 if I'm out by then.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image004.jpg>

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, October 24, 2023 12:26 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

Are you available tomorrow for a call?

   --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Thu, Oct 19, 2023 at 10:41 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

FYI I go on vacation the evening of 10/27 so I will not be available after 4pm that day.  I will be gone the following week and will return on 11/6.  Just wanted you to know so you could plan accordingly with our deadlines.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image003.jpg>

Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A.
**Sent:** Tuesday, October 17, 2023 10:05 AM
**To:** Steve Weil <weil@loevy.com>
**Subject:** RE: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

No objection.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image003.jpg>

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, October 17, 2023 8:00 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn can you please advise?  Thanks.

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Mon, Oct 16, 2023 at 9:50 AM Steve Weil <weil@loevy.com> wrote:

Jaclyn,

I have a major hearing in a Louisiana case on Thursday and will be on the road beginning tomorrow to prepare.  That will make it hard to complete our meet-and-confer and prepare a report.  I'd like to request a one-week extension on the 10/20 deadlines in Wiley, to 10/27.  Any objection?

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

---------- Forwarded message ---------
From: <ilsd_nef@ilsd.uscourts.gov>
Date: Fri, Sep 29, 2023 at 4:24 PM
Subject: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order
To: <ilsd_nef@ilsd.uscourts.gov>

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of Illinois**

## Notice of Electronic Filing

The following transaction was entered on 9/29/2023 at 4:23 PM CDT and filed on 9/29/2023

**Case Name:**       Wiley v. Wexford Health Sources, Inc. et al
**Case Number:**     3:21-cv-00599-DWD
**Filer:**
**Document Number:** 150(No document attached)

**Docket Text:**

**ORDER regarding Plaintiff's Unopposed Motion to Stay and Continue Expert Discovery (Doc. 149). On September 27, 2023, the Court denied Plaintiff's Motion to Compel (Doc. 146), without prejudice, because the parties had not complied with the Court's Case Management Procedures. (Doc. 148). The parties were ordered to conduct a discovery dispute conference on or before October 10, 2023, and to submit a Joint Written Discovery Report on or before October 20, 2023. (Doc. 148). Now, the instant Unopposed Motion seeks to stay and continue the expert discovery deadlines in light of the aforementioned ruling. The Unopposed Motion notes that Defendants' expert reports were due September 28, 2023, and all expert discovery is due October 28, 2023. (Docs. 133 & 134). Further, the Unopposed Motion notes that fact discovery relating to the medical events at issue is "essentially complete," but *Monell* discovery relevant to the soon-to-be-submitted Joint Written Discovery Report remains ongoing. Accordingly, the Unopposed Motion is GRANTED. In addition to the requirements already articulated at Doc. 148, the parties are DIRECTED to update the Court on the status of *Monell* discovery and to jointly propose dates for the completion of expert discovery in the Joint Written Discovery Report due on October 20, 2023. Signed by Judge David W. Dugan on 9/29/2023. (jnh)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED.**

**3:21-cv-00599-DWD Notice has been electronically mailed to:**

Jaclyn A. Kinkade &nbsp &nbsp jkinkade@cassiday.com

Jon I. Loevy &nbsp &nbsp jon@loevy.com, melinda@loevy.com

Maria Makar &nbsp &nbsp makar@loevy.com, brooks@loevy.com, feddor@loevy.com

Mediator Donald Wilkerson &nbsp &nbsp dwilkerson@jamsadr.com

Stephen H. Weil &nbsp &nbsp weil@loevy.com, brooks@loevy.com, feddor@loevy.com

Tara Marie Barnett &nbsp &nbsp Tara.Barnett@ilag.gov, gabriela.dale@ilag.gov, gls@ilag.gov, nathan.sloan@ilag.gov

Timothy P. Dugan &nbsp &nbsp tdugan@cassiday.com, mlinnenbrink@cassiday.com

**3:21-cv-00599-DWD Parties and Attorneys without registered email addresses requiring notice by other means:**

CONFIDENTIALITY NOTICE:This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior

permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For

further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:** This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:** This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**Linnenbrink, Miranda M.**

---

| | |
|---|---|
| **From:** | Kinkade, Jaclyn A. |
| **Sent:** | Tuesday, March 12, 2024 12:08 PM |
| **To:** | Linnenbrink, Miranda M.; Byers, Melissa A.; Wallace, Dina L. |
| **Subject:** | FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order |
| | |
| **Importance:** | High |

Email 4 re Wiley discovery letter

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com
CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Sent:** Friday, March 8, 2024 11:45 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order
**Importance:** High

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com
CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A.
**Sent:** Tuesday, March 5, 2024 4:11 PM
**To:** weil@loevy.com
**Cc:** Maria Makar <makar@loevy.com>; Wormington, Emma M. <ewormington@cassiday.com>
**Subject:** FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order
**Importance:** High

Steve, in your Motions to Compel recently filed in *Wiley* and *Reed*, you/Maria wrote:

*"Plaintiffs have also offered to confine the meetings to the various electronic "invitations" that Wexford's counsel reviewed (but did not produce) as part of the ESI discovery in this case."*

Below, I have forwarded our acceptance of this proposal months ago and you reneging on it the night before the Joint Report was due in *Wiley*. I am very confused by the Motions to Compel because we agreed to do just that. This also should be pretty clear from our position in the Joint Report in *Wiley*.

*"In the recent discovery dispute conferences related to meeting invitations/dates/attendees, Plaintiff asked Defendant to review the ESI a third time to locate any Lippert meeting invitations concerning the scope of Plaintiff's (September 27, 2023) interrogatories and, if there were any, to supplement the interrogatory answers with the dates, attendees, and subject of the meeting in the invitation. Defendant was originally hesitant to perform the*

*same review a third time, not just because of the duplicative efforts and costs, but also because it seemed that each time Defendant agrees to take action to resolve a discovery dispute, the results are unsatisfactory and Plaintiff raises new disputes, not previously requested.  However, significant time has been undertaken concerning Plaintiff's Lippert requests and, in an effort to move forward, on December 6, 2023, Defendant sent the following to Plaintiff:*

> *For the Lippert meetings invitations issue, I want to confirm your offer to resolve this issue.  If we conduct a third review of the Lippert ESI protocol results for meeting invitations responsive to interrogatories #15-18 in Wiley and #16-19 in Reed, and supplement these interrogatories with the date, subject, and invitees for each meeting, will this resolve written discovery on meeting invitations/meeting dates.  In other words, there will be no further written request or demand by Plaintiff to review/conduct Lippert ESI again or conduct further investigation/production as to the dates, subject, invitees, etc. related to Lippert meetings.  If so, we may be able to come to an agreement to avoid additional briefing on the issue and move forward in discovery but I need to be clear on the agreement to confirm with my client.*

*Despite Plaintiff's original optimism that this proposal "would go a long way to resolving this," last night Plaintiff declined continued discussed of this proposal and seeks Defendant conduct further investigation into when Lippert meeting occurred and who was in attendance/invited.  This begs the question if the Lippert ESI that Plaintiff requested is not sufficient to resolve this issue, why did Plaintiff insist on a Lippert ESI protocol (with terms Plaintiff selected)."*

I don't know where the confusion is at but we will stand on our prior agreement outlined above and in the Joint Report.  If this resolves the issue, please advise ASAP so we can stop preparing the responses.

If not, please advise why and amend the Motions to Compel to appropriately reflect the dispute ASAP.  Also, please take note that you've told the Court we could "simply search meeting agendas written agendas, notes" and "the company has expressed no interest in identifying responsive meetings on this way,"  yet we produced the only responsive agendas we located and already confirmed there are no minutes or notes (as we were ordered to produce them in *Reed*).  Again, what is being represented to the Court is not accurate or what we discussed.  Further, we are not objecting to identifying the meeting dates/attendees due to privilege.  Again, we produced agendas in response and identified other available information.  The issue with the meeting dates/attendees is there are no documents reasonably available to identify the dates/attendees.  Your motions also state no privilege log was produced, which is untrue (and unclear since we are not asserting that the dates/attendees themselves are privileged).

Sincerely,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

**CASSIDAY SCHADE** LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, December 7, 2023 8:29 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

I'm working on completing the draft JSR.

I've given more consideration to the meeting invitations.  I don't think it's practical for Plaintiff to rely on written invitations, because we simply have no way of knowing that those invitations capture all or even the most important meetings.  And it will simply be inefficient to have a second round of discovery if more meetings are revealed at a deposition.  Ultimately we need a definitive list, and this is the juncture to get it.  We remain willing to work with you to narrow the number of these meetings, which can be confined to principal meetings on the topics covered, by upper-level executives--but we need a comprehensive list of such meetings.  As I understand it we are at issue regarding that request.

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com


On Thu, Dec 7, 2023 at 6:56 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

We are at an impasse on the meeting notes for the reasons stated before. Will you be sending me a joint report tonight? Please include your proposed language for the agreement on the meeting invitations and I'll pass it by my client in the morning.  Do you have a proposed scheduling order for Wiley? We were also ordered to submit one.
Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, December 7, 2023 6:12:58 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**


Thanks Jaclyn.

I think we are resolved on the responsiveness review.

I've addressed the meeting invitations (and accompanying interrogatory) in a separate email that I just sent to you.

As to the meeting notes, we may still be at issue.  As I said on our call, the scope the responsiveness review we would propose for Wiley is broader than what Judge McGlynn ordered in Reed (i.e., it's not just patients, but rather the topics in our 2/22/23 Wiley discovery and the importation of our 5/3/23

letter Reed, applied to the corresponding Wiley requests).  And as for the substance of the notes, I don't know how it could be determined in advance that they contained only privileged information; that would determine what the note-taker wrote to him or herself.

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**

Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com


On Tue, Dec 5, 2023 at 4:55 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

Responding to the below as you requested:


**Wexford's responsiveness review**. For the 3 Lippert ESI searches, we wrote in response to the MTC in Reed, "Defendant has considered responsive any substantive communication concerning cancer care practices or deficiencies and will either produce them or identify them in the forthcoming updated privilege log."  Since then, we produced the updated privilege log and any responsive documents.  My associate has reviewed the results again per Judge McGlynn's Order and I will review everything she pulled to see if there is anything that has not already been produced or identified on the privilege log.


**Wexford's refusal to search for meeting notes**.  There were no meeting notes in the ESI related to the identified Lippert patients.  The documents related to the identified cancer patients is on the privilege log.  I have confirmed with Wexford, via *Lippert* counsel and numerous individuals, that there are no meeting notes related to the identified Lippert patients.  We do object to any further searches for or production of *Lippert* meeting notes for the previously stated reasons, including but not limited to that they are privileged.


**Wexford's refusal to produce Lippert meeting invitations**. I am circling back to my client on this.  Since the Court denied this part of your motion and as I thought we resolved it with the supplemental rog response, I had not addressed it with them again.  However, we have reviewed the Lippert ESI twice now already.  I'll follow up though.


Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

---

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 30, 2023 5:36 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

I'm responding here to your correspondence, to discuss Reed and Wiley.  Again, I apologize for not corresponding earlier--as I noted, my illness has considerably limited the amount of time I've been able to work this week. We will need an extension for the Wiley JSR due tomorrow.

REED

On review, I agree with you that the order only instructs Wexford to search for meeting notes about the particular individuals mentioned in the requests.  We'll await Wexford's gathering of other documents.

I suggest that, given my comments with respect to Wiley below, you have your associate pause the Reed ESI review to determine whether it can be combined with a slightly broader review in Wiley.

WILEY

What remains is the motion to compel / JSR with Judge Dugan.  In light of Judge McGlynn's order (i.e., Reed ECF 147) we think it is appropriate to modify the positions we have taken in the Wiley discovery in light of his ruling, which will affect the positions the parties take in the JSR.

I'll divide discussion along the lines of the outstanding MTC (i.e., Wiley ECF 146).

**Wexford's responsiveness review**.  (Wiley ECF 146 at 6-7).  Judge McGlynn held that notwithstanding the reduction of the scope of the documents to review to ~ 2000 documents, our requests, as originally written, remained overbroad.  We respectfully disagree with this ruling, particularly as to overbreadth, since the documents in question had already been reduced by a targeted ESI search.  Nevertheless, in light of the ruling we offer to narrow the request for responsiveness review in two ways.

<u>First</u>, we offer to incorporate my 5/3/23 letter to you in Reed to modify the corresponding requests in Wiley.  In the 5/3/23 letter, We offered to narrow Wexford RFPs 49-51 and 56-58, along with RFPs 52 and 59, considerably.  We propose to apply these same narrowed requests to the corresponding requests in Wiley, and have you review those requests for relevance.

<u>Second</u>, we note that in light of Judge Daly's Feb. 13 order, on Feb.22 we served a handful of additional discovery requests that were specifically tailored to comply with the instructions by Judge Daly regarding the appropriate phrasing and narrowing of requests.  We propose that this be the second set of requests that Wexford review for relevance in the ~2,000 documents.

In short: we propose to confine the relevance review to (a) the Wiley discovery requests as narrowed in the 5/3/23 Reed letter, and (b) the Feb. 22 discovery requests.

**Wexford's refusal to search for meeting notes**.  (Wiley ECF 146 at 7-8).  Judge McLynn's order limited this request to meeting notes that concerned particular patients, based on his ruling that the other (unmodified) requests were overbroad.  As noted above in the "Wexford's responsiveness review" section, we are offering narrow our discovery requests.  We therefore propose that the request be limited to meeting notes responsive to the two sets of discovery set out in that section (i.e., the sets of discovery labeled "<u>First</u>" and "<u>Second</u>" in the "Wexford's responsiveness review" section).

**Wexford's refusal to produce Lippert meeting invitations**.  (Wiley ECF 146 at 8-9).  We disagree with, but will not contest in Wiley, Judge McGlynn's ruling that our discovery requests do not cover meeting invitations.  Instead, however, in our 9/27/23 interrogatories to Wexford, we have asked specifically that Wexford provide information regarding meetings.  We therefore ask that Wexford agree to identify responsive meetings indicated among the ~2,000 documents produced for review, in response to the 9/27/23 interrogatories.

I'm happy to discuss these items with you tomorrow Jaclyn, if you have time.  I am generally open and can make myself available at your convenience.


Best regards,


- Steve

_____
**Stephen H. Weil** (He/Him)
LOEVY + LOEVY
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com


On Tue, Nov 28, 2023 at 4:14 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

  Yes, the order related specifically to the RFPs that sought documents concerning the 17 patients.


  Thanks,


  **Jaclyn Kinkade** | Partner
  Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
  100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com
  CASSIDAY SCHADE LLP
  Illinois | Indiana | Missouri | Wisconsin

  **From:** Steve Weil <weil@loevy.com>
  **Sent:** Tuesday, November 28, 2023 4:00 PM
  **To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
  **Cc:** Maria Makar <makar@loevy.com>
  **Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

Apologies for the slow response.  I've been under the weather and have been traveling to defend a deposition simultaneously.  I'll try and write you something more extensive to send to you tomorrow morning, and I propose that we get as much done over email as possible before holding a call--and then hold a call Thursday afternoon when I will have returned from the deposition.

In the meantime, one question:  I read the order as an instruction to search for / produce notes from the meetings generally--not just notes that touch on the 17 patients in particular.  It seems you read it as calling only for notes about the patients.  Is your reading?

_____

**Stephen H. Weil** (He/Him)
**LOEVY + LOEVY**
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Mon, Nov 27, 2023 at 12:21 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

To follow up on these issues after digesting the Order from Judge McGlynn on your Motion to Compel, there were some fundamental, significant issues with the Order that we believe constitute error.  For example, in one sentence the Order finds our work product objection conclusory when there was a factual section of the Response dedicated to both work product and an explanation that the objections were categorical as to scope and there had not yet been a search to review each document for privilege.  I am deeply troubled by this conclusion and the lack of discussion on a foundational privilege.  Additionally, after you filed the Motion to Compel, we kept working on written discovery to resolve some of these issues and produced interrogatory answers providing even more context for the work product objections.  However, given the below, we likely will not be raising a written objection to the Order at this time, but wanted to make clear why.

The Order was specific that it relates to the RFPs about the 17 identified Lippert patients. As you may recall, one of the objections we raised was most of the Lippert reports were not about the death reviews but about 15 major services in 8 (or less) facilities. We questioned whether such documents existed as they were not identified in the ESI already conducted and objected to performing further investigation into their existence given that the notes, if they existed, would be privileged. After the Order, I had several communications with my client regarding whether such notes exist as there is no need to object to/appeal the Court's Order if there are no documents to produce. As I mentioned before, this is not a quick process. Some individuals have passed, some have retired, and some are unavailable for other reasons. As of now, though, it appears that there were no meeting notes taken relating to the 17 identified patients. I wanted to let you know since it may alleviate all or most of the issues in the joint report in Wiley. I want to hear back from another person but at least 5 individuals that were involved in Lippert meetings have said they have no notes and are unaware of the existence of responsive notes.

