# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEYANA WILEY, Administrator of the Estate of OMAR McCULLOUGH,<br><br>Plaintiff,<br><br>v.<br><br>JUSTIN YOUNG, C. WALKER, ANGELA WACHTOR, JUSTIN DUPREY, JANE DOE, WEXFORD HEALTH SOURCES, INC., and NURSE CYNTHIA,<br><br>Defendants. | Case No. 3:21-cv-00599-DWD<br><br>Judge David W. Dugan |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS**

This lawsuit, filed against Defendant Wexford Health Sources, Inc. ("Wexford") and certain healthcare practitioners that Wexford employed, seeks damages for Defendants' egregious neglect of Plaintiff's decedent, Omar McCullough, who for years reported symptoms of colon cancer that Wexford medical staff ignored until his cancer had advanced to Stage 4— undiagnosed and untreated.

Plaintiff alleges that Wexford is liable for the individual Defendants' deliberate indifference to Mr. McCullough's illness. Pursuant to *Monell v Department of Social Services*, 436 U.S. 658 (1978), Plaintiff charges that Mr. McCullough's mistreatment is part of the pattern of indifference that was exposed and documented in *Lippert v. Jeffreys,* No. 10-cv-4603 (N.D. Ill.) (hereinafter, "*Lippert*"), a class action suit challenging the medical care Wexford provided to prisoners in the Illinois Department of Corrections. Beginning in 2017, multiple medical experts appointed by the court in *Lippert* submitted periodic reports documenting Wexford's pervasive systemic failures of medical care, including failures in basic care and follow up, particularly

1

gross delays in diagnosis and care of serious chronic conditions. The *Lippert* reports documented a pattern of failing to diagnose serious medical conditions, including cancers, which resulted in the preventable deaths of multiple incarcerated patients, as happened to Mr. McCullough.

Faced with these allegations, Wexford employed a Stalingrad defense to Plaintiff's *Monell* discovery in this case—resist everything, only surrender territory perimeter-by-perimeter, agree to nothing. Before the parties could even get out of the starting gate on *Monell* discovery, for example, Wexford filed an extraordinary motion seeking a protective order from Plaintiff's *Monell* discovery—before Wexford had provided responses to written discovery and before the parties had engaged in the Rule 37 meet-and-confer process. *See* ECF No. 64. The motion required unnecessary briefing (ECF Nos. 64-66) and delayed the start of *Monell* discovery by months. Even routine matters were fraught with unnecessary controversy. For example, Wexford fought over the entry of a routine HIPAA protective order needed to obtain medical records. *See* ECF No. 79 (briefing at ECF Nos. 73, 79, 80). The resistance extended to granular details, with Wexford interposing paragraphs-long objections to routine *Monell* discovery requests, each of which had to be negotiated at the cost of time and delay. *See, e.g.*, ECF No. 86-1 (Wexford Rule 34 objections).

Wexford sustained that resistance throughout the discovery period. In particular, a substantial portion of Plaintiff's *Monell* discovery sought communications concerning what Wexford executives said and did in response to the multitude of dangerous problems that *Lippert*'s court-appointed experts had identified in Wexford's delivery of medical care. Wexford's resistance to this discovery was unrelenting, and it was often abetted by sharp practices of its counsel. *See, e.g.*, ECF No. 146 at 2 (explaining how Wexford's counsel failed to mention during negotiations of a search protocol that Wexford executives communicated with

2

each other about the *Lippert* reports in meetings rather than email correspondence; then refusing to search for meeting notes after making this revelation because they were not included in the search protocol). As a result, Plaintiff was forced to file multiple motions to compel. ECF Nos. 86, 146, 173. And even with those motions the case dragged on for years.

Wexford's resistance to *Monell* discovery extended to procedural maneuvers. For example, after the Court initially granted Plaintiff's motion to compel certain *Monell* discovery, *see* ECF No. 107, and almost a year after *Monell* discovery had begun, Wexford moved to bifurcate *Monell* discovery so that it would not be taken until sometime down the road. *See* ECF No. 111. As Plaintiff explained at the time, and in response to the bifurcation motion, Wexford's various motions had burned up a year with effectively no responses to Plaintiff's written *Monell* discovery. *See* ECF No. 114 at 2-3.