I am also having an associate go through the 3 Lippert searches again, in line with Judge McGlynn's Order. I do not expect anything additional to be found as I pulled everything related to cancer when I reviewed it the first time and I would have logged it on the privilege log if I found anything, but I will let you know if she finds anything else.

In the unlikely event that we learn of the existence of any responsive Lippert notes, we will be seeking reconsideration and an interlocutory appeal on the issue of work product.

Given this status, please let me know what you believe is outstanding and when we can discuss it further.

Sincerely,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 16, 2023 4:45 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

We have been digesting Judge McGlynn's order from yesterday, including in light of Wexford's supplemental interrogatory responses, which you served Monday.  We think some further Rule 37 discussion may be called for, and as such, we should seek another extension to file the status report with Judge Dugan.

First, Judge McGlynn ordered for a search of notes taken at the Lippert meetings.  And on consideration that makes sense, even with Wexford's Monday supplemental interrogatory response asserting that the meetings were conducted for the purpose of providing legal advice about the Lippert litigation.  Wexford has asserted in the interrogatory responses that the meetings were called by attorneys for the purpose of providing legal advice, but it does not necessarily follow that every participant in every meeting created notes only for the purpose or recording legal advice, as opposed to making notes for another purpose as well--such as a business purpose as that has been defined in our discovery.  Wexford certainly cannot resolve the question of whether the notes were privileged simply by asserting that the purpose of the meeting was privileged.  That is particularly so given that you have asserted a self-critical analysis privilege over documents that would have been used at meetings, which indicates that some documents may have been dual purpose.  We'd like to discuss this matter with you.

Second, as I noted in my email from earlier today, we intend to raise the Wiley February 22 discovery in relation to our request that Wexford review the approx. 2,000 "Lippert" documents for responsiveness.  We have discussed that discovery in previous conferences; I want to make sure we have discussed it in the context of our motion to compel, particularly in light of Judge McGlynn's ruling regarding the required specificity of discovery requests for the "Lippert" responsiveness review.

Third, as noted in my email from this morning, after giving further consideration to Wexford's supplemental interrogatory responses, we do intend to depose persons who were at the Lippert meetings, and thus we will need some means of identifying participants.  We would like to discuss this with you as well.

All three of these items call for further discussion, which can't be completed and briefed before our deadline tomorrow.  We'd therefore feel it's appropriate to request a further extension with the Court.

I can be available for a call tomorrow on the early side.  I can also be available for a call on Monday or Tuesday next week.

Please advise.

- Steve

_____

**Stephen H. Weil** (He/Him)



Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Thu, Nov 16, 2023 at 11:35 AM Steve Weil <weil@loevy.com> wrote:

Jaclyn,

I'm working on the joint report in Wiley and expect to have it to you by the end of the day.  I wanted to advise you of two things in advance.  First, understanding the representations in your supplemental interrogatory responses, we do intend to depose one or more people involved in responsive meetings.  Therefore we request that as part of your re-supplementation of the interrogatory responses, you identify such people.  Second, in the Wiley joint status report we do intend to point out our Feb. 22 Wiley discovery requests and argue that the Lippert production should be assessed for responsiveness to that discovery as well.

_____

**Stephen H. Weil** (He/Him)

LOEVY+LOEVY
Office: (312) 243-5900

Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Fri, Nov 10, 2023 at 9:11 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

You are correct on both accounts.  I do expect that we will provide a supplemental interrogatory answer as you requested concerning the purpose of the Lippert meetings.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 9, 2023 2:50 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn I'm writing to follow up on our call today, to make sure we are on the same page regarding two positions you articulated on the call.

First, my understanding is that in the event of a Rule 30 / Rule 30(b)(6) deposition going to the same topics as Plaintiff's Sept. 27 interrogatories, a witness would testify that meetings among Wexford executives to address the criticisms in the Lippert report did occur; but that the witness would be instructed not to answer questions about the substance of any such meetings because Wexford takes the position that the substance of any such meetings is privileged under the attorney client and attorney work-product doctrines.  Please confirm I understand your position correctly.

Second, Wexford takes the position that none of the Lippert meetings or communications connected with those meetings, were dual-purpose, i.e., having both a legal purpose and a business purpose as we have described those terms in the Sept. 27 interrogatories. Please confirm I understand your position correctly.


Thanks,


Steve


_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**




On Thu, Nov 9, 2023 at 8:55 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

I can do 12:30-1:30 today. But in advance I need responses to the questions raised in my 10/27 email to discuss further.



Thanks,


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 9, 2023 8:13 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn when are you available to meet today?  I have something at 10-10:30 and then a hearing at 1:30 that should go 45 minutes.  Other than that I am open.

_____

**Stephen H. Weil** (He/Him)
**LOEVY + LOEVY**
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**

On Fri, Oct 27, 2023 at 2:41 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

To add to the meeting minutes issue, the interrogatory answer also explains that it would be impossible to track down meeting minutes, but yes they would also be privileged.

I am not doing the non-*Lippert* search because we have a disagreement about the scope.  I believe this issue was raised in the response to the MTC in *Reed*.  I can start if you want but I will be reviewing in accordance with the scope set out by Judge Daly and will object to doing it a second time. Please advise.

The documents produced are not meeting minutes (which would be privileged) but are meeting agendas.

The objections in the privilege log are not a description of the documents.  They are legal objections made to preserve and not waive.  The description of the type and purpose of the documents is given through testimony under oath by Wexford in the interrogatory answers.  The purposes of the meeting/documents made therefrom was in defense of litigation with or at the direction of counsel. I agreed to ask Andy Ramage about your request to supplement the interrogatory answer concerning whether there was a business purpose, but the definition of

business purpose in your interrogatory said a "non-legal" purpose and thus I believe the answer clearly states that the meeting were for a legal purpose.  I explained to you that mortality reviews, peer reviews, etc. were performed separately.

It is not my understanding of the law that a self-critical or deliberative process objection requires the documents be created for a business purpose.  If you have any caselaw on this issue, stating that they cannot be used for documents created at the direction/assistance of counsel in defense of litigation, then I will review for potentially removing the self-critical and/or deliberative privileges, but none of my experience or research confirms your position.  In fact, I found many cases where work product, self-critical, and deliberative privileges were lodged together.  This is because, as held in the case you cite, while they *could* apply to internal processes and review, it also protects "other documents containing an organization's self-critical analyses." *Lund v. City of Rockford*, No. 17 CV 50035, 2017 U.S. Dist. LEXIS 196202, 2017 WL 5891186, at *4 (N.D. Ill. Nov. 29, 2017).  As mentioned on the call, as essential component of defense of litigation is assessment of the allegations and, in *Lippert*, it was claims about the 15 major services provided by the IDOC.  If you will be arguing that lodging self-critical or deliberative process privileges means that the documents *were prepared for a non-legal purpose*, I will need the caselaw from you in advance of our call to meaningfully consider withdrawing the objection because I have been unable to find any law to support this argument- and the documents *were not prepared for a non-legal purpose*.

You referenced *Green* on our call.  I am not entered so I conducted a review and it appears the privilege at issue in *Green* was IMSA (not alleged at this time), which is expressly applied to documents "used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation."  Thus, Sarah argued that the documents were dual privilege and should be produced.  That argument *did not* win the day.  Instead, Judge McGlynn denied application of IMSA (again not at issue at this time) and then found insufficient information was provided for the work product objections.  *Green v. Meeks*, 2023 U.S. Dist. LEXIS 17092, *13, 2023 WL 1447817.  These are also different documents.

There are no dual purpose documents at issue.  These meeting and documents were prepared in defense of litigation at the direction of or with the assistance of counsel.  Furthermore, I do not think you are using the term dual purpose appropriately and dual purpose documents can still be privileged.  "According to the Seventh Circuit, a dual purpose document, one prepared in anticipation of litigation and for another purpose as well, is work product only if the primary motivating purpose behind [its] creation is to aid in possible future litigation." *Smith-Brown v. Ulta Beauty, Inc*., No. 18 C 610, 2019 U.S. Dist. LEXIS 108021, 2019 WL 2644243, at *1 (N.D. Ill. June 27, 2019) (citing *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)).  These documents were prepared for the purpose of responding to ACTIVE litigation, not in anticipation of future litigation.  Nonetheless, should you believe that based on my objection somehow the documents transformed into some additional purpose (without fact or law that I've

been made aware of), the primary purpose of the documents on the privilege log was undeniably responding to the class action lawsuit, as attested to.

My suggestion for a 30(b)(6) is to get at the substance of what you want because this is not getting anywhere.  When meetings occurred doesn't matter and only can cause a lot of run around.  What was discussed at each meeting cannot be elucidated.  If you want to know who were the main individuals who were involved with review of certain portions of the *Lippert* report, then you could ask that question but that's not what you are asking.  You are asking for dates, invites, notes, and all attendees for a decade which is impossible to do and is not probative of anything.  Whether they had yearly, quarterly, or weekly meetings, it is of no consequence and I'd be shocked if anyone can tell you what occurred in a meeting in 2014.  The outcome of the meetings, as it relates to our topics, are reflected in the documents on the privilege log, but ultimately this is all privileged because it is defense of active litigation.  It boggles my mind to spend all this time trying to recreate when meetings occurred for a decade and who was there when we both know that if you ask what was discussed we will object.

I haven't been able to attempt to filter for *Lippert* meeting email invites (vs regular emails) and review for burden from the *Lippert* ESI (I already reviewed once) because of the amount of time allocated to our hour and a half call yesterday and this email chain afterward.  I will have to follow up.  I don't believe invites are responsive to RFPs so they wont be produced but my understanding is you want me to look to see if they say who attended and then supplement the interrogatories.  As referenced above, wouldn't an easier way to avoid all of this be to simply ask who were the executives that oversaw the reviews for cancer care/life threatening conditions mentioned in *Lippert*?  It would be much more reliable and less burdensome than review of meeting invitations from an ESI.  You referenced testimony you have from *Dean*, so you proffer to have some of this information already, but if this will resolve the meeting minutes/notes/attendees issue then I will inquire about a supplemental response of this nature.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

---

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, October 26, 2023 5:28 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

To follow up on our call.

You are requesting a two-week extension (to Nov. 10) for our report tomorrow in Wiley, because you are taking vacation.  We will not oppose that request, but we request that you please provide a copy of the motion in advance.

To make sure we don't have to request yet another extension, I would ask that you be prepared to state your outstanding positions on the discovery issues we discussed on Nov. 6 or 7, and that we schedule a follow-up call for Nov. 7 or Nov. 8, so that we have enough time to complete our report to the court by Friday Nov. 10.

Otherwise, I'm writing to memorialize the discussion on our call today, to confirm where we are at issue.

**Existing motion to compel** (Wiley ECF 146, Reed ECF 139).

The motion to compel covered three areas:

(1) review of documents gathered in response to the Lippert ESI for responsiveness to other discovery requests.  You confirmed that we remain at issue.

(2) Production of notes from meetings discussing Lippert.  You confirmed that we are at issue.  You stated that you would not search for the notes, because they would be privileged in any event, as all the meetings had a legal purpose.  We remain at issue.

(3) Production of computerized meeting invitations from among the Lippert documents gathered. You stated that you would search for these documents, if there was some way to do so by isolating MS Office invitations. <u>We are waiting to hear back from you on this one</u>.

You also confirmed that Wexford had completed its production of documents from the Lippert ESI search terms (<u>I do not believe you have conducted a review of the documents gathered for the non-Lippert search terms. **Please confirm**, and provide a date by which that review will be completed</u>.) The production consists of a privilege log listing nine documents, and production of meeting minutes from two meetings between Wexford and IDOC that occurred in 2019. For 8 of the 9 documents listed on the privilege log, the log asserts both attorney client / attorney work-product privileges AND deliberative process / self-critical analysis privilege. The log asserts only attorney work product privilege for the remaining document (Log no. 11). I explained to you that as to the 8 documents, dual-use was indicated (i.e., documents used for a legal purpose (attorney-client / work-product) and a non-legal purpose (a purpose covered by the deliberative process and self-critical analysis privilege). You disagreed. <u>We are at issue as to that question</u>.

Regarding the asserted privileges themselves--neither the deliberative process privilege or the dual-use privilege protect documents in this case. The deliberative process privilege applies to governmental entities, not private companies like Wexford. The self-critical analysis privilege, meanwhile, is inoperative in federal civil rights cases like this one. *See, e.g.,* Lund v. City of Rockford, No. 17 CV 50035, 2017 WL 5891186 (N.D. Ill. Nov. 29, 2017). Because both those privileges do not apply in this case, the eight dual-use documents listed in your privilege log are subject to disclosure. Based on our discussion today <u>I believe we are at issue regarding this matter. Please correct me if I am wrong; if so let me know where we are not yet at issue.</u>

**Plaintiff's Sept. 27 interrogatories in Wiley and Reed**, concerning certain Lippert meetings.

As I noted, the purpose of these interrogatories was to comport with Judge McGlynn's admonition (made in light of your contention that the Reed plaintiffs should depose persons regarding Wexford's meetings about the Lippert reports) that I should depose Wexford employees who participated in meetings about the Lippert reports.

First, you objected that the interrogatories target privileged information. But I explained that none of the information sought in the interrogatories (essentially, who participated in certain meetings and when they occurred, whether documents were generated, etc.) do not seek the substance of the communications in those meetings. As such, assuming the communications at the meetings

were privileged, the information sought in the interrogatories, which does not seek the substance of the communications, is not. <u>I believe we are in agreement on this point, but please correct me if I am wrong</u>.

Second, you object that the interrogatories are overbroad because they are not limited in time, that they treat as responsive meetings in which the responsive topics were discussed along with other topics, and that Wexford did not keep "meeting logs." As such, you object that responding to this part of the interrogatories would require you to search all meetings over a decade. Instead, you suggested that I provide a Rule 30(b)(6) notice, after which (if I understand you correctly) the targeted meetings could be identified.

I noted (as I had done before) that these interrogatories should be limited to responsive meetings in which senior executives participated. I also noted that Plaintiff counsel could not know when responsive meetings occurred, but presumably they would have occurred when Wexford executives were assessing the assertions in the reports. As such, I noted, the number of responsive meetings would likely be limited and more straightforward to find. I noted that many of the meetings could be identified in the documents gathered pursuant to the ESI Protocol. I also noted that documents generated for or about the meetings (which the interrogatory asks you to identify) could also indicate the purpose of the meetings, as well as their participants. You responded that you were "not in-house counsel" at Wexford and that as such you were not in a position to identify when such meetings occurred.

In response to your request that I serve a Rule 30(b)(6) notice instead of these interrogatories, I noted that the Rule 30(b)(6) notice would be substantively identical--seeking the same information as the interrogatories. If I understood you correctly, you stated that responding to such a Rule 30(b)(6) notice would be unduly burdensome as well, even if the Rule 30(b)(6) notice were confined to responsive meetings by senior executives.

As understand it, <u>you are agreeing to search for responsive meeting invites among the Lippert ESI documents that have been gathered</u>, if the invitations can be isolated from other communications using search features. Please confirm.

Third, each of the interrogatories asked Wexford to state whether each of the responsive meetings had a "legal purpose" (subparagraph c), and also to state whether the meetings had a "business purpose" (subparagraph d). The interrogatories define both "legal purpose" and "business purpose". Your interrogatory responses state that each meeting had a legal purpose (viz. that each meeting was "conducted for the purpose of defending litigation, in anticipation of litigation, and with/at the direction of counsel.") The interrogatory responses do not state

whether any of the meetings also had a business purpose (i.e., whether they had a dual purpose--a legal purpose and a business purpose). As I understand it, <u>you agreed to revisit this issue</u> with Andy Ramage, who, you said, prepared the interrogatory responses. Please confirm. We ask that the interrogatory responses be amended to respond to subparagraph "d" of each of the interrogatories, and state whether any responsive meetings had a business purpose (in addition to or instead of a legal purpose).


Best regards,


Steve

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him




On Wed, Oct 25, 2023 at 1:14 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

Can we do 9:30am?


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Wednesday, October 25, 2023 10:11 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

How about 9:00 tomorrow morning?

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Wed, Oct 25, 2023 at 6:34 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

 I actually won't be able to do a call today but am pretty open tomorrow.

Sent from my iPhone


On Oct 24, 2023, at 6:55 PM, Steve Weil <weil@loevy.com> wrote:


**EXTERNAL**


That works for me.  I'd also like to talk about the Wiley / Reed interrogatory responses then too.  I'll plan to call you at 3:30.


 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him




On Tue, Oct 24, 2023 at 5:44 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

 I have a depo tomorrow but I can try to do 3:30 if I'm out by then.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image004.jpg>

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, October 24, 2023 12:26 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

Are you available tomorrow for a call?

--

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Thu, Oct 19, 2023 at 10:41 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

FYI I go on vacation the evening of 10/27 so I will not be available after 4pm that day.  I will be gone the following week and will return on 11/6.  Just wanted you to know so you could plan accordingly with our deadlines.