This pattern continued, as reflected in the parties' July 31, 2023 status report to the Court, and Plaintiff's subsequent motions to compel. *See* ECF Nos. 146, 173. Plaintiff continued her attempts to gather evidence about what Wexford executives said and did in response to the dangers in Wexford's health delivery identified in the *Lippert* reports, but to no avail. Wexford's resistance was plenary, running from bad-faith ESI negotiations, *see, e.g.*, ECF No. 146 at 2 *supra*, to shifting factual representations about whether the executives' communications were for purposes that would fall under a privilege. *See* ECF No. 173 at 4-6 (Plaintiff's motion to compel explaining that Wexford initially objected that discovery of numerous communications about *Lippert* was unduly burdensome because it would require Wexford to identify whether a communication had dual purpose or a legal purpose only; and then, promptly after a Rule 37 conference in which Plaintiff counsel explained that dual purpose documents were not privileged, amended the response to represent that all responsive communications had a legal

3

purpose only). In the end, aside from some anodyne correspondence about an irrelevant screening program, Wexford produced no communications in which its executives responded to the dangerous problems identified in the *Lippert* reports. See ECF No. 173 at 3.

Eventually, after years of hotly contested litigation, Wexford moved for summary judgment on all aspects of Plaintiff's complaint. ECF No. 212. Plaintiff has responded. ECF No. 237. And, following the submission of Wexford's reply, ECF No. 244, the summary judgment motion is fully briefed and before the Court for decision. In other words, this Court will soon address this case on the merits, both as to Plaintiff's claims against the individual Defendants and her *Monell* claim against Wexford.

Apparently seeking to influence the Court's views on the merits, Defendants have filed a motion for sanctions that recycles their largely unjustified complaints—addressed at the time—about statements Plaintiff's counsel made in motions filed months and even years ago. Defendants falsely accuse Plaintiff's counsel of delaying this litigation when it has been Wexford and its counsel who have protracted this case, and attempt, without basis, to portray this case as lacking substantive merit. This motion should be denied.

## ARGUMENT

Defendants' motion invokes the Court's authority to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure, accusing Plaintiff's counsel of making "false representations to the Court" to seek or avoid unjust relief and 28 U.S.C. §1927, claiming that Plaintiff's counsel engaged in unreasonable and vexatious conduct that has "multiplied the proceedings," claiming that Plaintiff's counsel failed to comply with deadlines in order to gain unfair advantage (Def. Br. at 10, 13). There is no basis for the Court to impose sanctions under either of these authorities or either theory.

Federal Rule of Civil Procedure 11 provides that the attorney who signs a pleading "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the "claims defenses and other legal contentions in the pleading "are warranted by existing law or by a nonfrivolous argument" for extending, modifying or reversing the law" and also certifies, as to factual contentions, that they "have factual support." *See* Fed. R. Civ . P. 11. Rule 11 empowers courts to impose sanctions in a variety of circumstances, but not every situation warrants such measures. *See, e.g.*, *Curto v. Smith,* 248 F. Supp. 2d 132, 142-43 (N.D. N.Y. 2003) (declining to impose sanctions when "false statements" were indicative of minor and immaterial factual inconsistencies), *aff'd in part, appeal dismissed in part sub nom. Doe v. Anonymous Unnamed Sch. Emps. & Offs. of Cornell Univ. Coll. of Veterinary Med.*, 87 F. App'x 788 (2d Cir. 2004), and *aff'd*, 93 F. App'x 332 (2d Cir. 2004). To impose Rule 11 sanctions, there must be a showing of at least "culpable carelessness." *CitiBank Global Mkts., Inc. v. Rodríguez Santana*, 573 F.3d 17, 32 (1st Cir. 2009).