Thanks,


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image003.jpg>


Illinois | Indiana | Missouri | Wisconsin

---

**From:** Kinkade, Jaclyn A.
**Sent:** Tuesday, October 17, 2023 10:05 AM
**To:** Steve Weil <weil@loevy.com>
**Subject:** RE: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order


No objection.


Thanks,


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image003.jpg>

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, October 17, 2023 8:00 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn can you please advise? Thanks.

--

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Mon, Oct 16, 2023 at 9:50 AM Steve Weil <weil@loevy.com> wrote:

Jaclyn,

I have a major hearing in a Louisiana case on Thursday and will be on the road beginning tomorrow to prepare.  That will make it hard to complete our meet-and-confer and prepare a report.  I'd like to request a one-week extension on

the 10/20 deadlines in Wiley, to 10/27.  Any objection?


--

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him




---------- Forwarded message ---------
From: <ilsd_nef@ilsd.uscourts.gov>
Date: Fri, Sep 29, 2023 at 4:24 PM
Subject: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health
Sources, Inc. et al Order
To: <ilsd_nef@ilsd.uscourts.gov>

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of Illinois**

**Notice of Electronic Filing**

The following transaction was entered on 9/29/2023 at 4:23 PM CDT and filed on 9/29/2023

**Case Name:**     Wiley v. Wexford Health Sources, Inc. et al
**Case Number:**     3:21-cv-00599-DWD
**Filer:**
**Document Number:** 150(No document attached)

**Docket Text:**
**ORDER regarding Plaintiff's Unopposed Motion to Stay and Continue Expert Discovery (Doc. 149). On September 27, 2023, the Court denied Plaintiff's Motion to Compel (Doc. 146), without prejudice, because the parties had not complied with the Court's Case Management Procedures. (Doc. 148). The parties were ordered to conduct a discovery dispute conference on or before October 10, 2023, and to submit a Joint Written Discovery Report on or before October 20, 2023. (Doc. 148). Now, the instant Unopposed Motion seeks to stay and continue the expert discovery deadlines in light of the aforementioned ruling. The Unopposed Motion notes that Defendants' expert reports were due September 28, 2023, and all expert discovery is due October 28, 2023. (Docs. 133 & 134). Further, the Unopposed Motion notes that fact discovery relating to the medical events at issue is "essentially complete," but *Monell* discovery relevant to the soon-to-be-submitted Joint Written Discovery Report remains ongoing. Accordingly, the Unopposed Motion is GRANTED. In addition to the requirements already articulated at Doc. 148, the parties are DIRECTED to update the Court on the status of *Monell* discovery and to jointly propose dates for the completion of expert discovery in the Joint Written Discovery Report due on October 20, 2023. Signed by Judge David W. Dugan on 9/29/2023. (jnh)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED.**


**3:21-cv-00599-DWD Notice has been electronically mailed to:**

Jaclyn A. Kinkade &nbsp &nbsp jkinkade@cassiday.com

Jon I. Loevy &nbsp &nbsp jon@loevy.com, melinda@loevy.com

Maria Makar &nbsp &nbsp makar@loevy.com, brooks@loevy.com, feddor@loevy.com

Mediator Donald Wilkerson &nbsp &nbsp dwilkerson@jamsadr.com

Stephen H. Weil &nbsp &nbsp weil@loevy.com, brooks@loevy.com, feddor@loevy.com

Tara Marie Barnett &nbsp &nbsp Tara.Barnett@ilag.gov,

gabriela.dale@ilag.gov, gls@ilag.gov, nathan.sloan@ilag.gov

Timothy P. Dugan &nbsp &nbsp tdugan@cassiday.com, mlinnenbrink@cassiday.com

**3:21-cv-00599-DWD Parties and Attorneys without registered email addresses requiring notice by other means:**

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

Keyana Wiley,

    Plaintiff,

    v.

Wexford Health Sources, Inc., *et al.*,

    Defendants.

Case No. 3:21-cv-00599-JPG

## PARTIES' JOINT WRITTEN DISCOVERY REPORT

COME NOW Plaintiff KEYNA WILEY, through her attorneys; and Defendants WEXFORD HEALTH SOURCES, INC., CYNTHIA ROSS, R.J. DUPREY, COURTNEY WALKER, JUSTIN YOUNG, and ANGELICA WACHTOR, by and through their attorneys, CASSIDAY SCHADE LLP; and respectfully submit this Joint Written Discovery Report.

### I.   The Parties' Discovery Conferences.

The parties met and conferred on the following dates via telephone: October 5, 2023 for over an hour; October 26, 2023 for approximately an hour and a half; November 14, 2023 for half an hour; and December 4, 2023 for approximately an hour. The parties have also exchanged numerous email communication in between their calls.

### II.   Proposed Schedule.

The Court has instructed the parties to propose a schedule for the remainder of discovery in this case. *See* ECF 152. Subsequent orders have contemplated that the proposed schedule would be included in this joint status report. Plaintiff seeks to review a set of production from the IDOC before proposing a schedule for the remainder of the case. The production was scheduled to be completed on November 22, 2023, but remains incomplete with substantial production occurring on December 7, 2023. In light of this delay, Plaintiff seeks an extra week, to December 15, 2023,

1

to review the production and propose a schedule. Defendants do not oppose this request. A separate motion will be filed seeking this relief.

### III. The Discovery Areas/Issues Discussed by the Parties at the Discovery Conferences.

Pursuant to the Court's September 27, 2023 Order (*Wiley* ECF 148), the parties have met and conferred, and corresponded, regarding the matters raised in Plaintiff's September 26, 2023 motion to compel. (*Wiley* ECF 146). Plaintiff's motion to compel raised three discrete issues, as set forth in Plaintiff's motion: ***first***, "Wexford's selective responsiveness review," *see Wiley* ECF 146 at 6-7, ***second***, "Wexford's refusal to search for meeting notes," ECF 146 at 7-8, and ***third***, "Wexford's refusal to produce *Lippert* meeting invitations," *Wiley* ECF 146 at 8-9.[1]

### IV. Discovery Areas/Issues Resolved During the Discovery Conferences.

### 1. The parties have resolved the "*first*" dispute ("Wexford's selective responsiveness review," *see* ECF 146 at 6-7).

This dispute focused on whether Wexford's review of the universe of approximately 2,000 documents gathered pursuant to an ESI protocol. As Plaintiff's motion explains, it has been Plaintiff's understanding that Wexford's counsel confined her responsiveness review to documents reflecting Wexford's efforts to fix problems identified in the *Lippert* reports, instead of Wexford's discussions of criticisms contained in the *Lippert* reports. *Wiley* ECF 146 at 4-5.

**Resolution**: Wexford's counsel has represented to Plaintiff's counsel, in Wexford's filings in response to the parallel motion to compel in *Reed*, that Wexford has "has considered responsive any substantive communication concerning cancer care practices or deficiencies and will either

---

[1] Plaintiff's counsel filed an essentially identical motion in *Reed v. Wexford Health Sources, Inc.*, Case No. 3:20-cv-01139-SPM (S.D. Ill.). *See Reed* ECF 139. Wexford filed a response in opposition, *Reed* ECF 143, and the Court issued a ruling granting in part and denying in part the motion to compel. *See Reed* ECF 147.

produce them or identify them in the forthcoming updated privilege log." *Reed* ECF 143 at 13-14. Based on this representation, Plaintiff considers this dispute to be resolved.

**2. The parties have resolved the "*second*" dispute ("Wexford's refusal to search for meeting notes," ECF 146 at 7-8).**

**3.**

This dispute concerned Plaintiff's request that Wexford search for notes taken at meetings concerning Lippert.

**Resolution**: In *Reed*, Judge McGlynn granted this portion of Plaintiff's motion in part. *See Reed* ECF 147 at 9-10. Plaintiff considers this portion of the motion to be resolved.

**V.    The Discovery Areas/Issues that Remain in Dispute.**

Despite attempting to resolve their disputes during the discovery conferences, the parties were unable to resolve the following discovery areas/issues:

**1. The parties have been unable to resolve the *third* dispute in Plaintiff's motion to compel ("Wexford's refusal to produce Lippert meeting invitations," *Wiley* ECF 146 at 8-9).**

Documents submitted for consideration:  **Ex. 1**: Plaintiff's motion to compel, Wiley ECF 146 at 8-9. **Ex. 2**: Plaintiff's September 27, 2023 interrogatories to Wexford. **Ex. 3**: Wexford's October 19, 2023 responses. **Ex. 4**: Wexford's November 13, 2023 supplemental interrogatory responses. **Ex. 5**: Plaintiff counsel's October 26, 2023 email to Wexford counsel. **Ex. 6**:  the parties' July 31, 2023 Joint Status Report to the Court.

**Plaintiff's position**: During the parties' September 14, 2023 telephone conference, Wexford's counsel told Plaintiff that Wexford's executives did not communicate in writing about the *Lippert* reports, but instead had communicated about *Lippert* by holding meetings. *See Wiley* ECF 146 at 8-9. Plaintiff's motion to compel, which was filed on September 26, included a request

for production of electronic invitations to those meetings.  *Wiley* ECF 146 at 8-9.[2]  On September 27, however, Plaintiff supplemented her discovery regarding the meetings by serving four interrogatories.  *See* **Ex. 1**.  The interrogatories are phrased similarly.  Here is an example:

> 15.    Did any Wexford employees or agents hold meetings to review, investigate, analyze, uncover, prevent, or determine the prevalence of deficiencies described in the 2014 *Lippert* report relating in whole or in part to the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates?  If your answer is anything other than an unqualified No, please:
>
> a) state the date, time, place, and duration of each such meeting;
>
> b) state the identities of each person who attended each such meeting, including the person's name and job title;
>
> c) for each meeting identified in response to this interrogatory, state whether the meeting had a legal purpose;
>
> d) for each meeting identified in response to this interrogatory, state whether the meeting had a business purpose;
>
> e) identify every Document or Communication (including copies and drafts of same) prepared for or in anticipation of each such meeting, provided for or distributed to attendees of each such meeting, created by any attendees at each such meeting (including notes), describing or discussing any part or component of each such meeting;
>
> f) for each Document or Communication identified in response to this interrogatory, state whether said Document or Communication had a legal purpose; and
>
> g) for each Document or Communication identified in response to this interrogatory, state whether said Document or Communication had a business purpose.

Among other things, the interrogatories focus on whether any responsive meetings had a "legal purpose"—essentially, covered by the attorney client privilege or work-product doctrine, *see* **Ex. 1** (Definitions and Instructions), or whether it had a "business purpose," such as "assuring and improving the quality of services provided, protecting future patients and/or customers from

---

[2]   Judge McGlynn denied this portion of Plaintiff's motion to compel in Reed, on grounds that the *Reed* Plaintiffs' underlying Rule 34 requests did encompass such invitations, *see* Reed ECF 147 at 9.  Plaintiff does not seek to revisit that ruling with respect to her Rule 34 requests.

inadequate care," as well as "protecting against adverse publicity," and "improving prospects for future contracts to provide services offered by the company," *see* **Ex. 1** (Definitions and Instructions).

Wexford submitted a response on October 19, *see* **Ex. 2**. Among other things, Wexford objected that had numerous employees who had held numerous meetings, such that identifying all responsive meetings would be unduly burdensome. Nevertheless, Wexford was able to respond that every meeting had a "legal purpose"—yet also objected that the interrogatories were unduly burdensome because they "demand[] an assessment of each document and communication for its purpose (and improperly assumes that a meeting can only have one purpose)." **Ex. 2**.

Wexford's October 19 response did not state whether any of the meetings also had a business purpose. Plaintiff's initiated a Rule 37 conference, at which he explained to Wexford's counsel that under existing precedent a meeting (or communication, etc.) could have both a "legal purpose" and a "business purpose," which would render it a "dual purpose" meeting. *See* **Ex. 3**. Plaintiff also offered to address Wexford's overbreadth objection by confining the interrogatories to meetings in which senior executives participated, *see* **Ex. 3**. Two weeks later, Wexford provided a supplemental response in which it asserted that all responsive meetings had only a "legal purpose," and that no meeting by senior Wexford executives regarding *Lippert* had a "business purpose" or even a "dual purpose." **Ex. 4**. Wexford still refused to identify any responsive meetings, or other information or documents relating to responsive meetings that are sought in the interrogatories. The parties have attempted to compromise on this matter, but ultimately they have not been able to come to agreement.

Plaintiff seeks identification of meetings that senior Wexford executives attended where the *Lippert* reports' criticisms of Wexford's delay in diagnosis and treatment of serious medical

conditions (including cancer) was discussed. These meetings are of central importance to Plaintiff's contention that Wexford executives were indifferent to these problems, even after they received notice of them from two court-appointed experts in the *Lippert* case.

    Wexford's defense to this charge seeks to have it both ways. As Plaintiff explained in the parties' July 31, 2023 Joint Status Report to the Court, Wexford asserts that its executives *did* "assess[]" the problems identified in the *Lippert* reports, and thus they cannot be charged with indifference to them—but those "assessments" were done "in defense of litigation," and so any Wexford executive's "assessment[]" of the problems identified in the *Lippert* reports—which Wexford has since indicated occurred in meetings—is privileged, and need not be disclosed. *See* **Ex. 6** at 16. Wexford, in essence, appears prepared to assert at trial that it was not indifferent to the risks identified in the *Lippert* reports, while at the same time preventing Plaintiff from investigating the factual basis for that defense.

    Whether Wexford can truly have it both ways in this case and others will likely be contested in this case going forward. For the moment, Plaintiff simply seeks to gather evidence to understand what she can about the contours of these meetings, and test Wexford's assertion—made by its lawyers on a few days' time—that every single meeting among executives had only a "legal purpose," and not a "business purpose." Notably, a company's claim of a "legal purpose" in these circumstances does not end the matter. Consider the district court's analysis in

*In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515 (N.D. Ill. 1990), which ultimately rejected an airline's claim that virtually all documents generated after an airplane crash were protected attorney work-product or attorney-client communications:

> In *Air Crash*, the airline company immediately implemented its own investigation of the airplane crash and the first lawsuit surrounding the incident was filed the next day. *See Air Crash*, 133 F.R.D. 515. The airline's purpose in the crash investigation was two-fold: one was to find the cause of the accident, improve aircraft products,

protect future pilots and passengers, protect against adverse publicity, promote its own economic interests, and improve its prospects for future contracts with the manufacturer of the aircraft. *Id*. at 519–20. The other purpose was defense of the lawsuits filed. *Id*. at 519. Complicating matters, the airline assigned their attorneys overall responsibility for everything concerning the accident, so that nearly every communication regarding the investigation was sent through an attorney or sent with a copy to an attorney. *Id*. at 520.

Given the dual purposes of the investigation, the court considered whether all internal investigation and analysis following an event becomes work product once a lawsuit has been filed. *Id*. at 524. Using the test as set forth in *Loctite* and Professor Moore's definition, the court concluded that it did not, and ordered documents produced that would have been prepared in the same way even if no suit was ever filed or expected. *Id*. at 525.

*Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 615 (N.D. Ill. 2000) (summarizing *Air Crash*).

The airline's actions in *Air Crash* are closely analogous to Wexford's reaction to the *Lippert* reports and their identification of numerous risks to Wexford's patients arising from its practices in the delivery of medical care, and its assertions of privilege will likely require a similarly nuanced assessment by the Court. *Cf. Air Crash*, 133 F.R.D. at 520-27 (describing detailed methodology for assessing attorney-client and work-product claims). For the moment, Plaintiff's interrogatories seek to gather information to test the basis for Wexford's privilege claims as best she can—by putting them in context and interviewing their participants. It is for this reason that Plaintiff has served the September 27 interrogatories at issue in this dispute. Plaintiff respectfully submits that this discovery is entirely germane to Plaintiff's claims in this case. With information from the interrogatory responses in hand, Plaintiff intends to depose one or more participants in the meetings to understand Wexford executives' response to the information in the *Lippert* reports. Wexford's responses to the interrogatories are highly likely to result in the discovery of evidence relevant to Plaintiff's *Monell* claims.

Aside from their central relevance to Plaintiff's *Monell* claims, Wexford gives little reason to believe that identifying responsive meetings and other information is likely to be particularly burdensome. Plaintiff has limited the meetings to senior Wexford executives, and has confined the topics of the meetings to those germane to the *Monell* claims in this case. Doing so should dramatically reduce the number of responsive meetings. Furthermore, to the extent written agendas, notes, or written materials were prepared for the meetings, those materials—even if privileged—can be used to identify meetings that are responsive. Plaintiff has raised this means of searching for meetings with Wexford, but the company has expressed no interest in identifying responsive meetings in this way. It should, and should take other common-sense steps like simply interviewing senior executives or have them look through their calendars. In an age of ubiquitous email communication it is simply implausible that the burden of identifying responsive meetings is insurmountable.