To justify an award of sanctions pursuant to Section 1927, an attorney must engage in unreasonable and vexatious conduct that multiplies the proceedings. *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). An attorney multiplies the proceedings unreasonably and vexatiously only when the attorney's conduct is so egregious that it is tantamount to bad faith. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). The imposition of sanctions under Section 1927 is reserved for egregious behavior that violates recognized standards of litigation conduct. *See United Stars Indus. v. Plastech Engineered Prods.*, 525 F.3d 605, 610 (7th Cir. 2008) (the standard for awarding sanctions under Section 1927 is higher than the standard for sanctions under the Federal Rules); *Rosselló-González v. Acevedo-Vilá*,

483 F.3d 1, 7 (1st Cir. 2007); *McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001) (something more than lack of merit is required for sanctions under Section 1927), *modified on other grounds*, 311 F.3d 1077 (11th Cir. 2002). For example, a district court in this Circuit imposed sanctions on an attorney who publicly filed witnesses' nude photographs and documents containing home addresses and social security numbers without redactions. *See Dopson v. Corcoran*, 762 F. Supp. 3d 702 (N.D. Ill. 2025). In one of Defendants' cited cases, the Seventh Circuit affirmed the lower court's sanctions order against an attorney who repeatedly obstructed questioning with improper interruptions, objections, insults, accusations, and threats against opposing party's counsel during his client's deposition. *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 452 B.R. 676 (N.D. Ill. 2011), *aff'd,* 719 F.3d 785 (7th Cir. 2013). In sum, Section 1927 sanctions are awarded for conduct that is wholly out of bounds and beyond the norms of professional decorum.

Defendants identify nothing that would justify imposing any sanction on Plaintiff's counsel for any action or failure to act during this litigation.

## I. NO SANCTION UNDER RULE 11 WOULD BE APPROPRIATE; PLAINTIFF'S COUNSEL MADE NO SANCTIONABLE MISREPRESENTATION IN ANY PLEADING FILED IN THIS CASE.

Defendants put forward a list of claimed "misrepresentations" in pleadings Plaintiff has filed over the past two years in this case, claiming as to each that Plaintiff's counsel made a deliberate and material misstatement of fact. Each of these contentions is utterly lacking in merit. Plaintiff responds to them one-by-one:

**Plaintiff's statement regarding avoiding written communication. ECF No. 146.** Plaintiff filed a motion to compel, seeking communications among Wexford executives about the *Lippert* reports. The motion raised the surprising lack of written communication among Wexford

executives about the *Lippert* reports. This was the case, Wexford's counsel had explained, because Wexford executives favored meetings instead—but refused to search for or produce any meeting notes. ECF No. 146 at 2. In recounting the Rule 37 conferences, Plaintiff's motion stated that Wexford's counsel had explained Wexford executives used the meetings to "avoid" written communication. *Id.* When Wexford's counsel emailed Plaintiff and asked Plaintiff to correct the statement, Plaintiff filed an amendment to ECF No. 146 on the same day. ECF No. 147. Plaintiff clarified that "avoid" was not a word Wexford's counsel had used, but rather was Plaintiff's characterization of what Wexford counsel had told Plaintiff. Plaintiff submitted to the Court that that characterization was entirely fair. *Id.* That was so, Plaintiff explained, because in the context of Wexford executives discussing the *Lippert* reports, "[i]t would be an extraordinary deviation from standard business practice for a company's leaders neither to send or receive emails discussing such reports and yet to communicate about the reports only at meetings—unless a decision had been made to avoid communicating about the subject over email." ECF No. 147 at 1.

This Court addressed ECF No. 146 by ordering the parties to meet and confer further, pursuant to the Court's Case Management Procedures, and to update the Court thereafter. ECF No. 148. This litigation proceeded forward. Plaintiff's correction, which Plaintiff made immediately after Wexford objected, clarified the record immediately and left no confusion over who said what during the Rule 37 conference. That is what parties are supposed to do. It is not a basis for sanctions.

**Plaintiff's statement about the volume of Wexford's production, ECF No. 146.** Wexford also claims Plaintiff attempted to mislead the Court by stating in the same motion to compel (ECF No. 146) that Wexford "has not produced a single document in response to

7

Plaintiff's discovery." ECF No. 256 at 13 (purporting to quote ECF No. 146 at 6). Defendants' motion mis-quotes Plaintiff's Motion to Compel. The passage Wexford purports to quote appears nowhere in that Motion. Here is what Plaintiff actually represented regarding the status of document production:

> Plaintiff served the *Lippert* discovery in *Reed* in April 2021. It served the same discovery in *Wiley* in March 2022. So far, Wexford has not produced a single document in response, despite years of enforcement efforts.