**Wexford's position**:

## I.      Efforts Taken by Defendant to Resolve this Issue

The remaining issue in dispute is Plaintiff's request for answers to her interrogatories concerning dates and attendees for meetings "to review, investigate, analyze, uncover, prevent, or determine the prevalence of deficiencies described in the 2014 [and 2018] Lippert report relating in whole or in part to the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates." Plaintiff is not seeking to compel document production at this time as Judge McGlynn in *Reed*, discussed *supra*, denied plaintiffs' Motion to Compel on this issue as plaintiffs' requests (nearly identical to the ones in this case) did not seek meeting invitations.

Here, Defendant engaged in many communications to try to resolve this issue without Court intervention. For example, the parties spent numerous months developing an ESI protocol

to identify documents Plaintiff sought in this case.  Defendant objected to the ESI protocol and the Court, in ruling on Plaintiff's first Motion to Compel, did not order an ESI protocol. (Doc. 107). Nonetheless, Plaintiff persisted, and Defendant complied to avoid further Court intervention, including three search terms specifically targeting *Lippert* communication.[3]

After spending months preparing the ESI protocol, Defendant reviewed 3,817 emails, not including attachment.  The review constituted 2GB of information and production was made on July 13, 2023.  In resolution of other discovery disputes, Defendant reviewed this universe of communications a second time in November 2023 (without identifying any additional responsive documents).   In the recent discovery dispute conferences related to meeting invitations/dates/attendees, Plaintiff asked Defendant to review the ESI a third time to locate any *Lippert* meeting invitations concerning the scope of Plaintiff's (September 27, 2023) interrogatories and, if there were any, to supplement the interrogatory answers with the dates, attendees, and subject of the meeting in the invitation.  Defendant was originally hesitant to perform the same review a third time, not just because of the duplicative efforts and costs, but also

---

[3] Plaintiff's proffer that Defendant did not inform him until September 2023 that email review was an ineffective tool to discover the information he seeks is demonstrably untrue.  Nearly a year ago, Defendant's briefed this exact issue, including "Given the nature of *Lippert* being a decade's long class-action, the documents and communication, including their response to the monitors' reports are privileged, as outlined in Defendant's objections to Plaintiff's Request for Production, incorporate by reference as if fully state herein.  Plaintiff's response is that Defendant can create a privilege log, yet this misses the issue entirely.  Review for attorney-client privilege is not a search function that can be conducted without detailed review of each hit. Such review alone, not including logging thousands of emails and documents, is disproportionate to the needs of this case, a grossly ineffective means to identify information, and can only serve to increase the cost of litigation and delay this case.  Thus, discovery into *Lippert,* will be exponentially more time and cost intensive to the extent that it is not reasonably accessible and would likely result in a delay in this case of more than a year for Defendant to prepare a privilege log and very likely nothing else.  FRCP 26(b)(2)(B)."  (Doc. 90).  In fact, the repeated pattern in this case and *Reed* is Defendants express that Plaintiffs' demand is unreasonable or unlikely to advance the matter, and then when Defendants comply, they are chastised that the results did not advance the matter.  This pattern disincentivizes continued cooperation in discovery.

because it seemed that each time Defendant agrees to take action to resolve a discovery dispute, the results are unsatisfactory and Plaintiff raises new disputes, not previously requested.  However, significant time has been undertaken concerning Plaintiff's *Lippert* requests and, in an effort to move forward, on December 6, 2023, Defendant sent the following to Plaintiff:

> For the Lippert meetings invitations issue, I want to confirm your offer to resolve this issue. If we conduct a third review of the Lippert ESI protocol results for meeting invitations responsive to interrogatories #15-18 in Wiley and #16-19 in Reed, and supplement these interrogatories with the date, subject, and invitees for each meeting, will this resolve written discovery on meeting invitations/meeting dates.  In other words, there will be no further written request or demand by Plaintiff to review/conduct Lippert ESI again or conduct further investigation/production as to the dates, subject, invitees, etc. related to Lippert meetings.
> If so, we may be able to come to an agreement to avoid additional briefing on the issue and move forward in discovery but I need to be clear on the agreement to confirm with my client.

Despite Plaintiff's original optimism that this proposal "would go a long way to resolving this," last night Plaintiff declined continued discussed of this proposal and seeks Defendant conduct further investigation into when *Lippert* meeting occurred and who was in attendance/invited.  This begs the question if the *Lippert* ESI that Plaintiff requested is not sufficient to resolve this issue, why did Plaintiff insist on a *Lippert* ESI protocol (with terms Plaintiff selected).

As addressed below, Plaintiff's request is overbroad, disproportionate to the needs of this case, and unduly burdensome to the point that it is likely impossible.  Further, in the face of undue burden, Plaintiff's request is not likely to reveal substantive information as meetings for the purpose of defending active litigation and at the direction of counsel are privileged.  Given these are privileged meetings, the date and attendees are probative of nothing.  Nonetheless, should the Court compel further answer to the (already lengthy) answers already provided by Wexford, the most efficient, least burdensome way to obtain this information is laid out in Defendant's

December 6th correspondence, which would still require duplicative work of Defendant (because Plaintiff did not timely request Defendant to look for meeting invitations during the original ESI review).  If the Court orders a third review of the *Lippert* ESI protocol results for meeting invitations to assist in answering the interrogatories, Defendant respectfully request the Court order no further review of the *Lippert* ESI results for the above reasons.

## II.    Dates and Attendees of *Lippert* Meetings is Not Readily Accessible and Defendant has Conducted a Reasonable Investigation

The threshold issue here is Plaintiff's request is overly broad, unduly burdensome, and disproportionate to the needs of this case.  Defendant objected as such (reserving the privilege objections for below):

> In addition to the privilege objections, Plaintiff's request is fundamentally overbroad, and unduly burdensome as it is not limited in time, thus it is not proportional to the needs of this case.  FRCP 26; *Little v. JB Pritzker for Governor*, 2020 WL 1939358, *6 (N.D. Ill. 2020)(citing *Earthy LLC v. BB&HC, LLC*, 2017 WL 4512761, *3 (N.D. Ill. 2017), also citing *Builders Ass'n of Greater Chicago v. City of Chicago*, 2002 WL 1008455, *5 (N.D. Ill. 2002)). Plaintiff also seeks all documents which cannot be said to be proportional to the needs of the case.  See, e.g., *M. McGee Design Studio v. Brinson*, 1994 U.S. Dist. LEXIS 9789, *28, 1994 WL 380613 (N.D. Ill. July 18, 1994).  Of note, although Plaintiff appears to set a scope concerning untimely diagnosis and other life-threatening conditions, it also seeks any meetings that addressed these issues even in part.  In effect, there truly is no scope at all.
>
> Furthermore, Defendant does not maintain such meeting logs and Plaintiff's request demands an expansive investigation into all meetings over a decade, including each date, each attendee, and all documents created or provided therein.  This information is not readily available and such efforts are unduly burdensome and disproportionate to the needs of this case.  It further demands an assessment of each document and communication for its purpose (and improperly assumes that a meeting can only have one purpose).
>
> Defendant also objects that this request is not crafted to seek information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  FRCP 26(b)(1).  It is also compound, several times over, in an apparent attempt to avoid the limitations of FRCP 33.
>
> The Court's Order (Doc. 107) outlines the scope of discovery set by the Court concerning these topics.  To the extent Plaintiff seeks to expand upon that Order, her Motion to Compel was denied.

Plaintiff's position gives the impression that Defendant performed no investigation and lodge these objections with no basis. This is patently untrue. A simple reading of the interrogatory answers shows that a reasonable investigation was performed into whether information concerning these meetings was readily accessible to assist in identifying when they occurred over the past decade. Additionally, in review of the ESI results the first time, Defendant either produced or logged correspondence and documentation concerning changes/deficiencies in cancer care, including meeting agendas. The privilege log also contains certain dates of meetings and certain individuals included on email correspondence. Furthermore, Wexford attested, subject to objections,

> Defendant has conducted numerous internal meetings and meetings with IDOC over the past decade to address the 2014 Lippert report. Inasmuch as cancer and life-threatening conditions are addressed in the Lippert report, these meetings may have related in part to diagnoses of cancer and other life-threatening conditions for IDOC inmates. Defendant does not maintain lists of such meetings and, therefore, cannot confirm which of the numerous meetings particularly discussed the untimely diagnoses of cancer and other life-threatening conditions. However, such meetings were conducted for the purpose of defending litigation, in anticipation of litigation, and with/at the direction of counsel. Additionally, any meetings that were conducted with the IDOC relating to reviewing, investigating, analyzing, uncovering, preventing, or determining the prevalence of deficiencies described in the 2014 Lippert report were done pursuant to the joint defense – common interest- agreement with the IDOC; thus, any subjects discussed or documents discussed/prepared at (or as the result of) the meetings are privileged.
>
> During an ESI search, Defendant located two agendas that do not contain privileged information and Defendant is producing them subject to the protective order in this matter (Wiley/Reed Case No. 3:21-cv-00599-DWD and 3:20-cv-01139-SPM 0059-0060). See also Defendant's prior production bates labeled Wiley/Reed Case No. 3:21-cv-00599-DWD and 3:20-cv-01139-SPM 0007-0021. Defendant expressly does not waive the privileges addressed above to the content of the discussions at said meetings or any documents reviewed or prepared as a result. In addition, Wexford assisted the IDOC in drafting a response to the 2014 Expert Report. That Report, which was authored by IDOC Chief Counsel, William Barnes, on November 3, 2014, is protected from disclosure under the order appointing the expert and cannot be released absent permission from the Lippert court. Doc. 244, par. 6b.

This detailed answer outlines 1) the number of meetings over a decade is voluminous, 2) there is no way of knowing which meetings addressed cancer care or life-threatening conditions "in part," 3) the meetings were not logged so there is no singular document or set of documents that can answer further, and 4) when agendas were uncovered in the ESI review that fell within the scope of Plaintiff's request, they were produced.  These answers were not only attested to by Wexford, but they were also reviewed and approved by Wexford's counsel in *Lippert*.

Defendant is confused by Plaintiff's request for Defendant to inquire with individuals, as Plaintiff was informed that ***Defendant has inquired with numerous Wexford employees*** (at least six) concerning this issue and Plaintiff's request for meeting notes from these meetings in forming their answer.  Undersigned counsel has also proffered several times that, while a deponent may be able to testify generally how often reoccurring meetings occurred and who was typically present, it is beyond the expectation of human memory, and based on the investigation here, that any individual will have a memory of the dates, subject matter and content, and attendees for each meeting over a decade.

While Plaintiff professes to only seek meetings about cancer care and life-threatening conditions if discussed "in part," Defendant has no way of knowing whether any meeting discussed (or did not discuss) these issues "in part" and Plaintiff is essentially demanding Defendant investigate and answer for every meeting concerning *Lippert* over a decade. Yet, it is "fundamental" that discovery requests which "encompass an unlimited range of information" are overly broad. *Little v. JB Pritzker for Governor*, 2020 WL 1939358, *6 (N.D. Ill. 2020)(citing *Earthy LLC v. BB&HC, LLC*, 2017 WL 4512761, *3 (N.D. Ill. 2017), also citing *Builders Ass'n of Greater Chicago v. City of Chicago*, 2002 WL 1008455, *5 (N.D. Ill. 2002)).

Plaintiff's request is patently overbroad, unduly burdensome, and disproportionate to the needs of the case.  Nonetheless, Defendant has conducted a reasonable investigation, including communication with pertinent counsel and employees.  What remains is truly a demand for a very expensive fishing expedition with no good faith that such efforts will advance the case.  The Court's previous explanation regarding Plaintiff's Requests for Production also holds true here, "Plaintiff's requests were so overly broad that even to the extent *some* relevant information was responsive to the requests, it would be impossible for Wexford to respond in any meaningful fashion."  (Doc. 127, p. 2, emphasis in original).  Accordingly, the Court should find Defendant's Interrogatory Answers to be sufficient and deny Plaintiff's requested relief.

### III.    *Lippert* Meeting are Privileged

Plaintiff is not seeking to compel responses to her requests for production.  Since Plaintiff is not seeking to compel such responses or documents logged on Defendant's privilege log, the issue of privilege here should be another factor weighing on the assessment whether locating and answering for every *Lippert* meeting for a decade is proportionate to the needs of this case and advances it in any way.  Undersigned counsel has explained that the content of the *Lippert* meetings is privileged and, if asked, Wexford and its employees would be advised accordingly.

This is not the first time this issue has been before the Court.  In discussing *Monell* discovery and *Lippert* documents, the Court previously held:

> As previously noted, the Court expects that Wexford has many, many documents from its outside attorneys that refer to the Lippert reports because those reports were made during litigation and have been the subject of multiple discovery disputes in subsequent cases. Any documents or communications written or produced by Wexford's outside counsel on this specific issue for Wexford employees' eyes only would clearly fall under the attorney client privilege and the Court sees little use in defense counsel adding countless entries to a privilege log for every document written or produced by Wexford's counsel for Wexford that mentions this specific issue. **Thus, communications between outside counsel (meaning, attorneys that work at law firms retained by Wexford) and Wexford that "memorialize or discuss Wexford's efforts (if any) prior to July 1, 2019 to address the**

14

**deficiencies in the Lippert reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates" need not be produced or included on the privilege log.** The Court acknowledges that Wexford may have other potentially privileged documents responsive to this Order, and those documents will need to be listed on a privilege log unless the parties agree otherwise.

(Doc. 107, p. 4-6, citations omitted, emphasis in original).

However, Plaintiff's position in this report could be read to be seeking the Court commit to an advisory opinion about whether the content of the *Lippert* meetings or discussions are privileged.  This is not properly brought before the Court at this time, but in an abundance of cautious, and in order to expand on the assessment of burden, breadth, and proportionality since the content of the meetings are privileged, Defendant outlines these privileges here and, should the Court have any question about the applicability of said privileges, given the importance of the privileges,[4] Defendant would seek a hearing on the matter before any privilege is overruled or deemed waived.

**A. Work Product Privilege**

In federal court, privileges are governed by federal common law, except that privileges are determined by state law for an element of a claim or defense as to which state law provides the rule of decision.  *See* Fed. R. Evid. 501; *Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608, 2010 U.S. Dist. LEXIS 132577, *9-10.  In cases such as this one, where both federal and state claims are asserted, at least where the federal claims are primary, federal law applies to work product and attorney-client privileges.  *See Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981).  Where the federal jurisdiction is based on federal question,

---

[4] Further, despite numerous extensions of time, Defense counsel first received a draft joint report from Plaintiff's counsel this morning (which was sent on December 7, 2023 at 11:29pm) and did not know definitively, prior to this morning, which compromises Plaintiff accepted and which issues remained.

federal law governs the application of privileges. *See Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608-610, 2010 U.S. Dist. LEXIS 132577, *14.

The work product doctrine, announced in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), protects from discovery otherwise discoverable documents and things, including an attorney's thoughts and mental impressions, made in anticipation of litigation. The work product doctrine has been codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. Per Rule 26(b)(3)(A), the privilege applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Such documents are not discoverable unless, per Rule 26(b)(3)(A), they are otherwise discoverable and a party shows that it has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." And even if such a need is shown, if the court is to order production of such materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

The work product doctrine has been recognized as a qualified privilege, which is distinct from and broader than the attorney-client privilege. *U. S. v. Nobles*, 422 U.S. 225, 238, fn. 11, 95 S. Ct. 2160, 2170, 45 L. Ed. 2d 141 (1975); *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613, 2000 U.S. Dist. LEXIS 11579, *6-7 (N.D.Il. Aug. 10, 2000). In *Nobles*, the Court extended the work product doctrine to protect material prepared by investigators for the lawyer. *Id.*, 422 U.S. at 238, 95 S. Ct. 2170; *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613, 2000 U.S. Dist. LEXIS 11579, *6-7. The U.S. Supreme Court in *Upjohn Company v. U. S.*, 449 U.S. 383, 400, 101 S. Ct. 677, 688, 66 L. Ed. 2d 584 (1981) reaffirmed the strong public policy underlying the work product doctrine, stating that "forcing an attorney to

16

disclose notes and memos of witness oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Id.*, 449 U.S. at 399, 101 S. Ct. at 687; *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613, 2000 U.S. Dist. LEXIS 11579, *6-7 (N.D.Il. Aug. 10, 2000).

In order to invoke the protection of the work product privilege, a party must show that the materials sought to be protected were prepared "in anticipation of litigation. . . ." Fed. R. Civ. P. 26(b)(3). *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1118, 1983 U.S. App. LEXIS 27488, *28-29 (7th Cir. 1983). "Thus, the threshold determination in any case involving an assertion of the work product privilege… is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation." *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d at 1118.