ECF No. 146 at 6. That statement accurately describes the status of Wexford's production in response to Plaintiff's *Lippert* discovery—which was the subject of the motion.

To be sure, Wexford had made a modest document production. But, as Plaintiff explained in the parties' July 31, 2023 Joint Status Report to the Court, Wexford's production of 58 pages did not include any documents constituting or reflecting discussion among Wexford executives about *deficiencies* identified in the *Lippert* reports, which was what Plaintiff sought in the *Lippert*-related discovery requests. *See* July 31, 2023 Joint Status Report Ex. B (Plaintiff Recitation of Facts) at ¶¶ 24-26 (explaining that Plaintiff's *Lippert* discovery sought Wexford communications about *deficiencies* identified in the *Lippert* reports). *See also id*. at 12 ("Wexford has produced nothing responsive [to Plaintiff's *Lippert* discovery], and now claims that it is done."). Perhaps, in the Motion to Compel, Plaintiff should have referred to her position in the July 31, 2023 Joint Status Report for clarity. But Plaintiff's statement in the Motion was not incorrect. Wexford may disagree about the responsiveness of the 58 pages to Plaintiff's *Lippert* discovery, but that is a matter for argument. Plaintiff certainly made no sanctionable misrepresentation in the Motion.

**Dispute regarding discovery of meeting invitations, ECF No. 173**. Wexford claims that Plaintiff misled the Court by saying in her March 1, 2024 motion to compel, ECF No. 173, that Plaintiff "offered to confine the meetings to the various electronic 'invitations' that Wexford's

8

counsel reviewed (but did not produce) as part of ESI discovery in this case," ECF 256 at 3 (quoting ECF No. 173 at 8), whereas Wexford and Plaintiff had earlier conferred about Wexford describing information about the invitations in interrogatory responses—as long as there was no additional discovery. ECF No. 256 at 3. This, Wexford claims, was another misrepresentation.

But Wexford did not agree to Plaintiff's proposal—instead, as its own brief makes clear, Wexford insisted that if it were to agree to Plaintiff's proposal, there could be no further discovery on the topic. *See* ECF No. 256 at 3. That would mean no possibility of gathering evidence of additional meetings if discovery further indicated that additional meetings might exist. Plaintiff did indeed respond that this proposal would "go a long way to resolving" the dispute, as Wexford's brief reports, *id.* at 3, but Plaintiff did not agree to Wexford's *added* condition to Plaintiff's proposal because it would end all discovery into meetings going forward, even if it became apparent that more meetings existed. Plaintiff's description in ECF No. 173 at 8 was accurate. Ultimately, as Wexford points out, ECF No. 256 at 4, after Plaintiff moved to compel, Plaintiff did agree to Wexford's proposal and withdrew the motion to compel, *see* ECF No. 174. But that was because Wexford promised yet more litigation on the question, and Plaintiff, needing to conserve her resources in this case, chose to accept Wexford's proposal.

**Plaintiff's Response to Defendants' Motion to Strike Plaintiff's Expert Disclosures. ECF No. 201.** Wexford focuses on a delay of approximately 36 hours in disclosing the expert reports of Dr. Schmidt and Dr. Venters. ECF No. 256 at 5-6. As Plaintiff explained at the time, in the course of finalizing the report for Dr. Schmidt, Plaintiff counsel noted that the depositions of some witnesses had been omitted in the materials that were provided to her; those materials were provided before August 5, but Dr. Schmidt required time to review them. ECF No. 191 at 2. Dr. Venters, in turn, needed to review Dr. Schmidt's report in order to provide his own

9

opinion, so the submission of his report was delayed by a few dozen hours as well. *Id*. Plaintiff offered to cure the late reports by extending Wexford's expert report deadline from October 5 to October 7—and, when Wexford's counsel objected that October 7 fell on the weekend, to extend Wexford's deadline to October 9. *See* ECF 205-1 at 1472.

Plaintiff had no intention of delaying either report. And once the delay occurred, Plaintiff bent over backward to provide a generous, more-than-commensurate extension to Wexford. These are the sorts of things counsel for parties typically try to work out together, and as long as prejudice can be avoided. Not Wexford's counsel. Once Wexford had the reports in hand, they devoted their time to a six-page motion to strike them instead. Plaintiff has expressed regret for the 36-hour delay, *see* ECF Nos. 191, 201, but this is not something that calls for sanctions, particularly given counsel's multiple offers designed to make sure Wexford suffered no prejudice as a result.