Documents that have a "dual purpose" of both an investigative nature and preparation for litigation can be work product privileged where the primary motivating purpose behind the creation of a document or investigative report is to aid in possible future litigation. *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d at 1119; *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, 2018 U.S. Dist. LEXIS 18653, *13-14, 2018 WL 704693 (N.D.Il. Feb. 5, 2018). "Where a document is prepared because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection because it is also created in order to assist with a business decision." *NRDC, Inc. v. Ill. Power Res. Generating, LLC*, 2018 U.S. Dist. LEXIS 9854, *14, 2018 WL 497066 (C.D.Il. Jan. 22, 2018).

Here, as attested to by Wexford, the IDOC and Wexford both have an interest in succeeding in the underlying *Lippert* lawsuit, as well as complying with the court's orders, appointing experts, etc. As *Lippert* was a class-action lawsuit where Wexford was a party at certain times and

remained an interested party, Wexford had both counsel and a joint defense agreement with the IDOC (defendant).  It is "well established that attorneys facing a common litigation opponent may exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege." *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 106 F.R.D. 187, 191–92 (N.D. Ill. 1985).  Applying that doctrine to "the full range of communications otherwise protected by the attorney-client privilege" encourages parties "with a shared legal interest to seek legal assistance in order to meet legal requirements and to plan their conduct accordingly." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007).  As a result, those communications between Wexford and the IDOC are protected by a common interest privilege.

Wexford has conducted numerous internal meetings and meetings with IDOC over the past decade to address the 2014 *Lippert* report.  However, such meetings were conducted for the purpose of defending litigation, in anticipation of litigation, and with/at the direction of counsel. Thus, any subjects discussed, or documents discussed/prepared at (or as the result of) the meetings are privileged.

After receiving Wexford's answer, Plaintiff's counsel asked for further testimony from Wexford about the purpose of the meetings.  Despite Defendant's belief that the answer was clear, Wexford supplemented the answer stating:

> Subject to and without waiving the above objections but in an attempt to alleviate discovery disputes with Plaintiff, Defendant submits the following additional answer, the meetings concerning the *Lippert* monitors' reports were conducted for the primary purpose of defending active litigation and securing legal advice.  The meetings were not conducted for a non-legal or business purpose.  The documents generated at or as a result of the meetings would not have been created in the normal course of business and came into existence because of the *Lippert* litigation.  In short, the *Lippert* meetings were not dual-purpose meetings or conducted for another purpose other than to assist and defend the

active litigation in which Wexford's interests were at issue and in furtherance of the Joint Defense Agreement.

Nonetheless, Plaintiff asserts, without any evidence, that the meetings could be for a dual purpose and incorrectly argues that a dual purpose investigation is not entitled to protection. "According to the Seventh Circuit, a dual purpose document, one prepared in anticipation of litigation and for another purpose as well, is work product only if the primary motivating purpose behind [its] creation is to aid in possible future litigation." *Smith-Brown v. Ulta Beauty, Inc*., No. 18 C 610, 2019 U.S. Dist. LEXIS 108021, 2019 WL 2644243, at *1 (N.D. Ill. June 27, 2019) (citing *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)).  Here, these meetings were not just conducted for the purpose of responding to anticipatory litigation but were conducted for the primary purpose of responding to ***active*** litigation.

Plaintiff cites *Caremark, Inc. v. Affiliated Computer Servs., Inc*., 195 F.R.D. 610, 615 (N.D. Ill. 2000) for the proposition that if there is a two-fold purpose of an investigation then it is not privileged work product.  That is not the holding of the court.  The court was looking at an investigation in anticipation of litigation, not responding directly to allegations made by court monitors in active litigation.  As such, the questions the court looked at were: "More specifically, the questions presented in this case are as follows: Which documents between ACS employees, including those documents that were routed through or copied to an attorney, are documents that would have been prepared even if litigation was never filed or expected, and which are those prepared in anticipation of litigation? And at what stage of the renegotiation of the Caremark/ACS contract was there reasonable anticipation of litigation?"  *Id.*  Plaintiff's argument would be more properly made in seeking internal reviews of adverse events where the company anticipates litigation, but none has yet been brought.  This is not the situation here as the meetings were directly in response to active litigation and Wexford has answered "[t]he documents generated at

or as a result of the meetings would not have been created in the normal course of business and came into existence because of the *Lippert* litigation."

Again, no documents are being sought at this time, but the caselaw undisputedly applies protection to meetings in defense of active litigation with or at the direction of counsel to defend the litigation.  To the extent Plaintiff seeks to know Wexford's response to the *Lippert* monitors' reports, she has already intervened in *Lippert* and can seek the formal IDOC response that Wexford assisted in.[5]

## B. Attorney-Client Privilege

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients . . . [because] sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."  *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584 (1981).  "Open communication assists lawyers in rendering legal advice, not only to represent their clients in ongoing litigation, but also to prevent litigation by advising clients to conform their conduct to the law and by addressing legal concerns that may inhibit clients from engaging in otherwise lawful and socially beneficial activities." *United States v. BDO Seidman, LLP,* 492 F.3d 806, 815 (7th Cir. 2007) (*citing United States v. Frederick,* 182 F.3d 496, 500 (7th Cir. 1999)).

The attorney-client privilege protects communications made in confidence by a corporation's employees to the corporation's attorney, when acting as an attorney and not a

---

[5] Plaintiff's concerns about asking at trial what Wexford discussed related to defending the *Lippert* monitors' reports rests on the assumption that the *Lippert* reports are not only admissible but also admissible for the truth of the matter asserted, which would be error as the reports are hearsay. See *Dean v. Wexford Health Sources, Inc.,* Nos. 20-3058, 20-3139, 2021 U.S. App. LEXIS 33423, at *24-25 (7th Cir. Nov. 10, 2021).

business advisor, for the purpose of obtaining legal advice for the corporation. *Upjohn*, 449 U.S. at 394-99; *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009). The privilege extends to factual investigations made by the attorney in order to provide legal advice to the client, and any factual statements made by the employee to the attorney pursuant to such an investigation are privileged. *Sandra T.E.*, 600 F.3d at 619-20; *Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608-610, 2010 U.S. Dist. LEXIS 132577, *14. The privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390; *Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608-610, 2010 U.S. Dist. LEXIS 132577, *14.

Again, as addressed above, the *Lippert* meetings were either conducted with counsel or at the direction of counsel (as confirmed by counsel for Wexford in *Lippert* and attested to by Wexford) and these meeting discussions or documents are covered by the attorney-client privilege. Additionally, as Plaintiff's interrogatories uses the term "agent" for its requests for meetings, Plaintiff may be directly seeking work product or communication with counsel, either in *Lippert* or in other matters and/or expert reviews/reports that are privileged under FRCP 26(b)(4)(C). To the extent Plaintiff seeks communication with Wexford's legal counsel or at the direction of legal counsel in furtherance of ongoing litigation, or from retained experts, they are privileged, the request is vague, overbroad, unduly burdensome, and disproportionate to the needs of this case and Plaintiff's requested relief should be denied.

[SIGNATURES ON FOLLOWING PAGE]

Date: December 8, 2023

Respectfully submitted,

s/ Jaclyn Kinkade [by consent]

s/*Stephen H. Weil*

Jaclyn Kinkade | Partner
Cassiday Schade LLP |
Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580,
St. Louis MO 63102 | www.cassiday.com

Jon Loevy
Stephen Weil
Maria Makar
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
weil@loevy.com
*Attorneys for Plaintiff*

*Attorneys for Defendants Wexford Health
Sources, Inc., Cynthia Ross, R.J. Duprey,
Courtney Walker, Justin Young, And
Angelica Wachtor*

**Linnenbrink, Miranda M.**

---

| | |
|---|---|
| **From:** | Kinkade, Jaclyn A. |
| **Sent:** | Tuesday, March 12, 2024 12:08 PM |
| **To:** | Byers, Melissa A.; Linnenbrink, Miranda M.; Wallace, Dina L. |
| **Subject:** | FW: FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order |

Emai 5 Wiley discovery letter.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Sent:** Friday, March 8, 2024 11:50 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** FW: FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A.
**Sent:** Wednesday, March 6, 2024 3:05 PM
**To:** Steve Weil <weil@loevy.com>
**Cc:** Maria Makar <makar@loevy.com>; Wormington, Emma M. <ewormington@cassiday.com>
**Subject:** RE: FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

To memorialize our call this morning, we will supplement the meeting interrogatories after a third review of the *Lippert* ESI for information from meeting invitations, in accordance with the December 7, 2023 agreement (and as reflected in the Joint Report in *Wiley*). Accordingly, you will be promptly withdrawing the Motions to Compel in *Reed* and *Wiley*. We will not be producing the meeting invitations but will set them aside.

We will also be amending the most recent privilege log to withdraw the deliberative process/self-critical analysis privileges only.

I have asked WHS whether additional peer review records exist outside of Dr. Young's and Mr. Duprey's personnel files. If such documents exist, we will produce them pursuant to the Court's Orders (both written and verbally) in *Wiley* and *Reed* and with the agreement that we are not waiving any objections to privilege (either in this case or others).

You will reach out to Plaintiffs' counsel in *Lippert* to determine whether there is a cipher for the Menard section of the 2018 *Lippert* report and whether there are completely unredacted ciphers for the Dixon and Stateville sections (ours are partially redacted).

You will also provide us an estimated date of completion for the February 7, 2024, Second Set of Interrogatories, the supplemental answers to the first set of interrogatories (including for *Wiley* #5, 7, 10-11; including for *Reed* #1 and 2 for each individual Defendant and Wexford's #4-6, 9, 14, 15), supplemental responses (or indication that production is complete) to the first request for production (all for *Reed* and *Wiley* as nearly all say Plaintiff will produce), and a log of production from Plaintiffs/IDOC in *Reed* and *Wiley*. Lastly, I don't think we ever received a privilege log for either case so just confirming you aren't withholding anything based on privilege.

Sincerely,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com
CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Wednesday, March 6, 2024 10:45 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>; Wormington, Emma M. <ewormington@cassiday.com>
**Subject:** Re: FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn I'm planning on calling you. We've discussed the privilege log previously, and I'm hopeful we can figure out whether there are any open disputes. As I've stated I don't think there are, but I think we'll be able to figure that out.

_____
**Stephen H. Weil** (He/Him)
LOEVY + LOEVY
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Wed, Mar 6, 2024 at 10:36 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

I haven't heard anything from you in months on the privilege log. We can talk generally but if you are wanting a full meet and confer on the privilege log I need more than an hour and a half notice.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

## CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

---

**From:** Steve Weil <weil@loevy.com>
**Sent:** Wednesday, March 6, 2024 9:29 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>; Wormington, Emma M. <ewormington@cassiday.com>
**Subject:** Re: FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

That time works.  Talk with you then.

We can also address your recent emails.

I'd also like to confirm that we are at issue on Wexford's 11/22/23 privilege log. Wexford is withholding based on an IMSA privilege  (Exs. 1-7, 17-25).  We've discussed on calls in this case and have litigated in multiple cases that we disagree as to whether this privilege governs federal-question cases.

I'd also like to confirm that we are at issue with respect to what I'll call "dual-purpose" documents (Exs. 8-10, 12-13, 15-17), where you are asserting both attorney work-product / attorney-client privilege AND deliberative process / self-critical analysis privilege (8-10, 12-13, 15-17).  Your position is that you are merely preserving legal argument; our position (which we have discussed and which was litigated in Green) is that assertions of privilege to withhold documents must be based on actual facts.  We also have litigated that the self-critical analysis privilege does not apply to Wexford or in federal question cases like this.

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Tue, Mar 5, 2024 at 5:00 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

Give me a call at 11 tomorrow to discuss.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, March 5, 2024 4:36 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>; Wormington, Emma M. <ewormington@cassiday.com>
**Subject:** Re: FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn, let me look that over, I can talk tomorrow.  Open except 9-10:15.

_____
**Stephen H. Weil** (He/Him)

LOEVY + LOEVY
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Tue, Mar 5, 2024 at 4:10 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

Steve, in your Motions to Compel recently filed in *Wiley* and *Reed*, you/Maria wrote:

*"Plaintiffs have also offered to confine the meetings to the various electronic "invitations" that Wexford's counsel reviewed (but did not produce) as part of the ESI discovery in this case."*

Below, I have forwarded our acceptance of this proposal months ago and you reneging on it the night before the Joint Report was due in *Wiley.*  I am very confused by the Motions to Compel because we agreed to do just that.  This also should be pretty clear from our position in the Joint Report in *Wiley.*

*"In the recent discovery dispute conferences related to meeting invitations/dates/attendees, Plaintiff asked Defendant to review the ESI a third time to locate any Lippert meeting invitations concerning the scope of Plaintiff's (September 27, 2023) interrogatories and, if there were any, to supplement the interrogatory answers with the dates, attendees, and subject of the meeting in the invitation.  Defendant was originally hesitant to perform the same review a third time, not just because of the duplicative efforts and costs, but also because it seemed that each time Defendant agrees to take action to resolve a discovery dispute, the results are unsatisfactory and Plaintiff raises new disputes, not previously requested.  However, significant time has been undertaken concerning Plaintiff's Lippert requests and, in an effort to move forward, on December 6, 2023, Defendant sent the following to Plaintiff:*

> *For the Lippert meetings invitations issue, I want to confirm your offer to resolve this issue.  If we conduct a third review of the Lippert ESI protocol results for meeting invitations responsive to interrogatories #15-18 in Wiley and #16-19 in Reed, and supplement these interrogatories with the date, subject, and invitees for each meeting, will this resolve written discovery on meeting invitations/meeting dates.  In other words, there will be no further written request or demand by Plaintiff to review/conduct Lippert ESI again or conduct further investigation/production as to the dates, subject, invitees, etc. related to Lippert meetings.*

> *If so, we may be able to come to an agreement to avoid additional briefing on the issue and move forward in discovery but I need to be clear on the agreement to confirm with my client.*

*Despite Plaintiff's original optimism that this proposal "would go a long way to resolving this," last night Plaintiff declined continued discussed of this proposal and seeks Defendant conduct further investigation into when Lippert meeting occurred and who was in attendance/invited.  This begs the question if the Lippert ESI that Plaintiff requested is not sufficient to resolve this issue, why did Plaintiff insist on a Lippert ESI protocol (with terms Plaintiff selected)."*

I don't know where the confusion is at but we will stand on our prior agreement outlined above and in the Joint Report.  If this resolves the issue, please advise ASAP so we can stop preparing the responses.

If not, please advise why and amend the Motions to Compel to appropriately reflect the dispute ASAP.  Also, please take note that you've told the Court we could "simply search meeting agendas written agendas, notes" and "the company has expressed no interest in identifying responsive meetings on this way,"  yet we produced

the only responsive agendas we located and already confirmed there are no minutes or notes (as we were ordered to produce them in *Reed*). Again, what is being represented to the Court is not accurate or what we discussed. Further, we are not objecting to identifying the meeting dates/attendees due to privilege. Again, we produced agendas in response and identified other available information. The issue with the meeting dates/attendees is there are no documents reasonably available to identify the dates/attendees. Your motions also state no privilege log was produced, which is untrue (and unclear since we are not asserting that the dates/attendees themselves are privileged).

Sincerely,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

---

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, December 7, 2023 8:29 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

EXTERNAL

I'm working on completing the draft JSR.

I've given more consideration to the meeting invitations. I don't think it's practical for Plaintiff to rely on written invitations, because we simply have no way of knowing that those invitations capture all or even the most important meetings. And it will simply be inefficient to have a second round of discovery if more meetings are revealed at a deposition. Ultimately we need a definitive list, and this is the juncture to get it. We remain willing to work with you to narrow the number of these meetings, which can be confined to principal meetings on the topics covered, by upper-level executives--but we need a comprehensive list of such meetings. As I understand it we are at issue regarding that request.

---

**Stephen H. Weil** (He/Him)
LOEVY + LOEVY
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Thu, Dec 7, 2023 at 6:56 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

We are at an impasse on the meeting notes for the reasons stated before. Will you be sending me a joint report tonight? Please include your proposed language for the agreement on the meeting invitations and I'll pass it by my client in the morning.  Do you have a proposed scheduling order for Wiley? We were also ordered to submit one.

Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

Illinois | Indiana | Missouri | Wisconsin

---

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, December 7, 2023 6:12:58 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Thanks Jaclyn.

I think we are resolved on the responsiveness review.

I've addressed the meeting invitations (and accompanying interrogatory) in a separate email that I just sent to you.

As to the meeting notes, we may still be at issue. As I said on our call, the scope the responsiveness review we would propose for Wiley is broader than what Judge McGlynn ordered in Reed (i.e., it's not just patients, but rather the topics in our 2/22/23 Wiley discovery and the importation of our 5/3/23 letter Reed, applied to the corresponding Wiley requests). And as for the substance of the notes, I don't know how it could be determined in advance that they contained only privileged information; that would determine what the note-taker wrote to him or herself.

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**

Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Tue, Dec 5, 2023 at 4:55 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

Responding to the below as you requested:

**Wexford's responsiveness review**. For the 3 Lippert ESI searches, we wrote in response to the MTC in Reed, "Defendant has considered responsive any substantive communication concerning cancer care practices or deficiencies and will either produce them or identify them in the forthcoming updated privilege log." Since then, we produced the updated privilege log and any responsive documents. My associate has reviewed the results again per Judge McGlynn's Order and I will review everything she pulled to see if there is anything that has not already been produced or identified on the privilege log.