Wexford likewise imputes bad faith to both Plaintiff's counsel and apparently Dr. Schmidt regarding some materials—in particular, a timeline Dr. Schmidt had prepared for herself and some reliance materials that Dr. Schmidt remembered sending to Plaintiff's counsel. Def. Br. at 6. Wexford is ready with a claim of malice, that counsel purposefully "withheld" this material (only, apparently, to have Dr. Schmidt bring it to the deposition), *id.*, rather than attributing to misunderstanding the production of the reliance materials at the deposition. In all events Wexford does not claim any prejudice from these events, and does not suggest that its counsel asked for, or required, any delay to review the additional materials.

The same goes for the spreadsheet Dr. Venters reviewed while preparing his report. As already briefed in Plaintiff's response to Defendants' motion to strike, the parties disagree in good faith about whether the spreadsheet was discoverable. Nevertheless, after meeting-and-

conferring, Plaintiff produced it to Defendants.[1] This discovery dispute is not the same as a disclosure delay and Plaintiff never made any misrepresentation about the spreadsheet.

The spreadsheet contained no new, misrepresented, or withheld information. Defendants already possessed all the medical records paraphrased and summarized in the spreadsheet, and Plaintiff produced all the documents relied on by the experts. Indeed, all the medical information pertinent to the experts' opinions was initially produced by Defendants—after much litigation on the issue. *See Assaf v. Trinity Med. Ctr.*, 696 F.3d 681, 687 (7th Cir. 2012) (district court abused its discretion in barring late-disclosed evidence, as party was not prejudiced by late disclosure of information in its own files); *Washington v. City of Springfield*, 2009 WL 927498, at *2 (C.D. Ill. Apr. 1, 2009) (late disclosure was substantially justified when one party's expert could not formulate his opinion without the information requested from the other party).

As with Dr. Schmidt, Defendants proceeded with their deposition of Dr. Venters and at no point sought to terminate or continue it. *See In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 651 (N.D. Ill. 2006) (denying exclusion where movant went ahead with deposition instead of filing a motion to bar); *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. at 340 (N.D. Ill).

**Plaintiff's Response to Defendants' Motion for Summary Judgment. ECF No. 237.** Plaintiff's response to the motion for summary judgment carefully documented the facts that are in dispute and properly presented the governing law following counsel's diligent research. Defendants also identify no basis for a sanction based on this motion.

*First,* Defendants identify a several statements of fact that they contend constitute "misrepresentations." *See* Def. Br. at 17. They offer no citations to the record for their

---

[1] Defendants also issued discovery requests about the spreadsheet, to which Plaintiff timely and properly responded.

allegations, and that is no surprise. Plaintiff's assertions about Mr. McCullough and his treatment are fully supported. In the "Statement of Facts" and "Argument" sections of her summary judgment response, Plaintiff provided separate sections analyzing the culpability of each individual defendant and of Wexford. The facts and argument were not "intentionally conflated" as Defendants contend in their sanctions motion. For example, Plaintiff properly included facts about care provided by non-party Wexford employees in 2016 and 2017 to support her *Monell* claim. *Id.* at 26-28 (arguing that Wexford may be liable even if no individual defendant is found liable). And as Plaintiff explained, an individual defendant may be liable even if not physically present for each of Mr. McCullough's exams. For example, Plaintiff represented that Dr. Young oversaw and was responsible for the medical program at Danville and influenced Mr. McCullough's care even before he personally examined him.