**Wexford's refusal to search for meeting notes**. There were no meeting notes in the ESI related to the identified Lippert patients. The documents related to the identified cancer patients is on the privilege log. I have confirmed with Wexford, via *Lippert* counsel and numerous individuals, that there are no meeting notes related to the identified Lippert patients. We do object to any further searches for or production of *Lippert* meeting notes for the previously stated reasons, including but not limited to that they are privileged.

**Wexford's refusal to produce Lippert meeting invitations**. I am circling back to my client on this. Since the Court denied this part of your motion and as I thought we resolved it with the

supplemental rog response, I had not addressed it with them again.  However, we have reviewed the Lippert ESI twice now already.  I'll follow up though.


Thanks,


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 30, 2023 5:36 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order


**EXTERNAL**


Jaclyn,


I'm responding here to your correspondence, to discuss Reed and Wiley.  Again, I apologize for not corresponding earlier--as I noted, my illness has considerably limited the amount of time I've been able to work this week. We will need an extension for the Wiley JSR due tomorrow.


REED


On review, I agree with you that the order only instructs Wexford to search for meeting notes about the particular individuals mentioned in the requests.  We'll await Wexford's gathering of other documents.


I suggest that, given my comments with respect to Wiley below, you have your associate pause the Reed ESI review to determine whether it can be combined with a slightly broader review in Wiley.

WILEY

What remains is the motion to compel / JSR with Judge Dugan.  In light of Judge McGlynn's order (i.e., Reed ECF 147) we think it is appropriate to modify the positions we have taken in the Wiley discovery in light of his ruling, which will affect the positions the parties take in the JSR.

I'll divide discussion along the lines of the outstanding MTC (i.e., Wiley ECF 146).

**Wexford's responsiveness review**.  (Wiley ECF 146 at 6-7).  Judge McGlynn held that notwithstanding the reduction of the scope of the documents to review to ~ 2000 documents, our requests, as originally written, remained overbroad.  We respectfully disagree with this ruling, particularly as to overbreadth, since the documents in question had already been reduced by a targeted ESI search.  Nevertheless, in light of the ruling we offer to narrow the request for responsiveness review in two ways.

First, we offer to incorporate my 5/3/23 letter to you in Reed to modify the corresponding requests in Wiley.  In the 5/3/23 letter, We offered to narrow Wexford RFPs 49-51 and 56-58, along with RFPs 52 and 59, considerably.  We propose to apply these same narrowed requests to the corresponding requests in Wiley, and have you review those requests for relevance.

Second, we note that in light of Judge Daly's Feb. 13 order, on Feb.22 we served a handful of additional discovery requests that were specifically tailored to comply with the instructions by Judge Daly regarding the appropriate phrasing and narrowing of requests.  We propose that this be the second set of requests that Wexford review for relevance in the ~2,000 documents.

In short: we propose to confine the relevance review to (a) the Wiley discovery requests as narrowed in the 5/3/23 Reed letter, and (b) the Feb. 22 discovery requests.

**Wexford's refusal to search for meeting notes**.  (Wiley ECF 146 at 7-8).  Judge McLynn's order limited this request to meeting notes that concerned particular patients, based on his ruling that the other (unmodified) requests were overbroad.  As noted above in the "Wexford's responsiveness review" section, we are offering narrow our discovery requests.  We therefore propose that the request be limited to meeting notes responsive to the two sets of discovery set out in that section

(i.e., the sets of discovery labeled "First" and "Second" in the "Wexford's responsiveness review" section).

**Wexford's refusal to produce Lippert meeting invitations**.  (Wiley ECF 146 at 8-9).  We disagree with, but will not contest in Wiley, Judge McGlynn's ruling that our discovery requests do not cover meeting invitations.  Instead, however, in our 9/27/23 interrogatories to Wexford, we have asked specifically that Wexford provide information regarding meetings.  We therefore ask that Wexford agree to identify responsive meetings indicated among the ~2,000 documents produced for review, in response to the 9/27/23 interrogatories.

I'm happy to discuss these items with you tomorrow Jaclyn, if you have time.  I am generally open and can make myself available at your convenience.

Best regards,

- Steve

_____

**Stephen H. Weil** (He/Him)
**LOEVY + LOEVY**
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Tue, Nov 28, 2023 at 4:14 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

  Yes, the order related specifically to the RFPs that sought documents concerning the 17 patients.

  Thanks,

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

# CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

---

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, November 28, 2023 4:00 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

---

**EXTERNAL**

---

Jaclyn,

Apologies for the slow response.  I've been under the weather and have been traveling to defend a deposition simultaneously.  I'll try and write you something more extensive to send to you tomorrow morning, and I propose that we get as much done over email as possible before holding a call--and then hold a call Thursday afternoon when I will have returned from the deposition.

In the meantime, one question:  I read the order as an instruction to search for / produce notes from the meetings generally--not just notes that touch on the 17 patients in particular.  It seems you read it as calling only for notes about the patients.  Is your reading?

_____

**Stephen H. Weil** (He/Him)

# LOEVY + LOEVY

Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Mon, Nov 27, 2023 at 12:21 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

To follow up on these issues after digesting the Order from Judge McGlynn on your Motion to Compel, there were some fundamental, significant issues with the Order that we believe constitute error. For example, in one sentence the Order finds our work product objection conclusory when there was a factual section of the Response dedicated to both work product and an explanation that the objections were categorical as to scope and there had not yet been a search to review each document for privilege. I am deeply troubled by this conclusion and the lack of discussion on a foundational privilege. Additionally, after you filed the Motion to Compel, we kept working on written discovery to resolve some of these issues and produced interrogatory answers providing even more context for the work product objections. However, given the below, we likely will not be raising a written objection to the Order at this time, but wanted to make clear why.

The Order was specific that it relates to the RFPs about the 17 identified Lippert patients. As you may recall, one of the objections we raised was most of the Lippert reports were not about the death reviews but about 15 major services in 8 (or less) facilities. We questioned whether such documents existed as they were not identified in the ESI already conducted and objected to performing further investigation into their existence given that the notes, if they existed, would be privileged. After the Order, I had several communications with my client regarding whether such notes exist as there is no need to object to/appeal the Court's Order if there are no documents to produce. As I mentioned before, this is not a quick process. Some individuals have passed, some have retired, and some are unavailable for other reasons. As of now, though, it appears that there were no meeting notes taken relating to the 17 identified patients. I wanted to let you know since it may alleviate all or most of the issues in the joint report in Wiley. I want to hear back from another person but at least 5 individuals that were involved in Lippert meetings have said they have no notes and are unaware of the existence of responsive notes.

I am also having an associate go through the 3 Lippert searches again, in line with Judge McGlynn's Order. I do not expect anything additional to be found as I pulled everything related to cancer when I reviewed it the first time and I would have logged it on the privilege log if I found anything, but I will let you know if she finds anything else.

In the unlikely event that we learn of the existence of any responsive Lippert notes, we will be seeking reconsideration and an interlocutory appeal on the issue of work product.

Given this status, please let me know what you believe is outstanding and when we can discuss it further.

Sincerely,

13

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 16, 2023 4:45 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Cc:** Maria Makar <makar@loevy.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al
Order

**EXTERNAL**

Jaclyn,

We have been digesting Judge McGlynn's order from yesterday, including in light of Wexford's supplemental interrogatory responses, which you served Monday. We think some further Rule 37 discussion may be called for, and as such, we should seek another extension to file the status report with Judge Dugan.

First, Judge McGlynn ordered for a search of notes taken at the Lippert meetings. And on consideration that makes sense, even with Wexford's Monday supplemental interrogatory response asserting that the meetings were conducted for the purpose of providing legal advice about the Lippert litigation. Wexford has asserted in the interrogatory responses that the meetings were called by attorneys for the purpose of providing legal advice, but it does not necessarily follow that every participant in every meeting created notes only for the purpose or recording legal advice, as opposed to making notes for another purpose as well--such as a business purpose as that has been defined in our discovery. Wexford certainly cannot resolve the question of whether the notes were privileged simply by asserting that the purpose of the meeting was privileged. That is particularly so given that you have asserted a self-critical analysis privilege over documents that would have been used at meetings, which indicates that some documents may have been dual purpose. We'd like to discuss this matter with you.

Second, as I noted in my email from earlier today, we intend to raise the Wiley February 22 discovery in relation to our request that Wexford review the approx. 2,000 "Lippert" documents for responsiveness. We have discussed that discovery in previous conferences; I want to make sure we have discussed it in the context of our motion to compel, particularly in light of Judge McGlynn's ruling regarding the required specificity of discovery requests for the "Lippert" responsiveness review.

Third, as noted in my email from this morning, after giving further consideration to Wexford's supplemental interrogatory responses, we do intend to depose persons who were at the Lippert meetings, and thus we will need some means of identifying participants. We would like to discuss this with you as well.

All three of these items call for further discussion, which can't be completed and briefed before our deadline tomorrow. We'd therefore feel it's appropriate to request a further extension with the Court.

I can be available for a call tomorrow on the early side. I can also be available for a call on Monday or Tuesday next week.

Please advise.

- Steve

_____

**Stephen H. Weil** (He/Him)

LOEVY + LOEVY
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Thu, Nov 16, 2023 at 11:35 AM Steve Weil <weil@loevy.com> wrote:

15

Jaclyn,


I'm working on the joint report in Wiley and expect to have it to you by the end of the day.  I wanted to advise you of two things in advance.  First, understanding the representations in your supplemental interrogatory responses, we do intend to depose one or more people involved in responsive meetings.  Therefore we request that as part of your re-supplementation of the interrogatory responses, you identify such people.  Second, in the Wiley joint status report we do intend to point out our Feb. 22 Wiley discovery requests and argue that the Lippert production should be assessed for responsiveness to that discovery as well.

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
**www.loevy.com**


On Fri, Nov 10, 2023 at 9:11 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

You are correct on both accounts.  I do expect that we will provide a supplemental interrogatory answer as you requested concerning the purpose of the Lippert meetings.


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 9, 2023 2:50 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order


**EXTERNAL**

Jaclyn I'm writing to follow up on our call today, to make sure we are on the same page regarding two positions you articulated on the call.

First, my understanding is that in the event of a Rule 30 / Rule 30(b)(6) deposition going to the same topics as Plaintiff's Sept. 27 interrogatories, a witness would testify that meetings among Wexford executives to address the criticisms in the Lippert report did occur; but that the witness would be instructed not to answer questions about the substance of any such meetings because Wexford takes the position that the substance of any such meetings is privileged under the attorney client and attorney work-product doctrines.  Please confirm I understand your position correctly.

Second, Wexford takes the position that none of the Lippert meetings or communications connected with those meetings, were dual-purpose, i.e., having both a legal purpose and a business purpose as we have described those terms in the Sept. 27 interrogatories.  Please confirm I understand your position correctly.

Thanks,

Steve

_____

**Stephen H. Weil** (He/Him)

**LOEVY + LOEVY**
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com

On Thu, Nov 9, 2023 at 8:55 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

I can do 12:30-1:30 today. But in advance I need responses to the questions raised in my 10/27 email to discuss further.

Thanks,


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

---

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, November 9, 2023 8:13 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order


**EXTERNAL**


Jaclyn when are you available to meet today?  I have something at 10-10:30 and then a hearing at 1:30 that should go 45 minutes.  Other than that I am open.

---
**Stephen H. Weil** (He/Him)

LOEVY + LOEVY
Office: (312) 243-5900
Direct: (312) 736-0186
Fax: (312) 243-5902
311 N Aberdeen St, Chicago, IL 60607
www.loevy.com


On Fri, Oct 27, 2023 at 2:41 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

To add to the meeting minutes issue, the interrogatory answer also explains that it would be impossible to track down meeting minutes, but yes they would also be privileged.

I am not doing the non-*Lippert* search because we have a disagreement about the scope. I believe this issue was raised in the response to the MTC in *Reed*. I can start if you want but I will be reviewing in accordance with the scope set out by Judge Daly and will object to doing it a second time. Please advise.

The documents produced are not meeting minutes (which would be privileged) but are meeting agendas.

The objections in the privilege log are not a description of the documents. They are legal objections made to preserve and not waive. The description of the type and purpose of the documents is given through testimony under oath by Wexford in the interrogatory answers. The purposes of the meeting/documents made therefrom was in defense of litigation with or at the direction of counsel. I agreed to ask Andy Ramage about your request to supplement the interrogatory answer concerning whether there was a business purpose, but the definition of business purpose in your interrogatory said a "non-legal" purpose and thus I believe the answer clearly states that the meeting were for a legal purpose. I explained to you that mortality reviews, peer reviews, etc. were performed separately.

It is not my understanding of the law that a self-critical or deliberative process objection requires the documents be created for a business purpose. If you have any caselaw on this issue, stating that they cannot be used for documents created at the direction/assistance of counsel in defense of litigation, then I will review for potentially removing the self-critical and/or deliberative privileges, but none of my experience or research confirms your position. In fact, I found many cases where work product, self-critical, and deliberative privileges were lodged together. This is because, as held in the case you cite, while they *could* apply to internal processes and review, it also protects "other documents containing an organization's self-critical analyses." *Lund v. City of Rockford*, No. 17 CV 50035, 2017 U.S. Dist. LEXIS 196202, 2017 WL 5891186, at *4 (N.D. Ill. Nov. 29, 2017). As mentioned on the call, as essential component of defense of litigation is assessment of the allegations and, in *Lippert*, it was claims about the 15 major services provided by the IDOC. If you will be arguing that lodging self-critical or deliberative process privileges means that the documents *were prepared for a non-legal purpose*, I will need the caselaw from you in advance of our call to meaningfully consider withdrawing the objection because I have been unable to find any law to support this argument- and the documents *were not prepared for a non-legal purpose*.

You referenced *Green* on our call. I am not entered so I conducted a review and it appears the privilege at issue in *Green* was IMSA (not alleged at this time), which is expressly applied to documents "used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation." Thus, Sarah argued that the documents were dual privilege and should be

produced.  That argument *did not* win the day.  Instead, Judge McGlynn denied application of IMSA (again not at issue at this time) and then found insufficient information was provided for the work product objections.  *Green v. Meeks*, 2023 U.S. Dist. LEXIS 17092, *13, 2023 WL 1447817.  These are also different documents.

There are no dual purpose documents at issue.  These meeting and documents were prepared in defense of litigation at the direction of or with the assistance of counsel.  Furthermore, I do not think you are using the term dual purpose appropriately and dual purpose documents can still be privileged.  "According to the Seventh Circuit, a dual purpose document, one prepared in anticipation of litigation and for another purpose as well, is work product only if the primary motivating purpose behind [its] creation is to aid in possible future litigation." *Smith-Brown v. Ulta Beauty, Inc*., No. 18 C 610, 2019 U.S. Dist. LEXIS 108021, 2019 WL 2644243, at *1 (N.D. Ill. June 27, 2019) (citing *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)).  These documents were prepared for the purpose of responding to ACTIVE litigation, not in anticipation of future litigation.  Nonetheless, should you believe that based on my objection somehow the documents transformed into some additional purpose (without fact or law that I've been made aware of), the primary purpose of the documents on the privilege log was undeniably responding to the class action lawsuit, as attested.

My suggestion for a 30(b)(6) is to get at the substance of what you want because this is not getting anywhere.  When meetings occurred doesn't matter and only can cause a lot of run around.  What was discussed at each meeting cannot be elucidated.  If you want to know who were the main individuals who were involved with review of certain portions of the *Lippert* report, then you could ask that question but that's not what you are asking.  You are asking for dates, invites, notes, and all attendees for a decade which is impossible to do and is not probative of anything.  Whether they had yearly, quarterly, or weekly meetings, it is of no consequence and I'd be shocked if anyone can tell you what occurred in a meeting in 2014.  The outcome of the meetings, as it relates to our topics, are reflected in the documents on the privilege log, but ultimately this is all privileged because it is defense of active litigation.  It boggles my mind to spend all this time trying to recreate when meetings occurred for a decade and who was there when we both know that if you ask what was discussed we will object.

I haven't been able to attempt to filter for *Lippert* meeting email invites (vs regular emails) and review for burden from the *Lippert* ESI (I already reviewed once) because of the amount of time allocated to our hour and a half call yesterday and this email chain afterward. I will have to follow up.  I don't believe invites are responsive to RFPs so they wont be produced but my understanding is you want me to look to see if they say who attended and then supplement the interrogatories.  As referenced above, wouldn't an easier way to avoid all of this be to simply ask who were the executives that oversaw the reviews for cancer care/life threatening conditions mentioned in *Lippert*?  It would be much more reliable and less burdensome than review of meeting invitations from an ESI.  You referenced testimony you have from *Dean*, so

you proffer to have some of this information already, but if this will resolve the meeting minutes/notes/attendees issue then I will inquire about a supplemental response of this nature.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Thursday, October 26, 2023 5:28 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

To follow up on our call.