*Second,* Defendants complain that Plaintiff incorrectly cited one case in her summary judgment response. Def. Br. at 17. There is indeed a citation mistake in the brief. That is regrettable, but it hardly merits Rule 11 sanctions. In her response brief, Plaintiff cited *Awalt v. Marketti*, 74 F. Supp. 3d 909, 925 (N.D. Ill. 2014), and *Piercy v. Warkins,* No. 14 CV 7398, 2017 WL 1477959 at *12 (N.D. Ill. Apr. 25, 2017) to illustrate that this Circuit has repeatedly rejected Defendants' argument that Plaintiff must present statistical evidence to support her *Monell* claim. *See* ECF No. 237 at 32–34. Plaintiff made this point in opposition to Defendants' argument to the contrary—an argument that has been squarely rejected in this Circuit. In the course of her discussion, Plaintiff mistakenly attributed a fact directly to the *Piercy* case, failing to specify that the *Piercy* court was quoting the fact from the *Awalt* case. Defendants already pointed out this error in their reply to their motion for summary judgment. This is not a misrepresentation of

12

existing law, in violation of Rule 11. Plaintiff made a scrivener's error in a citation. That inadvertent mistake does not remotely qualify as a sanctionable misstatement under Rule 11.

In sum, Defendants have failed to identify a statement of fact without evidentiary support or a single legal argument not justified by existing law in Plaintiff's summary judgment response or a single respect in which Plaintiff deliberately sought to mislead this Court. There is also no basis for a Rule 11 sanction directed at any aspect of any pleading identified in Defendants' motion.

## II. NO SANCTION UNDER SECTION 1927 WOULD BE APPROPRIATE; PLAINTIFF HAS NOT ENGAGED IN UNREASONABLE OR VEXATIOUS CONDUCT THAT HAS MULTIPLIED THESE PROCEEDINGS.

Without any basis in fact Defendants make the bald allegation that Plaintiff "filed a claim of delay in cancer care without consulting any medical professionals and was stalling discovery because she could not find a supportive expert." Def. Br. at 10. There is not a little irony in the fact that—in a defense motion contending that pleadings have been filed without factual support—Defendants would include such an inflammatory and false allegation and would offer zero support for the assertion. Suffice it to say that Plaintiff performed proper due diligence before she filed this case.

Defendants contend that Section 1927 sanctions are warranted because Plaintiff missed deadlines for disclosing her retained experts and because Plaintiff disclosed one of the *Lippert* expert monitors pursuant to Rule 26(a)(2)(C). Plaintiff appropriately managed her side of the expert discovery in this case and Defendants' contentions do not come remotely close to justifying the imposition of Section 1927 sanctions.

### A. Modest Delays and Glitches in the Expert Discovery Process Do Not Justify Any Sanction.

There were minor delays—measured in hours—in providing Wexford with Plaintiff's

13

expert reports, and a handful of reliance materials were provided at Dr. Schmidt's deposition instead of earlier. These things should not have occurred, but they sometimes do in litigation, and Wexford has not identified any prejudice that they caused. Wexford attributes bad faith to Plaintiff's counsel for these minor delays, never bothering to explain how Plaintiff counsel planned to benefit from them. If anything, the opposite is true—Wexford's counsel's contemporary correspondence makes plain a desire to take advantage of the short delay in submitting the reports to manufacture a prejudice claim to be deployed as a litigation tactic. In its sanctions motion, Wexford "note[s] that continuing Dr. Schmidt's deposition was not an option provided to Defendants at the time." ECF No. 256 at n.3. But contemporary correspondence shows this was not a remedy Wexford's counsel even *hinted* at when Plaintiff reached out for ways to remedy the prejudice caused by delay. *See* ECF 205-1 *passim* (contemporary correspondence between Wexford and Plaintiff counsel). Wexford's conduct reflects a counsel whose approach is to leverage problems encountered by opposing counsel, not work out compromises as lawyers in a case are expected to do.

    Defendants' arguments as to expert delays mirror their complaints about Plaintiff's response to the motion to strike expert reports. Plaintiff responded to those arguments above.

    **B.    There Was Nothing Improper About the Disclosure of Dr. Shansky.**

    Plaintiff's November 18, 2024 disclosure of the *Lippert* monitors was timely and allowed by the *Lippert* Court for the reasons set out in detail in Plaintiff's response to Defendants' motion to strike. *See* ECF No. 224. Despite being fully briefed, Defendants now seek additional sanctions for Plaintiff's justifiable, supplemental expert disclosures. For the reasons discussed below, sanctions are not warranted.