You are requesting a two-week extension (to Nov. 10) for our report tomorrow in Wiley, because you are taking vacation.  We will not oppose that request, but we request that you please provide a copy of the motion in advance.

To make sure we don't have to request yet another extension, I would ask that you be prepared to state your outstanding positions on the discovery issues we discussed on Nov. 6 or 7, and that we schedule a follow-up call for Nov. 7 or Nov. 8, so that we have enough time to complete our report to the court by Friday Nov. 10.

Otherwise, I'm writing to memorialize the discussion on our call today, to confirm where we are at issue.

**Existing motion to compel** (Wiley ECF 146, Reed ECF 139).

The motion to compel covered three areas:

(1) review of documents gathered in response to the Lippert ESI for responsiveness to other discovery requests.  You confirmed that we remain at issue.

(2) Production of notes from meetings discussing Lippert.  You confirmed that we are at issue.  You stated that you would not search for the notes, because they would be privileged in any event, as all the meetings had a legal purpose.  We remain at issue.

(3) Production of computerized meeting invitations from among the Lippert documents gathered.  You stated that you would search for these documents, if there was some way to do so by isolating MS Office invitations.  <u>We are waiting to hear back from you on this one</u>.

You also confirmed that Wexford had completed its production of documents from the Lippert ESI search terms (<u>I do not believe you have conducted a review of the documents gathered for the non-Lippert search terms.</u>  **Please confirm**, <u>and provide a date by which that review will be completed</u>.)  The production consists of a privilege log listing nine documents, and production of meeting minutes from two meetings between Wexford and IDOC that occurred in 2019.  For 8 of the 9 documents listed on the privilege log, the log asserts both attorney client / attorney work-product privileges AND deliberative process / self-critical analysis privilege.  The log asserts only attorney work product privilege for the remaining document (Log no. 11).  I explained to you that as to the 8 documents, dual-use was indicated (i.e., documents used for a legal purpose (attorney-client / work-product) and a non-legal purpose (a purpose covered by the deliberative process and self-critical analysis privilege).  You disagreed.  <u>We are at issue as to that question</u>.

Regarding the asserted privileges themselves--neither the deliberative process privilege or the dual-use privilege protect documents in this case.  The deliberative process privilege applies to governmental entities, not private companies like Wexford.  The self-critical analysis privilege, meanwhile, is inoperative in federal civil rights cases like this one.  *See, e.g.,* Lund v. City of Rockford, No. 17 CV 50035, 2017 WL 5891186 (N.D. Ill. Nov. 29, 2017).  Because both

those privileges do not apply in this case, the eight dual-use documents listed in your privilege log are subject to disclosure.  Based on our discussion today <u>I believe we are at issue regarding this matter.  Please correct me if I am wrong; if so let me know where we are not yet at issue.</u>

**Plaintiff's Sept. 27 interrogatories in Wiley and Reed**, concerning certain Lippert meetings.

As I noted, the purpose of these interrogatories was to comport with Judge McGlynn's admonition (made in light of your contention that the Reed plaintiffs should depose persons regarding Wexford's meetings about the Lippert reports) that I should depose Wexford employees who participated in meetings about the Lippert reports.

First, you objected that the interrogatories target privileged information. But I explained that none of the information sought in the interrogatories (essentially, who participated in certain meetings and when they occurred, whether documents were generated, etc.) do not seek the substance of the communications in those meetings.  As such, assuming the communications at the meetings were privileged, the information sought in the interrogatories, which does not seek the substance of the communications, is not.  <u>I believe we are in agreement on this point, but please correct me if I am wrong.</u>

Second, you object that the interrogatories are overbroad because they are not limited in time, that they treat as responsive meetings in which the responsive topics were discussed along with other topics, and that Wexford did not keep "meeting logs."  As such, you object that responding to this part of the interrogatories would require you to search all meetings over a decade.  Instead, you suggested that I provide a Rule 30(b)(6) notice, after which (if I understand you correctly) the targeted meetings could be identified.

I noted (as I had done before) that these interrogatories should be limited to responsive meetings in which senior executives participated.  I also noted that Plaintiff counsel could not know when responsive meetings occurred, but presumably they would have occurred when Wexford executives were assessing the assertions in the reports.  As such, I noted, the number of responsive meetings would likely be limited and more straightforward to find. I noted that many of the meetings could be identified in the documents gathered pursuant to the ESI Protocol.  I also noted that documents generated for or about the meetings (which the interrogatory asks you to identify) could also indicate the purpose of the meetings, as well as their participants.   You responded that you were "not in-house counsel" at Wexford and that as such you were not in a position to identify when such meetings occurred.

In response to your request that I serve a Rule 30(b)(6) notice instead of these interrogatories, I noted that the Rule 30(b)(6) notice would be substantively identical--seeking the same information as the interrogatories. If I understood you correctly, you stated that responding to such a Rule 30(b)(6) notice would be unduly burdensome as well, even if the Rule 30(b)(6) notice were confined to responsive meetings by senior executives.

As understand it, <u>you are agreeing to search for responsive meeting invites among the Lippert ESI documents that have been gathered</u>, if the invitations can be isolated from other communications using search features. Please confirm.

Third, each of the interrogatories asked Wexford to state whether each of the responsive meetings had a "legal purpose" (subparagraph c), and also to state whether the meetings had a "business purpose" (subparagraph d). The interrogatories define both "legal purpose" and "business purpose". Your interrogatory responses state that each meeting had a legal purpose (viz. that each meeting was "conducted for the purpose of defending litigation, in anticipation of litigation, and with/at the direction of counsel.") The interrogatory responses do not state whether any of the meetings also had a business purpose (i.e., whether they had a dual purpose--a legal purpose and a business purpose). As I understand it, <u>you agreed to revisit this issue</u> with Andy Ramage, who, you said, prepared the interrogatory responses. Please confirm. We ask that the interrogatory responses be amended to respond to subparagraph "d" of each of the interrogatories, and state whether any responsive meetings had a business purpose (in addition to or instead of a legal purpose).

Best regards,

Steve

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel: 312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Wed, Oct 25, 2023 at 1:14 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

Can we do 9:30am?

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com
CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Wednesday, October 25, 2023 10:11 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

EXTERNAL

How about 9:00 tomorrow morning?

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Wed, Oct 25, 2023 at 6:34 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

I actually won't be able to do a call today but am pretty open tomorrow.

Sent from my iPhone

On Oct 24, 2023, at 6:55 PM, Steve Weil <weil@loevy.com> wrote:

**EXTERNAL**

That works for me.  I'd also like to talk about the Wiley / Reed interrogatory responses then too.  I'll plan to call you at 3:30.

--

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Tue, Oct 24, 2023 at 5:44 PM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

I have a depo tomorrow but I can try to do 3:30 if I'm out by then.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image004.jpg>

Illinois | Indiana | Missouri | Wisconsin

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, October 24, 2023 12:26 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

**EXTERNAL**

Jaclyn,

Are you available tomorrow for a call?

--

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Thu, Oct 19, 2023 at 10:41 AM Kinkade, Jaclyn A. <jkinkade@cassiday.com> wrote:

> FYI I go on vacation the evening of 10/27 so I will not be available after 4pm that day.  I will be gone the following week and will return on 11/6.  Just wanted you to know so you could plan accordingly with our deadlines.

> Thanks,

> **Jaclyn Kinkade** | Partner
> Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
> 100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

> <image003.jpg>

> Illinois | Indiana | Missouri | Wisconsin

> **From:** Kinkade, Jaclyn A.
> **Sent:** Tuesday, October 17, 2023 10:05 AM
> **To:** Steve Weil <weil@loevy.com>
> **Subject:** RE: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order

> No objection.

Thanks,


**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

<image003.jpg>


Illinois | Indiana | Missouri | Wisconsin

---

**From:** Steve Weil <weil@loevy.com>
**Sent:** Tuesday, October 17, 2023 8:00 AM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** Re: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order


**EXTERNAL**


Jaclyn can you please advise?  Thanks.

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

On Mon, Oct 16, 2023 at 9:50 AM Steve Weil <weil@loevy.com> wrote:

Jaclyn,

I have a major hearing in a Louisiana case on Thursday and will be on the road beginning tomorrow to prepare.  That will make it hard to complete our meet-and-confer and prepare a report.  I'd like to request a one-week extension on the 10/20 deadlines in Wiley, to 10/27.  Any objection?

 --

Stephen H. Weil

LOEVY & LOEVY

311 N. Aberdeen

Chicago, IL 60607

Tel:  312-243-5900

Fax: 312-243-5902

weil@loevy.com

he/him

---------- Forwarded message ---------
From: <ilsd_nef@ilsd.uscourts.gov>
Date: Fri, Sep 29, 2023 at 4:24 PM
Subject: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Order
To: <ilsd_nef@ilsd.uscourts.gov>

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### Southern District of Illinois

### Notice of Electronic Filing

The following transaction was entered on 9/29/2023 at 4:23 PM CDT and filed on 9/29/2023

| | |
|---|---|
| **Case Name:** | Wiley v. Wexford Health Sources, Inc. et al |
| **Case Number:** | 3:21-cv-00599-DWD |
| **Filer:** | |
| **Document Number:** | 150(No document attached) |

**Docket Text:**
**ORDER regarding Plaintiff's Unopposed Motion to Stay and Continue Expert Discovery (Doc. 149). On September 27, 2023, the Court denied Plaintiff's Motion to Compel (Doc. 146), without prejudice, because the parties had not complied with the Court's Case Management Procedures. (Doc. 148). The parties were ordered to conduct a discovery dispute conference on or before October 10, 2023, and to submit a Joint Written Discovery Report on or before October 20, 2023. (Doc. 148). Now, the instant Unopposed Motion seeks to stay and continue the expert discovery deadlines in light of the aforementioned ruling. The Unopposed Motion notes that Defendants' expert reports were due September 28, 2023, and all expert discovery is due October 28, 2023. (Docs. 133 & 134). Further, the Unopposed Motion notes that fact discovery relating to the medical events at issue is "essentially complete," but *Monell* discovery relevant to the soon-to-be-submitted Joint Written Discovery Report remains ongoing. Accordingly, the Unopposed Motion is GRANTED. In addition to the requirements already articulated at Doc. 148, the parties are DIRECTED to update the Court on the status of *Monell* discovery and to jointly propose dates for the completion of expert discovery in the Joint Written Discovery Report due on October 20, 2023. Signed by Judge David W. Dugan on 9/29/2023. (jnh)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED.**

**3:21-cv-00599-DWD Notice has been electronically mailed to:**

Jaclyn A. Kinkade &nbsp &nbsp jkinkade@cassiday.com

Jon I. Loevy &nbsp &nbsp jon@loevy.com, melinda@loevy.com

Maria Makar &nbsp &nbsp makar@loevy.com, brooks@loevy.com, feddor@loevy.com

Mediator Donald Wilkerson &nbsp &nbsp dwilkerson@jamsadr.com

Stephen H. Weil &nbsp &nbsp weil@loevy.com, brooks@loevy.com, feddor@loevy.com

Tara Marie Barnett &nbsp &nbsp Tara.Barnett@ilag.gov, gabriela.dale@ilag.gov, gls@ilag.gov, nathan.sloan@ilag.gov

Timothy P. Dugan &nbsp &nbsp tdugan@cassiday.com, mlinnenbrink@cassiday.com

**3:21-cv-00599-DWD Parties and Attorneys without registered email addresses requiring notice by other means:**

CONFIDENTIALITY NOTICE:This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

CONFIDENTIALITY NOTICE:This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

CONFIDENTIALITY NOTICE:This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior

permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For

further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**CONFIDENTIALITY NOTICE:**This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system. For further information about Cassiday Schade LLP, please see our website at www.cassiday.com or refer to any of our offices. Thank you.

**Linnenbrink, Miranda M.**

---

| | |
|---|---|
| **From:** | Kinkade, Jaclyn A. |
| **Sent:** | Tuesday, March 12, 2024 12:08 PM |
| **To:** | Byers, Melissa A.; Linnenbrink, Miranda M.; Wallace, Dina L. |
| **Subject:** | FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Motion to Compel |
| **Importance:** | High |

Email 6 Wiley discovery letter.

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com
CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Sent:** Friday, March 8, 2024 1:02 PM
**To:** Kinkade, Jaclyn A. <jkinkade@cassiday.com>
**Subject:** FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Motion to Compel
**Importance:** High

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com
CASSIDAY SCHADE LLP
Illinois | Indiana | Missouri | Wisconsin

**From:** Kinkade, Jaclyn A.
**Sent:** Tuesday, September 26, 2023 1:19 PM
**To:** weil@loevy.com
**Subject:** FW: Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Motion to Compel
**Importance:** High

Steve,

The following excerpts from your motion to compel are fabrications.  I have not said that Wexford executives "avoided the use of email."  You can make whatever argument you want but saying that my client made this statement to you is false and highly inappropriate.  You are publicly filing false statements about myself and my client, in a perceived attempt to improperly damage our relationship.  Amend this motion to be forthright with the Court.  If you do not remedy this misrepresentation, we will seek relief from the Court and all future communication between us will need to be in writing.

"Wexford revealed to Plaintiff, for the first time, that Wexford's executives had avoided the use of email to communicate about the information in the Lippert reports, and instead had communicated about the Lippert reports by holding meetings."  "Upon learning that Wexford executives used meetings to avoid communicating about the Lippert reports via email."

**Jaclyn Kinkade** | Partner
Cassiday Schade LLP | Phone: 314.655.4709 | Fax: 314.241.1320
100 N. Broadway, Suite 1580, St. Louis MO 63102 | www.cassiday.com

## CASSIDAY SCHADE LLP

Illinois | Indiana | Missouri | Wisconsin

**From:** ilsd_nef@ilsd.uscourts.gov <ilsd_nef@ilsd.uscourts.gov>
**Sent:** Tuesday, September 26, 2023 10:07 AM
**To:** ilsd_nef@ilsd.uscourts.gov
**Subject:** Activity in Case 3:21-cv-00599-DWD Wiley v. Wexford Health Sources, Inc. et al Motion to Compel

EXTERNAL

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of Illinois**

## Notice of Electronic Filing

The following transaction was entered by Weil, Stephen on 9/26/2023 at 10:06 AM CDT and filed on 9/26/2023
**Case Name:**      Wiley v. Wexford Health Sources, Inc. et al
**Case Number:**     3:21-cv-00599-DWD
**Filer:**          Keyana Wiley
**Document Number:** 146

**Docket Text:**
**MOTION to Compel by All Plaintiffs. (Weil, Stephen)**

**3:21-cv-00599-DWD Notice has been electronically mailed to:**

Jaclyn A. Kinkade      jkinkade@cassiday.com

Jon I. Loevy      jon@loevy.com, melinda@loevy.com

Maria Makar      makar@loevy.com, brooks@loevy.com, feddor@loevy.com

Mediator Donald Wilkerson      dwilkerson@jamsadr.com

Stephen H. Weil      weil@loevy.com, brooks@loevy.com, feddor@loevy.com

Tara Marie Barnett      Tara.Barnett@ilag.gov, gabriela.dale@ilag.gov, gls@ilag.gov, nathan.sloan@ilag.gov

Timothy P. Dugan    tdugan@cassiday.com, mlinnenbrink@cassiday.com

**3:21-cv-00599-DWD Parties and Attorneys without registered email addresses requiring notice by other means:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1047403380 [Date=9/26/2023] [FileNumber=5461904-0
] [4c730de60686750c8590919d505dbfb1d3bf1f19ed39881082cbc7b34d51869d5c7
16e99a7d1867ba5c38857d309473c222a6861e71026812c25315b00e9d591]]

048792/21061/TPD/JAK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

KEYANA WILEY, Administrator of the Estate of
OMAR MCCULLOUGH #K77858,

                Plaintiff,

v.

JUSTIN YOUNG, C. WALKER, ANGELA
WACHTOR, JUSTIN DUPREY, JANE DOE,
WEXFORD HEALTH SOURCES, INC., and
NURSE CYNTHIA,

                Defendants.