Plaintiff's disclosure was proper and timely to rebut Defendants' expert's new evidence and theories. Plaintiff disclosed the *Lippert* monitors (Dr. Shansky[2] and his medical team) four days after Defendants' statistical expert was deposed, to rebut his opinions criticizing the *Lippert* monitors' methodology. Rebuttal evidence must "contradict or rebut evidence on the same subject matter." *City of Gary v. Shafer*, 2:07-CV-56-PRC, 2009 WL 1370997, at *3 (N.D. Ind. May 13, 2009) (citing Fed. R. Civ. P. 26 (a)(2)(2)(c)(ii)). The admission of rebuttal evidence on a topic is permissible once a party has opened the door to that topic. *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) (citing Black's Law Dictionary 579 (7th ed. 1999)). Rebuttal evidence is not precluded simply because it may have been offered in a party's case-in-chief. *See Bell v. AT&T*, 946 F.2d 1507, 1512 (10th Cir. 1991) (stating "where the evidence rebuts new evidence or theories proffered in the defendant's case-in-chief, that the evidence may have been offered in the plaintiff's case-in-chief does not preclude its admission in rebuttal"). Plaintiff's disclose was proper and timely. *See Hammers v. Douglas Cnty*., 15-7994, 2016 WL 6804905, at *3 (D. Kan. Nov. 16, 2016) (holding rebuttal expert disclosure was proper and timely where plaintiff introduced causation experts in their case-in-chief, then introduced rebuttal experts to rebut defense expert's theory on causation).

Defendants' argument that the *Lippert* monitors are not allowed to testify in any other cases about what they learned as court-appointed experts is incorrect. The monitors are only barred from testifying in any unrelated case about "information gained in the course of performing their" court-appointed roles, such as the medical information they learned of

---

[2] Plaintiff conducted research to determine Dr. Shanksy's status but did not know of Dr. Shansky's recent death when she disclosed him in November 2024. Nor did Defendants notify Plaintiff of his death and ask Plaintiff to withdraw him on that basis prior to filing their motion. If she had known of his death, she would not have included him in her supplemental expert disclosures. Obviously, Dr. Shansky's death renders Plaintiff's disclosure of him moot.

individual prisoners. ECF No. 207-1, Defs.' Ex. A at ¶1(b). The *Lippert* Court sought to prevent the prisoners who were subjects of the *Lippert* Report from deposing or subpoenaing Dr. Shansky and his team for their individual medical indifference cases. However, Mr. McCullough was not a patient examined by the *Lippert* team nor was he identified in the Reports. Plaintiff disclosed the monitors to speak only to the underlying methodology of their analyses, which is not the type of testimony prohibited by the *Lippert* court. The *Lippert* court did not bar the experts from explaining or defending the methodology they employed to conduct their review of IDOC and Wexford. Plaintiff's disclosure was proper and certainly not sanctionable.

## CONCLUSION

Defendants' motion for sanctions should be denied in its entirety. It should not have been filed. The Court should clarify that it is unprofessional for counsel to seek a litigation advantage via unwarranted, unnecessary and distracting motions for sanctions.[3] This case seeks damages for Defendants' unjustified failure to treat Mr. McCullough's life-threatening illness—and for his unnecessary death. The matter deserves to be adjudicated on the merits, without wasted motion and unwarranted expense.

Respectfully submitted,

*/s/ Locke E. Bowman*
One of the Plaintiff's Attorneys

Jon Loevy
Locke Bowman
Maria Makar

---

[3] Defendants' counsel has repeatedly sought sanctions against her opposing counsel before, which the judges ultimately denied. *See, e.g.*, *Moore v. Baldwin*, No. 3:19-CV-01206-MAB, 2025 WL 102189 (S.D. Ill. Jan. 15, 2025); *Miller v. Baldwin, No.* 3:17-CV-859-MAB, 2020 WL 7027489 (S.D. Ill. Nov. 30, 2020), *aff'd sub nom. Miller v. Wexford Health Sources, Inc.*, No. 20-3533, 2022 WL 3928519 (7th Cir. Aug. 31, 2022); *Armbruster v. Shah*, No. 16-CV-544-SMY-MAB, 2019 WL 4200601 (S.D. Ill. Sept. 5, 2019).

Gianna Gizzi<br>
LOEVY & LOEVY<br>
311 N. Aberdeen, Third Floor<br>
Chicago, IL 60607<br>
(312) 243-5900<br>
locke@loevy.com

*Attorneys for Plaintiff*