No. 3:21-cv-00599-DWD

Judge David W. Dugan

## WEXFORD HEALTH SOURCES, INC. ANSWERS TO INTERROGATORIES

COMES NOW Defendant WEXFORD HEALTH SOURCES, INC., by and through its attorneys CASSIDAY SCHADE LLP, and for its Answer to Interrogatories propounded by Plaintiff, KEYANA WILEY, Administrator of the Estate of OMAR MCCULLOUGH #K77858, states as follows:

15.     Did any Wexford employees or agents hold meetings to review, investigate, analyze, uncover, prevent, or determine the prevalence of deficiencies described in the 2014 Lippert report relating in whole or in part to the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates? If your answer is anything other than an unqualified No, please:

    a)  State the date, time, place, and duration of each such meeting;

    b)  State the identities of each person who attended each such meeting, including the person's name and job title;

    c)  For each meeting identified in response to this interrogatory, state whether the meeting had a legal purpose;

d)  for each meeting identified in response to this interrogatory, state whether the meeting had a business purpose;

e)  identify every Document or Communication (including copies and drafts of same) prepared for or in anticipation of each such meeting, provided for or distributed to attendees of each such meeting, created by any attendees at each such meeting (including notes), describing or discussing any part or component of each such meeting;

f)  for each Document or Communication identified in response to this interrogatory, state whether said Document or Communication had a legal purpose; and

g)  for each Document or Communication identified in response to this interrogatory, state whether said Document or Communication had a business purpose.

**ANSWER:**

Defendant objects that this request targets privileged communication. First, this request seeks privileged communication between Wexford and the Illinois Department of Corrections subject to a joint defense agreement. It is "well established that attorneys facing a common litigation opponent may exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege." *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 106 F.R.D. 187, 191–92 (N.D. Ill. 1985). Applying that doctrine to "the full range of communications otherwise protected by the attorney-client privilege" encourages parties "with a shared legal interest to seek legal assistance in order to meet legal requirements and to plan their conduct accordingly." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007). The IDOC and Wexford both have an interest in succeeding in the underlying *Lippert* lawsuit, as well as complying with the court's orders, appointing experts, etc. As a result, those communications between Wexford and the IDOC are protected by a common interest privilege.

Additionally, this request seeks privileged communication with Wexford's legal counsel or at the direction of legal counsel in furtherance of ongoing litigation and is protected by attorney/client communication and/or work product. Further, this request may seek information protected by insured/insurer communication. *Buckman v. Columbus-Cabrini Med. Ctr.*, 272 Ill.App.3d 1060, 1066, 651 N.E.2d 767, 771 (1st Dist. 1995); *Consolidation Coal Co. v. Bucyrus-Eric Co.*, 89 Ill. 2d 103, 120 (Ill. 1983); *People v. Ryan*, 30 Ill.2d 456, 461, 197 N.E.2d 15, 17-18 (Ill. 1960); *Claxton v. Thackston*, 201 Ill.App.3d 232, 235, 559 N.E.2d 82, 85 (1st Dist. 1990); 735 ILCS 5/8-2101 *et seq;* 745 ILCS 55/1 *et seq.* Also, as the term "agent" is vague and unclear, Plaintiff may be directly seeking work product of counsel, either in *Lippert* or in other matters and/or expert reviews/reports that are either privileged under FRCP 26 or are untimely in this matter.

In addition to the privilege objections, Plaintiff's request is fundamentally overbroad, and unduly burdensome as it is not limited in time, thus it is not proportional to the needs of this case. FRCP 26; *Little v. JB Pritzker for Governor*, 2020 WL 1939358, *6 (N.D. Ill. 2020)(citing *Earthy LLC v. BB&HC, LLC*, 2017 WL 4512761, *3 (N.D. Ill. 2017), also citing *Builders Ass'n of Greater Chicago v. City of Chicago*, 2002 WL 1008455, *5 (N.D.

Ill. 2002)); *Little v. JB Pritzker for Governor*, 2020 WL 1939358, *6 (N.D. Ill. 2020)(citing *Earthy LLC v. BB&HC, LLC*, 2017 WL 4512761, *3 (N.D. Ill. 2017), also citing *Builders Ass'n of Greater Chicago v. City of Chicago*, 2002 WL 1008455, *5 (N.D. Ill. 2002)). Plaintiff also seeks "all" documents which cannot be said to be proportional to the needs of the case. *See, e.g., M. McGee Design Studio v. Brinson*, 1994 U.S. Dist. LEXIS 9789, *28, 1994 WL 380613 (N.D. Ill. July 18, 1994). Of note, although Plaintiff appears to set a scope concerning untimely diagnosis and other life-threatening conditions, it also seeks any meetings that addressed these issues even in part. In effect, there truly is no scope at all.

Furthermore, Defendant does not maintain such meeting logs and Plaintiff's request demands an expansive investigation into all meetings over a decade, including each date, each attendee, and all documents created or provided therein. This information is not readily available and such efforts are unduly burdensome and disproportionate to the needs of this case. It further demands an assessment of each document and communication for its purpose (and improperly assumes that a meeting can only have one purpose).

Defendant also objects that this request is not crafted to seek information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. FRCP 26(b)(1). It is also compound, several times over, in an apparent attempt to avoid the limitations of FRCP 33.

The Court's Order (Doc. 107) outlines the scope of discovery set by the Court concerning these topics. To the extent Plaintiff seeks to expand upon that Order, her Motion to Compel was denied.

Subject to and without waiving the objections, Defendant has conducted numerous internal meetings and meetings with IDOC over the past decade to address the 2014 *Lippert* report. Inasmuch as cancer and life-threatening conditions are addressed in the *Lippert* report, these meetings may have related in part to diagnoses of cancer and other life-threatening conditions for IDOC inmates. Defendant does not maintain lists of such meetings and, therefore, cannot confirm which of the numerous meetings particularly discussed the untimely diagnoses of cancer and other life-threatening conditions. However, such meetings were conducted for the purpose of defending litigation, in anticipation of litigation, and with/at the direction of counsel. Additionally, any meetings that were conducted with the IDOC relating to reviewing, investigating, analyzing, uncovering, preventing, or determining the prevalence of deficiencies described in the 2014 *Lippert* report were done pursuant to the joint defense – common interest- agreement with the IDOC; thus, any subjects discussed or documents discussed/prepared at (or as the result of) the meetings are privileged.

During an ESI search, Defendant located two agendas that do not contain privileged information and Defendant is producing them subject to the protective order in this matter (Wiley/Reed Case No. 3:21-cv-00599-DWD and 3:20-cv-01139-SPM 0059-0060). See also Defendant's prior production bates labeled Wiley/Reed Case No. 3:21-cv-00599-DWD and 3:20-cv-01139-SPM 0007-0021. Defendant expressly does not waive the privileges addressed above to the content of the discussions at said meetings or any documents reviewed or prepared as a result. In addition, Wexford assisted the IDOC in drafting a response to the 2014 Expert Report. That Report, which was authored by IDOC Chief

**Counsel, William Barnes, on November 3, 2014, is protected from disclosure under the order appointing the expert and cannot be released absent permission from the *Lippert* court. Doc. 244, par. 6b.**

16.    Did any Wexford employees or agents hold meetings to review, investigate, analyze, uncover, prevent, or determine the prevalence of deficiencies described in the 2014 Lippert report relating in whole or in part to the untimely treatment of cancer and other life-threatening conditions for IDOC inmates? If your answer is anything other than an unqualified No, please:

   a)  State the date, time, place, and duration of each such meeting;

   b)  State the identities of each person who attended each such meeting, including the person's name and job title;

   c)  for each meeting identified in response to this interrogatory, state whether the meeting had a legal purpose;

   d)  for each meeting identified in response to this interrogatory, state whether the meeting had a business purpose;

   e)  identify every Document or Communication (including copies and drafts of same) prepared for or in anticipation of each such meeting, provided for or distributed to attendees of each such meeting, created by any attendees at each such meeting (including notes), describing or discussing any part or component of each such meeting;

   f)  for each Document or Communication identified in response to this interrogatory, state whether said Document or Communication had a legal purpose; and

   g)  for each Document or Communication identified in response to this interrogatory, state whether said Document or Communication had a business purpose.

**ANSWER:**

   **Defendant objects that this request is identical to request #15 and is duplicative. Defendant incorporates by reference its answers and objections to request #15 above as if fully stated herein.**

17.    Did any Wexford employees or agents hold meetings to review, investigate, analyze, uncover, prevent, or determine the prevalence of deficiencies described in the 2018

Lippert report relating in whole or in part to the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates? If your answer is anything other than an unqualified No, please:

a) state the date, time, place, and duration of each such meeting;

b) state the identities of each person who attended each such meeting, including the person's name and job title;

c) for each meeting identified in response to this interrogatory, state whether the meeting had a legal purpose;

d) for each meeting identified in response to this interrogatory, state whether the meeting had a business purpose;

e) identify every Document or Communication (including copies and drafts of same) prepared for or in anticipation of each such meeting, provided for or distributed to attendees of each such meeting, created by any attendees at each such meeting (including notes), describing or discussing any part or component of each such meeting;

f) for each Document or Communication identified in response to this interrogatory, state whether said Document or Communication had a legal purpose; and

g) for each Document or Communication identified in response to this interrogatory, state whether said Document or Communication had a business purpose.

**ANSWER:**

**Defendant objects that this request targets privileged communication. First, this request seeks privileged communication between Wexford and the Illinois Department of Corrections subject to a joint defense agreement. It is "well established that attorneys facing a common litigation opponent may exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege."** *Schachar v. Am. Acad. of Ophthalmology, Inc*., **106 F.R.D. 187, 191–92 (N.D. Ill. 1985). Applying that doctrine to "the full range of communications otherwise protected by**

the attorney-client privilege" encourages parties "with a shared legal interest to seek legal assistance in order to meet legal requirements and to plan their conduct accordingly." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007). The IDOC and Wexford both have an interest in succeeding in the underlying *Lippert* lawsuit, as well as complying with the court's orders, appointing experts, etc. As a result, those communications between Wexford and the IDOC are protected by a common interest privilege.

Additionally, this request seeks privileged communication with Wexford's legal counsel or at the direction of legal counsel in furtherance of ongoing litigation and is protected by attorney/client communication and/or work product. Further, this request may seek information protected by insured/insurer communication. *Buckman v. Columbus-Cabrini Med. Ctr.*, 272 Ill.App.3d 1060, 1066, 651 N.E.2d 767, 771 (1st Dist. 1995); *Consolidation Coal Co. v. Bucyrus-Eric Co.*, 89 Ill. 2d 103, 120 (Ill. 1983); *People v. Ryan*, 30 Ill.2d 456, 461, 197 N.E.2d 15, 17-18 (Ill. 1960); *Claxton v. Thackston*, 201 Ill.App.3d 232, 235, 559 N.E.2d 82, 85 (1st Dist. 1990); 735 ILCS 5/8-2101 *et seq;* 745 ILCS 55/1 *et seq*. Also, as the term "agent" is vague and unclear, Plaintiff may be directly seeking work product of counsel, either in *Lippert* or in other matters and/or expert reviews/reports that are either privileged under FRCP 26 or are untimely in this matter.

In addition to the privilege objections, Plaintiff's request is fundamentally overbroad, and unduly burdensome as it is not limited in time, thus it is not proportional to the needs of this case. FRCP 26; *Little v. JB Pritzker for Governor*, 2020 WL 1939358, *6 (N.D. Ill. 2020)(citing *Earthy LLC v. BB&HC, LLC*, 2017 WL 4512761, *3 (N.D. Ill. 2017), also citing *Builders Ass'n of Greater Chicago v. City of Chicago*, 2002 WL 1008455, *5 (N.D. Ill. 2002)); *Little v. JB Pritzker for Governor*, 2020 WL 1939358, *6 (N.D. Ill. 2020)(citing *Earthy LLC v. BB&HC, LLC*, 2017 WL 4512761, *3 (N.D. Ill. 2017), also citing *Builders Ass'n of Greater Chicago v. City of Chicago*, 2002 WL 1008455, *5 (N.D. Ill. 2002)). Plaintiff also seeks "all" documents which cannot be said to be proportional to the needs of the case. *See, e.g., M. McGee Design Studio v. Brinson*, 1994 U.S. Dist. LEXIS 9789, *28, 1994 WL 380613 (N.D. Ill. July 18, 1994). Of note, although Plaintiff appears to set a scope concerning untimely diagnosis and other life-threatening conditions, it also seeks any meetings that addressed these issues, even in part. In effect, there truly is no scope at all.

Furthermore, Defendant does not maintain such meeting logs and Plaintiff's request demands an expansive investigation into all meetings, including each date, each attendee, and all documents created or provided therein. This information is not readily available and such efforts are unduly burdensome and disproportionate to the needs of this case. It further demands an assessment of each document and communication for its purpose (and improperly assumes that a meeting can only have one purpose).

Defendant also objects that this request is not crafted to seek information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. FRCP 26(b)(1). It is also compound, several times over, in an apparent attempt to avoid the limitations of FRCP 33.

The Court's Order (Doc. 107) outlines the scope of discovery set by the Court concerning these topics. To the extent Plaintiff seeks to expand upon that Order, her Motion to Compel was denied.

Subject to and without waiving the objections, Defendant has conducted numerous internal meetings and meetings with IDOC over the past decade to address the 2014 *Lippert* report. Inasmuch as cancer and life-threatening conditions are addressed in the *Lippert* report, these meetings may have related in part to diagnoses of cancer and other life-threatening conditions for IDOC inmates. Defendant does not maintain lists of such meetings and, therefore, cannot confirm which of the numerous meetings particularly discussed the untimely diagnoses of cancer and other life-threatening conditions. However, such meetings were conducted for the purpose of defending litigation, in anticipation of litigation, and with/at the direction of counsel. Additionally, any meetings that were conducted with the IDOC relating to reviewing, investigating, analyzing, uncovering, preventing, or determining the prevalence of deficiencies described in the 2014 *Lippert* report were done pursuant to the joint defense – common interest- agreement with the IDOC; thus, any subjects discussed or documents discussed/prepared at (or as the result of) the meetings are privileged.

During an ESI search, Defendant located two agendas that do not contain privileged information and Defendant is producing them subject to the protective order in this matter (Wiley/Reed Case No. 3:21-cv-00599-DWD and 3:20-cv-01139-SPM 0059-0060). See also Defendant's prior production bates labeled Wiley/Reed Case No. 3:21-cv-00599-DWD and 3:20-cv-01139-SPM 0007-0021. Defendant expressly does not waive the privileges addressed above to the content of the discussions at said meetings or any documents reviewed or prepared as a result. In addition, Wexford assisted the IDOC in drafting a response to the 2014 Expert Report. That Report, which was authored by IDOC Chief Counsel, William Barnes, on November 3, 2014, is protected from disclosure under the order appointing the expert and cannot be released absent permission from the *Lippert* court. Doc. 244, par. 6b.

18.    Did any Wexford employees or agents hold meetings to review, investigate, analyze, uncover, prevent, or determine the prevalence of deficiencies described in the 2018 Lippert report relating in whole or in part to the untimely treatment of cancer and other life-threatening conditions for IDOC inmates? If your answer is anything other than an unqualified No, please:

    a)  state the date, time, place, and duration of each such meeting;

    b)  state the identities of each person who attended each such meeting, including the person's name and job title;

c) for each meeting identified in response to this interrogatory, state whether the meeting had a legal purpose;

d) for each meeting identified in response to this interrogatory, state whether the meeting had a business purpose;

e) identify every Document or Communication (including copies and drafts of same) prepared for or in anticipation of each such meeting, provided for or distributed to attendees of each such meeting, created by any attendees at each such meeting (including notes), describing or discussing any part or component of each such meeting;

f) for each Document or Communication identified in response to this interrogatory, state whether said Document or Communication had a legal purpose; and

g) for each Document or Communication identified in response to this interrogatory, state whether said Document or Communication had a business purpose.

**ANSWER:**

Defendant objects that this request is identical to request #17 and is duplicative. Defendant incorporates by reference its answers and objections to request #17 above as if fully stated herein.

CASSIDAY SCHADE LLP

By: /s/ Jaclyn A. Kinkade
One of the Attorneys for Defendant,
WEXFORD HEALTH SOURCES, INC.

Jaclyn A. Kinkade
ARDC No. 6333722
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
jkinkade@cassiday.com

## **VERIFICATION**

I, Joe Ebbitt, state that I have read the above and foregoing Answers to Interrogatories and that the information contained therein is true and accurate to the best of my knowledge and belief.  Under penalties as provided by law, I certify that the statements set forth herein are true and correct, except as to matters therein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

Dated: <u>October 19, 2023</u>

<u>Joe Ebbitt</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of WEXFORD HEALTH SOURCES, INC. ANSWERS TO INTERROGATORIES was served upon the following attorneys of record and via electronic mail before the hour of 5:00 p.m., on October 19, 2023.   Under penalties as provided by law, I certify that the statements set forth herein are true and correct:

Jon I. Loevy, Esq.
Stephen H. Weil, Esq.
Maria Makar, Esq.
Loevy & Loevy
311 North Aberdeen Street
Third Floor
Chicago, IL 60607
(312) 243-5900
(312) 243-5902 (Fax)
jon@loevy.com
weil@loevy.com
makar@oevy.com


ATTORNEYS FOR ILLINOIS DEPARTMENT OF CORRECTIONS
Tara M. Barnett
Assistant Attorney General
201 West Pointe Dr. Suite 7
Swansea, IL 62226
tara.barnett@ilag.gov


/s/ Jaclyn A. Kinkade

11567884